UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Joint Administration Pending |
| EPIC Companies Midwest, LLC, | Case No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Case No. 24-30282 |
| EPIC Employee, LLC, | Case No. 24-30283 |
| EOLA Capital, LLC, and | Case No. 24-30284 |
| EC West Fargo, LLC, | Case No. 24-30285 |
| Debtors.[1] | Chapter 11 Cases |

## MOTION FOR ORDER (I) GRANTING EXPEDITED RELIEF AND (II) AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS

1. EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors") hereby file this Motion for Order (I) Granting Expedited Relief and (II) Authorizing the Use of Cash Collateral on an Interim and Final Basis (the "Motion"). This Motion should be granted because the Debtors require the use of cash collateral to continue their operations.

2. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is 400 10th Street SE, Minot, ND 58701 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

1

Chapter 11 cases were filed on July 8, 2024 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 4001. This Motion is filed under Fed. R. Bankr. P. 9013 and 9014 and Local Rules 9013-1 and 9014-1. Notice of the hearing on this Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

5. The Debtors have filed a contemporaneous motion requesting expedited relief pursuant to Fed. R. Bankr. P. 9006(c) and Local Rule 9006-1.

## FED. R. BANKR. P. 4001(b)(1)(B) STATEMENT

6. Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B), the Debtors seek to use cash in which no entities hold a security interest, except that Bank Forward may assert an interest in some or all of the cash collateral of EPIC Companies Midwest, LLC ("EPIC Midwest"). The Debtors will use the cash collateral to continue their operations while pursuing a wind-down of their businesses. The Debtors request interim authorization to use cash collateral through the week ending on July 13, 2024 and final authorization to use cash collateral through the week ending on October 5, 2024. As adequate protection, the Debtors propose to grant Bank Forward replacement liens in Bank Forward's collateral to the extent of cash collateral used, maintain, all insurance, and operate so as to preserve the value of the property of the estate.[2]

---

[2] As discussed further below, the Debtors continue to review and evaluate the terms of the agreement with Bank Forward. Nothing contained in this Motion or in any other pleading filed with the Court regarding these cases, including the granting of any replacement liens, shall constitute any acknowledgement or agreement that Bank Forward holds a valid lien on any property of EPIC Midwest, including cash collateral. Nothing contained in this Motion or in any other pleading filed with the Court regarding these cases, including the granting of any replacement liens, shall constitute a waiver of the EPIC Midwest's ability to avoid any such liens to the extent permitted under the Bankruptcy Code and applicable North Dakota law.

2

## BACKGROUND

7. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed.

8. Further background information about the Debtors and facts related to other first day motions is set forth in the Declaration of Patrick Finn in Support of First Day Motions.

### I. FORMATION AND FUNDING OF THE DEBTORS.

9. Each of the Debtors was formed for the purpose of providing loans to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of various EPIC-related companies (the "Project Companies").

10. On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project. Based on records reviewed to date, each of the Project Companies has a different ownership group. Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies. In addition, certain of the Project Companies appear to have subordinated debt from lenders other than the Debtors.

11. On information and belief, the Debtors were formed for the purpose of providing loans as "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to the bank debt but superior to the equity holders in each of the Project Companies

and enable EPIC-related companies to quickly deploy capital among the Project Companies as it was needed.

12. To execute this plan, the Debtors raised capital from various individuals and entities (collectively, "Investors"). The majority of the investments were structured and documented as loans from the Investors to the Debtors. Investors generally executed promissory notes, which in most cases provided for, among other normal loan terms, interest, monthly installment payments, and a balloon payment on the applicable maturity date (collectively, "Investor Notes"). On information and belief, the Investor Notes are unsecured.

13. With the funds received from the Investors, the Debtors made transfers to the Project Entities and certain other subsidiaries of EPIC-related companies. Most are documented by promissory notes but, on information and belief, some are reflected solely in accounting records. The majority of the Sub Debt required the Project Entities to make monthly installment payments to the Debtors and a final balloon payment on the applicable maturity date. On information and belief, none of the Sub Debt is secured.

**II.    BANK FORWARD'S PURPORTED SECURITY INTEREST IN EPIC MIDWEST'S PERSONAL PROPERTY.**

14. When examining their records in preparation for filing the above-captioned cases, the Debtors discovered certain agreements that purport to grant a security interest in the assets of EPIC Midwest to Bank Forward.

15. Specifically, EPIC Midwest executed a certain Limited Liability Company Resolution to Grant Collateral on or around September 28, 2021 (the "Collateral Resolution"), whereby EPIC Midwest purports to agree to grant a security interest in all assets as security for the payment of any indebtedness owed by EPIC Holdings II, LLC ("Holdings II") to Bank Forward.

4

16. In connection with the Collateral Resolution, EPIC Midwest additionally executed a certain Assignment of Deposit Account on or around September 28, 2021 (the "Assignment Agreement"), whereby EPIC Midwest purported to grant a security interest in a checking account held by EPIC Midwest, Account No. ****8191, held by Bank Forward (the "Collateral Account").

17. Aside from the Collateral Resolution and the Assignment Agreement, the Debtors have not located any other agreement that obligates EPIC Midwest to make any payment to Bank Forward.

18. As of the Petition Date, the Collateral Account held a balance of approximately $205,003.31.

## RELIEF REQUESTED

19. The Debtors seek authorization to use cash to continue operations and pay expenses in accordance with the cash flow projections and budget attached as **Exhibit A** (the "Budget").

20. While the Debtors do not believe that their use of cash is outside the ordinary course of business, the Debtors are nonetheless seeking authorization to use such cash as described in the Budget out of an abundance of caution. Additionally, to the extent Bank Forward holds a valid lien in the Collateral Account or any of EPIC Midwest's cash collateral, the Debtors seek authorization to use cash collateral to pay expenses in accordance with the Budget.

21. The Debtors have reviewed the Budget and delayed all payments that are not critical during the interim period. Payment of the remaining amount is necessary to avoid immediate and irreparable harm to the estates pending a final hearing on this Motion.

22. The Debtors will generate cash from continuing operations. As set forth in the Budget, the Debtors project that such cash will be sufficient to fund their Chapter 11 administrative expenses, including postpetition operating expenses.

23. The Debtors require the use of approximately $69,050 from the week ending on July 13, 2024, through week ending on July 27, 2024, in accordance with the Budget.

24. The Debtors need the interim use of cash before a final order may be entered to pay the costs and expenses of their ongoing operations. If the Debtors cannot immediately use cash, they will not be able to fund their operations, which will result in loss of value for their estates and creditors and cause irreparable harm as contemplated under Fed. R. Bankr. P. 4001.

25. For these reasons, the Debtors have also requested expedited relief on this Motion.

26. Prior to the hearing on the Motion, and in settlement of any and all of the matters raised in this Motion, the Debtors may enter into a stipulation or agreed order concerning use of cash and other related matters. In the event the Debtors enter into any such stipulation, they will seek approval of the stipulation or agreed order without further notice or hearing pursuant to Fed. R. Bankr. P. 4001(d)(4), and **THE DEBTORS HEREBY GIVE NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION OR AGREED ORDER**.

## BASIS FOR RELIEF REQUESTED

27. Section 363(b) of the Bankruptcy Code permits a debtor in possession, "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).

28. In interpreting 11 U.S.C. 363(b)(1), courts have held that a transaction involving property of the estate generally should be approved so long as the debtor can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *accord Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 567 n.16 (8th Cir. 1997); *Comm. Equity*

6

*Sec. v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Crystalin, LLC v. Selma Props., Inc. (In re Crystalin LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003). The court should give deference to a debtor's application of its sound business judgment in the use, sale or lease of property. *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990); *In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981).

29. Entry of an order authorizing the Debtors to immediately use cash up to the amounts set forth in the Budget is necessary to avoid a severe disruption in the Debtors' operations at this critical juncture and maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors have articulated a sound business justification for using such cash.

30. The Bankruptcy Code further provides that a debtor in possession may use cash collateral only with the secured creditor's consent or if the court, after notice and a hearing, authorizes such use. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor. *Id.* § 363(e).

31. The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

*Martin v. United States (In re Martin)*, 761 F.2d 472, 476–77 (8th Cir. 1985).

32. Pursuant to *Martin*, the first step is to establish the value of the secured creditor's interest. *Martin*, 761 F.2d at 477. Focusing on the cash collateral that is subject to the liens of the lender, the creditor's interest is determined by what the creditor could recover if the collateral were

7

disposed of in the most commercially reasonable manner practicable. *In re Boring*, 91 B.R. 791, 795 (Bankr. S.D. Ohio 1988); *United States v. Smithfield Estates, Inc.*, 48 B.R. 910, 912 (Bankr. D.R.I. 1985).

33. As of the Petition Date, the value of Bank Forward's interest is approximately $205,003.31.

34. The second element of *Martin* requires the Court to identify the risk to the secured creditor's value resulting from the Debtors' request for use of cash collateral. *Martin*, 761 F.2d at 477. In the instant case, such risk would be that the Debtors might fail to generate sufficient replacement cash collateral to compensate for the use of existing cash collateral. But here, that risk is minimal. The Debtors propose to use cash collateral to maintain their existing operations which would maintain the going-concern value of the Debtors and inure to the benefit of Bank Forward. If the Debtors are not authorized to use cash collateral, the Debtors' business will be severely harmed. Such a result would ensure that unsecured creditors receive, at best, a minimal distribution on account of their claims.

35. The third element of *Martin* requires the Court to examine the Debtors' adequate protection proposal to determine that the proposal protects the value of the lender's interest, if any, in the cash collateral relative to the risk to such value. *Id.* at 477. Here, to adequately protect Bank Forward's interest, the Debtors propose to grant Bank Forward replacement liens in Bank Forward's collateral to the extent of cash collateral used, maintain, all insurance, and operate so as to preserve the value of the property of the estate. As described on the collateral balance projections attached to the Motion as **Exhibit A**, there is a substantial equity cushion. Accordingly, Bank Forward is adequately protected.

## **CONCLUSION**

36. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

37. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Patrick Finn attached hereto.

38. Pursuant to Local Rule 9014-1(B), the Debtors hereby give notice that they may, if necessary, call Patrick Finn, a Partner at Lighthouse Management Group, Inc., and the Chief Restructuring Officer of the Debtors, whose business address is 900 Long Lake Road, Suite 180, New Brighton, Minnesota 55112, to testify regarding the facts set forth in the Motion.

39. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

A. Authorizing the Debtor to use cash as described in the Motion and the Budget; and

B. Granting such other relief as the Court deems just and equitable.

Dated: July 8, 2024 /e/ *Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice motion pending*)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTOR**

## AFFIDAVIT

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the proposed Chief Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors"), and I declare under penalty of perjury that the facts set forth in the preceding Motion for Order (I) Granting Expedited Relief and (II) Authorizing the Use of Cash Collateral on an Interim and Final Basis are true and correct, according to the best of my knowledge, information, and belief.

Dated: July 8, 2024

_PATRICK FINN_
Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer of the Debtors

# Exhibit A

**EPIC Funds (E23, ECF, ECM, EMP, EOL)**
**Consolidated Thirteen-Week Cash Flow Projection**
Last Update July 8, 2024

| | | Interim Period | | | Final Period | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week Ending: | | 13-Jul | 20-Jul | 27-Jul | 3-Aug | 10-Aug | 17-Aug | 24-Aug | 31-Aug | 7-Sep | 14-Sep | 21-Sep | 28-Sep | 5-Oct | Total |
| 1 | Notes Receivable | - | 56,898 | - | - | 76,761 | - | - | - | - | 76,761 | - | - | 6,750 | 217,170 |
| 2 | Other Cash Receipts | | | | | | | | | | | | | | - |
| 3 | **Cash Receipts** | $0 | $56,898 | $0 | $0 | $76,761 | $0 | $0 | $0 | $0 | $76,761 | $0 | $0 | $6,750 | $217,170 |
| 4 | Contract Labor | - | - | 59,050 | - | 53,900 | - | 53,900 | - | 39,750 | - | 34,600 | - | 34,600 | 275,800 |
| 5 | Rent & Occupancy | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 6 | General & Admin | - | 1,000 | - | 8,000 | - | 1,000 | - | 1,000 | 5,000 | 1,000 | - | 1,000 | 5,000 | 23,000 |
| 7 | Legal & Professional | - | - | - | - | - | - | - | - | - | - | - | - | 75,000 | 75,000 |
| 8 | **Cash Disbursements** | $0 | $1,000 | $59,050 | $8,000 | $53,900 | $1,000 | $53,900 | $1,000 | $44,750 | $1,000 | $34,600 | $1,000 | $114,600 | $373,800 |
| 9 | **Net Cash Receipts/(Disbursements)** | $0 | $55,898 | ($59,050) | ($8,000) | $22,861 | ($1,000) | ($53,900) | ($1,000) | ($44,750) | $75,761 | ($34,600) | ($1,000) | ($107,850) | ($156,630) |
| 10 | **Ending Cash Balance** | 571,372 | 627,270 | 568,220 | 560,220 | 583,081 | 582,081 | 528,181 | 527,181 | 482,431 | 558,192 | 523,592 | 522,592 | 414,742 | |

Assumptions:
- Cash receipts from Notes Receivable projected to be 30% to 60% of monthly invoice amount based on May and June collections.
- No collection of principal balances projected in initial thirteen week period.
- Contract labor is CRO and contract accounting support.
- US Trustee and other bankruptcy related fees not included.