# PROMISSORY NOTE
### Note No. ECM23-<u>614</u>-202<u>3</u>

$<u>100,000.00</u>                                                                                   **Dated:** <u>November 1</u>, 2023

  **FOR VALUE RECEIVED**, the undersigned, **EPIC Companies Midwest 2023, LLC** ("Borrower"), a limited liability company organized under the laws of the State of North Dakota, whose address is **400 10th Street SE, Minot, ND 58701**, agrees and promises to pay to the order of <u>Beth Postemski</u>, a resident of the State of <u>Colorado</u> ("Lender"), their endorsees, successors and assigns (the "Holder"), in lawful money of the United States, at their mailing address located at <u>P.O. Box 772184, Steamboat Springs, CO 80477</u>, or such other place as the Holder may from time to time designate, the principal sum of <u>One Hundred Thousand</u> **and 00/100ths ($<u>100,000.00</u>) Dollars**, together with interest on the unpaid principal balance at an annual rate of interest as hereinafter set forth.

  **1. DEFINITIONS.**  For purposes of this Note the following terms shall have the following meanings:

    **a.** *"Maturity Date"* shall mean <u>November 1</u>, 202<u>6</u>.

    **b.** *"Note"* shall mean this Promissory Note.

    **c.** *"Principal"* shall mean the principal sum of $<u>100,000.00</u> or so much as may be from time to time disbursed under this Note or any agreement related thereto.

    **d.** *"Principal Balance"* shall mean the Principal from time to time outstanding and unpaid on this Note.

  **2. INTEREST RATE.**  The Principal Balance of this Note outstanding at the close of each day shall bear interest at a definite and certain per annum rate of interest equal to <u>5.5</u>% ("Loan Rate").

  **3. BASIS OF COMPUTATION.**  Interest shall be computed and charged on the basis of a year consisting of twelve (12) thirty (30) day months and shall compound on a quarterly basis.  Interest shall commence as to the Principal Balance as such Principal Balance is advanced.

  **4. LATE CHARGE.**  In the event that any payment required hereunder is not paid when due, the Borrower agrees to pay a late charge of $.04 per $1.00 of unpaid payment to defray the costs of the Holder incident to collecting such late payment.  This late charge shall apply individually to all payments past due and there will be no daily pro rata adjustment.  This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights the Holder may have including the right to declare the entire Principal Balance and interest immediately due and payable.

  **5. TERMS OF PAYMENT.**  This Note shall be payable as follows:

    **a.** On the Maturity Date, Borrower shall pay to Lender the sum of the Principal Balance, plus accrued interest in the amount of $<u>117,806.81</u>, plus a bonus for the fulfillment of the term of this Note in the amount of $<u>10,000.00</u>, for a total payment on the Maturity Date of $<u>127,806.81</u> ("Balloon Installment").

    **b.** In the event Borrower and Lender mutually agree to renew this Note for an additional three-year term, Borrower shall pay to the Lender on the original Maturity Date the accrued interest through the original Maturity Date in the amount of $<u>17,806.81</u>.  In the event Borrower and Lender mutually agree to renew this Note for an additional three-year term, the Lender shall not receive the fulfillment bonus referenced in Paragraph 5(a) above and the initial principal balance of the Note for the subsequent three-year term shall equal the initial Principal Balance of this Note.   On the Maturity Date, Borrower shall pay to Lender the sum of the Principal Balance, plus accrued interest in the amount of

1

$ 117,806.81\_\_\_\_\_, plus a bonus for the extension and fulfillment of the extended term of this Note in the amount of $ 15,000.00_____, for a total payment on the Maturity Date of $ 132,806.81_____.

  **c.** The Principal Balance shall be payable on the earlier to occur of the following:

   (i) The Maturity Date;

   (ii) The occurrence of an Event of Default (defined below) hereunder;

   (iii) If Borrower and Lender mutually agree to extend the term of this Note pursuant to Paragraph 5(b) above, the Principal Balance as calculated in Paragraph 5(b) shall be payable three years from the Maturity Date of this Note.

at which time the entire Principal Balance and all accrued and unpaid interest thereon, and all other charges payable pursuant to the terms hereof shall in any event be fully due and payable.

  **6.** **APPLICATION OF PAYMENTS.** So long as a Default does not exist, all payments shall be applied first to any costs of collection, then to late charges, then to interest and then to Principal Balance, except that if any advance made by the Holder under the terms of any instruments securing this Note is not repaid, any monies received, at the option of the Holder, may first be applied to repay such advances, plus interest hereon, and the balance, if any, shall be applied as above.  If a Default exists, the Holder may apply any payments received to Principal, interest, late charges or other amounts due from the Borrower in such order as Holder, in its sole discretion shall determine.

  **7.** **PREPAYMENT.** The Principal Balance of this Note may be prepaid in whole or in part at any time.  Any prepayment shall be made on fifteen (15) days advance written notice to the Holder and shall be made only on an Installment Payment Date.  After a prepayment, the then outstanding principal balance and accrued interest will be reamortized over the period remaining between the date of the prepayment and the Maturity Date.  No prepayment premiums shall be assessed for any prepayments.

  **8.** **DEFAULT.** At the option of the Holder, the unpaid principal balance and all accrued but unpaid interest thereon shall become immediately due and payable, without notice or demand, upon the occurrence at any time of any of the following events (each individually an "Event of Default"):

  **a.** The failure to make any payment of principal or interest when and as the same becomes due and payable hereunder;

  **b.** The Borrower shall file a petition in bankruptcy or for reorganization or for an arrangement pursuant to any present or future state or federal bankruptcy act or under any similar federal or state law, or shall be adjudicated a bankrupt or insolvent, or shall make a general assignment for the benefit of its creditors, or shall fail to pay its debts generally as they become due, or if an order for relief under any present or future federal bankruptcy act or similar state or federal law shall be entered against the Borrower, or if a petition or answer requesting or proposing the entry of such order for relief or the adjudication of the Borrower as debtor or bankrupt or its reorganization under any present or future state of federal bankruptcy act or any similar federal or state law shall be filed in any court and such petition or answer shall not be discharged or denied within one hundred twenty (120) days after the filing thereof, or if a receiver, trustee or liquidator of the Borrower or of all or substantially all of the assets of the Borrower, shall be appointed in any proceeding brought against the Borrower and shall not be discharged within sixty (60) days of such appointment, or if the Borrower shall consent or acquiesce in such appointment, or if any property of the Borrower shall be levied upon or attached in any proceeding;

  **c.** Final judgment(s) for the payment of money shall be rendered against the Borrower and shall remain undischarged for a period of thirty (30) days during which execution shall not be effectively stayed; or

        **d.**  Any material written representation or warranty made with regard to the financial condition of the Borrower shall prove to be untrue or misleading in any material respect.

    **9.**  **COSTS OF COLLECTION.**  In the event of an Event of Default hereunder the Borrower agrees to pay all reasonable costs of collection, including but not limited to reasonable attorneys' fees and reasonable expenses incurred in connection with the protection or realization of the collateral securing this Note or incurred by the Holder hereof on account of such collection, whether or not suit is filed hereon.

    **10.**  **WAIVERS.**  Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind.  No extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note.  No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note.  If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and its partners shall not thereby be released from any liability.  If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder.  If Borrower is a limited liability company, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the limited liability company, and the term "Borrower," as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company and its members shall not thereby be released from any liability.

    **11.**  **AUTHORITY.**  Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligation of Borrower.

    **12.**  **SAVINGS CLAUSE.**  Notwithstanding anything to the contrary set forth in this instrument, if at any time until payment in full of all of the indebtedness due hereunder, the interest rate on such indebtedness exceeds the highest rate of interest permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto (the "Maximum Lawful Rate"), then in such event and so long as the Maximum Lawful Rate would be so exceeded, the interest rate shall be equal to the Maximum Lawful Rate.

    **13.**  **USE OF PROCEEDS.**  The Borrower warrants and represents that all funds advanced under this Note shall be applied and are intended solely for business purposes and not for any personal, family or household purposes. The Lender agrees and acknowledges that the Borrower will use the Principal as subordinate debt on various real estate development projects throughout the EPIC Companies real estate portfolio.

    **14.**  **ASSIGNMENT OF NOTE**.  Borrower acknowledges and agrees that Holder may assign, mortgage, endorse or otherwise transfer its interest in the Note to others ("Assignees") without any consent of Borrower, provided however that Borrower shall be notified of any assignment.

    **15.**  **GOVERNING LAW; JURISDICTION.**  The obligation evidenced by this Note was negotiated, delivered and accepted in the State of North Dakota, the laws of which state shall in all respects be controlling in the interpretation and validity of this Note and all obligations evidenced hereby.  The Borrower hereby submits itself to the jurisdiction of the State of North Dakota in respect of all actions arising out of or in connection with the interpretation or enforcement of this Note and the documents related hereto.

      **16.**    **NO ORAL CHANGE.**  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

      **17.**    **JOINT AND SEVERAL LIABILITY.**  Borrower hereby agrees that if Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several and that the Holder can enforce such obligations against either Borrower, in the Holder's sole and unlimited discretion.

      **18.**    **WAIVER OF JURY TRIAL.**  The Borrower hereby irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or relating to this Note, any of the documents executed in connection therewith or the transactions contemplated hereby or thereby.

      **19.**    **TIME OF ESSENCE.**  Time is of the essence.  No delay or omission on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right of any other remedy under this Note.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right or remedy on a future occasion.

      **20.**    **NOTICES.**  Any notice required or permitted to be given hereunder shall be in writing and shall either be delivered personally to the party to whom such notice is given, or sent to it by United States registered or certified mail, postage prepaid and return receipt requested, addressed or delivered to such party at the address or addresses contained herein, or such other address or addresses as may hereafter be designated by a party.

      **IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the day and year first above written.

**EPIC Companies Midwest 2023, LLC, Borrower**

By: *Todd Berning*
Todd Berning, President

*Beth Postemski*
Print Name: Beth Postemski_____, **Lender**

Print Name:_____, **Lender**

4

**Answer all questions.  Write "N/A" if not applicable.**

**A.**  **LENDER INFORMATION**

**1.**  **General Information for Individual Lenders**

*Note: this question is only to be completed by individual lenders only.*

| | |
|---|---|
| Full Legal Name of Lender: | Beth Postemski |
| Date of Birth *(mm/dd/yyyy)*: | 05/07/1966 |
| Country of Birth: | United States |
| Citizenship: | U.S. |
| Social Security or Taypayer Identification Number: | 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 |
| Resident Address (Number and Street): | 430 Oak Street |
| (City, State, Zip Code): | Steamboat Springs, CO 80477 |
| Business Address (Number and Street): | |
| (City, State, Zip Code): | |
| Telephone Number – Residence: | |
| Telephone Number – Business: | |
| Telephone Number – Cell Phone: | 970-846-2395 |
| Fax – Residence (if any): | |
| Fax – Business (if any): | |
| E-mail Address – Personal: | postemski@gmail.com |
| E-mail Address – Business: | |

**I prefer to have correspondence sent to (check one):**   ☒ Residence    ☐ Business

5

2. **General Information for Entity Lenders**

   *Note: this question is only to be completed by entity lenders only*

   Full Legal Name of Lender: _____

   State or Other Jurisdiction in Which Incorporated or Formed: _____

   Date of Incorporation or Formation: _____

   Principal Place of Business  (Number and Street): _____

   (City, State, Zip Code, County): _____

   IRS Taxpayer Identification Number (if any): _____

   Net assets as of the end of the most recent fiscal year are in excess of: $_____

   Principal Business: _____

   Telephone Number – General: _____

   Telephone Number – Cell Phone: _____

   Fax (if any): _____

   E-mail address: _____

   Relationship to Lender (*e.g.,* attorney, accountant): _____

   **Please indicate type of ownership:**

   ☐ Corporation
   ☐ LLC
   ☐ Limited Liability Company
   ☐ Grantor of a revocable trust (an Lender Questionnaire must also be completed on behalf of the Trust) Trust or Foundation (If a revocable trust, a Lender Questionnaire must also be completed on behalf of the grantor)
   ☐ Individual Retirement Account (IRA) - please provide the following:
   ☐ Employee Benefit Plan (as defined in ERISA)

   **Please state the name of individual(s) making the lending decision on behalf of the entity:**

   _____

   **Authorized Representative/Agent:**

   Name of Authorized Representative/Agent: _____

   Address (if different)    (Number and Street): _____

   (City, State, Zip Code, County): _____

   Telephone Number - General: _____

   Telephone Number – Cell Phone: _____

   Fax (if any): _____

   E-mail Address: _____

6

G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2023 - Blank (Exit & Renewal Bonus - Compounding Interest) - EPIC Companies Midwest 2023, LLC v4.doc

Document Ref: PVHQO-KHBUR-JRFCC-4W2OG                                                                                   Page 6 of 12

**B.   ACCREDITED LENDER**

**Part I: Accredited Lender Status**.

*All Lenders must complete*.

As one of the qualifications of being an accredited lender, the undersigned has the financial ability to bear the economic risk of the undersigned's loan and has adequate means for providing for the undersigned's current needs and possible personal and other contingencies and has the knowledge and experience in financial and business matters to evaluate the merits and risks of a loan to EPIC Companies Midwest 2023, LLC.

**Please indicate by ticking one or more of the following categories which are applicable to you:**

*Individual Lenders may only check Numbers 1, 2, 3, 4 and 19.*
*If no category is applicable, please check Number 19, "None."*

*Individual Lenders*

☐ 1. Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent for assets either held jointly or separately at the time of such Lender's purchase, exceeds $1,000,000 (excluding the value of your primary residence);

☐ 2. Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse or spousal equivalent in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

☐ 3. Any natural person who holds, in good standing, one of the following professional licenses: the General Securities Representative license (Series 7), the Private Securities Offerings Representative license (Series 82), or the Investment Adviser Representative license (Series 65) or such other qualifying professional certificate, designation or credential as set forth on SEC's website from time to time.

☐ 4. Any natural person who is a "knowledgeable employee" of the LLC, as defined in Rule 3c-5(a)(4) under the Investment Company Act of 1940 (the "***Investment Company Act***"), as amended.

*Trusts, LLCs, Companies and Other Entities:*

☐ 5. Any organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "***Code***"), corporation, Massachusetts or similar business trust, LLC, or limited liability company not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, with total assets in excess of $5,000,000;

☐ 6. Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Securities Act;

☐ 7. A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act (the "***Advisers Act***"), as amended;

☐ 8. A family office, as defined in Rule 202(a)(11)(G)-1 under the Advisers Act, that (i) has assets under management in excess of $5,000,000; (ii) is not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC and (iii) has a person directing the prospective loan who has such knowledge and experience in financial and business matters so that the family office is capable of evaluating the merits and risks of the prospective loan;

☐ 9. A family client, as defined in Rule 202(a)(11)(G)-1 under the Advisers Act, of a family office meeting the requirements defined in Number 8 above and whose prospective loan to the LLC is directed by that family office pursuant to Number 8(iii) above;

*Financial Institutions:*

☐ 10. Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (the "***Exchange Act***"), as

7

G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2023 - Blank (Exit & Renewal Bonus - Compounding Interest) - EPIC Companies Midwest 2023, LLC v4.doc

Document Ref: PVHQO-KHBUR-JRFCC-4W2OG    Page 7 of 12

amended;

☐ 11. Any insurance company as defined in Section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or Business Development Company as defined in Section 2(a)(48) of that Act;

☐ 12. An investment adviser registered pursuant to Section 203 of the Advisers Act or registered pursuant to the laws of a state;

☐ 13. An investment adviser relying on the exemption from registering with the SEC under Section 203(l) or (m) of the Advisers Act;

☐ 14. A Rural Business Investment Company as defined in Section 384A of the Consolidated Farm and Rural Development Act;

☐ 15. Any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

*Benefit Plans:*

☐ 16. Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; or any employee benefit plan within the meaning of ERISA, if the lending decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by natural persons that would themselves qualify as eligible lenders.

*Other:*

☐ 17. Any entity in which all of the equity owners are accredited lenders (or, in the case of a trust, all the income beneficiaries) are accredited lenders. If only this Number 17 has been checked, please have each equity owner (or, in the case of a trust, each income beneficiary) fill out the Lender Questionnaire. Please feel free to make copies of these pages for each equity owner (or income beneficiary);

☐ 18. An entity of a type not listed in Number 1 through 17 above, that is not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, which owns assets in excess of $5,000,000.

*Or:*

☐ 19. None.

**Part II: Accredited Lender Verification:**

To enable the EPIC Companies Midwest 2023, LLC to verify your accredited lender status, please check **one** of the following means of verification and check which of the requested documentation you will be submitting to EPIC Companies Midwest 2023, LLC:

A.    ☐ *Verification based on annual income:* Verification of accredited lender status based on annual income can be satisfied through submission of **one of** the following forms *from the past two years*.

*Please indicate by ticking which one of the following forms you intend to submit in order to verify your accredited lender status.*

☐ *Form W-2 (Wage and Tax Statement)*
☐ *Form 1099 (Report of various types of income)*
☐ *Schedule K-1 of Form 1065 (Partner's Share of Income, Deductions, Credits, etc) Form*
☐ *1040 (U.S. Individual Income Tax Return)*

8
G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2023 - Blank (Exit & Renewal Bonus - Compounding Interest) - EPIC Companies Midwest 2023, LLC v4.doc

Document Ref: PVHQO-KHBUR-JRFCC-4W2OG    Page 8 of 12

OR

B. ☐ ***Verification based on net worth:*** Verification of accredited lender status based on net worth can be satisfied through submission of the following two forms of documents: (1) statements that disclose assets *dated within the past three months*, such as bank statements, brokerage statements, other statements of securities holdings, **and** (2) a credit report from at least one of the nationwide consumer reporting agencies.

*Please indicate by ticking which of the following statements you intend to submit, in conjunction with the required written representation, in order to verify your accredited lender status.*

**Assets**

☐ *Bank statement(s), or Brokerage statement(s), or Certificates of deposit, or*
☐ *Tax assessments and appraisal reports issued by independent third parties, or*
☐ *Other statement(s) of securities holdings (please indicate):*

**Liabilities**

☐ *Consumer report (aka credit report)*

OR

C. ☐ ***Verification based on written confirmation from certain third parties:*** Verification of accredited lender status may be satisfied with written confirmation by a registered broker-dealer, a SEC-registered investment adviser, a licensed attorney, **or** a certified public accountant that such person or entity has taken reasonable steps *within the past three months* to verify that the purchaser is an accredited lender and has determined that such purchaser is, in fact, an accredited lender.

*Please indicate by ticking which of the following third parties will submit a written confirmation to verify your accredited lender status.*

☐ *Registered broker-dealer*
☐ *SEC-registered investment advisor*
☐ *Licensed attorney*
☐ *Certified public accountant*

OR

D. ☐ **Qualifying Professional Designation:** Please provide proof of holding (in good standing) one of the following professional licenses: the General Securities Representative license (Series 7), the Private Securities Offerings Representative license (Series 82), or the Investment Adviser Representative license (Series 65) or such other qualifying professional certificate, designation or credential as set forth on SEC's website from time to time. Acceptable documentation to prove good standing include, but are not limited to (i) a passing test result issued by the North American Securities Administrators Association dated within the past two (2) years, or (ii) proof of good standing via the SEC Investment Adviser Public Disclosure website (https://adviserinfo.sec.gov/). Any documentation provided may be accepted or rejected in the sole discretion of officers of EPIC Companies Midwest 2023, LLC.

C. **TAXPAYER ID NUMBER; NO BACKUP WITHHOLDING; NON-U.S. FOREIGN PERSON OR ENTITY**

If Lender is a "non-U.S. person or entity", interest income from EPIC Companies Midwest 2023, LLC may be subject to withholding and taxation under the Internal Revenue Code, as amended (the "***Code***"). Lender acknowledges that it may be required to file U.S. income tax returns.

If the Lender is a foreign corporation, foreign LLC, foreign trust or foreign estate (as those terms are defined in the Code and the regulations thereunder), please contact the officers of EPIC Companies Midwest 2023, LLC.

The Lender understands that the information contained in this item may be disclosed to the Internal Revenue Service by the LLC and that any false statement contained in this item could be punished by fine, imprisonment or both.

9
G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2023 - Blank (Exit & Renewal Bonus - Compounding Interest) - EPIC Companies Midwest 2023, LLC v4.doc

Document Ref: PVHQO-KHBUR-JRFCC-4W2OG                                                                                                 Page 9 of 12

1. Lender certifies that the taxpayer identification number being supplied herewith by Lender is Lender's correct taxpayer identification number and that Lender is not subject to backup withholding under Section 3406 of the Code and the regulations thereunder?

    ☒ Yes
    ☐ No

2. Lender certifies that Lender is a "U.S. person" or, if an entity, that Subscribing entity is not a foreign corporation, foreign LLC, foreign trust or foreign estate, as those terms are defined the Code and the regulations thereunder?

    ☒ Yes
    ☐ No

3. If Lender's non-foreign status changes or if any other information in this item changes, Lender agrees to notify the officers of EPIC Companies Midwest 2023, LLC within 30 days thereafter.

    ☒ Yes
    ☐ No

**D.  ELECTRONIC DELIVERY AUTHORIZATION**

EPIC Companies Midwest 2023, LLC acting on its behalf may make reports, statements, and other communications relating to the Borrower and/or the Lender's loan to the Borrower, including EPIC Companies Midwest 2023, LLC information, borrowing activity, annual and other updates of the Borrower's privacy policies and procedures ("**LLC Information**") available in electronic form, such as E-mail or by posting on a web site (with notification of the posting by E-mail). E-mail messages are not secure and may contain computer viruses or other defects, may not be accurately replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient. EPIC Companies Midwest 2023, LLC and EPIC Management, LLC make no warranties in relation to these matters. EPIC Companies Midwest 2023, LLC and EPIC Management, LLC reserves the right to intercept, monitor and retain e-mail messages to and from its systems as permitted by applicable law. If a Lender has any doubts about the authenticity of an email purportedly sent by EPIC Companies Midwest 2023, LLC or the EPIC Management, LLC, the Lender is required to contact the purported sender immediately.

Do you consent to receive deliveries of information from EPIC Companies Midwest 2023, LLC and EPIC Management, LLC exclusively in electronic form without separate mailing of paper copies? Your consent to electronic delivery of such information may be revoked at any time upon written notice to EPIC Companies Midwest 2023, LLC and EPIC Management, LLC.

☒ Yes
☐ No

In addition to the email address provided above, copies should be distributed to the following:

_____

**IMPORTANT DISCLOSURE INFORMATION:**

1. If for any reason you would like a paper copy of any of your documents after you have consented to electronic delivery, you may submit a request via e-mail or in writing to:

    EPIC Management, LLC
    Attn: Bill Leier
    745 31st Avenue East, Suite 105
    West Fargo, ND 58078
    Phone: 701-866-1006
    Email:  bill.leier@epiccompaniesnd.com

2. If you need to update your contact information that we have on file, please e-mail the update to us.

3. We will notify you if there are any changes to the contact information of the LLC.

**[END OF QUESTIONNAIRE]**

10

G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2023 - Blank (Exit & Renewal Bonus - Compounding Interest) - EPIC Companies Midwest 2023, LLC v4.doc

Document Ref: PVHQO-KHBUR-JRFCC-4W2OG    Page 10 of 12



745 31th Ave. E
Suite #105
West Fargo, ND 58078

# Authorized Initial Investment Form

Customer's Name: Beth Postemski

| Name of Financial Institution | 9 Digit Routing # | Account # | Account Type |
|---|---|---|---|
| Alpine Bank | 102103407 | 8911614298 | ☒ Checking<br>☐ Savings |

This authorizes **EPIC Companies Midwest 2023, LLC** to debit, electronically or by any other commercially accepted method, to my (our) account(s) indicated above. I agree that the ACH transaction authorized herein shall comply with all applicable U.S. Law. This authorization is for a one-time, initial investment as laid out in the corresponding promissory note or subscription agreement.

Please contact Britta Renner at brittarenner@epiccompaniesnd.com or 701-532-2485 with any questions.

Date funds can be pulled:   ☒ ASAP     ☐ Other Date (please specify): _____

Customer's Signature: *Beth Postemski*     Date: 2023-11-06     [Approved]



745 31st Ave. E
Suite #105
West Fargo, ND 58078

# Authorized Payment Form

## Payments

*You must attach a voided check or a direct deposit authorization form from your financial institution.*

Customer's Name:  Beth Postemski

| Name of Financial Institution | 9 Digit Routing # | Account # | Account Type |
|---|---|---|---|
| Alpine Bank | 102103407 | 8911614298 | ☑ Checking<br>☐ Savings |

This authorizes EPIC Companies Midwest 2023, LLC to send credit entries (and appropriate debit and adjustment entries), electronically or by any other commercially accepted method, to my (our) account(s) indicated above and to other accounts I (we) identify in the future (the "Account"). This authorizes the financial institution holding the Account to post all such entries. I agree that the ACH transactions authorized herein shall comply with all applicable U.S. Law. This authorization will be in effect until the Company receives a written termination notice from myself and has a reasonable opportunity to act on it.

Please contact Britta Renner at brittarenner@epiccompaniesnd.com or 701-532-2485 with any questions.

Customer's Signature:  *Beth Postemski*    Date: 2023-11-06    Approved

# Signature Certificate

Reference number: PVHQO-KHBUR-JRFCC-4W2OG

| Signer | Timestamp | Signature |
|---|---|---|
| **Beth Postemski** <br> Email: postemski@gmail.com | | |
| Sent: <br> Viewed: <br> Signed: | 06 Nov 2023 22:35:24 UTC <br> 06 Nov 2023 22:51:18 UTC <br> 06 Nov 2023 23:01:33 UTC | *Beth Postemski* |
| **Recipient Verification:** <br> ✓ Email verified | 06 Nov 2023 22:51:18 UTC | IP address: 73.34.58.202 <br> Location: Steamboat Springs, United States |
| **Todd Berning** <br> Email: todd.berning@epiccompaniesnd.com | | |
| Sent: <br> Viewed: <br> Signed: | 06 Nov 2023 22:35:24 UTC <br> 06 Nov 2023 23:09:02 UTC <br> 06 Nov 2023 23:09:27 UTC | *Todd Berning* |
| **Recipient Verification:** <br> ✓ Email verified | 06 Nov 2023 23:09:02 UTC | IP address: 69.9.255.250 <br> Location: Fargo, United States |

Document completed by all parties on:
06 Nov 2023 23:09:27 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 40,000+ companies worldwide.

