**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | Jointly Administered |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |
| EPIC Companies Midwest, LLC and EOLA Capital, LLC, | |
| Plaintiffs, | |
| v. | Adversary No. _____ |
| Pioneer Place, LLC, | |
| Defendant. | |

**COMPLAINT**

Plaintiffs, EPIC Companies Midwest, LLC and EOLA Capital, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, Pioneer Place, LLC (the "Defendant"), state and allege as follows:

**PARTIES**

1. EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2. EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3. The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around June 22, 2016. Its principal place of business is located at 4840 Amber Valey Parkway South, Fargo, North Dakota, 58104.

4. The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

**JURISDICTION AND VENUE**

5. The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

6. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

7. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8. The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

9. This Complaint is filed under Fed. R. Bankr. P. 7001.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

2

10. The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20(a)(1), as incorporated by Fed. R. Bankr. P. 7020, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I. PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

11. The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

12. EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendant, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

13. Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

14. On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

15. Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

16. Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

3

17. The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

18. With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

19. Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

20. The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

21. On information and belief, the Defendant is one of the Project Companies. It has an ownership interest in a real estate development project located at 300 Sheyenne Street, West Fargo, North Dakota 58078.

## II. TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST.

22. On October 1, 2021, Debtor EPIC Midwest and the Defendant entered into a promissory note with the following balance as of June 30, 2024:

| Lender | Date | Original Principal | Quarterly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest | 10/1/21 | $150,000 | $2,437.50 | 12/31/24 | 6.5% | .04 per $1 | $152,535 |
| | | | | | | | **$152,535** |

(the "EPIC Midwest Note").

23. Pursuant to the EPIC Midwest Note, EPIC Midwest offered to loan $150,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EPIC Midwest Note is unsecured.

4

24. Under the terms of the EPIC Midwest Note, the Defendant was required to make quarterly payments to EPIC Midwest.

25. The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the EPIC Midwest Note.

26. On October 18, 2021, and consistent with the EPIC Midwest Note, EPIC Midwest incurred a $150,000 obligation to a roofing company for the benefit of the Defendant (the "2021 Obligation"), as the Defendant previously owed that amount to such roofing company.

27. Between December 31, 2021 and March 31, 2024, the Defendant only paid EPIC Midwest $24,375 in interest.

28. After March 31, 2024, the Defendant ceased making payments to EPIC Midwest and defaulted under the EPIC Midwest Note.

29. Therefore, all amounts owed to EPIC Midwest by the Defendant became immediately due and payable.

30. As of October 31, 2024, the Defendant owes EPIC Midwest a total of at least $155,882.50, which consists of $150,000 of principal, $5,687.50 of interest, and $195.00 of late fees, with interest and fees continuing to accrue.

31. Before, during, and after the period from October 1, 2021 to October 18, 2021, EPIC Midwest had creditors, including various individual investors.

32. On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

33. Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the

5

EPIC Midwest Note with the Defendant and the 2021 Obligation for the benefit of the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

34. Based on the financial records identified above and reviewed by Lighthouse, between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the EPIC Midwest Note with the Defendant and the 2021 Obligation for the benefit the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

### III.    TRANSFERS TO THE DEFENDANT FROM EOLA.

35. On March 1, 2024, Debtor EOLA and the Defendant entered into a promissory note with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Quarterly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EOLA | 3/1/24 | $30,000 | $637.50 | 3/1/27 | 8.5% | .04 per $1 | $30,633 |
| | | | | | | | $30,633 |

(the "EOLA Note").

36. Pursuant to the EOLA Note, EOLA offered to loan $30,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EOLA Note is unsecured.

37. Under the terms of the EOLA, the Defendant was required to make quarterly payments to EOLA.

38. The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

39. On March 8, 2024, and pursuant to the EOLA Note, EOLA transferred a total of $30,000 to the Defendant:

6

| Lender | Date of Transfer | Total Amount |
|---|---|---|
| EOLA | 3/8/24 | $30,000 |
| | | $30,000 |

(the "2024 Transfer").

40. The Defendant never made any payments to EOLA pursuant to the EOLA Note thereby defaulting under the EOLA Note.

41. Therefore, all amounts owed to EOLA by the Defendant are immediately due and payable.

42. As of October 31, 2024, the Defendant owes EOLA a total of at least $32,201.50, which consists of $30,000 of principal, $2,125 of interest, and $76.50 of late fees, with interest and fees continuing to accrue.

43. Before, during, and after the period from March 1, 2024 to March 8, 2024, EOLA had creditors, including various individual investors.

44. On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

45. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

7

46. Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

## IV. PRIOR DEMAND FOR AMOUNTS OWED.

47. On August 1, 2024, the Plaintiffs caused a demand letter to be sent on their behalf to the Defendant demanding the amounts owed to the Plaintiffs under the EPIC Midwest Note and the EOLA Note.

48. As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

49. The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

50. The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendant further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Defendant)**

51. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

52. On October 1, 2021, EPIC Midwest and the Defendant entered into the EPIC Midwest Note.

8

53. Under the terms of the EPIC Midwest Note, EPIC Midwest agreed to provide the Defendant a total of $150,000; in exchange, the Defendant agreed to make regular quarterly payments to EPIC Midwest.

54. On October 18, 2021, and consistent with the EPIC Midwest Note, EPIC Midwest incurred a $150,000 obligation to a roofing company for the benefit of the Defendant, as the Defendant previously owed that amount to such roofing company.

55. On or around March 31, 2024, the Defendant ceased making payments to EPIC Midwest as required by the EPIC Midwest Note.

56. The Defendant's failure to make quarterly payments to EPIC Midwest constitutes a breach of the EPIC Midwest Note.

57. Due to the Defendant's breach of the EPIC Midwest Note, EPIC Midwest has been damaged in the amount of at least $155,882.50, plus interest and other fees and costs allowed by law and the EPIC Midwest Note.

## COUNT II
## BREACH OF CONTRACT
### (EOLA v. Defendant)

58. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

59. On March 1, 2024, EOLA and the Defendant entered into the EOLA Note.

60. Under the terms of the EOLA Note, EOLA agreed to provide the Defendant a total of $30,000; in exchange, the Defendant agreed to make regular quarterly payments to EOLA.

61. On March 8, 2024, and pursuant to the EOLA Note, EOLA transferred a total of $30,000 to the Defendant.

62. The Defendant never made any payments to EOLA as required by the EOLA Note.

9

63. The Defendant's failure to make quarterly payments to EOLA constitutes a breach of the EOLA Note.

64. Due to the Defendant's breach of the EOLA Note, EOLA has been damaged in the amount of at least $32,201.50, plus interest and other fees and costs allowed by law and the EOLA Note.

### COUNT III
### UNJUST ENRICHMENT
### (EPIC Midwest v. Defendant)

65. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

66. EPIC Midwest conferred a benefit to Defendant by providing $150,000 for use in the Defendant's real estate development project.

67. The Defendant knowingly accepted the $150,000 from EPIC Midwest.

68. As the Defendant did not make the agreed upon quarterly payments to EPIC Midwest, the Defendant is not entitled to the benefit of the value of the $150,000 from EPIC Midwest.

69. Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

70. The amount of benefit wrongfully retained by the Defendant is in the amount of at least $150,000, plus interest and other fees and costs allowed by law.

### COUNT IV
### UNJUST ENRICHMENT
### (EOLA v. Defendant)

71. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

72. EOLA conferred a benefit to Defendant by providing $30,000 for use in the Defendant's real estate development project.

73. The Defendant knowingly accepted the $30,000 from EOLA.

74. As the Defendant did not make the agreed upon quarterly payments to EOLA, the Defendant is not entitled to the benefit of the value of the $30,000 payment from EOLA.

75. Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

76. The amount of benefit wrongfully retained by the Defendant is in the amount of at least $30,000, plus interest and other fees and costs allowed by law.

## COUNT V
## ACCOUNT STATED
### (EPIC Midwest v. Defendant)

77. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

78. EPIC Midwest demanded payment of the Defendant's account with EPIC Midwest.

79. The Defendant did not substantively respond to the demand letter or dispute any amounts.

80. The Defendant did not pay the amounts due and owing to EPIC Midwest.

81. As a result, EPIC Midwest has been damaged in the amount of at least $155,882.50, plus interest and other fees and costs allowed by law.

## COUNT VI
## ACCOUNT STATED
### (EOLA v. Defendant)

82. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

11

83. EOLA demanded payment of the Defendant's account with EOLA.

84. The Defendant did not substantively respond to the demand letter or dispute any amounts.

85. The Defendant did not pay the amounts due and owing to EOLA.

86. As a result, EOLA has been damaged in the amount of at least $32,201.50, plus interest and other fees and costs allowed by law.

## COUNT VII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Defendant)

87. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

88. The Defendant promised it would make regular quarterly payments to EPIC Midwest.

89. In reasonable reliance on those promises, EPIC Midwest loaned a total of $150,000 to the Defendant and incurred the 2021 Obligation for the benefit of the Defendant.

90. EPIC Midwest was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest loaned $150,000 to the Defendant and was not repaid.

91. As a result, EPIC Midwest been damaged in the amount of at least $155,882.50, plus interest and other fees and costs allowed by law.

## COUNT VIII
## PROMISSORY ESTOPPEL
### (EOLA v. Defendant)

92. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

93. The Defendant promised it would make regular quarterly payments to EOLA.

12

94. In reasonable reliance on those promises, EOLA loaned a total of $30,000 to the Defendant.

95. EOLA was harmed by its reasonable reliance on the Defendant's promises, as EOLA loaned $30,000 to the Defendant and was not repaid.

96. As a result, EOLA been damaged in the amount of at least $32,201.50, plus interest and other fees and costs allowed by law.

### COUNT IX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Defendant)

97. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

98. EPIC Midwest entered into the EPIC Midwest Note with the Defendant and incurred the 2021 Obligation for the benefit of the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $24,375 to EPIC Midwest despite receiving $150,000 from EPIC Midwest.

99. Before, during, and after the period from October 1, 2021 and October 18, 2021, EPIC Midwest had creditors, including various individual investors.

100. Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the EPIC Midwest Note and the 2021 Obligation for the benefit of the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of

13

EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

101. The Defendant was a transferee of the EPIC Midwest Note and the 2021 Obligation.

102. Based on the foregoing, the EPIC Midwest Note and the 2021 Obligation are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

103. Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT X
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Defendant)

104. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

105. EPIC Midwest entered into the EPIC Midwest Note with the Defendant and incurred the 2021 Obligation for the benefit of the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $24,375 to EPIC Midwest despite receiving $150,000 from EPIC Midwest.

106. Before and during the period from October 1, 2021 to October 18, 2021, EPIC Midwest had creditors, including various individual investors.

14

107. Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the EPIC Midwest Note and the 2021 Obligation for the benefit of the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

108. The Defendant was a transferee of the EPIC Midwest Note and the 2021 Obligation.

109. Based on the foregoing, the EPIC Midwest Note and the 2021 Obligation are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

110. Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EOLA v. Defendant)**

111. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

112. EOLA entered into the EOLA Note with the Defendant and made the 2024 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and paid no amounts to EOLA despite receiving $30,000 from EOLA.

113. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March

15

1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

114. On information and belief, between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

115. Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was insolvent or became insolvent as a result of the EOLA Note and the 2024 Transfer.

116. The Defendant was the initial transferee of the EOLA Note and the 2024 Transfer.

117. Based on the foregoing, the EOLA Note and the 2024 Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

118. Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EOLA v. Defendant)**

119. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

16

120. EOLA entered into the EOLA Note with the Defendant and made the 2024 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and paid no amounts to EOLA despite receiving $30,000 from EOLA.

121. Before, during, and after the period from March 1, 2024 and March 8, 2024, EOLA had creditors, including various individual investors.

122. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

123. The Defendant was the first transferee of the EOLA Note and the 2024 Transfer.

124. Based on the foregoing, the EOLA Note and the 2024 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

125. Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Defendant)

126. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

127. EOLA entered into the EOLA Note with the Defendant and made the 2024 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and paid no amounts to EOLA despite receiving $30,000 from EOLA.

128. Before and during the period from March 1, 2024 to March 8, 2024, EOLA had creditors, including various individual investors.

129. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2024 and March 8, 2024, and at all relevant times between entry into the EOLA Note and the 2024 Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

130. The Defendant was the first transferee of the EOLA Note and the 2024 Transfer.

131. Based on the foregoing, the EOLA Note and the 2024 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

132. Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A. Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B. Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C. Grant such other relief that the Court deems just and equitable.

Dated: November 1, 2024  */e/ Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice*, MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## AFFIDAVIT

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated: November 1, 2024                /e/ *Patrick Finn*
                                                              Patrick Finn
                                                              Partner, Lighthouse Management Group, Inc.
                                                              Chief Restructuring Officer for the Plaintiffs