## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest, LLC, | |
| EPIC Companies Midwest 2023, LLC, | |
| EPIC Employee, LLC, | |
| EOLA Capital, LLC, and | |
| Plaintiffs, | Adversary No. _____ |
| v. | |
| Area 57 Association, Inc., | |
| Greenfield Commons, LLC, | |
| Greenfield Commons II, LLC, | |
| Greenfield Commons III, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiffs, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendants, Area 57 Association, Inc., Greenfield Commons, LLC, Greenfield Commons II, LLC, and Greenfield Commons III, LLC (collectively, the "Defendants"), state and allege as follows:

**PARTIES**

**I.    THE PLAINTIFFS.**

1.      EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.      EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.      EPIC Employee, LLC ("EPIC Employee") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 31, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

4.      EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

## II.    THE DEFENDANTS.

5.    Area 57 Association, Inc. ("Area 57") is a non-profit corporation organized and existing under the laws of the State of North Dakota and was formed on or around December 7, 2018. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

6.    Greenfield Commons, LLC ("Greenfield") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around April 11, 2018. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

7.    Greenfield Commons II, LLC ("Greenfield II") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around September 10, 2019. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

8.    Greenfield Commons III, LLC ("Greenfield III") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around November 16, 2021. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

9.    The Defendants owe funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

10.    The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

11.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

12.    Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3

13.     The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

14.     This Complaint is filed under Fed. R. Bankr. P. 7001.

15.     The Plaintiffs and the Defendants are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.     PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

16.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

17.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendants, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

18.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

19.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

20.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

21.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

22.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

23.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

24.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

25.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

26.     On information and belief, the Defendants are some of the Project Companies. The Defendants have an ownership interest in a real estate development project located on the 200 block of East Greenfield Lane North and the 5000 block of Saints Drive in Bismarck, North Dakota.

## II.    TRANSFERS TO THE DEFENDANTS FROM EPIC MIDWEST.

### A.   Area 57 Association, Inc.

27.     On January 1, 2022, Debtor EPIC Midwest and Area 57 entered into a promissory note with the following balance as of as of June 30, 2024:

| EPIC Midwest to Area 57 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 1/1/22 | $25,000 | $135.42 | 1/1/25 | 6.5% | .04 per $1 | $25,140.84 |
| | | | | | | | **$25,140.84** |

(the "Area 57 Note").

28.     Pursuant to the Area 57 Note, EPIC Midwest offered to loan $25,000 to Area 57 under certain terms and conditions and Area 57 accepted that offer. The Area 57 Note was unsecured.

29.     Under the terms of the Area 57 Note, Area 57 was required to make monthly payments to EPIC Midwest.

30.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Area 57 Note.

31.     Between January 5, 2022 and January 14, 2022, and pursuant to the Area 57 Note, EPIC Midwest transferred a total of $25,000 to Area 57:

| EPIC Midwest to Area 57 | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest | 1/5/22 | $18,360.85 |
| EPIC Midwest | 1/14/22 | $6,639.15 |
| | | **$25,000** |

(collectively, the "Area 57 Transfers").

32.     Between January 5, 2022 and May 31, 2024, Area 57 only paid EPIC Midwest $3,927.08 in interest.

33.     On or around June 30, 2024, Area 57 ceased making payments to EPIC Midwest and defaulted under the Area 57 Note.

34.     Therefore, all amounts owed to EPIC Midwest by Area 57 became immediately due and payable.

35.     As of September 30, 2024, Area 57 owes EPIC Midwest a total of at least $25,563.35, which consists of $25,000 of principal, $541.68 of interest, and $21.67 of late fees, with interest and fees continuing to accrue.

**B. Greenfield Commons, LLC.**

36.     Between January 1, 2019 and August 1, 2022, Debtor EPIC Midwest and

Greenfield entered into several promissory notes with the following balances as of June 30, 2024:

| EPIC Midwest to Greenfield | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 1/1/19 | $175,000 | $947.42 | 1/1/25 | 6.5% | .04 per $1 | $175,985.84 |
| EPIC Midwest | 2/1/19 | $40,000 | $216.67 | 1/31/24 | 6.5% | .04 per $1 | $40,225.34 |
| EPIC Midwest | 3/1/19 | $25,000 | $114.58 | 3/2/24 | 5.5% | .04 per $1 | $25,119.16 |
| EPIC Midwest | 3/5/19 | $65,000 | $297.92 | 3/1/25 | 5.5% | .04 per $1 | $65,309.84 |
| EPIC Midwest | 4/1/19 | $50,000 | $229.17 | 3/30/24 | 5.5% | .04 per $1 | $50,238.34 |
| EPIC Midwest | 4/15/19 | $50,000 | $270.83 | 6/1/25 | 6.5% | .04 per $1 | $50,281.66 |
| EPIC Midwest | 5/1/19 | $10,000 | $45.83 | 5/1/22 | 5.5% | .04 per $1 | $10,047.66 |
| EPIC Midwest | 5/1/19 | $150,000 | $750.00 | 5/1/24 | 6.0% | .04 per $1 | $150,780.00 |
| EPIC Midwest | 5/1/19 | $75,000 | $343.75 | 5/1/24 | 5.5% | .04 per $1 | $75,357.50 |
| EPIC Midwest | 5/1/19 | $50,000 | $250.00 | 5/1/24 | 6.0% | .04 per $1 | $50,260.00 |
| EPIC Midwest | 5/1/19 | $125,000 | $625.00 | 5/1/24 | 5.5% | .04 per $1 | $125,650.00 |
| EPIC Midwest | 5/1/19 | $280,000 | $1,516.67 | 5/1/25 | 6.5% | .04 per $1 | $281,577.34 |
| EPIC Midwest | 5/1/19 | $100,000 | $500.00 | 5/1/25 | 6.0% | .04 per $1 | $100,520.00 |
| EPIC Midwest | 5/1/19 | $10,000 | $45.83 | 5/1/25 | 5.5% | .04 per $1 | $10,047.66 |
| EPIC Midwest | 8/1/19 | $25,000 | $125.00 | 8/1/24 | 6.0% | .04 per $1 | $25,130.00 |
| EPIC Midwest | 10/1/19 | $25,000 | $135.42 | 10/1/24 | 6.5% | .04 per $1 | $25,140.84 |
| EPIC Midwest | 8/1/22 | $150,000 | $750.00 | 8/1/25 | 6.0% | .04 per $1 | $150,780 |
| | | | | | | | $1,412,451.18 |

(collectively, the "Greenfield Notes").

37.     Pursuant to the Greenfield Notes, EPIC Midwest offered to loan $1,405,000 to

Greenfield under certain terms and conditions and Greenfield accepted that offer. The Greenfield

Notes are unsecured.

38.     Under the terms of the Greenfield Notes, Greenfield was required to make monthly

payments to EPIC Midwest.

39.     The failure to make payments to EPIC Midwest as and when such payments were

due constitutes a default under the terms of the Greenfield Notes.

40.     Between January 7, 2019 and August 8, 2022, and pursuant to the Greenfield Notes,

EPIC Midwest transferred a total of $1,405,000 to or for the benefit of Greenfield:

| EPIC Midwest to Greenfield | | |
|---|---|---|
| Lender | Date of Transfer | Total Amount |
| EPIC Midwest | 1/7/19 | $175,000 |
| EPIC Midwest | 2/14/19 | $40,000 |
| EPIC Midwest | 3/6/19 | $65,000 |
| EPIC Midwest | 3/14/19 | $25,000 |
| EPIC Midwest | 4/12/19 | $50,000 |
| EPIC Midwest | 4/15/19 | $50,000 |
| EPIC Midwest | 5/1/19 | $280,000 |
| EPIC Midwest | 5/14/19 | $10,000 |
| EPIC Midwest | 5/22/19 | $50,000 |
| EPIC Midwest | 5/23/19 | $150,000 |
| EPIC Midwest | 5/23/19 | $100,000 |
| EPIC Midwest | 5/23/19 | $10,000 |
| EPIC Midwest | 5/23/19 | $75,000 |
| EPIC Midwest | 5/23/19 | $125,000 |
| EPIC Midwest | 9/30/19 | $25,000 |
| EPIC Midwest | 9/30/19 | $25,000 |
| EPIC Midwest | 8/8/22 | $150,000 |
| | | **$1,405,000** |

(collectively, the "Greenfield Transfers).

41.     Between January 1, 2019 and May 31, 2024, Greenfield only paid EPIC Midwest

$422,404.12 in interest.

42.     On or around May 31, 2024, Greenfield ceased making payments to EPIC Midwest

and defaulted under the Greenfield Notes.

43.     Therefore, all amounts owed to EPIC Midwest by Greenfield became immediately

due and payable.

44.     As of September 30, 2024, Greenfield owes EPIC Midwest a total of at least

$1,409,588.03, which consists of $1,405,000 of principal, $28,450.03 of interest, and $1,138.00

of late fees, with interest and fees continuing to accrue.

### C. Greenfield Commons II, LLC.

45.     Between November 1, 2020 and June 1, 2021, Debtor EPIC Midwest and Greenfield II entered into several promissory notes with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| **EPIC Midwest to Greenfield II** | | | | | | | |
| EPIC Midwest | 11/1/20 | $300,000 | $1,625.00 | 11/1/24 | 6.5% | .04 per $1 | $305,070.00 |
| EPIC Midwest | 12/1/20 | $300,000 | $875.00 | 12/1/24 | 7.0% | .04 per $1 | $152,730.00 |
| EPIC Midwest | 1/1/21 | $940,000 | $5,483.33 | 1/1/25 | 7.0% | .04 per $1 | $957,107.99 |
| EPIC Midwest | 5/1/21 | $14,500 | $78.54 | 5/31/24 | 6.5% | .04 per $1 | $14,745.04 |
| EPIC Midwest | 6/1/21 | $45,000 | $243.75 | 6/30/24 | 6.5% | .04 per $1 | $45,760.50 |
| | | | | | | | **$1,475,413.53** |

(collectively, the "Greenfield II ECM Notes").

46.     Pursuant to the Greenfield II ECM Notes, EPIC Midwest offered to loan $1,599,500 to Greenfield II under certain terms and conditions and Greenfield II accepted that offer. The Greenfield II ECM Notes are unsecured.

47.     Under the terms of the Greenfield II ECM Notes, Greenfield II was required to make monthly payments to EPIC Midwest.

48.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Greenfield II ECM Notes.

49.     Between October 8, 2019 and May 25, 2021, and pursuant to the Greenfield II ECM Notes, EPIC Midwest transferred a total of $1,599,500 to Greenfield II:

| Lender | Date of Transfer | Total Amount |
|---|---|---|
| **EPIC Midwest to Greenfield II** | | |
| EPIC Midwest | 10/8/19 | $100,000 |
| EPIC Midwest | 5/12/20 | $200,000 |
| EPIC Midwest | 12/4/20 | $300,000 |
| EPIC Midwest | 1/26/21 | $940,000 |
| EPIC Midwest | 5/17/21 | $14,500 |
| EPIC Midwest | 5/25/21 | $45,000 |
| | | **$1,599,500** |

(collectively, except for the $100,000 October 8, 2019 transfer, the "Greenfield II ECM Transfers").

50.     Between November 1, 2020 and March 31, 2024, Greenfield II only paid EPIC Midwest $150,000 in principal and $356,261.27 in interest, for a total of $506,261.27.

51.     On or around March 31, 2024, Greenfield II ceased making payments to EPIC Midwest and defaulted under the Greenfield II ECM Notes.

52.     Therefore, all amounts owed to EPIC Midwest by Greenfield II became immediately due and payable.

53.     As of September 30, 2024, Greenfield II owes EPIC Midwest a total of at least $1,501,327.07, which consists of $1,449,500 of principal, $49,833.72 of interest, and $1,993.35 of late fees, with interest and fees continuing to accrue.

**D.  Greenfield Commons III, LLC.**

54.     Between January 1, 2022 and September 30, 2022, Debtor EPIC Midwest and Greenfield III entered into some promissory notes with the following balances as of June 30, 2024:

| EPIC Midwest to Greenfield III | | | | | | |
|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
| EPIC Midwest | 1/1/22 | $225,000 | $1,218.75 | 1/1/25 | 6.5% | .04 per $1 | $227,535.00 |
| EPIC Midwest | 9/30/22 | $100,000 | $541.66 | | 6.5% | .04 per $1 | $101,126.65 |
| | | | | | | | **$328,661.65** |

(collectively, the "Greenfield III Notes," and together with the Area 57 Note, the Greenfield Notes, and the Greenfield II ECM Notes, the "EPIC Midwest Notes").

55.     Pursuant to the Greenfield III Notes, EPIC Midwest offered to loan $325,000 to Greenfield III under certain terms and conditions and Greenfield III accepted that offer. The Greenfield III Notes are unsecured.

56.     Under the terms of the Greenfield III Notes, Greenfield III was required to make monthly payments to EPIC Midwest.

57.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Greenfield III Notes.

58.     Between December 28, 2021 and February 2, 2022, and pursuant to the Greenfield III Notes, EPIC Midwest transferred a total of $325,000 either directly to Greenfield III or for the benefit of Greenfield III:

| EPIC Midwest to Greenfield III | | | |
|---|---|---|---|
| Lender | Date of Transfer | Total Amount | Other Recipient |
| EPIC Midwest | 12/28/21 | $8,254.60 | Title Company |
| EPIC Midwest | 12/29/21 | $192,066.64 | Title Company |
| EPIC Midwest | 12/29/21 | $100,000 | Title Company |
| EPIC Midwest | 1/28/22 | $18,360.85 | |
| EPIC Midwest | 2/2/22 | $6,317.91 | |
| | | **$325,000** | |

(collectively, the "Greenfield III Transfers," and together with the Area 57 Transfers, the Greenfield Transfers, and the Greenfield II ECM Transfers, the "EPIC Midwest Transfers").

59.     Of the $325,000, EPIC Midwest transferred $300,321.24 to the title company related to the real estate development project located on the 200 block of East Greenfield Lane North and the 5000 block of Saints Drive in Bismarck, North Dakota.

60.     Between December 28, 2021 and April 30, 2024, Greenfield III only paid EPIC Midwest $44,416.73 in interest.

61.     On or around April 30, 2024, Greenfield III ceased making payments to EPIC Midwest and defaulted under the Greenfield III Notes.

62.     Therefore, all amounts owed to EPIC Midwest by Greenfield III became immediately due and payable.

63.     As of September 30, 2024, Greenfield III owes EPIC Midwest a total of at least $334,154.18, which consists of $325,000 of principal, $8,802.10 of interest, and $352.08 of late fees, with interest and fees continuing to accrue.

64.     Before, during, and after the period from January 1, 2019 to September 30, 2022, EPIC Midwest had creditors, including various individual investors.

65.     On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

66.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 1, 2019 and September 30, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

67.     The financial records reviewed by Lighthouse also indicate that between January 1, 2019 and September 30, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was insolvent or became insolvent thereafter.

**III.     TRANSFERS TO GREENFIELD II FROM EPIC MIDWEST 2023.**

68.     On October 1, 2023, Debtor EPIC Midwest 2023 and Greenfield II entered into several promissory notes with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 | 10/1/23 | $25,000 | $166.67 | 10/1/26 | 8.0% | .04 per $1 | $25,520.01 |

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 | 10/1/23 | $190,000 | $1,266.67 | 10/1/26 | 8.0% | .04 per $1 | $193,952.01 |
| EPIC Midwest 2023 | 10/1/23 | $150,000 | $875.00 | 10/1/26 | 7.0% | .04 per $1 | $152,730.00 |
| | | | | | | | **$372,202.02** |

(collectively, the "<u>EPIC Midwest 2023 Notes</u>").

69.    Pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 offered to loan $365,000 to the Greenfield II under certain terms and conditions and Greenfield II accepted that offer. The EPIC Midwest 2023 Notes were unsecured.

70.    Under the terms of the EPIC Midwest 2023 Notes, Greenfield II was required to make monthly payments to EPIC Midwest 2023.

71.    The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the EPIC Midwest 2023 Notes.

72.    Between September 26, 2023 and October 6, 2023, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $365,000 to Greenfield II:

| Lender | Date of Transfer | Total Amount |
|---|---|---|
| EPIC Midwest 2023 | 9/26/23 | $25,000 |
| EPIC Midwest 2023 | 10/3/23 | $150,000 |
| EPIC Midwest 2023 | 10/6/23 | $190,000 |
| | | **$365,000** |

(collectively, the "<u>EPIC Midwest 2023 Transfers</u>").

73.    Between October 31, 2024 and April 17, 2024, Greenfield II only paid EPIC Midwest 2023 $17,350.03 in interest.

74.    On or around April 17, 2024 Greenfield II ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Notes.

75.    Therefore, all amounts owed to EPIC Midwest 2023 by Greenfield II became immediately due and payable.

13

76.     As of September 30, 2024, Greenfield II owes EPIC Midwest 2023 a total of at least $381,804.72, which consists of $365,000 of principal, $16,158.38 of interest, and $646.34 of late fees, with interest and fees continuing to accrue.

77.     Before, during, and after the period from September 26, 2023 to October 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

78.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

79.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

80.     The financial records reviewed by Lighthouse also indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## IV.     TRANSFERS TO GREENFIELD II FROM EPIC EMPLOYEE.

81.     On October 1, 2023, Debtor EPIC Employee and Greenfield II entered into a promissory note with the following balance as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Employee | 10/1/23 | $50,000 | $312.50 | 10/1/26 | 7.5% | .04 per $1 | $50,975.00 |
| | | | | | | | **$50,975** |

(the "EPIC Employee Note").

82.     Pursuant to the EPIC Employee Note, EPIC Employee offered to loan $50,000 to the Greenfield II under certain terms and conditions and Greenfield II accepted that offer. The EPIC Employee Notes was unsecured.

83.     Under the terms of the EPIC Employee Note, Greenfield II was required to make monthly payments to EPIC Employee.

84.     The failure to make payments to EPIC Employee as and when such payments were due constitutes a default under the terms of the EPIC Employee Note.

85.     On October 6, 2023, and pursuant to the EPIC Employee Note, EPIC Employee transferred a total of $50,000 to Greenfield II:

| Lender | Date of Transfer | Total Amount |
|---|---|---|
| EPIC Employee | 10/6/23 | $50,000 |
| | | **$50,000** |

(the "EPIC Employee Transfer").

86.     Between October 1, 2023 and March 31, 2024, Greenfield II only paid EPIC Employee $1,875 in interest.

87.     On or around March 31, 2024, Greenfield II ceased making payments to EPIC Employee and defaulted under the EPIC Employee Note.

88.     Therefore, all amounts owed to EPIC Employee by Greenfield II became immediately due and payable.

89.     As of September 30, 2024, Greenfield II owes EPIC Employee a total of at least $51,950, which consists of $50,000 of principal, $1,875 of interest, and $75.00 of late fees, with interest and fees continuing to accrue.

90.     Before, during, and after the period from October 1, 2023 to October 6, 2023, EPIC Employee had creditors, including various individual investors.

91.     On June 11, 2024, EPIC Employee's board of directors appointed Lighthouse as its Chief Restructuring Officer.

92.     Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

93.     The financial records reviewed by Lighthouse also indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was insolvent or became insolvent thereafter.

## V.     TRANSFERS TO GREENFIELD II FROM EOLA.

94.     On January 1, 2023, Debtor EOLA and Greenfield II entered into a promissory note with the following balance as of June 30, 2024:

16

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|--------|------|-------------------|-----------------|---------------|----------|-------------|------------------|
| EOLA | 1/1/23 | $20,000 | $125.00 | 1/1/26 | 7.5% | .04 per $1 | $20,390 |
| | | | | | | | **$20,390** |

(the "EOLA Note").

95.     Pursuant to the EOLA Note, EOLA offered to loan $20,000 to the Greenfield II under certain terms and conditions and Greenfield II accepted that offer. The EOLA Note was unsecured.

96.     Under the terms of the EOLA Note, Greenfield II was required to make monthly payments to EOLA.

97.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

98.     On December 27, 2022, and pursuant to the EOLA Note, EOLA transferred a total of $20,000 to Greenfield II:

| Lender | Date of Transfer | Total Amount |
|--------|------------------|--------------|
| EOLA | 12/27/22 | $20,000 |
| | | **$20,000** |

(the "EOLA Transfer").

99.     Between January 1, 2023 and March 31, 2024, Greenfield II only paid EOLA $1,875 in interest.

100.    On or around March 31, 2024, Greenfield II ceased making payments to EOLA and defaulted under the EOLA Note.

101.    Therefore, all amounts owed to EOLA by Greenfield II became immediately due and payable.

102.    As of September 30, 2024, Greenfield II owes EOLA a total of at least $20,780, which consists of $20,000 of principal, $750.00 of interest, and $30.00 of late fees, with interest and fees continuing to accrue.

103.    Before, during, and after the period from December 27, 2022 to January 1, 2023, EOLA had creditors, including various individual investors.

104.    On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

105.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

106.    The financial records reviewed by Lighthouse also indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was insolvent or became insolvent thereafter.

## VI.    PRIOR DEMAND FOR AMOUNTS OWED.

107.    On August 1, 2024, the Plaintiffs caused demand letters to be sent on their behalf to the Defendants demanding the amounts owed to the Plaintiffs under the various notes described above.

108.    As of the date of this Complaint, the Defendants have failed to pay the Plaintiffs.

109.     The Plaintiffs continue to be harmed by the Defendants' failure to pay the outstanding amounts owed by the Defendants to the Plaintiffs.

110.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendants further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendants and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

## COUNT I
## BREACH OF CONTRACT
### (EPIC Midwest v. Area 57)

111.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

112.     On January 1, 2022, EPIC Midwest and Area 57 entered into the Area 57 Note.

113.     Under the terms of the Area 57 Note, EPIC Midwest agreed to provide Area 57 a total of $25,000; in exchange, Area 57 agreed to make regular monthly payments to EPIC Midwest.

114.     Between January 5, 2022 and January 14, 2022, and pursuant to the Area 57 Note, EPIC Midwest transferred a total of $25,000 to Area 57.

115.     On or around June 30, 2024, Area 57 ceased making payments to EPIC Midwest as required by the Area 57 Note.

116.     Area 57's failure to make monthly payments to EPIC Midwest constitutes a breach of the Area 57 Note.

117.     Due to Area 57's breach of the Area 57 Note, EPIC Midwest has been damaged in the amount of at least $25,563.35, plus interest and other fees and costs allowed by law and the Area 57 Note.

## COUNT II
## BREACH OF CONTRACT
### (EPIC Midwest v. Greenfield)

118.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

119.    Between January 1, 2019 and August 1, 2022, EPIC Midwest and Greenfield entered into the Greenfield Notes.

120.    Under the terms of the Greenfield Notes, EPIC Midwest agreed to provide Greenfield a total of $1,405,000; in exchange, Greenfield agreed to make regular monthly payments to EPIC Midwest.

121.    Between January 7, 2019 and August 8, 2022, and pursuant to the Greenfield Notes, EPIC Midwest transferred a total of $1,405,000 to or for the benefit of Greenfield.

122.    On or around May 31, 2024, Greenfield ceased making payments to EPIC Midwest as required by the Greenfield Notes.

123.    Greenfield's failure to make monthly payments to EPIC Midwest constitutes a breach of the Greenfield Notes.

124.    Due to Greenfield's breach of the Greenfield Notes, EPIC Midwest has been damaged in the amount of at least $1,409,588.03, plus interest and other fees and costs allowed by law and the Greenfield Notes.

## COUNT III
## BREACH OF CONTRACT
### (EPIC Midwest v. Greenfield II)

125.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

126.    Between November 1, 2020 and June 1, 2021, EPIC Midwest and Greenfield II entered into the Greenfield II ECM Notes.

127.    Under the terms of the Greenfield II ECM Notes, EPIC Midwest agreed to provide Greenfield II a total of $1,599,500; in exchange, Greenfield II agreed to make regular monthly payments to EPIC Midwest.

128.    Between October 8, 2019 and May 25, 2021, and pursuant to the Greenfield II ECM Notes, EPIC Midwest transferred a total of $1,599,500 to Greenfield II.

129.    On or around March 31, 2024, Greenfield II ceased making payments to EPIC Midwest as required by the Greenfield II ECM Notes.

130.    Greenfield II's failure to make monthly payments to EPIC Midwest constitutes a breach of the Greenfield II ECM Notes.

131.    Due to Greenfield II's breach of the Greenfield II ECM Notes, EPIC Midwest has been damaged in the amount of at least $1,501,327.07, plus interest and other fees and costs allowed by law and the Greenfield II ECM Notes.

**COUNT IV**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Greenfield III)**

132.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

133.    Between January 1, 2022 and September 30, 2022, EPIC Midwest and Greenfield III entered into the Greenfield III Notes.

134.    Under the terms of the Greenfield III Notes, EPIC Midwest agreed to provide Greenfield III a total of $325,000; in exchange, Greenfield III agreed to make regular monthly payments to EPIC Midwest.

135.    Between December 28, 2021 and February 2, 2022, and pursuant to the Greenfield III Notes, EPIC Midwest transferred a total of $325,000 to or for the benefit of Greenfield III.

136.    On or around April 30, 2024, Greenfield III ceased making payments to EPIC Midwest as required by the Greenfield III Notes.

137.    Greenfield III's failure to make monthly payments to EPIC Midwest constitutes a breach of the Greenfield III Notes.

138.    Due to Greenfield III's breach of the Greenfield III Notes, EPIC Midwest has been damaged in the amount of at least $334,154.18, plus interest and other fees and costs allowed by law and the Greenfield III Notes.

**COUNT V**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Greenfield II)**

139.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

140.    On October 1, 2023, EPIC Midwest 2023 and Greenfield II entered into the EPIC Midwest 2023 Notes.

141.    Under the terms of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 agreed to provide Greenfield II a total of $365,000; in exchange, Greenfield II agreed to make regular monthly payments to EPIC Midwest 2023.

142.    Between September 26, 2023 and October 6, 2023, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $365,000 to Greenfield II.

143.    On or around April 17, 2024, Greenfield II ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Notes.

144.    Greenfield II's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Notes.

145.    Due to Greenfield II's breach of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $381,804.72, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Notes.

**COUNT VI**
**BREACH OF CONTRACT**
**(EPIC Employee v. Greenfield II)**

146.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

147.    On October 1, 2023, EPIC Employee and Greenfield II entered into the EPIC Employee Note.

148.    Under the terms of the EPIC Employee Note, EPIC Employee agreed to provide Greenfield II a total of $50,000; in exchange, Greenfield II agreed to make regular monthly payments to EPIC Employee.

149.    On October 6, 2023, and pursuant to the EPIC Employee Note, EPIC Employee transferred a total of $50,000 to Greenfield II.

150.    On or around March 31, 2024, Greenfield II ceased making payments to EPIC Employee as required by the EPIC Employee Note.

151.    Greenfield II's failure to make monthly payments to EPIC Employee constitutes a breach of the EPIC Employee Note.

152.    Due to Greenfield II's breach of the EPIC Employee Note, EPIC Employee has been damaged in the amount of at least $51,950, plus interest and other fees and costs allowed by law and the EPIC Employee Note.

23

## COUNT VII
## BREACH OF CONTRACT
### (EOLA v. Greenfield II)

153.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

154.    On January 1, 2023, EOLA and Greenfield II entered into the EOLA Note.

155.    Under the terms of the EOLA Note, EOLA agreed to provide Greenfield II a total of $20,000; in exchange, Greenfield II agreed to make regular monthly payments to EOLA.

156.    On December 27, 2022, and pursuant to the EOLA Note, EOLA transferred a total of $20,000 to Greenfield II.

157.    On or around March 31, 2024, Greenfield II ceased making payments to EOLA as required by the EOLA Note.

158.    Greenfield II's failure to make monthly payments to EOLA constitutes a breach of the EOLA Note.

159.    Due to Greenfield II's breach of the EOLA Note, EOLA has been damaged in the amount of at least $20,780, plus interest and other fees and costs allowed by law and the EOLA Note.

## COUNT VIII
## UNJUST ENRICHMENT
### (EPIC Midwest v. Area 57)

160.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

161.    EPIC Midwest conferred a benefit to Area 57 by providing $25,000 for use in the Area 57's real estate development project.

162.    Area 57 knowingly accepted the $25,000 from EPIC Midwest.

163.    As Area 57 did not make the agreed upon monthly payments to EPIC Midwest, Area 57 is not entitled to the benefit of the value of the $25,000 payment from EPIC Midwest.

164.    Under the circumstances, it would be unjust and inequitable to permit Area 57 to retain the benefit from its actions.

165.    The amount of benefit wrongfully retained by Area 57 is in the amount of at least $25,000, plus interest and other fees and costs allowed by law.

**COUNT IX**
**UNJUST ENRICHMENT**
**(EPIC Midwest v. Greenfield)**

166.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

167.    EPIC Midwest conferred a benefit to Greenfield by providing $1,405,000 for use in Greenfield's real estate development project.

168.    Greenfield knowingly accepted the $1,405,000 from EPIC Midwest.

169.    As Greenfield did not make the agreed upon monthly payments to EPIC Midwest, Greenfield is not entitled to the benefit of the value of the $1,405,000 received from EPIC Midwest.

170.    Under the circumstances, it would be unjust and inequitable to permit Greenfield to retain the benefit from its actions.

171.    The amount of benefit wrongfully retained by Greenfield is in the amount of at least $1,405,000, plus interest and other fees and costs allowed by law.

## COUNT X
## UNJUST ENRICHMENT
### (EPIC Midwest v. Greenfield II)

172.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

173.    EPIC Midwest conferred a benefit to Greenfield II by providing $1,599,500 for use in Greenfield II's real estate development project.

174.    Greenfield II knowingly accepted the $1,599,500 from EPIC Midwest.

175.    As Greenfield II did not make the agreed upon monthly payments to EPIC Midwest, Greenfield II is not entitled to the benefit of the value of the $1,599,500 payment from EPIC Midwest.

176.    Under the circumstances, it would be unjust and inequitable to permit Greenfield II to retain the benefit from its actions.

177.    The amount of benefit wrongfully retained by Greenfield II is in the amount of at least $1,449,500, plus interest and other fees and costs allowed by law.

## COUNT XI
## UNJUST ENRICHMENT
### (EPIC Midwest v. Greenfield III)

178.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

179.    EPIC Midwest conferred a benefit to Greenfield III by providing $325,000 for use in Greenfield III's real estate development project.

180.    Greenfield III knowingly accepted the $325,000 from EPIC Midwest.

181.    As Greenfield III did not make the agreed upon monthly payments to EPIC Midwest, Greenfield III is not entitled to the benefit of the value of the $325,000 received from EPIC Midwest.

182.    Under the circumstances, it would be unjust and inequitable to permit Greenfield III to retain the benefit from its actions.

183.    The amount of benefit wrongfully retained by Greenfield III is in the amount of at least $325,000, plus interest and other fees and costs allowed by law.

**COUNT XII**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Greenfield II)**

184.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

185.    EPIC Midwest 2023 conferred a benefit to Greenfield II by providing $365,000 for use in Greenfield II's real estate development project.

186.    Greenfield II knowingly accepted the $365,000 from EPIC Midwest 2023.

187.    As Greenfield II did not make the agreed upon monthly payments to EPIC Midwest 2023, Greenfield II is not entitled to the benefit of the value of the $365,000 payment from EPIC Midwest 2023.

188.    Under the circumstances, it would be unjust and inequitable to permit Greenfield II to retain the benefit from its actions.

189.    The amount of benefit wrongfully retained by Greenfield II is in the amount of at least $365,000, plus interest and other fees and costs allowed by law.

**COUNT XIII**
**UNJUST ENRICHMENT**
**(EPIC Employee v. Greenfield II)**

190.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

191.     EPIC Employee conferred a benefit to Greenfield II by providing $50,000 for use in Greenfield II's real estate development project.

192.     Greenfield II knowingly accepted the $50,000 from EPIC Employee.

193.     As Greenfield II did not make the agreed upon monthly payments to EPIC Employee, Greenfield II is not entitled to the benefit of the value of the $50,000 payment from EPIC Employee.

194.     Under the circumstances, it would be unjust and inequitable to permit Greenfield II to retain the benefit from its actions.

195.     The amount of benefit wrongfully retained by Greenfield II is in the amount of at least $50,000, plus interest and other fees and costs allowed by law.

**COUNT XIV**
**UNJUST ENRICHMENT**
**(EOLA v. Greenfield II)**

196.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

197.     EOLA conferred a benefit to Greenfield II by providing $20,000 for use in Greenfield II's real estate development project.

198.     Greenfield II knowingly accepted the $20,000 from EOLA.

199.     As Greenfield II did not make the agreed upon monthly payments to EOLA, Greenfield II is not entitled to the benefit of the value of the $20,000 payment from EOLA.

200.    Under the circumstances, it would be unjust and inequitable to permit Greenfield II to retain the benefit from its actions.

201.    The amount of benefit wrongfully retained by Greenfield II is in the amount of at least $20,000, plus interest and other fees and costs allowed by law.

### COUNT XV
### ACCOUNT STATED
### (EPIC Midwest v. Area 57)

202.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

203.    EPIC Midwest demanded payment of Area 57's account with EPIC Midwest.

204.    Area 57 did not substantively respond to the demand letter or dispute any amounts.

205.    Area 57 did not pay the amounts due and owing to EPIC Midwest.

206.    As a result, EPIC Midwest has been damaged in the amount of at least $25,563.35, plus interest and other fees and costs allowed by law.

### COUNT XVI
### ACCOUNT STATED
### (EPIC Midwest v. Greenfield)

207.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

208.    EPIC Midwest demanded payment of Greenfield's account with EPIC Midwest.

209.    Greenfield did not substantively respond to the demand letter or dispute any amounts.

210.    Greenfield did not pay the amounts due and owing to EPIC Midwest.

211.    As a result, EPIC Midwest has been damaged in the amount of at least $1,409,588.03, plus interest and other fees and costs allowed by law.

**COUNT XVII**
**ACCOUNT STATED**
**(EPIC Midwest v. Greenfield II)**

212.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

213.    EPIC Midwest demanded payment of Greenfield II's account with EPIC Midwest.

214.    Greenfield II did not substantively respond to the demand letter or dispute any amounts.

215.    Greenfield II did not pay the amounts due and owing to EPIC Midwest.

216.    As a result, EPIC Midwest has been damaged in the amount of at least $1,501,327.07, plus interest and other fees and costs allowed by law.

**COUNT XVIII**
**ACCOUNT STATED**
**(EPIC Midwest v. Greenfield III)**

217.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

218.    EPIC Midwest demanded payment of Greenfield III's account with EPIC Midwest.

219.    Greenfield III did not substantively respond to the demand letter or dispute any amounts.

220.    Greenfield III did not pay the amounts due and owing to EPIC Midwest.

221.    As a result, EPIC Midwest has been damaged in the amount of at least $334,154.18, plus interest and other fees and costs allowed by law.

**COUNT XIX**
**ACCOUNT STATED**
**(EPIC Midwest 2023 v. Greenfield II)**

222.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

223.    EPIC Midwest 2023 demanded payment of Greenfield II's account with EPIC Midwest 2023.

224.    Greenfield II did not substantively respond to the demand letter or dispute any amounts.

225.    Greenfield II did not pay the amounts due and owing to EPIC Midwest 2023.

226.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $381,804.72, plus interest and other fees and costs allowed by law.

**COUNT XX**
**ACCOUNT STATED**
**(EPIC Employee v. Greenfield II)**

227.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

228.    EPIC Employee demanded payment of Greenfield II's account with EPIC Employee.

229.    Greenfield II did not substantively respond to the demand letter or dispute any amounts.

230.    Greenfield II did not pay the amounts due and owing to EPIC Employee.

231.    As a result, EPIC Employee has been damaged in the amount of at least $51,950, plus interest and other fees and costs allowed by law.

## COUNT XXI
## ACCOUNT STATED
### (EOLA v. Greenfield II)

232.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

233.     EOLA demanded payment of Greenfield II's account with EOLA.

234.     Greenfield II did not substantively respond to the demand letter or dispute any amounts.

235.     Greenfield II did not pay the amounts due and owing to EOLA.

236.     As a result, EOLA has been damaged in the amount of at least $20,780, plus interest and other fees and costs allowed by law.

## COUNT XXII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Area 57)

237.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

238.     Area 57 promised it would make regular monthly payments to EPIC Midwest.

239.     In reasonable reliance on those promises, EPIC Midwest loaned a total of $25,000 to Area 57.

240.     EPIC Midwest was harmed by its reasonable reliance on Area 57's promises, as EPIC Midwest loaned $25,000 to Area 57 and was not repaid.

241.     As a result, EPIC Midwest has been damaged in the amount of at least $25,563.35, plus interest and other fees and costs allowed by law.

## COUNT XXIII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Greenfield)

242.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

243.    Greenfield promised it would make regular monthly payments to EPIC Midwest.

244.    In reasonable reliance on those promises, EPIC Midwest transferred a total of $1,405,000 to or for the benefit of Greenfield.

245.    EPIC Midwest was harmed by its reasonable reliance on Greenfield's promises, as EPIC Midwest transferred $1,405,000 to or for the benefit of Greenfield and was not repaid.

246.    As a result, EPIC Midwest has been damaged in the amount of at least $1,409,588.03, plus interest and other fees and costs allowed by law.

## COUNT XXIV
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Greenfield II)

247.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

248.    Greenfield II promised it would make regular monthly payments to EPIC Midwest.

249.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $1,599,500 to Greenfield II.

250.    EPIC Midwest was harmed by its reasonable reliance on Greenfield II's promises, as EPIC Midwest loaned $1,599,500 to Greenfield II and was not repaid.

251.    As a result, EPIC Midwest has been damaged in the amount of at least $1,501,327.07, plus interest and other fees and costs allowed by law.

## COUNT XXV
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Greenfield III)

252.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

253.    Greenfield III promised it would make regular monthly payments to EPIC Midwest.

254.    In reasonable reliance on those promises, EPIC Midwest transferred a total of $325,000 to or for the benefit of Greenfield III.

255.    EPIC Midwest was harmed by its reasonable reliance on Greenfield III's promises, as EPIC Midwest transferred $325,000 to or for the benefit of Greenfield III and was not repaid.

256.    As a result, EPIC Midwest has been damaged in the amount of at least $334,154.18, plus interest and other fees and costs allowed by law.

## COUNT XXVI
## PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Greenfield II)

257.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

258.    Greenfield II promised it would make regular monthly payments to EPIC Midwest 2023.

259.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $365,000 to Greenfield II.

260.    EPIC Midwest 2023 was harmed by its reasonable reliance on Greenfield II's promises, as EPIC Midwest 2023 loaned $365,000 to Greenfield II and was not repaid.

261.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $381,804.72, plus interest and other fees and costs allowed by law.

**COUNT XXVII**
**PROMISSORY ESTOPPEL**
**(EPIC Employee v. Greenfield II)**

262.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

263.   Greenfield II promised it would make regular monthly payments to EPIC Employee.

264.   In reasonable reliance on those promises, EPIC Employee loaned a total of $50,000 to Greenfield II.

265.   EPIC Employee was harmed by its reasonable reliance on Greenfield II's promises, as EPIC Employee loaned $50,000 to Greenfield II and was not repaid.

266.   As a result, EPIC Employee has been damaged in the amount of at least $51,950, plus interest and other fees and costs allowed by law.

**COUNT XXVIII**
**PROMISSORY ESTOPPEL**
**(EOLA v. Greenfield II)**

267.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

268.   Greenfield II promised it would make regular monthly payments to EOLA.

269.   In reasonable reliance on those promises, EOLA loaned a total of $20,000 to Greenfield II.

270.   EOLA was harmed by its reasonable reliance on Greenfield II's promises, as EOLA loaned $20,000 to Greenfield II and was not repaid.

271.   As a result, EOLA has been damaged in the amount of at least $20,780, plus interest and other fees and costs allowed by law.

## COUNT XXIX
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Area 57)**

272.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

273.    EPIC Midwest entered into the Area 57 Note with Area 57 and made the Area 57 Transfers to Area 57 and received less than reasonably equivalent value in exchange. Area 57 did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $3,927.08 to EPIC Midwest despite receiving $25,000 from EPIC Midwest.

274.    Before, during, and after the period from January 1, 2022 to January 14, 2022, EPIC Midwest had creditors, including various individual investors.

275.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 1, 2022 and January 14, 2022, and at all relevant times between entry into the Area 57 Note and the Area 57 Transfers to Area 57, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

276.    Area 57 was the first or subsequent transferee of the Area 57 Note and the Area 57 Transfers.

277. Based on the foregoing, the Area 57 Note and the Area 57 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

278. Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Area 57 in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXX
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Area 57)

279. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

280. EPIC Midwest entered into the Area 57 Note with Area 57 and made the Area 57 Transfers to Area 57 and received less than reasonably equivalent value in exchange. Area 57 did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $3,927.08 to EPIC Midwest despite receiving $25,000 from EPIC Midwest.

281. Before and during the period from January 1, 2022 to January 14, 2022, EPIC Midwest had creditors, including various individual investors.

282. Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 1, 2022 and January 14, 2022, and at all relevant times between entry into the Area 57 Note and the Area 57 Transfers to Area 57, EPIC Midwest was insolvent or became insolvent thereafter.

283.     Area 57 was the first or subsequent transferee of the Area 57 Note and the Area 57 Transfers.

284.     Based on the foregoing, the Area 57 Note and the Area 57 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

285.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Area 57 in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Greenfield)**

286.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

287.     EPIC Midwest entered into the $150,000 August 1, 2022 note with Greenfield and made the $150,000 August 8, 2022 transfer to Greenfield and received less than reasonably equivalent value in exchange. Greenfield did not provide EPIC Midwest with a security interest in any collateral and did not provide equivalent payments to EPIC Midwest despite receiving $150,000 from EPIC Midwest.

288.     Before, during, and after the period from August 1, 2022 to August 8, 2022, EPIC Midwest had creditors, including various individual investors.

289.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between August 1, 2022 and August 8, 2022, and at all relevant times between entry into the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

290.    Greenfield was the first transferee of the $150,000 August 1, 2022 note and the $150,000 August 8, 2022 transfer.

291.    Based on the foregoing, the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

292.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Greenfield)**

293.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

294.    EPIC Midwest entered into the $150,000 August 1, 2022 note with Greenfield and made the $150,000 August 8, 2022 transfer to Greenfield and received less than reasonably

equivalent value in exchange. Greenfield did not provide EPIC Midwest with a security interest in any collateral and did not provide equivalent payments to EPIC Midwest despite receiving $150,000 from EPIC Midwest.

295.    Before and during the period from August 1, 2022 to August 8, 2022, EPIC Midwest had creditors, including various individual investors.

296.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2022 and August 8, 2022, and at all relevant times between entry into the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, EPIC Midwest was insolvent or became insolvent thereafter.

297.    Greenfield was the first transferee of the $150,000 August 1, 2022 note and the $150,000 August 8, 2022 transfer.

298.    Based on the foregoing, the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

299.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest v. Greenfield)**

300.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

301.    EPIC Midwest entered into the $150,000 August 1, 2022 note with Greenfield and made the $150,000 August 8, 2022 transfer to Greenfield and received less than reasonably equivalent value in exchange. Greenfield did not provide EPIC Midwest with a security interest in any collateral and did not provide equivalent payments to EPIC Midwest despite receiving $150,000 from EPIC Midwest.

302.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2022 and August 8, 2022, and at all relevant times between entry into the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

303.    On information and belief, between August 1, 2022 and August 8, 2022, and at all relevant times between entry into the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

304.    The financial records reviewed by Lighthouse also indicate that between August 1, 2022 and August 8, 2022, and at all relevant times between entry into the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, EPIC Midwest was

insolvent or became insolvent as a result of the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield.

305.    Greenfield was the initial transferee of the $150,000 August 1, 2022 note and the $150,000 August 8, 2022 transfer.

306.    Based on the foregoing, the $150,000 August 1, 2022 note with Greenfield and the $150,000 August 8, 2022 transfer to Greenfield, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

307.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXIV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Greenfield II)

308.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

309.    EPIC Midwest entered into the Greenfield II ECM Notes with Greenfield II and made the Greenfield II ECM Transfers to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $506,261.27 to EPIC Midwest despite receiving $1,599,500 from EPIC Midwest.

310.    Before, during, and after the period from May 12, 2020 to June 1, 2021, EPIC Midwest had creditors, including various individual investors.

311.   Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between May 12, 2020 and June 1, 2021, and at all relevant times between entry into Greenfield II ECM Notes and the Greenfield II ECM Transfers to Greenfield II, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

312.   Greenfield II was the first transferee of the Greenfield II ECM Notes and the Greenfield II ECM Transfers.

313.   Based on the foregoing, the Greenfield II ECM Notes and the Greenfield II ECM Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

314.   Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Greenfield II)**

315.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

316.    EPIC Midwest entered into the Greenfield II ECM Notes with Greenfield II and made the Greenfield II ECM Transfers to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $506,261.27 to EPIC Midwest despite receiving $1,599,500 from EPIC Midwest.

317.    Before and during the period from May 12, 2020 to June 1, 2021, EPIC Midwest had creditors, including various individual investors.

318.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between May 12, 2020 and June 1, 2021, and at all relevant times between entry into the Greenfield II ECM Notes and the Greenfield II ECM Transfers to Greenfield II, EPIC Midwest was insolvent or became insolvent thereafter.

319.    Greenfield II was the first transferee of the Greenfield II ECM Notes and the Greenfield II ECM Transfers.

320.    Based on the foregoing, the Greenfield II ECM Notes and the Greenfield II ECM Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

321.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Greenfield III)**

322.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

323.    EPIC Midwest entered into the Greenfield III Notes with Greenfield III and made the Greenfield III Transfers to or for the benefit of Greenfield III and received less than reasonably equivalent value in exchange. Greenfield III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $44,416.73 to EPIC Midwest despite receiving $325,000 or the benefit thereof from EPIC Midwest.

324.    Before, during, and after the period from December 28, 2021 to September 30, 2022, EPIC Midwest had creditors, including various individual investors.

325.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 28, 2021 and September 30, 2022, and at all relevant times between entry into Greenfield III Notes and the Greenfield III Transfers to or for the benefit of Greenfield III, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

326.    Greenfield III was either the first transferee of the Greenfield III Notes and the Greenfield III Transfers or the beneficiary thereof.

327.    Based on the foregoing, the Greenfield III Notes and the Greenfield III Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

328.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Greenfield III)**

329.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

330.    EPIC Midwest entered into the Greenfield III Notes with Greenfield III and made the Greenfield III Transfers to or for the benefit of Greenfield III and received less than reasonably equivalent value in exchange. Greenfield III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $44,416.73 to EPIC Midwest despite receiving $325,000 from EPIC Midwest.

331.    Before and during the period from December 28, 2021 to September 30, 2022, EPIC Midwest had creditors, including various individual investors.

332.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 28, 2021 and September 30, 2022, and at all relevant times between entry into

the Greenfield III Notes and the Greenfield III Transfers to or for the benefit of Greenfield III, EPIC Midwest was insolvent or became insolvent thereafter.

333. Greenfield III was either the first transferee of the Greenfield III Notes and the Greenfield III Transfers or the beneficiary thereof.

334. Based on the foregoing, the Greenfield III Notes and the Greenfield III Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

335. Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Greenfield III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXXVIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest v. Greenfield III)

336. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

337. EPIC Midwest entered into the $100,000 September 30, 2022 note with Greenfield III and received less than reasonably equivalent value in exchange. Greenfield III did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $44,416.73 to EPIC Midwest despite receiving $100,000 from EPIC Midwest.

338. Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that on September 30, 2022, and at all relevant times around entry into the $100,000 September 30, 2022

note with Greenfield III, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

339. On information and belief, on September 30, 2022, and at all relevant times around entry into the $100,000 September 30, 2022 note with Greenfield III, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

340. The financial records reviewed by Lighthouse also indicate that on September 30, 2022, and at all relevant times around entry into the $100,000 September 30, 2022 note with Greenfield III, EPIC Midwest was insolvent or became insolvent as a result of the $100,000 September 30, 2022 note with Greenfield III.

341. Greenfield III was the initial transferee of the $100,000 September 30, 2022 note.

342. Based on the foregoing, the $100,000 September 30, 2022 note with Greenfield III, entry into which occurred within two years before the Petition Date, is avoidable, and should be avoided, as a fraudulent transfer or obligation pursuant to 11 U.S.C. § 548(a)(1)(B).

343. Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfer or obligation from Greenfield III in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXXIX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Greenfield II)

344. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

345. EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with Greenfield II and made the EPIC Midwest 2023 Transfers to Greenfield II and received less than reasonably

equivalent value in exchange. Greenfield II did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $17,350.03 to EPIC Midwest 2023 despite receiving $365,000 from EPIC Midwest 2023.

346.    Before, during, and after the period from September 26, 2023 to October 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

347.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

348.    Greenfield II was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

349.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

350.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XL
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Greenfield II)

351.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

352.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with Greenfield II and made the EPIC Midwest 2023 Transfers to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $17,350.03 to EPIC Midwest 2023 despite receiving $365,000 from EPIC Midwest 2023.

353.    Before and during the period from September 26, 2023 to October 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

354.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

355.    Greenfield II was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

356.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

357.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XLI
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Greenfield II)

358.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

359.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $17,350.03 to EPIC Midwest 2023 despite receiving $365,000 from EPIC Midwest 2023.

360.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

361.    On information and belief, between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

362.    The financial records reviewed by Lighthouse also indicate that between September 26, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II.

363.    Greenfield II was the initial transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

364.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to Greenfield II, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

365.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XLII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Employee v. Greenfield II)**

366.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

367.    EPIC Employee entered into the EPIC Employee Note with Greenfield II and made the EPIC Employee Transfer to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Employee with a security interest in any collateral

and eventually only paid $1,875 to EPIC Employee despite receiving $50,000 from EPIC Employee.

368.     Before, during, and after the period from October 1, 2023 to October 6, 2023, EPIC Employee had creditors, including various individual investors.

369.     Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

370.     Greenfield II was the first transferee of the EPIC Employee Note and the EPIC Employee Transfer.

371.     Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

372.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XLIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Employee v. Greenfield II)**

373.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

374.     EPIC Employee entered into the EPIC Employee Note with Greenfield II and made the EPIC Employee Transfer to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Employee with a security interest in any collateral and eventually only paid $1,875 to EPIC Employee despite receiving $50,000 from EPIC Employee.

375.     Before and during the period from October 1, 2023 to October 6, 2023, EPIC Employee had creditors, including various individual investors.

376.     Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was insolvent or became insolvent thereafter.

377.     Greenfield II was the first transferee of the EPIC Employee Note and the EPIC Employee Transfer.

378.     Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

379.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XLIV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Employee v. Greenfield II)

380.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

381.     EPIC Employee entered into the EPIC Employee Note with Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EPIC Employee with a security interest in any collateral and eventually only paid $1,875 to EPIC Employee despite receiving $50,000 from EPIC Employee.

382.     Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small.

383.     On information and belief, between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

384. The financial records reviewed by Lighthouse also indicate that between October 1, 2023 and October 6, 2023, and at all relevant times between entry into the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, EPIC Employee was insolvent or became insolvent as a result of the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II.

385. Greenfield II was the initial transferee of the EPIC Employee Note and the EPIC Employee Transfer.

386. Based on the foregoing, the EPIC Employee Note and the EPIC Employee Transfer to Greenfield II, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

387. Pursuant to 11 U.S.C. § 550(a), EPIC Employee may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XLV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Greenfield II)

388. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

389. EOLA entered into the EOLA Note with Greenfield II and made the EOLA Transfer to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EOLA with a security interest in any collateral and eventually only paid $1,875 to EOLA despite receiving $20,000 from EOLA.

390.    Before, during, and after the period from December 27, 2022 to January 1, 2023, EOLA had creditors, including various individual investors.

391.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

392.    Greenfield II was the first transferee of the EOLA Note and the EOLA Transfer.

393.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

394.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XLVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EOLA v. Greenfield II)**

395.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

396.    EOLA entered into the EOLA Note with Greenfield II and made the EOLA Transfer to Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EOLA with a security interest in any collateral and eventually only paid $1,875 to EOLA despite receiving $20,000 from EOLA.

397.    Before and during the period from December 27, 2022 and January 1, 2023, EOLA had creditors, including various individual investors.

398.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was insolvent or became insolvent thereafter.

399.    Greenfield II was the first transferee of the EOLA Note and the EOLA Transfer.

400.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

401.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XLVII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EOLA v. Greenfield II)

402.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

403.    EOLA entered into the EOLA Note with Greenfield II and received less than reasonably equivalent value in exchange. Greenfield II did not provide EOLA with a security interest in any collateral and eventually only paid $1,875 to EOLA despite receiving $20,000 from EOLA.

404.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

405.    On information and belief, between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

406.    The financial records reviewed by Lighthouse also indicate that between December 27, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Greenfield II, EOLA was insolvent or became insolvent as a result of the EOLA Note and the EOLA Transfer to Greenfield II.

407.    Greenfield II was the initial transferee of the EOLA Note and the EOLA Transfer.

408.    Based on the foregoing, the EOLA Note and the EOLA Transfer to Greenfield II, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

409.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from Greenfield II in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.    Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.    Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the relevant notes;

C.    Grant such other relief that the Court deems just and equitable.

Dated:  November 1, 2024

*/e/ Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice*, MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  November 1, 2024

/e/  PATRICK FINN

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs