## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| | |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| | |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest, LLC, | |
| EPIC Companies Midwest 2023, LLC, | |
| EOLA Capital, LLC, and | |
| EC West Fargo, LLC, | |
| | |
| Plaintiffs, | Adversary No. _____ |
| | |
| v. | |
| | |
| EPIC Gateway LLC, | |
| EPIC Gateway North Real Estate Holdings, LLC, and | |
| Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC, | |
| | |
| Defendants. | |

## COMPLAINT

Plaintiffs, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendants, EPIC Gateway LLC, EPIC Gateway North Real Estate Holdings, LLC, and Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC (the "Defendants"), state and allege as follows:

## PARTIES

1.     EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around November 19, 208. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.     EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.     EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

4.     EC West Fargo, LLC ("ECW") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around May 15, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

5.     EPIC Gateway LLC ("Gateway") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around September 23,

---

[1] As of October 10, 202hy4, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

2019. Its principal place of business is located at 24 Bluejay Lane, Pelham, New Hampshire, 03076.[2]

6.      EPIC Gateway North Real Estate Holdings, LLC, LLC ("Gateway North REH") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around December 17, 2019. Its principal place of business is located at 4402 2nd Avenue South, Suite 12, Fargo, North Dakota 58103.[3]

7.      Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC ("Gateway East REH") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around December 17, 2019. Its principal place of business is located at 4840 Amber Valley Parkway South, Fargo, North Dakota 58104.[4]

8.      The Defendants owe funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

9.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

10.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

---

[2] Up until November 8, 2024, Gateway's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

[3] Up until July 15, 2024, Gateway North REH's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

[4] Up until July 1, 2024, Gateway East REH's principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

11.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12.     The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

13.     This Complaint is filed under Fed. R. Bankr. P. 7001.

14.     The Plaintiffs and the Defendants are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.    PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

15.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

16.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendants, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

17.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

18.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

19.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

20.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

21.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be subordinate to any bank debt but superior to the equity holders in each of the Project Companies.

22.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

23.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.  The loans by the Plaintiffs are unsecured, as that term is generally understood under applicable law.

24.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

25.     On information and belief, the Defendants are certain of the Project Companies. They have an interest in real estate developments located in Fargo, North Dakota.

**II.      TRANSFERS TO DEFENDANTS FROM EPIC MIDWEST.**

**A.  EPIC Gateway North Real Estate Holdings, LLC.**

26.     On January 1, 2020, Debtor EPIC Midwest and Gateway North REH entered into a promissory note with the following balance as of January 31, 2025:

| EPIC Midwest to Gateway North REH | | | | | | | |
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest | 1/1/20 | $150,000 | $0.00 | $43,062.50 | $6,500 | $6,260 | $162,760 |
| | | | | | | | **$162,760** |

(the "<u>Gateway North REH Note</u>").

27.     The Gateway North REH Note matured on January 1, 2023. Interest accrues at a rate of 6.5% and the standard late fee is $0.04 per $1.00.

28.     Pursuant to the Gateway North REH Note, EPIC Midwest offered to loan $150,000 to Gateway North REH under certain terms and conditions and Gateway North REH accepted that offer. The Gateway North REH Note is unsecured.

29.     On January 24, 2020, and pursuant to the Gateway North REH Note, EPIC Midwest transferred a total of $150,000 to Gateway North REH (the "<u>Gateway North REH Transfer</u>").

30.     Under the terms of the Gateway North REH Note, Gateway North REH was required to make monthly payments to EPIC Midwest in the form of interest with a balloon payment at maturity.

31.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Gateway North REH Note.

32.     Between January 31, 2020, and May 31, 2024, Gateway North REH paid EPIC Midwest a total of $43,062.50 in interest, which continues to accrue thereon.

33.     After May 31, 2024, Gateway North REH ceased making payments to EPIC Midwest and defaulted under the Gateway North REH Note.

34.     Therefore, all amounts owed to EPIC Midwest by Gateway North REH became immediately due and payable.

35.     As of January 31, 2025, Gateway North REH owes EPIC Midwest a total of at least $162,760, which consists of $150,000 of principal, $6,500 of interest, and $6,260 of late fees, with interest and fees continuing to accrue.

**B. Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC, LLC.**

36.     On October 1, 2021, Debtor EPIC Midwest and Gateway East REH entered into a promissory note with the following balance as of January 31, 2025:

| EPIC Midwest to Gateway East REH | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| EPIC Midwest | 10/1/21 | $200,000 | $128,000 | $17,966.67 | $3,780 | $3,031.20 | $78,811.20 |
| | | | | | | | **$78,811.20** |

(the "Gateway East REH ECM Note," and together with the Gateway North REH Note, the "EPIC Midwest Note").

37.     The Gateway East REH ECM Note matured on August 31, 2024. Interest accrues at a rate of 7.0% and the standard late fee is $0.04 per $1.00.

38.     Pursuant to the Gateway East REH ECM Note, EPIC Midwest offered to loan $200,000 to Gateway East REH under certain terms and conditions and Gateway East REH accepted that offer. The Gateway East REH ECM Note is unsecured.

39.     On August 27, 2021, and pursuant to the Gateway East REH ECM Note, EPIC Midwest transferred a total of $200,000 to Gateway East REH (the "Gateway East REH ECM Transfer," and together with the Gateway North REH Transfer, the "EPIC Midwest Transfers").

40.     Under the terms of the Gateway East REH ECM Note, Gateway East REH was required to make monthly payments to EPIC Midwest in the form of interest with a balloon payment at maturity.

41.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the Gateway East REH ECM Note.

42.     Between October 31, 2021, and April 30, 2024, Gateway East REH paid EPIC Midwest $128,000 in principal and $17,966.67 in interest, for a total of $145,966.67.

43.     After April 30, 2024, Gateway East REH ceased making payments to EPIC Midwest and defaulted under the Gateway East REH ECM Note.

44.     Therefore, all amounts owed to EPIC Midwest by Gateway East REH became immediately due and payable.

45.     As of January 31, 2025, Gateway East REH owes EPIC Midwest a total of at least $78,811.20, which consists of $72,000 of principal, $3,780 of interest, and $3,031.20 of late fees, with interest and fees continuing to accrue.

46.     Before, during, and after the period of January 1, 2020, to October 1, 2021, EPIC Midwest had creditors, including various individual investors.

47.     On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

48.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 1, 2020 and October 1, 2021, and at all relevant times between entry into the EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

49.     Based on the financial records identified above and reviewed by Lighthouse, between January 1, 2020, and October 1, 2021, and at all relevant times between entry into the

8

EPIC Midwest Notes and the EPIC Midwest Transfers, EPIC Midwest was insolvent or became

insolvent thereafter.

## III. TRANSFERS TO DEFENDANTS FROM EPIC MIDWEST 2023.

### A. Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC, LLC.

50.     Between September 1, 2023, and December 1, 2023, Debtor EPIC Midwest 2023

and Gateway East REH entered into some promissory notes with the following balances as of

January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|--------|------|-------------------|----------------|---------------|-------------------|-----------|------------------|
| \$colspan EPIC Midwest 2023 to Gateway East REH | | | | | | | |
| EPIC Midwest 2023 | 9/1/23 | \$115,000 | \$0.00 | \$4,983.36 | \$5,606.28 | \$4,824.25 | \$125,430.53 |
| EPIC Midwest 2023 | 12/1/23 | \$50,000 | \$0.00 | \$1,666.65 | \$2,999.97 | \$2,120 | \$55,119.97 |
| | | | | | | | \$180,550.50 |

(the "Gateway East REH E23 Notes").

51.     The Gateway East REH E23 Notes mature on September 1, 2026, and December

1, 2026, respectively. Interest accrues at a rate of 6.5% and 8.0%, respectively, and the standard

late fee is \$0.04 per \$1.00.

52.     Pursuant to the Gateway East REH E23 Notes, EPIC Midwest 2023 offered to loan

a total of \$165,000 to Gateway East REH under certain terms and conditions and Gateway East

REH accepted those offers. The Gateway East REH E23 Notes are unsecured.

53.     Between September 29, 2023, and December 6, 2023, and pursuant to the Gateway

East REH E23 Notes, EPIC Midwest 2023 transferred a total of \$165,000 to Gateway East REH

(the "Gateway East REH E23 Transfers").

54.     Under the terms of the Gateway East REH E23 Notes, Gateway East REH was required to make monthly payments to EPIC Midwest 2023 in the form of interest, with balloon payments at maturity.

55.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Gateway East REH E23 Notes.

56.     Between September 30, 2023 and April 30, 2024, Gateway East REH paid EPIC Midwest 2023 a total of $6,650.01 in interest.

57.     After April 30, 2024, Gateway East REH ceased making payments to EPIC Midwest 2023 and defaulted under the Gateway East REH E23 Notes.

58.     Therefore, all amounts owed to EPIC Midwest 2023 by Gateway East REH became immediately due and payable.

59.     As of January 31, 2025, Gateway East REH owes EPIC Midwest 2023 a total of at least $180,550.50, which consists of $165,000 of principal, $8,606.25 of interest, and $6,944.25 of late fees, with interest and fees continuing to accrue.

**B.  EPIC Gateway LLC.**

60.     Between December 1, 2022, and August 1, 2023, Debtor EPIC Midwest 2023 and Gateway entered into some promissory notes with the following balances as of January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| | | | EPIC Midwest 2023 to Gateway | | | | |
| EPIC Midwest 2023 | 12/1/22 | $150,000 | $25,000 | $14,843.75 | $5,468.75 | $5,218.75 | $135,687.50 |
| EPIC Midwest 2023 | 8/1/23 | $300,000 | $0.00 | $22,000 | $14,000 | $12,560 | $326,560 |
| | | | | | | | **$462,247.50** |

(the "Gateway Notes," and together with the Gateway East REH E23 Notes, the "EPIC Midwest 2023 Notes").

61.    The Gateway Notes mature on December 1, 2025 and August 1, 2026, respectively. Interest accrues at a rate of 7.5% and 8.0%, respectively, and the standard late fee is $0.04 per $1.00.

62.    Pursuant to the Gateway Notes, EPIC Midwest 2023 offered to loan a total of $450,000 to Gateway under certain terms and conditions and Gateway accepted those offers. The Gateway Notes are unsecured.

63.    Between December 14, 2022, and August 9, 2023, and pursuant to the Gateway Notes, EPIC Midwest 2023 transferred a total of $450,000 to Gateway (the "Gateway Transfers," and together with the Gateway East REH E23 Transfers, the "EPIC Midwest 2023 Transfers").

64.    Under the terms of the Gateway Notes, Gateway was required to make monthly payments to EPIC Midwest 2023 in the form of interest, with balloon payments at maturity.

65.    The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Gateway Notes.

66.    Between December 31, 2022, and June 30, 2024, Gateway paid EPIC Midwest 2023 $25,000 in principal and $36,843.75 in interest for a total of $61,843.75.

67.    After June 30, 2024, Gateway ceased making payments to EPIC Midwest 2023 and defaulted under the Gateway Notes.

68.    Therefore, all amounts owed to EPIC Midwest 2023 by Gateway became immediately due and payable.

69.    As of January 31, 2025, Gateway owes EPIC Midwest 2023 a total of at least $462,247.50, which consists of $425,000 of principal, $19,468.75 of interest, and $17,778.75 of late fees, with interest and fees continuing to accrue.

70.     Before, during, and after the period of December 1, 2022, to December 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

71.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

72.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 1, 2022 and December 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

73.     Based on the financial records identified above and reviewed by Lighthouse, between December 1, 2022, and December 6, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## IV.    TRANSFERS TO GATEWAY EAST REH FROM EOLA.

74.     On April 1, 2024, Debtor EOLA and Gateway East REH entered into a promissory note with the following balance as of January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|--------|------|--------------------|-----------------|----------------|--------------------|-----------|-------------------|
| EOLA | 4/1/24 | $100,000 | $0.00 | $708.33 | $6,374.97 | $4,255 | $110,629.97 |
| | | | | | | | **$110,629.97** |

(the "EOLA Note").

75.     The EOLA Note matures on April 1, 2027. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

76.     Pursuant to the EOLA Note, EOLA offered to loan $100,000 to Gateway East REH under certain terms and conditions and Gateway East REH accepted that offer. The EOLA Note is unsecured.

77.     On April 4, 2024, and pursuant to the EOLA Note, EOLA transferred a total of $100,000 to Gateway East REH (the "EOLA Transfer").

78.     Under the terms of the EOLA Note, Gateway East REH was required to make monthly payments to EOLA in the form of interest, with a balloon payment at maturity.

79.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

80.     As of April 30, 2024, Gateway East REH only paid EOLA a total of $708.33 in interest.

81.     After April 30, 2024, Gateway East REH ceased making payments to EOLA and defaulted under the EOLA Note.

82.     Therefore, all amounts owed to EOLA by Gateway East REH became immediately due and payable.

83.     As of January 31, 2025, Gateway East REH owes EOLA a total of at least $110,629.97, which consists of $100,000 of principal, $6,374.97 of interest, and $4,255 of late fees, with interest and fees continuing to accrue.

84.     Before, during, and after the period of April 1, 2024, to April 4, 2024, EOLA had creditors, including various individual investors.

85.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

86.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

87.     Based on the financial records identified above and reviewed by Lighthouse, between April 1, 2024, and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA was insolvent or became insolvent thereafter.

## V.    TRANSFERS TO GATEWAY EAST REH FROM ECW.

88.     On October 1, 2021, Debtor ECW and Gateway East REH entered into a promissory note[5] with the following balance as of January 31, 2025:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| ECW | 10/1/21 | $580,000 | $390,000 | $67,518.82 | $9,262.53 | $7,970.50 | $207,233.03 |
| | | | | | | | **$207,233.03** |

(the "ECW Note," and together with the Gateway North REH Note, the Gateway East REH ECM Note, the Gateway East REH E23 Notes, the Gateway Notes, and the EOLA Note, the "Notes").

---

[5] The ECW Note contains a typographical error and mistakenly refers to Beacon NW Real Estate Holdings, LLC instead of Gateway East REH.

89.     The ECW Note matured on October 1, 2024. Interest accrues at a rate of 6.5% and the standard late fee is $0.04 per $1.00.

90.     Pursuant to the ECW Note, ECW offered to loan $580,000 to Gateway East REH under certain terms and conditions and Gateway East REH accepted that offer. The ECW Note is unsecured.

91.     On October 18, 2021, and pursuant to the ECW Note, ECW transferred a total of $580,000 to Gateway East REH (the "ECW Transfer").

92.     Under the terms of the ECW Note, Gateway East REH was required to make monthly payments to ECW in the form of interest with a balloon payment at maturity.

93.     The failure to make payments to ECW as and when such payments were due constitutes a default under the terms of the ECW Note.

94.     Between October 31, 2021, and April 30, 2024, Gateway East REH only paid ECW $390,000 in principal and $67,518.82 in interest for a total of $457,518.82.

95.     After April 30, 2024, Gateway East REH ceased making payments to ECW and defaulted under the ECW Note.

96.     Therefore, all amounts owed to ECW by Gateway East REH became immediately due and payable.

97.     As of January 31, 2025, Gateway East REH owes ECW a total of at least $207,233.03, which consists of $190,000 of principal, $9,262.53 of interest, and $7,970.50 of late fees, with interest and fees continuing to accrue.

98.     Before, during, and after the period of October 1, 2021, to October 18, 2021, ECW had creditors, including various individual investors.

99.     On June 11, 2024, ECW's board of directors appointed Lighthouse as its Chief Restructuring Officer.

100.    Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the ECW Note and the ECW Transfer to Gateway East REH, ECW was engaged or was about to engage in a business or a transaction for which the remaining assets of ECW were unreasonably small in relation to the business or transaction or ECW intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

101.    Based on the financial records identified above and reviewed by Lighthouse, between October 1, 2021, and October 18, 2021, and at all relevant times between entry into the ECW Note and the ECW Transfer to Gateway East REH, ECW was insolvent or became insolvent thereafter.

## VI.     PRIOR DEMAND FOR AMOUNTS OWED.

102.    On August 1, 2024, the Plaintiffs caused demand letters to be sent on their behalf to Gateway North REH and Gateway East REH demanding the amounts owed to the Plaintiffs under the Notes. The Plaintiffs also had conversations with the Defendants in which they demanded the amounts owed under the Notes.

103.    As of the date of this Complaint, the Defendants have failed to pay the Plaintiffs.

104.    The Plaintiffs continue to be harmed by the Defendants' failure to pay the outstanding amounts owed by the Defendants to the Plaintiffs.

105.    The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendants further transferred funds to other Project

Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendants and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

### COUNT I
### BREACH OF CONTRACT
### (EPIC Midwest v. Gateway North REH)

106. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

107. On January 1, 2020, EPIC Midwest and Gateway North REH entered into the Gateway North REH Note.

108. Under the terms of the Gateway North REH Note, EPIC Midwest agreed to provide Gateway North REH a total of $150,000; in exchange, Gateway North REH agreed to make regular monthly payments to EPIC Midwest.

109. On January 24, 2020, and pursuant to the Gateway North REH Note, EPIC Midwest transferred a total of $150,000 to Gateway North REH.

110. On or around May 31, 2024, Gateway North REH ceased making payments to EPIC Midwest as required by the Gateway North REH Note.

111. Gateway North REH's failure to make monthly payments to EPIC Midwest constitutes a breach of the Gateway North REH Note.

112. Due to Gateway North REH's breach of the Gateway North REH Note, EPIC Midwest has been damaged in the amount of at least $162,760 plus interest and other fees and costs allowed by law and the Gateway North REH Note.

### COUNT II
### BREACH OF CONTRACT
### (EPIC Midwest v. Gateway East REH)

113.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

114.     On October 1, 2021, EPIC Midwest and Gateway East REH entered into the Gateway East REH ECM Note.

115.     Under the terms of the Gateway East REH ECM Note, EPIC Midwest agreed to provide Gateway East REH a total of $200,000; in exchange, Gateway East REH agreed to make regular monthly payments to EPIC Midwest.

116.     On August 27, 2021, and pursuant to the Gateway East REH ECM Note, EPIC Midwest transferred a total of $200,000 to Gateway East REH.

117.     On or around April 30, 2024, Gateway East REH ceased making payments to EPIC Midwest as required by the Gateway East REH ECM Note.

118.     Gateway East REH's failure to make monthly payments to EPIC Midwest constitutes a breach of the Gateway East REH ECM Note.

119.     Due to Gateway East REH's breach of the Gateway East REH ECM Note, EPIC Midwest has been damaged in the amount of at least $78,811.20 plus interest and other fees and costs allowed by law and the Gateway East REH ECM Note.

**COUNT III**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Gateway East REH)**

120.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

121.     Between September 1, 2023 and December 1, 2023, EPIC Midwest 2023 and Gateway East REH entered into the Gateway East REH E23 Notes.

18

122.    Under the terms of the Gateway East REH E23 Notes, EPIC Midwest 2023 agreed to provide Gateway East REH a total of $165,000; in exchange, Gateway East REH agreed to make regular monthly payments to EPIC Midwest 2023.

123.    Between September 29, 2023 and December 6, 2023, and pursuant to the Gateway East REH E23 Notes, EPIC Midwest 2023 transferred a total of $165,000 to Gateway East REH.

124.    On or around April 30, 2024, Gateway East REH ceased making payments to EPIC Midwest 2023 as required by the Gateway East REH E23 Notes.

125.    Gateway East REH's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Gateway East REH E23 Notes.

126.    Due to Gateway East REH's breach of the Gateway East REH E23 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $180,550.50, plus interest and other fees and costs allowed by law and the Gateway East REH E23 Notes.

**COUNT IV**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Gateway)**

127.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

128.    Between December 1, 2022 and August 1, 2023, EPIC Midwest 2023 and Gateway entered into the Gateway Notes.

129.    Under the terms of the Gateway Notes, EPIC Midwest 2023 agreed to provide Gateway a total of $450,000; in exchange, Gateway agreed to make regular monthly payments to EPIC Midwest 2023.

130.    Between December 14, 2022 and August 9, 2023, and pursuant to the Gateway Notes, EPIC Midwest 2023 transferred a total of $450,000 to Gateway.

131.    On or around June 30, 2024, Gateway ceased making payments to EPIC Midwest 2023 as required by the Gateway Notes.

132.    Gateway's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the Gateway Notes.

133.    Due to Gateway's breach of the Gateway Notes, EPIC Midwest 2023 has been damaged in the amount of at least $462,247.50, plus interest and other fees and costs allowed by law and the Gateway Notes.

**COUNT V**
**BREACH OF CONTRACT**
**(EOLA v. Gateway East REH)**

134.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

135.    On April 1, 2024, EOLA and Gateway East REH entered into the EOLA Note.

136.    Under the terms of the EOLA Note, EOLA agreed to provide Gateway East REH a total of $100,000; in exchange, Gateway East REH agreed to make regular monthly payments to EOLA.

137.    On April 4, 2024, and pursuant to the EOLA Note, EOLA transferred a total of $100,000 to Gateway East REH.

138.    On or around April 30, 2024, Gateway East REH ceased making payments to EOLA as required by the EOLA Note.

139.    Gateway East REH's failure to make monthly payments to EOLA constitutes a breach of the EOLA Note.

140.    Due to Gateway East REH's breach of the EOLA Note, EOLA has been damaged in the amount of at least $110,629.97, plus interest and other fees and costs allowed by law and the EOLA Note.

**COUNT VI**
**BREACH OF CONTRACT**
**(ECW v. Gateway East REH)**

141.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

142.    On October 1, 2021, ECW and Gateway East REH entered into the ECW Note.

143.    Under the terms of the ECW Note, ECW agreed to provide Gateway East REH a total of $580,000; in exchange, Gateway East REH agreed to make regular monthly payments to ECW.

144.    On October 18, 2021, and pursuant to the ECW Note, ECW transferred a total of $580,000 to Gateway East REH.

145.    On or around April 30, 2024, Gateway East REH ceased making payments to ECW as required by the ECW Note.

146.    Gateway East REH's failure to make monthly payments to ECW constitutes a breach of the ECW Note.

147.    Due to Gateway East REH's breach of the ECW Note, ECW has been damaged in the amount of at least $207,233.03, plus interest and other fees and costs allowed by law and the ECW Note.

**COUNT VII**
**UNJUST ENRICHMENT**
**(EPIC Midwest v. Gateway North REH)**

148.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

149.     EPIC Midwest conferred a benefit to Gateway North REH by providing $150,000 for use in Gateway North REH's real estate development project.

150.     Gateway North REH knowingly accepted the $150,000 from EPIC Midwest.

151.     As Gateway North REH did not make the agreed upon monthly payments to EPIC Midwest, Gateway North REH is not entitled to the benefit of the full value of the $150,000 from EPIC Midwest.

152.     Under the circumstances, it would be unjust and inequitable to permit Gateway North REH to retain the benefit from its actions.

153.     The amount of benefit wrongfully retained by Gateway North REH is in the amount of at least $150,000, plus interest and other fees and costs allowed by law.

## COUNT VIII
## UNJUST ENRICHMENT
### (EPIC Midwest v. Gateway East REH)

154.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

155.     EPIC Midwest conferred a benefit to Gateway East REH by providing $200,000 for use in Gateway East REH's real estate development project.

156.     Gateway East REH knowingly accepted the $200,000 from EPIC Midwest.

157.     As Gateway East REH did not make the agreed upon monthly payments to EPIC Midwest, and only paid $128,000 in principal to EPIC Midwest, Gateway East REH is not entitled to the benefit of the full value of the $200,000 from EPIC Midwest.

158.    Under the circumstances, it would be unjust and inequitable to permit Gateway East REH to retain the benefit from its actions.

159.    The amount of benefit wrongfully retained by Gateway East REH is in the amount of at least $72,000, plus interest and other fees and costs allowed by law.

**COUNT IX**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Gateway East REH)**

160.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

161.    EPIC Midwest 2023 conferred a benefit to Gateway East REH by providing $165,000 for use in Gateway East REH's real estate development project.

162.    Gateway East REH knowingly accepted the $165,000 from EPIC Midwest 2023.

163.    As Gateway East REH did not make the agreed upon monthly payments to EPIC Midwest 2023, Gateway East REH is not entitled to the benefit of the full value of the $165,000 from EPIC Midwest 2023.

164.    Under the circumstances, it would be unjust and inequitable to permit Gateway East REH to retain the benefit from its actions.

165.    The amount of benefit wrongfully retained by Gateway East REH is in the amount of at least $165,000, plus interest and other fees and costs allowed by law.

**COUNT X**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Gateway)**

166.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

167.     EPIC Midwest 2023 conferred a benefit to Gateway by providing $450,000 for use in Gateway's real estate development project.

168.     Gateway knowingly accepted the $450,000 from EPIC Midwest 2023.

169.     As Gateway did not make the agreed upon monthly payments to EPIC Midwest 2023, and only paid $25,000 in principal to EPIC Midwest, Gateway is not entitled to the benefit of the full value of the $450,000 from EPIC Midwest 2023.

170.     Under the circumstances, it would be unjust and inequitable to permit Gateway to retain the benefit from its actions.

171.     The amount of benefit wrongfully retained by Gateway is in the amount of at least $425,000, plus interest and other fees and costs allowed by law.

## COUNT XI
## UNJUST ENRICHMENT
### (EOLA v. Gateway East REH)

172.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

173.     EOLA conferred a benefit to Gateway East REH by providing $100,000 for use in Gateway East REH's real estate development project.

174.     Gateway East REH knowingly accepted the $100,000 from EOLA.

175.     As Gateway East REH did not make the agreed upon monthly payments to EOLA, Gateway East REH is not entitled to the benefit of the value of the $100,000 payment from EOLA.

176.     Under the circumstances, it would be unjust and inequitable to permit Gateway East REH to retain the benefit from its actions.

177.     The amount of benefit wrongfully retained by Gateway East REH is in the amount of at least $100,000, plus interest and other fees and costs allowed by law.

## COUNT XII
## UNJUST ENRICHMENT
### (ECW v. Gateway East REH)

178.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

179.    ECW conferred a benefit to Gateway East REH by providing $580,000 for use in Gateway East REH's real estate development project.

180.    Gateway East REH knowingly accepted the $580,000 from ECW.

181.    As Gateway East REH did not make the agreed upon monthly payments to ECW, and only paid $390,000 in principal to ECW, Gateway East REH is not entitled to the benefit of the value of the $580,000 payment from ECW.

182.    Under the circumstances, it would be unjust and inequitable to permit Gateway East REH to retain the benefit from its actions.

183.    The amount of benefit wrongfully retained by Gateway East REH is in the amount of at least $190,000, plus interest and other fees and costs allowed by law.

## COUNT XIII
## ACCOUNT STATED
### (EPIC Midwest v. Gateway North REH)

184.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

185.    EPIC Midwest demanded payment of Gateway North REH's account with EPIC Midwest.

186.    Gateway North REH did not substantively respond to the demand or dispute any amounts.

187.    Gateway North REH did not pay the amounts due and owing to EPIC Midwest.

188.    As a result, EPIC Midwest has been damaged in the amount of at least $162,760, plus interest and other fees and costs allowed by law.

## COUNT XIV
## ACCOUNT STATED
### (EPIC Midwest v. Gateway East REH)

189.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

190.    EPIC Midwest demanded payment of Gateway East REH's account with EPIC Midwest.

191.    Gateway East REH did not substantively respond to the demand or dispute any amounts.

192.    Gateway East REH did not pay the amounts due and owing to EPIC Midwest.

193.    As a result, EPIC Midwest has been damaged in the amount of at least $78,811.20, plus interest and other fees and costs allowed by law.

## COUNT XV
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Gateway East REH)

194.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

195.    EPIC Midwest 2023 demanded payment of Gateway East REH's account with EPIC Midwest 2023.

196.    Gateway East REH did not substantively respond to the demand or dispute any amounts.

197.    Gateway East REH did not pay the amounts due and owing to EPIC Midwest 2023.

198.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $180,550.50, plus interest and other fees and costs allowed by law.

## COUNT XVI
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Gateway)

199.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

200.    EPIC Midwest 2023 demanded payment of Gateway's account with EPIC Midwest 2023.

201.    Gateway did not substantively respond to the demand or dispute any amounts.

202.    Gateway did not pay the amounts due and owing to EPIC Midwest 2023.

203.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $462,247.50, plus interest and other fees and costs allowed by law.

## COUNT XVII
## ACCOUNT STATED
### (EOLA v. Gateway East REH)

204.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

205.    EOLA demanded payment of Gateway East REH's account with EOLA.

206.    Gateway East REH did not substantively respond to the demand or dispute any amounts.

207.    Gateway East REH did not pay the amounts due and owing to EOLA.

208.    As a result, EOLA has been damaged in the amount of at least $110,629.97, plus interest and other fees and costs allowed by law.

## COUNT XVIII
## ACCOUNT STATED

**(ECW v. Gateway East REH)**

209.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

210.    ECW demanded payment of Gateway East REH's account with ECW.

211.    Gateway East REH did not substantively respond to the demand or dispute any amounts.

212.    Gateway East REH did not pay the amounts due and owing to ECW.

213.    As a result, ECW has been damaged in the amount of at least $207,233.03, plus interest and other fees and costs allowed by law.

**COUNT XIX**
**PROMISSORY ESTOPPEL**
**(EPIC Midwest v. Gateway North REH)**

214.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

215.    Gateway North REH promised it would make regular monthly payments to EPIC Midwest.

216.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $150,000 to Gateway North REH.

217.    EPIC Midwest was harmed by its reasonable reliance on Gateway North REH's promises, as EPIC Midwest loaned $150,000 to Gateway North REH and was not fully repaid.

218.    As a result, EPIC Midwest has been damaged in the amount of at least $162,760, plus interest and other fees and costs allowed by law.

**COUNT XX**
**PROMISSORY ESTOPPEL**
**(EPIC Midwest v. Gateway East REH)**

219.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

220.    Gateway East REH promised it would make regular monthly payments to EPIC Midwest.

221.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $200,000 to Gateway East REH.

222.    EPIC Midwest was harmed by its reasonable reliance on Gateway East REH's promises, as EPIC Midwest loaned $200,000 to Gateway East REH and was not fully repaid.

223.    As a result, EPIC Midwest has been damaged in the amount of at least $78,811.20, plus interest and other fees and costs allowed by law.

### COUNT XXI
### PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Gateway East REH)

224.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

225.    Gateway East REH promised it would make regular monthly payments to EPIC Midwest 2023.

226.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $165,000 to Gateway East REH.

227.    EPIC Midwest 2023 was harmed by its reasonable reliance on Gateway East REH's promises, as EPIC Midwest 2023 loaned $165,000 to Gateway East REH and was not fully repaid.

228.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $180,550.50, plus interest and other fees and costs allowed by law.

### COUNT XXII
### PROMISSORY ESTOPPEL

**(EPIC Midwest 2023 v. Gateway)**

229.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

230.     Gateway promised it would make regular monthly payments to EPIC Midwest 2023.

231.     In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $450,000 to Gateway.

232.     EPIC Midwest 2023 was harmed by its reasonable reliance on Gateway's promises, as EPIC Midwest 2023 loaned $450,000 to Gateway and was not fully repaid.

233.     As a result, EPIC Midwest 2023 has been damaged in the amount of at least $462,247.50, plus interest and other fees and costs allowed by law.

## COUNT XXIII
## PROMISSORY ESTOPPEL
**(EOLA v. Gateway East REH)**

234.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

235.     Gateway East REH promised it would make regular monthly payments to EOLA.

236.     In reasonable reliance on those promises, EOLA loaned a total of $100,000 to Gateway East REH.

237.     EOLA was harmed by its reasonable reliance on Gateway East REH's promises, as EOLA loaned $100,000 to Gateway East REH and was not repaid.

238.     As a result, EOLA has been damaged in the amount of at least $110,629.97, plus interest and other fees and costs allowed by law.

## COUNT XXIV
## PROMISSORY ESTOPPEL

**(ECW v. Gateway East REH)**

239.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

240.     Gateway East REH promised it would make regular monthly payments to ECW.

241.     In reasonable reliance on those promises, ECW loaned a total of $580,000 to Gateway East REH.

242.     ECW was harmed by its reasonable reliance on Gateway East REH's promises, as ECW loaned $580,000 to Gateway East REH and was not repaid.

243.     As a result, ECW has been damaged in the amount of at least $207,233.03, plus interest and other fees and costs allowed by law.

## COUNT XXV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Gateway East REH)

244.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

245.     EPIC Midwest entered into the Gateway East REH ECM Note with Gateway East REH and made the Gateway East REH ECM Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $145,966.67 to EPIC Midwest despite receiving $200,000 from EPIC Midwest.

246.     Before, during, and after the period of August 27, 2021 to October 1, 2021, EPIC Midwest had creditors, including various individual investors.

247.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 27, 2021 and October 1, 2021, and at all relevant times between entry into the Gateway East REH ECM Note and the Gateway East REH ECM Transfer to Gateway East REH, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

248.    Gateway East REH was a transferee of the Gateway East REH ECM Note and the Gateway East REH ECM Transfer.

249.    Based on the foregoing, the Gateway East REH ECM Note and the Gateway East REH ECM Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

250.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Gateway East REH)**

251.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

252.     EPIC Midwest entered into the Gateway East REH ECM Note with Gateway East REH and made the Gateway East REH ECM Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $145,966.67 to EPIC Midwest despite receiving $200,000 from EPIC Midwest.

253.     Before and during the period of August 27, 2021 to October 1, 2021, EPIC Midwest had creditors, including various individual investors.

254.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 27, 2021 and October 1, 2021, and at all relevant times between entry into the Gateway East REH ECM Note and the Gateway East REH ECM Transfer to Gateway East REH, EPIC Midwest was insolvent or became insolvent thereafter.

255.     Gateway East REH was a transferee of the Gateway East REH ECM Note and the Gateway East REH ECM Transfer.

256.     Based on the foregoing, the Gateway East REH ECM Note and the Gateway East REH ECM Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

257.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXVII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Gateway East REH)**

258.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

259.   EPIC Midwest 2023 entered into the Gateway East REH E23 Notes with Gateway East REH and made the Gateway East REH E23 Transfers to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $6,650.01 to EPIC Midwest 2023 despite receiving $165,000 from EPIC Midwest 2023.

260.   Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 1, 2023 and December 6, 2023, and at all relevant times between entry into the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers to Gateway East REH, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

261.   On information and belief, between September 1, 2023 and December 6, 2023, and at all relevant times between entry into the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers to Gateway East REH, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

262.   Based on the financial records identified above and reviewed by Lighthouse, between September 1, 2023 and December 6, 2023, and at all relevant times between entry into the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers to Gateway East REH, EPIC Midwest 2023 was insolvent or became insolvent as a result of the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers.

263.    Gateway East REH was a transferee of the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers.

264.    Based on the foregoing, the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

265.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXVIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Gateway East REH)

266.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

267.    EPIC Midwest 2023 entered into the Gateway East REH E23 Notes with Gateway East REH and made the Gateway East REH E23 Transfers to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $6,650.01 to EPIC Midwest 2023 despite receiving $165,000 from EPIC Midwest 2023.

268.    Before, during, and after the period of September 1, 2023 to December 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

269.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 1, 2023 and December 6, 2023, and at all relevant times between entry into

the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers to Gateway East REH, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

270.    Gateway East REH was a transferee of the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers.

271.    Based on the foregoing, the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

272.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXIX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Gateway East REH)

273.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

274.    EPIC Midwest 2023 entered into the Gateway East REH E23 Notes with Gateway East REH and made the Gateway East REH E23 Transfers to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EPIC Midwest

2023 with a security interest in any collateral and only paid $6,650.01 to EPIC Midwest 2023 despite receiving $165,000 from EPIC Midwest 2023.

275.    Before and during the period of September 1, 2023 to December 6, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

276.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 1, 2023 and December 6, 2023, and at all relevant times between entry into the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers to Gateway East REH, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

277.    Gateway East REH was a transferee of the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers.

278.    Based on the foregoing, the Gateway East REH E23 Notes and the Gateway East REH E23 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

279.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Gateway)**

280.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

281.    EPIC Midwest 2023 entered into the Gateway Notes with Gateway and made the Gateway Transfers to Gateway and received less than reasonably equivalent value in exchange. Gateway did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $61,843.75 to EPIC Midwest 2023 despite receiving $450,000 from EPIC Midwest 2023.

282.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 1, 2022 and August 9, 2023, and at all relevant times between entry into the Gateway Notes and the Gateway Transfers to Gateway, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

283.    On information and belief, between December 1, 2022 and August 9, 2023, and at all relevant times between entry into the Gateway Notes and the Gateway Transfers to Gateway, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

284.    Based on the financial records identified above and reviewed by Lighthouse, between December 1, 2022 and August 9, 2023, and at all relevant times between entry into the Gateway Notes and the Gateway Transfers to Gateway, EPIC Midwest 2023 was insolvent or became insolvent as a result of the Gateway Notes and the Gateway Transfers.

285.    Gateway was a transferee of the Gateway Notes and the Gateway Transfers.

286.    Based on the foregoing, the Gateway Notes and the Gateway Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

287.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XXXI
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Gateway)

288.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

289.    EPIC Midwest 2023 entered into the Gateway Notes with Gateway and made the Gateway Transfers to Gateway and received less than reasonably equivalent value in exchange. Gateway did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $61,843.75 to EPIC Midwest 2023 despite receiving $450,000 from EPIC Midwest 2023.

290.    Before, during, and after the period of December 1, 2022 to August 9, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

291.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 1, 2022 and August 9, 2023, and at all relevant times between entry into the Gateway Notes and the Gateway Transfers to Gateway, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023

intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

292. Gateway was a transferee of the Gateway Notes and the Gateway Transfers.

293. Based on the foregoing, the Gateway Notes and the Gateway Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

294. Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXXII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
(EPIC Midwest 2023 v. Gateway)

295. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

296. EPIC Midwest 2023 entered into the Gateway Notes with Gateway and made the Gateway Transfers to Gateway and received less than reasonably equivalent value in exchange. Gateway did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $61,843.75 to EPIC Midwest 2023 despite receiving $450,000 from EPIC Midwest 2023.

297. Before and during the period of December 1, 2022 to August 9, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

298. Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between December 1, 2022 and August 9, 2023, and at all relevant times between entry into the Gateway Notes and the Gateway Transfers to Gateway, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

299.    Gateway was a transferee of the Gateway Notes and the Gateway Transfers.

300.    Based on the foregoing, the Gateway Notes and the Gateway Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

301.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from Gateway in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EOLA v. Gateway East REH)**

302.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

303.    EOLA entered into the EOLA Note with Gateway East REH and made the EOLA Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EOLA with a security interest in any collateral and eventually only paid $708.33 to EOLA despite receiving $100,000 from EOLA.

304.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the

EOLA Transfer to Gateway East REH, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

305.    On information and belief, between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

306.    Based on the financial records identified above and reviewed by Lighthouse, between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA was insolvent or became insolvent as a result of the EOLA Note and the EOLA Transfer.

307.    Gateway East REH was a transferee of the EOLA Note and the EOLA Transfer.

308.    Based on the foregoing, the EOLA Note and the EOLA Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

309.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXXIV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Gateway East REH)

310.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

311.     EOLA entered into the EOLA Note with Gateway East REH and made the EOLA Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EOLA with a security interest in any collateral and eventually only paid $708.33 to EOLA despite receiving $100,000 from EOLA.

312.     Before, during, and after the period of April 1, 2024 to April 4, 2024, EOLA had creditors, including various individual investors.

313.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

314.     Gateway East REH was a transferee of the EOLA Note and the EOLA Transfer.

315.     Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

316.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**

**(EOLA v. Gateway East REH)**

317.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

318.    EOLA entered into the EOLA Note with Gateway East REH and made the EOLA Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide EOLA with a security interest in any collateral and eventually only paid $708.33 to EOLA despite receiving $100,000 from EOLA.

319.    Before and during the period of April 1, 2024 to April 4, 2024, EOLA had creditors, including various individual investors.

320.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between April 1, 2024 and April 4, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to Gateway East REH, EOLA was insolvent or became insolvent thereafter.

321.    Gateway East REH was a transferee of the EOLA Note and the EOLA Transfer.

322.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

323.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXXVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**

**(ECW v. Gateway East REH)**

324.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

325.    ECW entered into the ECW Note with Gateway East REH and made the ECW Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide ECW with a security interest in any collateral and eventually only paid $457,518.82 to ECW despite receiving $580,000 from ECW.

326.    Before, during, and after the period of October 1, 2021 to October 18, 2021, ECW had creditors, including various individual investors.

327.    Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the ECW Note and the ECW Transfer to Gateway East REH, ECW was engaged or was about to engage in a business or a transaction for which the remaining assets of ECW were unreasonably small in relation to the business or transaction or ECW intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

328.    Gateway East REH was a transferee of the ECW Note and the ECW Transfer.

329.    Based on the foregoing, the ECW Note and the ECW Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

330.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), ECW may recover such fraudulent transfers or obligations from

Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXXVII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (ECW v. Gateway East REH)

331.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

332.     ECW entered into the ECW Note with Gateway East REH and made the ECW Transfer to Gateway East REH and received less than reasonably equivalent value in exchange. Gateway East REH did not provide ECW with a security interest in any collateral and eventually only paid $457,518.82 to ECW despite receiving $580,000 from ECW.

333.     Before and during the period of October 1, 2021 to October 18, 2021, ECW had creditors, including various individual investors.

334.     Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2021 and October 18, 2021, and at all relevant times between entry into the ECW Note and the ECW Transfer to Gateway East REH, ECW was insolvent or became insolvent thereafter.

335.     Gateway East REH was a transferee of the ECW Note and the ECW Transfer.

336.     Based on the foregoing, the ECW Note and the ECW Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

337.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), ECW may recover such fraudulent transfers or obligations from Gateway East REH in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.     Enter judgment in favor of the Plaintiffs on their claims against the Defendants;

B.     Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C.     Grant such other relief that the Court deems just and equitable.

Dated: February 20, 2025          */e/ Mark R. Western*
                                  Joel M. Fremstad (ND #05541)
                                  Mark R. Western (ND #06181)
                                  FREMSTAD LAW FIRM
                                  3003 32nd Avenue South, Suite 240
                                  P.O. Box 3143
                                  Fargo, ND 58108-3143
                                  (701) 478-7620
                                  *joel@fremstadlaw.com*
                                  *mark@fremstadlaw.com*

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  February 20, 2025

*/s/ Patrick Finn*
Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs