## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

EPIC Companies Midwest, LLC,
EPIC Companies Midwest 2023, LLC,
EOLA Capital, LLC, and
EC West Fargo, LLC,

        Plaintiffs,

Adversary No. _____

v.

EOLA Landholdings, LLC,

        Defendant.

## COMPLAINT

Plaintiffs, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, EOLA Landholdings, LLC (the "Defendant"), state and allege as follows:

## PARTIES

1.     EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

November 19, 208. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.    EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.    EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

4.    EC West Fargo, LLC ("ECW") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around May 15, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

5.    The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around September 10, 2020. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

6.    The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

7.    The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

---

[1] As of October 10, 202hy4, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

8.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

9.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10.     The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

11.     This Complaint is filed under Fed. R. Bankr. P. 7001.

12.     The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.    PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

13.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

14.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendant, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

15.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

16.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

17.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

18.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

19.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

20.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

21.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

22.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

23.     On information and belief, the Defendant is one of the Project Companies. It has an interest in the land located at 4477 26th Avenue South, 4448 24th Avenue South, 4417 26th Avenue South, and 4471 24th Avenue South in Fargo, North Dakota.

## II.     TRANSFERS TO DEFENDANT FROM EPIC MIDWEST.

24.     On February 1, 2023, Debtor EPIC Midwest and the Defendant entered into a promissory note with the following balance as of February 28, 2025:

| Promissory Note Between EPIC Midwest and Defendant | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| EPIC Midwest | 2/1/23 | $350,000 | $0.00 | $26,250 | $17,500 | $14,700 | $382,200 |
| | | | | | | | **$382,200** |

(the "EPIC Midwest Note").

25.     The EPIC Midwest Note matured on February 1, 2025. Interest accrues at a rate of 6.0% and the standard late fee is $0.04 per $1.00.

26.     Pursuant to the EPIC Midwest Note, EPIC Midwest offered to loan $350,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EPIC Midwest Note is unsecured.

27.     On January 25, 2023, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred a total of $350,000 to the Defendant (the "EPIC Midwest Transfer").

28.     Under the terms of the EPIC Midwest Note, the Defendant was required to make monthly payments to EPIC Midwest in the form of interest.

29.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the EPIC Midwest Note.

30.     Between February 28, 2023 and April 30, 2024, the Defendant paid EPIC Midwest a total of $26,250 in interest.

31.     After April 30, 2024, the Defendant ceased making monthly payments to EPIC Midwest. Moreover, the Defendant failed to pay all amounts owed to EPIC Midwest upon the passing of the maturity date in the EPIC Midwest Note.

32.     Therefore, the Defendant has defaulted under the EPIC Midwest Note all amounts owed to EPIC Midwest by the Defendant are immediately due and payable.

33.    As of February 28, 2025, the Defendant owes EPIC Midwest a total of at least $382,200, which consists of $350,000 of principal, $17,500 of interest, and $14,700 of late fees, with interest and fees continuing to accrue.

34.    Before, during, and after the period of January 25, 2023 to February 1, 2023, EPIC Midwest had creditors, including various individual investors.

35.    On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

36.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

37.    Based on the financial records identified above and reviewed by Lighthouse, between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer, EPIC Midwest was insolvent or became insolvent thereafter.

### III.    TRANSFERS TO DEFENDANT FROM EPIC MIDWEST 2023.

38.    Between October 1, 2023 and May 1, 2024, Debtor EPIC Midwest 2023 and the Defendant entered into several promissory notes with the following balances as of February 28, 2025:

| Promissory Notes Between EPIC Midwest 2023 and Defendant | | | | | | | | |
| Lender | Date | Original Principal | Principal Paid | Interest Rate | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 | 10/1/23 | $20,000 | $0.00 | 8.0% | $933.31 | $1,333.30 | $853.33 | $22,186.63 |
| EPIC Midwest 2023 | 12/1/23 | $10,000 | $0.00 | 8.0% | $333.35 | $666.70 | $426.67 | $11,093.37 |
| EPIC Midwest 2023 | 1/1/24 | $10,000 | $0.00 | 8.0% | $266.68 | $666.70 | $426.67 | $11,093.37 |
| EPIC Midwest 2023 | 1/1/24 | $260,000 | $0.00 | 8.0% | $6,933.32 | $17,333.30 | $11,093.33 | $288,426.63 |
| EPIC Midwest 2023 | 4/1/24 | $20,000 | $0.00 | 8.0% | $133.33 | $1,333.30 | $853.33 | $22,186.63 |
| EPIC Midwest 2023 | 5/1/24 | $25,000 | $0.00 | 8.5% | $0.00 | $1,770.83 | $1,070.83 | $27,841.67 |
| | | | | | | | | $382,828.30 |

(the "EPIC Midwest 2023 Notes").

39.    The EPIC Midwest 2023 Notes mature between October 1, 2026 and May 1, 2027.

Interest accrues at the rates shown above and the standard late fee is $0.04 per $1.00.

40.    Pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 offered to loan a

total of $345,000 to the Defendant under certain terms and conditions and the Defendant accepted

those respective offers. The EPIC Midwest 2023 Notes are unsecured.

41.    Between September 22, 2023 and April 25, 2024, and pursuant to the EPIC

Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $345,000 to the Defendant:

| Transfers from EPIC Midwest 2023 to Defendant | |
|---|---|
| Date | Amount |
| 9/22/23 | $20,000 |
| 11/28/23 | $10,000 |
| 12/22/23 | $10,000 |
| 1/12/24 | $260,000 |
| 3/22/24 | $10,000 |
| 4/8/24 | $10,000 |
| 4/25/24 | $25,000 |
| | $345,000 |

(the "EPIC Midwest 2023 Transfers")

42.     Under the terms of the EPIC Midwest 2023 Notes, the Defendant was required to make monthly payments to EPIC Midwest 2023 in the form of interest.

43.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the EPIC Midwest 2023 Notes.

44.     Between October 31, 2023 and April 30, 2024, the Defendant paid EPIC Midwest 2023 a total of $8,599.99 in interest.

45.     After April 30, 2024, the Defendant ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Notes.

46.     Therefore, all amounts owed to EPIC Midwest 2023 by the Defendant are immediately due and payable.

47.     As of February 28, 2025, the Defendant owes EPIC Midwest 2023 a total of at least $382,828.30, which consists of $345,000 of principal, $23,104.13 of interest, and $14,724.17 of late fees, with interest and fees continuing to accrue.

48.     Before, during, and after the period of September 22, 2023 to May 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

49.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

50.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC

Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

51.     Based on the financial records identified above and reviewed by Lighthouse, between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## IV.     TRANSFERS TO DEFENDANT FROM EOLA.

52.     Between February 1, 2023 and March 1, 2024, Debtor EOLA and the Defendant entered into some promissory notes with the following balances as of February 28, 2025:

| Promissory Notes Between EOLA and Defendant | | | | | | |
|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| EOLA | 2/1/23 | $250,000 | $0.00 | $26,562.45 | $17,708.30 | $10,708.33 | $278,416.63 |
| EOLA | 3/1/24 | $15,000 | $0.00 | $212.50 | $1,062.50 | $642.50 | $16,705 |
| | | | | | | | $295,121.63 |

(the "EOLA Notes").

53.     The EOLA Notes mature on February 1, 2025 and March 1, 2027, respectively. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

54.     Pursuant to the EOLA Notes, EOLA offered to loan $265,000 to the Defendant under certain terms and conditions and the Defendant accepted those respective offers. The EOLA Notes are unsecured.

55.     Between February 6, 2023 and March 8, 2024, and pursuant to the EOLA Notes, EOLA transferred a total of $265,000 to the Defendant (the "EOLA Transfers").

56.     Under the terms of the EOLA Notes, the Defendant was required to make monthly payments to EOLA in the form of interest.

57.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Notes.

58.     Between February 28, 2023 and April 30, 2024, the Defendant only paid EOLA a total of $26,774.95 in interest.

59.     After April 30, 2024, the Defendant ceased making payments to EOLA. Moreover, the Defendant failed to pay all amounts owed to EOLA upon the passing of the maturity date in the February 1, 2023 note.

60.     Therefore, the Defendant has defaulted under the EOLA Notes and all amounts owed to EOLA by the Defendant are immediately due and payable.

61.     As of February 28, 2025, the Defendant owes EOLA a total of at least $295,121.63, which consists of $265,000 of principal, $18,770.80 of interest, and $11,350.83 of late fees, with interest and fees continuing to accrue.

62.     Before, during, and after the period of February 1, 2023 to March 8, 2024, EOLA had creditors, including various individual investors.

63.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

64.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

10

65.     Based on the financial records identified above and reviewed by Lighthouse, between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers, EOLA was insolvent or became insolvent thereafter.

**V.    TRANSFERS TO DEFENDANT FROM ECW.**

66.     On July 1, 2023, Debtor ECW and the Defendant entered into a promissory note with the following balance as of February 28, 2025:

| | | Promissory Note Between ECW and Defendant | | | | | |
|---|---|---|---|---|---|---|---|
| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| ECW | 7/1/23 | $50,000 | $0.00 | $3,125 | $3,125 | $2,125 | $55,250 |
| | | | | | | | **$55,250** |

(the "ECW Note," and together with the EPIC Midwest Note, the EPIC Midwest 2023 Notes, and the EOLA Notes, the "Notes").

67.     The ECW Note matured on July 1, 2026. Interest accrues at a rate of 7.5% and the standard late fee is $0.04 per $1.00.

68.     Pursuant to the ECW Note, ECW offered to loan $50,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The ECW Note is unsecured.

69.     On July 6, 2023, and pursuant to the ECW Note, ECW transferred a total of $50,000 to the Defendant (the "ECW Transfer").

70.     Under the terms of the ECW Note, the Defendant was required to make monthly payments to ECW in the form of interest.

71.     The failure to make payments to ECW as and when such payments were due constitutes a default under the terms of the ECW Note.

72.     Between July 31, 2023 and April 30, 2024, the Defendant only paid ECW a total of $3,125 in interest.

73.     After April 30, 2024, the Defendant ceased making payments to ECW and defaulted under the ECW Note.

74.     Therefore, all amounts owed to ECW by the Defendant are immediately due and payable.

75.     As of February 28, 2025, the Defendant owes ECW a total of at least $55,250, which consists of $50,000 of principal, $3,125 of interest, and $2,125 of late fees, with interest and fees continuing to accrue.

76.     Before, during, and after the period of July 1, 2023 to July 6, 2023, ECW had creditors, including various individual investors.

77.     On June 11, 2024, ECW's board of directors appointed Lighthouse as its Chief Restructuring Officer.

78.     Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer, ECW was engaged or was about to engage in a business or a transaction for which the remaining assets of ECW were unreasonably small in relation to the business or transaction or ECW intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

79.     Based on the financial records identified above and reviewed by Lighthouse, between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer, ECW was insolvent or became insolvent thereafter.

## VI.    PRIOR DEMAND FOR AMOUNTS OWED.

80.    On August 1, 2024, the Plaintiffs caused demand letters to be sent on their behalf to the Defendant demanding the amounts owed to the Plaintiffs under the Notes.

81.    As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

82.    The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

83.    The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendant further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Defendant)**

84.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

85.    On February 1, 2023, EPIC Midwest and the Defendant entered into the EPIC Midwest Note.

86.    Under the terms of the EPIC Midwest Note, EPIC Midwest agreed to provide the Defendant a total of $350,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest.

87.    On January 25, 2023, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred a total of $350,000 to the Defendant.

88.     On or around April 30, 2024, the Defendant ceased making payments to EPIC Midwest as required by the EPIC Midwest Note.

89.     The Defendant's failure to make payments to EPIC Midwest constitutes a breach of the EPIC Midwest Note.

90.     Due to the Defendant's breach of the EPIC Midwest Note, EPIC Midwest has been damaged in the amount of at least $382,200 plus interest and other fees and costs allowed by law and the EPIC Midwest Note.

**COUNT II**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Defendant)**

91.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

92.     Between October 1, 2023 and May 1, 2024, EPIC Midwest 2023 and the Defendant entered into the EPIC Midwest 2023 Notes.

93.     Under the terms of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 agreed to provide the Defendant a total of $345,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest 2023.

94.     Between September 22, 2023and April 25, 2024, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $345,000 to the Defendant.

95.     On or around April 30, 2024, the Defendant ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Notes.

96.     The Defendant's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Notes.

97.    Due to the Defendant's breach of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $382,828.30, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Notes.

**COUNT III**
**BREACH OF CONTRACT**
**(EOLA v. Defendant)**

98.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

99.    Between February 1, 2023 and March 1, 2024, EOLA and the Defendant entered into the EOLA Notes.

100.    Under the terms of the EOLA Notes, EOLA agreed to provide the Defendant a total of $265,000; in exchange, the Defendant agreed to make regular monthly payments to EOLA.

101.    Between February 6, 2023 and March 8, 2024, and pursuant to the EOLA Notes, EOLA transferred a total of $265,000 to the Defendant.

102.    On or around April 30, 2024, the Defendant ceased making payments to EOLA as required by the EOLA Notes.

103.    The Defendant's failure to make payments to EOLA constitutes a breach of the EOLA Notes.

104.    Due to the Defendant's breach of the EOLA Notes, EOLA has been damaged in the amount of at least $295,121.63, plus interest and other fees and costs allowed by law and the EOLA Notes.

## COUNT IV
## BREACH OF CONTRACT
### (ECW v. Defendant)

105.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

106.     On July 1, 2023, ECW and the Defendant entered into the ECW Note.

107.     Under the terms of the ECW Note, ECW agreed to provide the Defendant a total of $50,000; in exchange, the Defendant agreed to make regular monthly payments to ECW.

108.     On July 6, 2023, and pursuant to the ECW Note, ECW transferred a total of $50,000 to the Defendant.

109.     On or around April 30, 2024, the Defendant ceased making payments to ECW as required by the ECW Note.

110.     The Defendant's failure to make monthly payments to ECW constitutes a breach of the ECW Note.

111.     Due to the Defendant's breach of the ECW Note, ECW has been damaged in the amount of at least $55,250, plus interest and other fees and costs allowed by law and the ECW Note.

## COUNT V
## UNJUST ENRICHMENT
### (EPIC Midwest v. Defendant)

112.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

113.     EPIC Midwest conferred a benefit to the Defendant by providing $350,000 for use in the Defendant's real estate project.

114.     The Defendant knowingly accepted the $350,000 from EPIC Midwest.

16

115.    As the Defendant did not make the agreed upon payments to EPIC Midwest, the Defendant is not entitled to the benefit of the full value of the $350,000 from EPIC Midwest.

116.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

117.    The amount of benefit wrongfully retained by the Defendant is in the amount of at least $350,000, plus interest and other fees and costs allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Defendant)**

118.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

119.    EPIC Midwest 2023 conferred a benefit to the Defendant by providing $345,000 for use in the Defendant's real estate project.

120.    The Defendant knowingly accepted the $345,000 from EPIC Midwest 2023.

121.    As the Defendant did not make the agreed upon monthly payments to EPIC Midwest 2023, the Defendant is not entitled to the benefit of the full value of the $345,000 from EPIC Midwest 2023.

122.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

123.    The amount of benefit wrongfully retained by the Defendant is in the amount of at least $345,000, plus interest and other fees and costs allowed by law.

**COUNT VII**
**UNJUST ENRICHMENT**
**(EOLA v. Defendant)**

124.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

125.    EOLA conferred a benefit to the Defendant by providing $265,000 for use in the Defendant's real estate project.

126.    The Defendant knowingly accepted the $265,000 from EOLA.

127.    As the Defendant did not make the agreed upon payments to EOLA, the Defendant is not entitled to the benefit of the value of the $265,000 from EOLA.

128.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

129.    The amount of benefit wrongfully retained by the Defendant is in the amount of at least $265,000, plus interest and other fees and costs allowed by law.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(ECW v. Defendant)**

130.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

131.    ECW conferred a benefit to the Defendant by providing $50,000 for use in the Defendant's real estate project.

132.    The Defendant knowingly accepted the $50,000 from ECW.

133.    As the Defendant did not make the agreed upon monthly payments to ECW, the Defendant is not entitled to the benefit of the value of the $50,000 from ECW.

134.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

135.    The amount of benefit wrongfully retained by the Defendant is in the amount of at least $50,000, plus interest and other fees and costs allowed by law.

### COUNT IX
### ACCOUNT STATED
### (EPIC Midwest v. Defendant)

136.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

137.    EPIC Midwest demanded payment of the Defendant's account with EPIC Midwest.

138.    The Defendant did not substantively respond to the demand or dispute any amounts.

139.    The Defendant did not pay the amounts due and owing to EPIC Midwest.

140.    As a result, EPIC Midwest has been damaged in the amount of at least $382,200, plus interest and other fees and costs allowed by law.

### COUNT X
### ACCOUNT STATED
### (EPIC Midwest 2023 v. Defendant)

141.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

142.    EPIC Midwest 2023 demanded payment of the Defendant's account with EPIC Midwest 2023.

143.    The Defendant did not substantively respond to the demand or dispute any amounts.

144.    The Defendant did not pay the amounts due and owing to EPIC Midwest 2023.

145.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $382,828.30, plus interest and other fees and costs allowed by law.

## COUNT XI
## ACCOUNT STATED
### (EOLA v. Defendant)

146.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

147.    EOLA demanded payment of the Defendant's account with EOLA.

148.    The Defendant did not substantively respond to the demand or dispute any amounts.

149.    The Defendant did not pay the amounts due and owing to EOLA.

150.    As a result, EOLA has been damaged in the amount of at least $295,121.63, plus interest and other fees and costs allowed by law.

## COUNT XII
## ACCOUNT STATED
### (ECW v. Defendant)

151.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

152.    ECW demanded payment of the Defendant's account with ECW.

153.    The Defendant did not substantively respond to the demand or dispute any amounts.

154.    The Defendant did not pay the amounts due and owing to ECW.

155.    As a result, ECW has been damaged in the amount of at least $55,250, plus interest and other fees and costs allowed by law.

## COUNT XIII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Defendant)

156.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

157.    The Defendant promised it would make regular payments to EPIC Midwest.

158.    In reasonable reliance on those promises, EPIC Midwest loaned a total of $350,000 to the Defendant.

159.    EPIC Midwest was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest loaned $350,000 to the Defendant and was not fully repaid.

160.    As a result, EPIC Midwest has been damaged in the amount of at least $382,200, plus interest and other fees and costs allowed by law.

**COUNT XIV**
**PROMISSORY ESTOPPEL**
**(EPIC Midwest 2023 v. Defendant)**

161.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

162.    The Defendant promised it would make regular monthly payments to EPIC Midwest 2023.

163.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $345,000 to the Defendant.

164.    EPIC Midwest 2023 was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest 2023 loaned $345,000 to the Defendant and was not fully repaid.

165.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $382,828.30, plus interest and other fees and costs allowed by law.

**COUNT XV**
**PROMISSORY ESTOPPEL**
**(EOLA v. Defendant)**

166.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

167.    The Defendant promised it would make regular monthly payments to EOLA.

168.    In reasonable reliance on those promises, EOLA loaned a total of $265,000 to the Defendant.

169.    EOLA was harmed by its reasonable reliance on the Defendant's promises, as EOLA loaned $265,000 to the Defendant and was not fully repaid.

170.    As a result, EOLA has been damaged in the amount of at least $295,121.63, plus interest and other fees and costs allowed by law.

## COUNT XVI
## PROMISSORY ESTOPPEL
### (ECW v. Defendant)

171.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

172.    The Defendant promised it would make regular monthly payments to ECW.

173.    In reasonable reliance on those promises, ECW loaned a total of $50,000 to the Defendant.

174.    ECW was harmed by its reasonable reliance on the Defendant's promises, as ECW loaned $50,000 to the Defendant and was not fully repaid.

175.    As a result, ECW has been damaged in the amount of at least $55,250, plus interest and other fees and costs allowed by law.

## COUNT XVII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
## 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest v. Defendant)

176.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

177.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value

in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and only paid $26,250 to EPIC Midwest despite receiving $350,000 from EPIC Midwest.

178.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

179.    On information and belief, between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

180.    Based on the financial records identified above and reviewed by Lighthouse, between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent as a result of the EPIC Midwest Note and the EPIC Midwest Transfer.

181.    The Defendant was the initial transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

182.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

183.     Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XVIII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Defendant)

184.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

185.     EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $26,250 to EPIC Midwest despite receiving $350,000 from EPIC Midwest.

186.     Before, during, and after the period of January 25, 2023 to February 1, 2023, EPIC Midwest had creditors, including various individual investors.

187.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

188.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

189.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

190.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XIX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Defendant)**

191.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

192.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $26,250 to EPIC Midwest despite receiving $350,000 from EPIC Midwest.

193.    Before and during the period of January 25, 2023 to February 1, 2023, EPIC Midwest had creditors, including various individual investors.

194.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between January 25, 2023 and February 1, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

195.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

196.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

197.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Defendant)

198.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

199.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $8,599.99 to EPIC Midwest 2023 despite receiving $345,000 from EPIC Midwest 2023.

200.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

201.     On information and belief, between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

202.     Based on the financial records identified above and reviewed by Lighthouse, between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

203.     The Defendant was the initial transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

204.     Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

205.     Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXI
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Defendant)

206.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

207.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $8,599.99 to EPIC Midwest 2023 despite receiving $345,000 from EPIC Midwest 2023.

208.    Before, during, and after the period of September 22, 2023 to May 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

209.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

210.    The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

211.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023

Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to

N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

212.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and

11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or

obligations from the Defendant in an amount to be determined at trial, plus interest and other fees

and costs allowed by law.

### COUNT XXII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and
### 550(a)
### (EPIC Midwest 2023 v. Defendant)

213.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if

set forth fully herein.

214.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant

and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably

equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security

interest in any collateral and only paid $8,599.99 to EPIC Midwest 2023 despite receiving

$345,000 from EPIC Midwest 2023.

215.    Before and during the period of September 22, 2023 to May 1, 2024, EPIC Midwest

2023 had creditors, including various individual investors.

216.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements,

and financial reports from January 2019 through June 2024. These financial records indicate that

between September 22, 2023 and May 1, 2024, and at all relevant times between entry into the

EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

217.    The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

218.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

219.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXIII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EOLA v. Defendant)

220.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

221.    EOLA entered into the EOLA Notes with the Defendant and made the EOLA Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $26,774.95 to EOLA despite receiving $265,000 from EOLA.

222.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 to March 8, 2024, and at all relevant times between entry into the EOLA Notes

and the EOLA Transfers to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

223.    On information and belief, between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers to the Defendant, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

224.    Based on the financial records identified above and reviewed by Lighthouse, between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers to the Defendant, EOLA was insolvent or became insolvent as a result of the EOLA Notes and the EOLA Transfers.

225.    The Defendant was the initial transferee of the EOLA Notes and the EOLA Transfers.

226.    Based on the foregoing, the EOLA Notes and the EOLA Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

227.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XXIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EOLA v. Defendant)**

228.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

229.    EOLA entered into the EOLA Notes with the Defendant and made the EOLA Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $26,774.95 to EOLA despite receiving $265,000 from EOLA.

230.    Before, during, and after the period of February 1, 2023 to March 8, 2024, EOLA had creditors, including various individual investors.

231.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

232.    The Defendant was the first transferee of the EOLA Notes and the EOLA Transfers.

233.    Based on the foregoing, the EOLA Notes and the EOLA Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

234.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and
### 550(a)
### (EOLA v. Defendant)

235.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

236.    EOLA entered into the EOLA Notes with the Defendant and made the EOLA Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $26,774.95 to EOLA despite receiving $265,000 from EOLA.

237.    Before and during the period of February 1, 2023 to March 8, 2024, EOLA had creditors, including various individual investors.

238.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and March 8, 2024, and at all relevant times between entry into the EOLA Notes and the EOLA Transfers to the Defendant, EOLA was insolvent or became insolvent thereafter.

239.    The Defendant was the first transferee of the EOLA Notes and the EOLA Transfers.

240.    Based on the foregoing, the EOLA Notes and the EOLA Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

241.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXVI
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (ECW v. Defendant)

242.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

243.    ECW entered into the ECW Note with the Defendant and made the ECW Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide ECW with a security interest in any collateral and eventually only paid $3,125 to ECW despite receiving $50,000 from ECW.

244.    Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer to the Defendant, ECW was engaged or was about to engage in a business or a transaction for which the remaining assets of ECW were unreasonably small.

245.    On information and belief, between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer to the Defendant, ECW intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

246.    Based on the financial records identified above and reviewed by Lighthouse, between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer to the Defendant, ECW was insolvent or became insolvent as a result of the ECW Note and the ECW Transfer.

247.    The Defendant was the initial transferee of the ECW Note and the ECW Transfer.

248.   Based on the foregoing, the ECW Note and the ECW Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

249.   Pursuant to 11 U.S.C. § 550(a), ECW may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XXVII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
(ECW v. Defendant)

250.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

251.   ECW entered into the ECW Note with the Defendant and made the ECW Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide ECW with a security interest in any collateral and eventually only paid $3,125 to ECW despite receiving $50,000 from ECW.

252.   Before, during, and after the period of July 1, 2023 to July 6, 2023, ECW had creditors, including various individual investors.

253.   Lighthouse has reviewed ECW's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW Transfer to the Defendant, ECW was engaged or was about to engage in a business or a transaction for which the remaining assets of ECW were unreasonably small in relation to the business or

transaction or ECW intended to incur, or believed or reasonably should have believed that it would

incur, debts beyond its ability to pay as the debts became due.

254.    The Defendant was the first transferee of the ECW Note and the ECW Transfer.

255.    Based on the foregoing, the ECW Note and the ECW Transfer are avoidable, and

should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-

04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

256.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and

11 U.S.C. §§ 544(b) and 550(a), ECW may recover such fraudulent transfers or obligations from

the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed

by law.

## COUNT XXVIII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (ECW v. Defendant)

257.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if

set forth fully herein.

258.    ECW entered into the ECW Note with the Defendant and made the ECW Transfer

to the Defendant and received less than reasonably equivalent value in exchange. The Defendant

did not provide ECW with a security interest in any collateral and eventually only paid $3,125 to

ECW despite receiving $50,000 from ECW.

259.    Before and during the period of July 1, 2023 to July 6, 2023, ECW had creditors,

including various individual investors.

260.    Lighthouse has reviewed ECW's general ledger, bank statements, and financial

reports from January 2019 through June 2024. These financial records indicate that between July

1, 2023 and July 6, 2023, and at all relevant times between entry into the ECW Note and the ECW

Transfer to the Defendant, ECW was insolvent or became insolvent thereafter.

261.    The Defendant was the first transferee of the ECW Note and the ECW Transfer.

262.    Based on the foregoing, the ECW Note and the ECW Transfer are avoidable, and

should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-

05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

263.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11

U.S.C. §§ 544(b) and 550(a), ECW may recover such fraudulent transfers or obligations from the

Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by

law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.    Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.    Award the Plaintiffs their attorney's fees and costs for pursuing this action as

allowed by applicable law and the above-described notes;

C.    Grant such other relief that the Court deems just and equitable.

Dated:  March 10, 2025                    /e/ Steven R. Kinsella
_____
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice*, MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR PLAINTIFF**

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief

Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC

EOLA Capital, LLC, and EC West Fargo, LLC and I declare under penalty of perjury that the facts

set forth in the preceding Complaint are true and correct, according to the best of my knowledge,

information, and belief.

Dated:  March 10, 2025

_____
Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs