## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| | |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| | |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest, LLC, | |
| EPIC Companies Midwest 2023, LLC, and | |
| EPIC Employee, LLC, | |
| | |
| Plaintiffs, | |
| | Adversary No. _____ |
| v. | |
| | |
| BA Downtown, LLC, | |
| | |
| Defendant. | |

---

## COMPLAINT

---

Plaintiffs, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, BA Downtown, LLC (the "Defendant"), state and allege as follows:

### PARTIES

1.      EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701. [1]

2.      EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.      EPIC Employee, LLC ("Employee") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 31, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

4.      The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around March 21, 2018. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

5.      The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

6.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

7.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

8.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

9.      The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

10.     This Complaint is filed under Fed. R. Bankr. P. 7001.

11.     The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20(a)(1), as incorporated by Fed. R. Bankr. P. 7020, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

## I.      PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

12.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

13.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendant, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

14.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

15.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

16.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

17.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

18.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

19.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

20.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

21.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

22.     On information and belief, the Defendant has an interest in a real estate development project located at 502 Sheyenne Street and 309 5th Avenue West in West Fargo, North Dakota.

## II.   TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST.

23.     On May 1, 2021, Debtor EPIC Midwest and the Defendant entered into a promissory note with the following balance as of February 28, 2025:

| Promissory Note Between EPIC Midwest and Defendant | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Original Principal | Principal Paid | Interest Rate | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| 5/1/21 | $100,000 | $0.00 | 6.5% | $20,041.79 | $4,875.03 | $4,195 | $109,070.03 |
| | | | | | | | **$109,070.03** |

(the "EPIC Midwest Note.")

24.     Interest accrues at the rate shown above and the standard late fee is $0.04 per $1.00.

4

25.     Pursuant to the EPIC Midwest Note, EPIC Midwest offered to loan up to $100,000 to the Defendant under certain terms and conditions and the Defendant accepted the offer. The EPIC Midwest Note is unsecured.

26.     On May 10, 2021, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred a total of $100,000 to the Defendant (the "EPIC Midwest Transfer").

27.     Under the terms of the EPIC Midwest Note, the Defendant was required to make monthly payments to EPIC Midwest in the form of interest.

28.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the EPIC Midwest Note.

29.     Between May 31, 2021 and May 31, 2024, the Defendant paid EPIC Midwest a total of $20,041.79 in interest.

30.     After May 31, 2024, the Defendant ceased making payments to EPIC Midwest and defaulted under the EPIC Midwest Note.

31.     Therefore, all amounts owed to EPIC Midwest by the Defendant became immediately due and payable.

32.     As of February 28, 2025, the Defendant owes EPIC Midwest a total of at least $109,070.03, which consists of $100,000 of principal, $4,875.03 of interest, and $4,195 of late fees, with interest and fees continuing to accrue.

33.     Before, during, and after the period of May 1, 2021 to May 10, 2021, EPIC Midwest had creditors, including various individual investors.

34.     On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

35.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between May 1, 2021 and May 10, 2021, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

36.     Based on the financial records identified above and reviewed by Lighthouse, between May 1, 2021 and May 10, 2021, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

## III.    TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST 2023.

37.     Between February 1, 2023 and March 1, 2024, Debtor EPIC Midwest 2023 and the Defendant entered into various promissory notes with the following balances as of February 28, 2025:

| Promissory Notes Between EPIC Midwest 2023 and Defendant | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Original Principal | Principal Paid | Interest Rate | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| 2/1/23 | $125,000 | $0.00 | 7.5% | $12,500 | $7,031.25 | $5,281.25 | $137,312.50 |
| 2/1/23 | $140,000 | $0.00 | 7.5% | $14,000 | $7,875 | $5,915 | $153,790 |
| 7/1/23 | $20,000 | $0.00 | 8.0% | $1,466.63 | $1,199.97 | $848.00 | $22,047.97 |
| 10/1/23 | $20,000 | $0.00 | 8.0% | $1,066.64 | $1,199.97 | $848.00 | $22,047.97 |
| 12/1/23 | $10,000 | $0.00 | 8.0% | $400.02 | $600.03 | $424.00 | $11,024.03 |
| 2/1/24 | $10,000 | $0.00 | 8.0% | $266.68 | $600.03 | $424.00 | $11,024.03 |
| 3/1/24 | $10,000 | $0.00 | 8.0% | $200.01 | $600.03 | $424.00 | $11,024.03 |
| | | | | | | | $368,270.53 |

(the "EPIC Midwest 2023 Notes").

38.     The EPIC Midwest 2023 Notes mature between February 1, 2026 and March 1, 2027. Interest accrues at the rates shown above and the standard late fee is $0.04 per $1.00.

39.     Pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 offered to loan up to $335,000 to the Defendant under certain terms and conditions and the Defendant accepted the respective officers. The EPIC Midwest 2023 Notes are unsecured.

40.     Between January 20, 2023 and February 29, 2024, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $335,000 to the Defendant:

| Date | Amount |
|------|--------|
| 1/20/23 | $125,000 |
| 2/17/23 | $140,000 |
| 6/27/23 | $20,000 |
| 9/25/23 | $20,000 |
| 11/28/23 | $10,000 |
| 1/29/24 | $10,000 |
| 2/29/24 | $10,000 |
| | **$335,000** |

(the "EPIC Midwest 2023 Transfers").

41.     Under the terms of the EPIC Midwest 2023 Notes, the Defendant was required to make monthly payments to EPIC Midwest 2023 in the form of interest.

42.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the EPIC Midwest 2023 Notes.

43.     Between February 28, 2023 and May 31, 2024, the Defendant paid EPIC Midwest 2023 a total of $29,899.98 in interest.

44.     After May 31, 2024, the Defendant ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Notes.

45.     Therefore, all amounts owed to EPIC Midwest 2023 by the Defendant became immediately due and payable.

46.     As of February 28, 2025, the Defendant owes EPIC Midwest 2023 a total of at least $368,270.53, which consists of $335,000 of principal, $19,106.28 of interest, and $14,164.25 of late fees, with interest and fees continuing to accrue.

47.     Before, during, and after the period of January 20, 2023 to March 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

48.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

49.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

50.     Based on the financial records identified above and reviewed by Lighthouse, between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## IV.     TRANSFERS TO THE DEFENDANT FROM EMPLOYEE.

51.     On February 1, 2023, Debtor Employee and the Defendant entered into a promissory note with the following balance as of February 28, 2025:

8

| Promissory Note Between Employee and Defendant | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Original Principal | Principal Paid | Interest Rate | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
| 2/1/23 | $60,000 | $0.00 | 7.5% | $6,000 | $3,375 | $2,535 | $65,910 |
| | | | | | | | **$65,910** |

(the "Employee Note," and together with the EPIC Midwest Note and the EPIC Midwest 2023 Notes, the "Notes").

52.    The Employee Note matures on February 1, 2026. Interest accrues at the rate shown above and the standard late fee is $0.04 per $1.00.

53.    Pursuant to the Employee Note, Employee offered to loan $60,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The Employee Note is unsecured.

54.    On February 21, 2023, and pursuant to the Employee Note, Employee transferred a total of $60,000 to the Defendant (the "Employee Transfer").

55.    Under the terms of the Employee Note, the Defendant was required to make monthly payments to Employee in the form of interest.

56.    The failure to make payments to Employee as and when such payments were due constitutes a default under the terms of the Employee Note.

57.    As of May 31, 2024, the Defendant only paid Employee a total of $6,000 in interest.

58.    After May 31, 2024, the Defendant ceased making payments to Employee and defaulted under the Employee Note.

59.    Therefore, all amounts owed to Employee by the Defendant became immediately due and payable.

60.    As of February 28, 2025, the Defendant owes Employee a total of at least $65,910, which consists of $60,000 of principal, $3,375 of interest, and $2,535 of late fees, with interest and fees continuing to accrue.

61.    Before, during, and after the period of February 1, 2023 to February 21, 2023, Employee had creditors, including various individual investors.

62.    On June 11, 2024, Employee's board of directors appointed Lighthouse as its Chief Restructuring Officer.

63.    Lighthouse has reviewed Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of Employee were unreasonably small in relation to the business or transaction or Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

64.    Based on the financial records identified above and reviewed by Lighthouse, between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was insolvent or became insolvent thereafter.

## V.    PRIOR DEMAND FOR AMOUNTS OWED.

65.    On August 1, 2024, the Plaintiffs demanded from the Defendant the amounts owed to the Plaintiffs under the Notes.

66.    As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

67.    The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

68.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendant further transferred funds to Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Defendant)**

69.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

70.     On May 1, 2021, EPIC Midwest and the Defendant entered into the EPIC Midwest Note.

71.     Under the terms of the EPIC Midwest Note, EPIC Midwest agreed to provide the Defendant a total of $100,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest.

72.     On May 10, 2021, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred a total of $100,000 to the Defendant.

73.     On or around May 31, 2024, the Defendant ceased making payments to EPIC Midwest as required by the EPIC Midwest Note.

74.     The Defendant's failure to make monthly payments to EPIC Midwest constitutes a breach of the EPIC Midwest Note.

75.     Due to the Defendant's breach of the EPIC Midwest Note, EPIC Midwest has been damaged in the amount of at least $109,070.03, plus interest and other fees and costs allowed by law and the EPIC Midwest Note.

## COUNT II
## BREACH OF CONTRACT
### (EPIC Midwest 2023 v. Defendant)

76.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

77.     Between February 1, 2023 and March 1, 2024, EPIC Midwest 2023 and the Defendant entered into the EPIC Midwest 2023 Notes.

78.     Under the terms of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 agreed to provide the Defendant a total of $335,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest 2023.

79.     Between January 20, 2023 and February 29, 2024, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $335,000 to the Defendant.

80.     On or around May 31, 2024, the Defendant ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Notes.

81.     The Defendant's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Notes.

82.     Due to the Defendant's breach of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $368,270.53, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Notes.

## COUNT III
## BREACH OF CONTRACT
### (Employee v. Defendant)

83.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

84.     On February 1, 2023, Employee and the Defendant entered into the Employee Note.

85.     Under the terms of the Employee Note, Employee agreed to provide the Defendant a total of $60,000; in exchange, the Defendant agreed to make regular monthly payments to Employee.

86.     On February 21, 2023, and pursuant to the Employee Note, Employee transferred a total of $60,000 to the Defendant.

87.     On or around May 31, 2024, the Defendant ceased making payments to Employee as required by the Employee Note.

88.     The Defendant's failure to make monthly payments to Employee constitutes a breach of the Employee Note.

89.     Due to the Defendant's breach of the Employee Note, Employee has been damaged in the amount of at least $65,910, plus interest and other fees and costs allowed by law and the Employee Note.

**COUNT IV**
**UNJUST ENRICHMENT**
**(EPIC Midwest v. Defendant)**

90.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     EPIC Midwest conferred a benefit to the Defendant by providing $100,000 for use in the Defendant's real estate development project.

92.     The Defendant knowingly accepted the $100,000 from EPIC Midwest.

93.     As the Defendant did not make the agreed upon monthly payments to EPIC Midwest, the Defendant is not entitled to the benefit of the full value of the $100,000 from EPIC Midwest.

94.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

95.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $100,000, plus interest and other fees and costs allowed by law.

**COUNT V**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Defendant)**

96.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

97.     EPIC Midwest 2023 conferred a benefit to the Defendant by providing $335,000 for use in the Defendant's real estate development project.

98.     The Defendant knowingly accepted the $335,000 from EPIC Midwest 2023.

99.     As the Defendant did not make the agreed upon monthly payments to EPIC Midwest 2023, the Defendant is not entitled to the benefit of the full value of the $335,000 from EPIC Midwest 2023.

100.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

101.    The amount of benefit wrongfully retained by the Defendant is in the amount of at least $335,000 plus interest and other fees and costs allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Employee v. Defendant)**

102.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

103.     Employee conferred a benefit to the Defendant by providing $60,000 for use in the Defendant's real estate development project.

104.     The Defendant knowingly accepted the $60,000 from Employee.

105.     As the Defendant did not make the agreed upon monthly payments to Employee, the Defendant is not entitled to the benefit of the value of the $60,000 from Employee.

106.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

107.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $60,000, plus interest and other fees and costs allowed by law.

**COUNT VII**
**ACCOUNT STATED**
**(EPIC Midwest v. Defendant)**

108.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

109.     EPIC Midwest demanded payment of the Defendant's account with EPIC Midwest.

110.     The Defendant did not substantively respond to the demand or dispute any amounts.

111.     The Defendant did not pay the amounts due and owing to EPIC Midwest.

112.     As a result, EPIC Midwest has been damaged in the amount of at least $109,070.03, plus interest and other fees and costs allowed by law.

**COUNT VIII**
**ACCOUNT STATED**
**(EPIC Midwest 2023 v. Defendant)**

113.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

114.   EPIC Midwest 2023 demanded payment of the Defendant's account with EPIC Midwest 2023.

115.   The Defendant did not substantively respond to the demand or dispute any amounts.

116.   The Defendant did not pay the amounts due and owing to EPIC Midwest 2023.

117.   As a result, EPIC Midwest 2023 has been damaged in the amount of at least $368,270.53 plus interest and other fees and costs allowed by law.

**COUNT IX**
**ACCOUNT STATED**
**(Employee v. Defendant)**

118.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

119.   Employee demanded payment of the Defendant's account with Employee.

120.   The Defendant did not substantively respond to the demand or dispute any amounts.

121.   The Defendant did not pay the amounts due and owing to Employee.

122.   As a result, Employee has been damaged in the amount of at least $65,910, plus interest and other fees and costs allowed by law.

**COUNT X**
**PROMISSORY ESTOPPEL**
**(EPIC Midwest v. Defendant)**

123.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

124.   The Defendant promised it would make regular monthly payments to EPIC Midwest.

125.   In reasonable reliance on those promises, EPIC Midwest loaned a total of $100,000 to the Defendant.

126.    EPIC Midwest was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest loaned $100,000 to the Defendant and was not fully repaid.

127.    As a result, EPIC Midwest has been damaged in the amount of at least $109,070.03, plus interest and other fees and costs allowed by law.

### COUNT XI
### PROMISSORY ESTOPPEL
#### (EPIC Midwest 2023 v. Defendant)

128.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

129.    The Defendant promised it would make regular monthly payments to EPIC Midwest 2023.

130.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $335,000 to the Defendant.

131.    EPIC Midwest 2023 was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest 2023 loaned $335,000 to the Defendant and was not fully repaid.

132.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $368,270.53, plus interest and other fees and costs allowed by law.

### COUNT XII
### PROMISSORY ESTOPPEL
#### (Employee v. Defendant)

133.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

134.    The Defendant promised it would make regular monthly payments to Employee.

135.    In reasonable reliance on those promises, Employee loaned a total of $60,000 to the Defendant.

136.    Employee was harmed by its reasonable reliance on the Defendant's promises, as Employee loaned $60,000 to the Defendant and was not fully repaid.

137.    As a result, Employee has been damaged in the amount of at least $65,910, plus interest and other fees and costs allowed by law.

### COUNT XIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Defendant)**

138.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

139.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $20,041.79 to EPIC Midwest despite receiving $100,000 from EPIC Midwest.

140.    Before, during, and after the period of May 1, 2021 to May 10, 2021, EPIC Midwest had creditors, including various individual investors.

141.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between May 1, 2021 and May 10, 2021, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to

incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

142.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

143.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

144.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest v. Defendant)**

145.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

146.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $20,041.79 to EPIC Midwest despite receiving $100,000 from EPIC Midwest.

147.    Before and during the period of May 1, 2021 to May 10, 2021, EPIC Midwest had creditors, including various individual investors.

148.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between May 1, 2021 and May 10, 2021, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

149.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

150.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

151.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Defendant)

152.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

153.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $29,899.98 to EPIC Midwest 2023 despite receiving $335,000 from EPIC Midwest 2023.

154. Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

155. On information and belief, between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

156. Based on the financial records identified above and reviewed by Lighthouse, between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

157. The Defendant was the initial transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

158. Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

159. Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XVI
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Defendant)

160.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

161.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $29,899.98 to EPIC Midwest 2023 despite receiving $335,000 from EPIC Midwest 2023.

162.    Before, during, and after the period of January 20, 2023 to March 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

163.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

164.    The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

165.     Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

166.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XVII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Defendant)

167.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

168.     EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the EPIC Midwest 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $29,899.98 to EPIC Midwest 2023 despite receiving $335,000 from EPIC Midwest 2023.

169.     Before and during the period of January 20, 2023 to March 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

170.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between January 20, 2023 and March 1, 2024, and at all relevant times between entry into the

EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

171.    The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers.

172.    Based on the foregoing, the EPIC Midwest 2023 Notes and the EPIC Midwest 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

173.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XVIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(Employee v. Defendant)**

174.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

175.    Employee entered into the Employee Note with the Defendant and made the Employee Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide Employee with a security interest in any collateral and eventually only paid $6,000 to Employee despite receiving $60,000 from Employee.

176.    Lighthouse has reviewed Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was engaged or was about

to engage in a business or a transaction for which the remaining assets of Employee were unreasonably small.

177.    On information and belief, between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

178.    Based on the financial records identified above and reviewed by Lighthouse, between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was insolvent or became insolvent as a result of the Employee Note and the Employee Transfer.

179.    The Defendant was the initial transferee of the Employee Note and the Employee Transfer.

180.    Based on the foregoing, the Employee Note and the Employee Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

181.    Pursuant to 11 U.S.C. § 550(a), Employee may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XIX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(Employee v. Defendant)**

182.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

183.    Employee entered into the Employee Note with the Defendant and made the Employee Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide Employee with a security interest in any collateral and eventually only paid $6,000 to Employee despite receiving $60,000 from Employee.

184.    Before, during, and after the period of February 1, 2023 to February 21, 2023, Employee had creditors, including various individual investors.

185.    Lighthouse has reviewed Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of Employee were unreasonably small in relation to the business or transaction or Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

186.    The Defendant was the first transferee of the Employee Note and the Employee Transfer.

187.    Based on the foregoing, the Employee Note and the Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

188.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), Employee may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(Employee v. Defendant)**

189.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

190.   Employee entered into the Employee Note with the Defendant and made the Employee Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide Employee with a security interest in any collateral and eventually only paid $6,000 to Employee despite receiving $60,000 from Employee.

191.   Before and during the period of February 1, 2023 to February 21, 2023, Employee had creditors, including various individual investors.

192.   Lighthouse has reviewed Employee's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between February 1, 2023 and February 21, 2023, and at all relevant times between entry into the Employee Note and the Employee Transfer to the Defendant, Employee was insolvent or became insolvent thereafter.

193.   The Defendant was the first transferee of the Employee Note and the Employee Transfer.

194.   Based on the foregoing, the Employee Note and the Employee Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

195.   Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), Employee may recover such fraudulent transfers or obligations from

the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed

by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.      Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.      Award the Plaintiffs their attorney's fees and costs for pursuing this action as

allowed by applicable law and the above-described notes;

C.      Grant such other relief that the Court deems just and equitable.

Dated: March 10, 2025                    */e/ Steven R. Kinsella*
                                         Michael S. Raum (#05676)
                                         **FREDRIKSON & BYRON, P.A.**
                                         51 Broadway, Suite 400
                                         Fargo, ND  58102-4991
                                         701.237.8200
                                         mraum@fredlaw.com

                                         Steven R. Kinsella (#09514)
                                         Katherine A. Nixon (*pro hac vice*, MN #0402772)
                                         **FREDRIKSON & BYRON, P.A.**
                                         60 South 6th Street, Suite 1500
                                         Minneapolis, MN  55402-4400
                                         612.492.7000
                                         skinsella@fredlaw.com
                                         knixon@fredlaw.com

                                         **ATTORNEYS FOR PLAINTIFFS**

## **AFFIDAVIT**

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  March 10, 2025

DocuSigned by:

*PATRICK FINN*

0030B83D88F04EF

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs