## EPUNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Case No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Case No. 24-30282 |
| EPIC Employee, LLC, | Case No. 24-30283 |
| EOLA Capital, LLC, and | Case No. 24-30284 |
| EC West Fargo, LLC, | Case No. 24-30285 |
| Debtors.[1] | Chapter 11 Cases |

## DEBTORS' CHAPTER 11 PLAN OF LIQUIDATION

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is c/o Lighthouse Management Group, Inc., 900 Long Lake Road, Suite 180, New Brighton, MN 55112 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................4

ARTICLE I     DEFINITIONS..............................................................................................4
1.1     Defined Terms. ................................................................................................4
1.2     Interpretation...................................................................................................7
1.3     Time Periods. ...................................................................................................8
1.4     Exhibits. ...........................................................................................................8

ARTICLE II            CLASSIFICATION OF CLAIMS AND INTERESTS ...........................8

ARTICLE III           TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS..........9
3.1.    Allowed Administrative Expense Claims.....................................................9
3.2.    Statutory Fees and Court Costs...................................................................10
3.3.    Unsecured Priority Claims. ..........................................................................10

ARTICLE IV            TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS....................10
4.1.    Class 1 – General Unsecured Claims...........................................................10
4.2.    Class 2 – Class B Equity Claims..................................................................11
4.3.    Class 3 – Class A Claims. .............................................................................11

ARTICLE V             MEANS OF IMPLEMENTATION OF PLAN ...................................11
5.1     Substantive Consolidation. ..........................................................................11
5.2     Liquidating Trust and Liquidating Trustee.................................................12
5.3     Beneficiaries of Liquidating Trust. ..............................................................16
5.4     Liquidating Trust Advisory Committee.......................................................16
5.5     Liability and Indemnification of Liquidating Trustee and Liquidating Trust
        Advisory Committee Members......................................................................17
5.6     Term of Liquidating Trust. ...........................................................................18
5.7     Effectuating Documents; Further Transactions; Exemption from Certain
        Transfer Taxes. ..............................................................................................18
5.8     Cancellation of Instruments. ........................................................................19
5.9     Dissolution of the Committee. ......................................................................19
5.10    Books and Records. .......................................................................................19

ARTICLE VI            DISTRIBUTIONS AND CLAIMS ADMINISTRATION ...............................19
6.1     Distributions...................................................................................................19
6.2     Method of Payment........................................................................................20
6.3     Claims Administration Responsibility.........................................................20
6.4     Record Date for Distributions......................................................................20
6.5     Procedures for Treating and Resolving Contested Claims. ......................21
6.6     De Minimis Distributions. ............................................................................21
6.7     Unclaimed Payments. ....................................................................................21
6.8     Time Bar to Check Payments. ......................................................................21
6.9     Setoffs..............................................................................................................22

ARTICLE VII        EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................22
    7.1.    Assumption or Rejection of Executory Contracts and Unexpired Leases...................22
    7.2.    Cure of Defaults........................................................................................22
    7.3.    Bar Dates for Rejection of Damage Claims.........................................................22

ARTICLE VIII        CONFIRMATION OF THE PLAN..........................................................23
    8.1.    Conditions Precedent to the Effective Date..........................................................23
    8.2.    Waiver of Conditions to Confirmation or Effective Date..........................................23
    8.3.    Notice of the Effective Date...........................................................................23
    8.4.    Cramdown...............................................................................................23
    8.5.    Effect of Confirmation of the Plan...................................................................24
    8.6.    Releases and Exculpation. ............................................................................26

ARTICLE IX        EVENTS OF DEFAULT ...................................................................27

ARTICLE X        RETENTION OF JURISDICTION .........................................................27

ARTICLE XI        MISCELLANEOUS PROVISIONS.........................................................29
    11.1    Modification of the Plan...............................................................................29
    11.2    Revocation of the Plan.................................................................................29
    11.3    Severability of Plan Provisions........................................................................29
    11.4    Corporate Documents...................................................................................30
    11.5    Regulated Rates.........................................................................................30
    11.6    Successors and Assigns.................................................................................30
    11.7    Governing Law. .........................................................................................30
    11.8    Construction..............................................................................................30
    11.9    Reservation of Rights...................................................................................30

## INTRODUCTION

The Debtors, each as defined below, propose the following Plan, as defined below, for the purpose of completing the liquidation of the Debtors' assets, resolving the outstanding claims held by the bankruptcy estates, resolving the outstanding claims against the bankruptcy estates, and making distributions to holders of Allowed claims, as defined below.

All creditors are encouraged to consult the Disclosure Statement, as defined below, in support of the Plan, for a discussion of the history, business, operations, and property of the Debtors; a summary and analysis of this Plan; risk factors related to this Plan; and certain other matters related to the above-captioned Chapter 11 bankruptcy cases. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

This Plan contemplates the appointment of a Liquidating Trustee, as defined below, to complete the liquidation of all remaining assets and distribute the proceeds to creditors. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I
## DEFINITIONS

**1.1    Defined Terms.**

For the purposes of the Plan, except as expressly provided, all capitalized terms have the meanings ascribed to them below:

(1)    "Administrative Expense Claim" means a claim for an unpaid administrative expense of the kind described in Sections 503(b) and 507(a)(2) of the Bankruptcy Code asserted against the Debtors, including: (a) the actual, necessary costs and expenses of preserving the estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) compensation and reimbursement of expenses of professionals to the extent allowable under Sections 327, 328, 330(a), 331, 503(b), and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court; and (c) all fees and charges assessed against the estates under 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the U.S. Trustee.

(2)    "Allowed" means with respect to any claim: (a) a claim that has been scheduled by the Debtors in their respective Schedules as other than disputed, contingent, or unliquidated and as to which the Debtors or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtors to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a Contested Claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtors or any party-in-interest has not filed an

4

objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtors.

(3)     "<u>Avoidance Claim</u>" means any claim, Cause of Action, or rights to property of the Debtors or the bankruptcy estates under Sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

(4)     "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

(5)     "<u>Bankruptcy Rule</u>" means a Federal Rule of Bankruptcy Procedure.

(6)     "<u>Causes of Action</u>" means the actions identified on **<u>Exhibit B</u>**.

(7)     "<u>Chapter 11 Cases</u>" means the Debtors' pending Chapter 11 cases under the Bankruptcy Code and before the Court, with the following case numbers: 24-30281, 2430282, 24-30283, 24-30284, and 24-30285,  which are jointly administered under case number 24-30281.

(8)     "<u>Class A Equity Interests</u>" means all Class A equity interest in any of the Debtors that existed immediately prior to the Filing Date.

(9)     "<u>Class B Equity Interests</u>" means all Class B equity interests in one or more of the Debtors pursuant to certain subscription agreements and letters of investment intent.

(10)     "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

(11)     "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered.

(12)     "<u>Confirmation Order</u>" means the order entered by the Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

(13)     "<u>Contested Claim</u>" means: (a) a claim listed by the Debtors in their respective Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtors or other party in interest has objected to allowance of the claim under Sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtors have demanded the recovery of property pursuant to Section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtors' insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(14)     "<u>Court</u>" means the United States Bankruptcy Court for the District of North Dakota, or such other court of competent jurisdiction which properly exercises jurisdiction over part or all of the Chapter 11 Cases.

(15)   "CRO" means the Chief Restructuring Officer of the Debtors appointed in the Chapter 11 Cases, which is Lighthouse Management Group, Inc.

(16)   "Debtors" means, collectively, EPIC Midwest, EPIC Midwest 2023, EPIC Employee, EOLA, and EC West Fargo.

(17)   "Disclosure Statement" means the disclosure statement in support of this Plan, as may be further revised, modified, or amended.

(18)   "Effective Date" means the first business day following the day on which the conditions of Article 8.1 of the Plan have been satisfied or waived.

(19)   "EC West Fargo" means EC West Fargo, LLC.

(20)   "EOLA" means EOLA Capital, LLC.

(21)   "EPIC Employee" means EPIC Employee, LLC.

(22)   "EPIC Midwest" means EPIC Companies Midwest, LLC.

(23)   "EPIC Midwest 2023" means EPIC Companies Midwest 2023, LLC.

(24)   "Filing Date" means July 8, 2024.

(25)   "Final Order" means an order of the Court which has not been reversed, stayed, modified, or amended and the time to appeal from or to seek review or rehearing of such order has expired.

(26)   "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of its beneficiaries, as set forth in Article 5.2.

(27)   "Liquidating Trust Advisory Committee" means the committee formed in accordance with Article 5.4 of the Plan and which shall direct the Liquidating Trustee to carry out its powers in accordance with the Plan and Confirmation Order.

(28)   "Liquidating Trust Agreement" means the agreement, substantially in the form attached as **Exhibit A**, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

(29)   "Liquidating Trust Assets" means the assets held in the Liquidating Trust comprised of: (a) all Causes of Action of the Debtors, but excluding those expressly waived in this Plan; and (b) all other unencumbered assets of the Debtors' bankruptcy estates remaining after all payments have been made pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, as applicable, on the Effective Date.

(30)   "Liquidating Trustee" means the person or entity with the powers and duties described in Article 5.2 of the Plan, which will initially be Lighthouse Management Group, Inc.

(31)   "<u>Local Rules</u>" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of North Dakota.

(32)   "<u>Plan</u>" means this Chapter 11 plan of liquidation, including exhibits and supplements, all as may be amended, revised, or modified.

(33)   "<u>Priority Tax Claim</u>" means a claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

(34)   "<u>Record Date</u>" means the date that the Court approves the Disclosure Statement.

(35)   "<u>Released Parties</u>" means, collectively, the Debtors, the CRO, the members of the Committee (solely in their capacity as members of the Committee), and the Debtors' and the Committee's professionals employed in the Chapter 11 cases pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code.

(36)   "<u>Schedules</u>" means the Debtors' schedules of assets and liabilities and the statement of financial affairs on file with the Clerk of the United States Bankruptcy Court for the District of North Dakota, as amended or modified in accordance with Bankruptcy Rule 1009.

(37)   "<u>U.S. Trustee</u>" means the United States Trustee appointed under Article 591 of Title 28 of the United States Code to serve in the District of North Dakota.

**1.2    Interpretation.**

For purposes of the Plan:

(1)   any term that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

(2)   the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to," "include(s), but is not limited to," or "includes, without limitation";

(3)   whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(4)   the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(5)   unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(6)   any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(7)    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented;

(8)    unless otherwise specified, all references in the Plan to "Articles" and "Exhibits" are references to Articles and Exhibits of or to the Plan;

(9)    captions and headings to Articles are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(10)    the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

### 1.3    Time Periods.

In computing any period of time prescribed or authorized by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  Enlargement of any period of time prescribed or authorized by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

### 1.4    Exhibits.

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan as if set forth fully in the Plan.  The exhibits to the Plan include the following:

**Exhibit A**    Liquidating Trust Agreement

**Exhibit B**    Schedule of Causes of Action

**Exhibit C**    Schedule of Assumed Executory Contracts and Unexpired Leases

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

As set forth in Article 5.1 of the Plan, the Plan provides for the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

The following table designates the classes of claims against and equity interests in the Debtors and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.  A claim is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in other classes to the extent that any remainder of the claim qualifies within the description of such other classes.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | N/A | No |
| N/A | Statutory Fees and Court Costs | N/A | No |

| Class | Designation | Impaired | Entitled to Vote |
|:---:|:---|:---:|:---:|
| N/A | Priority Claims | N/A | No |
| 1 | General Unsecured Claims | Yes | Yes |
| 2 | Class B Equity Claims | Yes | Yes |
| 3 | Class A Equity Claims | Yes | No |

## ARTICLE III
## TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS

Certain Allowed claims that are not classified shall be treated as follows:

### 3.1.    Allowed Administrative Expense Claims.

Except as otherwise provided in this Article, holders of Allowed claims specified in Section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash from the Liquidating Trust as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Court.

### 3.1.1    Postpetition Operating Expenses.

With respect to the Debtors' Allowed operating expenses incurred during the Chapter 11 Cases, the Debtors generally paid these expenses as they came due or through other arrangements thereafter. If any Allowed Administrative Expense Claims resulting from postpetition operations come due after the Effective Date, or for any other reason have not been paid as of the Effective Date, these claims shall be paid from the Liquidating Trust as the claims become due or as otherwise agreed between the holders of such claims and the Liquidating Trustee.

### 3.1.2    Professional Fees and Expenses.

Professional fees and expenses incurred through the Effective Date and not previously Allowed shall be subject to Court approval after the Effective Date. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Filing Date to the Effective Date, no later than 30 days after the Effective Date.  The Liquidating Trustee shall pay any Allowed professional fees and expenses within 10 days of the later of: (a) the Effective Date; or (b) the Court's order allowing such claim.

### 3.1.3    Postpetition Taxes.

In the event that the Debtors have liability to any taxing authority on account of unpaid taxes that accrued and were payable after the Filing Date, the Debtors or the Liquidating Trustee shall pay such taxes from the Liquidating Trust in full in cash as soon as practicable following the later of: (a) the Effective Date; or (b) approval by the Court.

### 3.2.    Statutory Fees and Court Costs.

Court costs and fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid in full in cash from the Liquidating Trust on the Effective Date or as soon as practicable thereafter or as required under the U.S. Trustee's quarterly fee payment guidelines.  The Debtors estimate these claims shall be nominal, as they have remained current on such payments.  After the Effective Date, the Liquidating Trustee shall be responsible for paying quarterly fees to the U.S. Trustee, filing monthly operating reports through the substantial consummation of the Plan on the Effective Date, and, thereafter, filing quarterly reports through the date the Chapter 11 Cases are closed, dismissed, or converted.  Such reports shall be in the format prescribed by the U.S. Trustee. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

### 3.3.    Unsecured Priority Claims.

#### 3.3.1    Priority Tax Claims.

The Debtors estimate that the Allowed Priority Tax Claims total approximately $0.  The Allowed Priority Tax Claims shall be paid in full in cash as soon as practicable following the later of (a) the Effective Date; or (b) the date on which such claims are Allowed.

Notwithstanding anything to the contrary in this Plan, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, the Allowed Priority Tax Claim.  Any such claim or demand for any such penalty shall be subject to treatment in Class 1, if not subordinated to Class 1 claims pursuant to an order of the Court.  The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust, or the property of either (other than as a holder of a Class 1 claim).

#### 3.3.2    Other Priority Claims.

All other Allowed claims not specifically treated in this Article and entitled to priority under Section 507(a) of the Bankruptcy Code shall be paid from the Liquidating Trust in full in cash as soon as practicable following the later of: (a) the Effective Date; (b) the due date; or (c) the date on which such claims are Allowed.

### ARTICLE IV
### TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 4.1.    Class 1 – General Unsecured Claims.

Class 1 consists of the general unsecured claims asserted against the Debtors.  Except to the extent that a holder of a Class 1 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 1 claim shall receive a pro rata distribution from the Liquidating Trust after the payment of all Allowed Administrative Expense Claims as provided in Article 3.1 of this Plan, statutory fees and costs as provided in Article 3.2 of this Plan, Allowed priority claims as provided in Article 3.3 of this Plan, and

all costs and expenses of the Liquidating Trust. Class 1 claims shall include claims by counterparties to executory contracts and unexpired leases that are rejected pursuant to Article VII of this Plan.

Nothing contained in this Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 1 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 1 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1 claims.

### 4.2.    Class 2 – Class B Equity Claims.

Class 2 consists of the Class B Equity Interests. Except to the extent that a holder of a Class 2 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 2 claim shall receive the same treatment as provided to the holder of an Allowed Class 1 claim under Article 4.1 of this Plan.

Nothing contained in this Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

### 4.3.    Class 3 – Class A Claims.

Class 3 consists of the Class A Equity Interests in the Debtors. Holders of Class 3 claims shall not receive a distribution under this Plan. All Class A Equity Interests shall be deemed cancelled upon the Effective Date. Class 3 is deemed to reject the Plan.

### ARTICLE V
### MEANS OF IMPLEMENTATION OF PLAN

### 5.1    Substantive Consolidation.

The Plan and Disclosure Statement jointly incorporate the Debtors' *Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations* [Docket No. __]. The Plan contemplates and is predicated upon the Confirmation Order substantively consolidating the Debtors' estates and the Chapter 11 Cases as set forth in this Plan and in the above-described motion. Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

On and after the Effective Date: (a) all assets and liabilities of the Debtors shall be treated as though they were pooled; (b) each claim filed or to be filed against any of the Debtors, as to which two or more of the Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single claim against, and a single obligation of, the Debtors; (c) all claims held by one of the Debtors against one or more of the other Debtors shall be cancelled or extinguished; (d) no distributions shall be made

under the Plan on account of any claim held by one of the Debtors against one or more of the other Debtors; (e) all guarantees of any of the Debtors of the obligations of one or more of the other Debtors shall be eliminated so that any claim against any of the Debtors and any claim based upon a guarantee thereof executed by one or more of the other Debtors shall be treated as one claim against the substantively-consolidated Debtors; and (f) any joint and several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any claims based upon such joint or several liability shall be treated as one claim against the substantively-consolidated Debtors.

The substantive consolidation of the Debtors under the Plan shall not, other than for purposes related to funding the distributions under the Plan, affect: (a) the legal and organizational structure of the Debtors; (b) the executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected; (c) any agreements entered into by the Liquidating Trust on or after the Effective Date; (d) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge claims on an entity-by-entity basis; (e) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the estates of the Debtors; and (f) distributions to the Debtors or the Liquidating Trust from any insurance policies or proceeds thereof.  Notwithstanding the substantive consolidation called for in this Plan, each of the Debtors shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until each particular case is closed, dismissed, or converted.

### 5.2    Liquidating Trust and Liquidating Trustee.

#### 5.2.1   Liquidating Trust.

On the Effective Date the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement.  Additionally, on the Effective Date, the Debtors shall irrevocably transfer to the Liquidating Trust all right, title, and interest in and to the Liquidating Trust Assets in accordance with the Plan, including, without limitation, Article 8.5 of the Plan.  In its capacity as Liquidating Trustee, the Liquidating Trustee shall accept all Liquidating Trust Assets on behalf of the beneficiaries of the Liquidating Trust, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in its possession.  The Liquidating Trust shall be deemed created and effective without any further action by the Court or any person as of the Effective Date.  The Liquidating Trust shall be established for the purposes of (a) collecting and liquidating the Liquidating Trust Assets; (b) prosecuting and resolving the Causes of Action; (c) maximizing recovery of the Liquidating Trust Assets for the benefit of the beneficiaries of the Liquidating Trust; and (d) distributing the proceeds of the Liquidating Trust Assets to the beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

The transfer of assets and rights to the Liquidating Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the Debtors still held the asset or right.

12

### 5.2.2   Liquidating Trustee.

The CRO shall be appointed the Liquidating Trustee and such appointment shall be approved by the Court pursuant to the Confirmation Order.  Following appointment, the Liquidating Trustee shall act in accordance with the Plan and Liquidating Trust Agreement, and, in such capacity, shall have the same powers as the board of directors and officers of the Debtors, and all bylaws, articles, and related corporate documents shall be deemed amended by the Plan to permit and authorize the same.  The Liquidating Trustee's primary tasks are to receive the Liquidating Trust, liquidate assets, pursue Causes of Action, administer claims, and distribute proceeds for the benefit of the holders of Allowed claims.

The Liquidating Trustee shall file a motion, application, or other request to close the Chapter 11 Cases when the cases have been fully administered.

### 5.2.3   Powers and Duties of the Liquidating Trustee.

The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the bankruptcy estates of the Debtors appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code regarding all Liquidating Trust Assets.  The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including through the creation of reserves as provided for under the Plan; (b) file tax returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Debtors, the bankruptcy estates, and the Liquidating Trust to the extent payable consistent with the Plan, the Bankruptcy Code, or order of the Court; (c) retain and compensate, without further order of the Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust Assets;  (d) calculate and implement distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust and, as set forth in Articles 5.2.5 and 8.5 of the Plan, those Causes of Action may be settled or compromised without notice and a hearing and without Court approval, but shall be subject to the consent of the Liquidating Trust Advisory Committee; (f) address and resolve issues involving objections, reconciliation, and allowance of claims and equity interests in accordance with this Plan; (g) undertake all administrative functions of the Plan and the Chapter 11 Cases, including the payment of all secured claims, Administrative Expense Claims, Priority Tax Claims, other priority claims, and fees payable to the U.S. Trustee, and the ultimate closing of the Chapter 11 Cases; (h) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer any asset on behalf of the Debtors and the Liquidating Trust; (i) defend, protect, and enforce any and all rights and interests transferred to the Liquidating Trust or Liquidating Trustee; (j) open, create, or close accounts to deposit, hold, and disburse funds; (k) invest cash in demand or time deposits to obtain market rates of return pending distributions; (l) file any and all reports and motions or requests for relief with the Court and any opposition thereto; (m) dissolve the Debtors or otherwise wind up the Debtors' corporate affairs and existence; (n) subject to approval of the Liquidating Trust Advisory Committee, incur indebtedness to fund administration of the Plan; and (o) perform any other functions

that are necessary to effectuate this Plan and perform its duties as Liquidating Trustee. The Liquidating Trust is the successor to the Debtors and their estates.

On the Effective Date, the Liquidating Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or required.

The Liquidating Trustee may, but shall not be required to, invest cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 26 C.F.R. § 1.67-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which distributions from the Liquidating Trust are made) send to each known beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any class that is not expected to receive any distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit shall be allocated to the Liquidating Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust. As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit for taxing purposes. The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust. The Liquidating Trustee shall be responsible for filing all tax returns for the Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

### 5.2.4    Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust.

Pursuant to Section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any non-cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or are burdensome to the Liquidating Trust. Any non-cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.

### 5.2.5   Prosecution and Resolution of Causes of Action.

From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust and Liquidating Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust and Liquidating Trustee shall have exclusive rights, powers, and interests of the Debtors' estates to pursue, settle, or abandon such Causes of Action as the sole representative of the Debtors' estates pursuant to Section 1123(b) of the Bankruptcy Code. Proceeds recovered from all Causes of Action shall be deposited into the Liquidating Trust and shall be distributed by the Liquidating Trustee to the beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement. As detailed more fully in Article 8.5.2 of the Plan, all Causes of Action that are not expressly released or waived under this Plan are reserved and preserved, transferred to, and vest in, the Liquidating Trust and Liquidating Trustee in accordance with this Plan. No person or entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such person or entity. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any person that are expressly released or waived under this Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of this Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released, and discharged pursuant to the Plan. Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall not require notice of approval of the Bankruptcy Court, and shall only require approval of the Liquidating Trustee in its discretion and in consultation with the Liquidating Trust Advisory Committee.

### 5.2.6   Liquidating Trust Expenses.

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such costs, expenses, and obligations shall include secured claims, Administrative Expense Claims, Tax Priority Claims, and other priority claims not otherwise satisfied as of the Effective Date. Such costs, expenses, and obligations shall be paid in accordance with the Liquidating Trust Agreement.

### 5.2.7   Compensation and Retention of Professionals.

The Liquidating Trustee shall be entitled to be paid reasonable compensation and expenses from the Liquidating Trust, subject to the consent of the Liquidating Trust Advisory Committee. The Liquidating Trustee shall be entitled to retain professionals without Court approval, but with consent of the Liquidating Trust Advisory Committee to assist in its duties, and shall be entitled to pay such

professionals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee. For the avoidance of doubt, the Liquidating Trustee may retain the former professionals of the Debtor and the Committee. The Liquidating Trustee may hire former employees and other "insiders" (as that term is defined in the Bankruptcy Code) of the Debtors for postconfirmation services, and may pay such individuals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee.

### 5.2.8   Removal of the Liquidating Trustee.

As provided in Section 4.2 of the Trust Agreement, at any time upon 30 days' written notice to the Liquidating Trustee and the U.S. Trustee and upon a unanimous vote by the members of the Liquidating Trust Advisory Committee, the Liquidating Trust Advisory Committee may remove the Liquidating Trustee and appointing a successor Liquidating Trustee under Section 4.3 of the Trust Agreement.

### 5.2.9   Federal Income Tax Treatment of Liquidating Trust for the Liquidating Trust Assets.

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under 26 C.F.R. Section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors' estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners of the Liquidating Trust.

### 5.3   Beneficiaries of Liquidating Trust.

The holders of Allowed Class 1 and Class 2 claims shall be the beneficiaries of the Liquidating Trust. Such beneficiaries shall be bound by the Liquidating Trust Agreement. The interests of the beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

### 5.4   Liquidating Trust Advisory Committee.

The Liquidating Trust Advisory Committee shall be a three-member committee established under the Liquidating Trust Agreement and the members of the Liquidating Trust Advisory Committee shall initially be the members of the Committee. The Liquidating Trust Advisory Committee may act with as few as two members. In the event that a resignation or termination of members of the Liquidating Trust Advisory Committee reduces the number of members to less than two members, then the remaining member and the Liquidating Trustee shall appoint one successor member, who shall be a holder of one or more Allowed general unsecured claims against one or more of the Debtors, in the Liquidating Trustee's sole discretion. As described more fully in the Liquidating Trust Agreement, the Liquidating Trust Advisory Committee shall monitor the Liquidating Trustee and all activities set forth in this Plan. The Liquidating Trust Advisory Committee shall have the power and authority to ratify or reject decisions of the Liquidating Trustee, and, in its discretion, the Liquidating Trust Advisory

Committee may delegate to the Liquidating Trustee such power and authority as it deems proper.  The members of the Liquidating Trust Advisory Committee shall not be paid for serving on the Liquidating Trust Advisory Committee except for reimbursement of actual expenses incurred by such members. The Liquidating Trust Advisory Committee shall be governed by the Liquidating Trust Agreement substantially in the form of those attached as **Exhibit A**.  In the event that a vote by the Liquidating Trust Advisory Committee results in a tie vote, the Liquidating Trustee (although not a member) shall be entitled to vote on that issue as set forth in Exhibit A.

      **5.5**    **Liability and Indemnification of Liquidating Trustee and Liquidating Trust Advisory Committee Members.**

      **5.5.1**    **Limitation of Liability.**

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee or the Liquidating Trust Advisory Committee members, or their respective members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan.  All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets, and the Liquidating Trustee shall have no personal liability to satisfy any such liability.  The Liquidating Trustee and its agents shall not be deemed to be the agent for any holder of a claim in connection with distributions made under this Plan.  The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment; provided, however, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns. The Liquidating Trustee shall enjoy all of the rights, powers, immunities, and privileges available to a Chapter 7 trustee.

      **5.5.2**    **Indemnification of Liquidating Trustee and Liquidating Trust Advisory Committee.**

The Liquidating Trust shall indemnify the Liquidating Trustee and its employees, officer, directors, agents, representatives, and professionals for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including, without limitation, the reasonable fees and expenses of their respective professionals) incurred without gross negligence, willful misconduct, or fraud on the part of the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals (which gross negligence, willful misconduct, or fraud, if any, must be determined by Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals in connection with the acceptance, administration, exercise, or performance of their duties under the Plan or the Liquidating Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and

not inconsistent therewith, will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud.  In addition, the Liquidating Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, without limitation, to professional fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan if the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust.  To the extent that the Liquidating Trust indemnifies and holds harmless any such person or entity as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust.  The costs and expenses incurred in enforcing the right of indemnification in this Article shall be paid by the Liquidating Trust.  This provision shall survive the termination of the Liquidating Trust Agreement and the resignation, replacement, or removal of the Liquidating Trustee and the Liquidating Trust Advisory Committee.

**5.6    Term of Liquidating Trust.**

The Liquidating Trustee and Liquidating Trust Advisory Committee shall be discharged, and the Liquidating Trust shall be terminated, at such time as: (a) all Contested Claims have been resolved; (b) all of the Liquidating Trust Assets have been liquidated or abandoned; (c) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled; (d) all distributions required to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made; and (e) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and/or distributions in accordance with the Plan.

**5.7    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.**

The Debtors and the Liquidating Trustee, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer real property on behalf of the Debtors and the Liquidating Trust.  Pursuant to Section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**5.8    Cancellation of Instruments.**

Except for: (a) purposes of evidencing a right to distributions under the Plan; (b) to the extent any agreement or other document constitutes a settlement agreement authorized and approved by the Court in the Chapter 11 Cases; or (c) as otherwise provided under this Plan, on the Effective Date, all agreements and other documents evidencing claims or rights of any holder of a claim or equity interest against any of the Debtors, including, without limitation, all indentures, notes, bonds, and share certificates evidencing such claims and equity interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Debtors but not as against any other person.

**5.9    Dissolution of the Committee.**

Upon the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to, and arising from, the Chapter 11 Cases.  The retention and employment of the professionals retained by the Committee shall terminate as of the Effective Date, provided, however, that the Committee shall exist, and its professionals shall be retained, after such date with respect to applications filed pursuant to Sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

**5.10    Books and Records.**

As part of the appointment of the Liquidating Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Liquidating Trustee in whatever form, manner, or media the books and records existed immediately prior to the transfer thereof to the Liquidating Trustee. The Liquidating Trustee may abandon some or all of the books and records on or after 90 days after the Effective Date in its sole discretion when the Liquidating Trustee determines in its judgment that they are of inconsequential value to the Liquidating Trust.  Any prior abandonment of the books and records by the Debtors prior to confirmation is hereby deemed to have been authorized.  Pursuant to Section 554 of the Bankruptcy Code, this Article 5.10 shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records.

## ARTICLE VI
## DISTRIBUTIONS AND CLAIMS ADMINISTRATION

**6.1    Distributions.**

Unless otherwise provided in this Plan, the Liquidating Trustee shall make a final distribution after determining, in consultation with the Liquidating Trust Advisory Committee, that all assets that feasibly could be liquidated have been liquidated.  At its discretion, but in consultation with the Liquidating Trust Advisory Committee, the Liquidating Trustee may make, but is not required to make, an initial distribution and additional distributions before the final distribution.

**6.2     Method of Payment.**

Payments under this Plan shall be made by ACH or check, mailed with first class postage pre-paid, to the holder of each Allowed claim at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules.  Holders of Allowed claims may contact the Liquidating Trustee to amend their addresses as follows:

Renee Foss
Lighthouse Management Group Inc.
900 Long Lake Road, Suite 180
New Brighton, MN 55112
(651) 439-5119

**6.3     Claims Administration Responsibility.**

Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Trustee shall have and retain any and all objections to any and all claims, motions, or other requests for the payment of claims, whether administrative expense, secured, or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, liens, and security interests, whether under the Bankruptcy Code, other applicable law, or contract.

Unless otherwise ordered by the Court in the Confirmation Order, any objections to claims, except objections to Administrative Expense Claims or objections arising under Section 502(d) of the Bankruptcy Code, shall be filed within 120 days after the Effective Date (unless such date is not a business day, in which case such deadline shall be the next business day thereafter) or at such later date as approved by the Court upon request from the Liquidating Trustee.  Any claim objections arising solely under Section 502(d) of the Bankruptcy Code shall not be subject to the 120-day deadline and may be pursued through an adversary proceeding asserting an Avoidance Claim.

Except as otherwise agreed by the Liquidating Trustee, any claim as to which a proof of claim, motion, or other request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated pursuant to: (a) a Final Order of the Court; or (b) a Final Order under applicable non-bankruptcy law, and shall be deemed Allowed in such liquidated amount and satisfied in accordance with this Plan.  Nothing contained in this Plan, the Disclosure Statement, or the Confirmation Order shall constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the estates, the Liquidating Trustee, or the Liquidating Trust may have against any person in connection with, or arising out of, any claim or claims, including, without limitation, any rights under 28 U.S.C. § 157(b).

**6.4     Record Date for Distributions.**

Except as otherwise provided in a Final Order of the Court, the transferees of claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to Record Date shall be treated as the holders of those claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001

for objecting to the transfer may not have expired by the Record Date.  The Liquidating Trustee shall have no obligation to recognize any transfer of any claim occurring after the Record Date.  In making any distribution with respect to any Allowed claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes under this Plan, only the entity that is listed on the proof of claim filed with respect to the Allowed claim or on the Schedules as the holder of the Allowed claim as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Record Date and is available to the Liquidating Trustee.

### 6.5    Procedures for Treating and Resolving Contested Claims.

Notwithstanding any other provision in this Plan, no payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by a Final Order, and the Contested Claim has become an Allowed claim.

The Debtors or the Liquidating Trustee may request estimation or limitation of any Contested Claim that is contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code; provided, however, that the Court shall determine: (a) whether such Contested Claim is subject to estimation pursuant to Section 502(c) of the Bankruptcy Code; and (b) the timing and procedures for such estimation proceedings, if any.  Unless provided otherwise in an order of the Court, the estimated amount shall constitute the Allowed amount of such claim or a maximum limitation on such claim, as the Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such claim, the Debtors or the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of such claim.  The foregoing shall not limit the rights granted by Section 502(j) of the Bankruptcy Code.

### 6.6    De Minimis Distributions.

The Liquidating Trustee shall not be required to make any payment of less than $25 with respect to any Allowed Class 1 claims.

### 6.7    Unclaimed Payments.

In the event a payment is returned to the Liquidating Trustee unclaimed, with no indication of the payee's forwarding address, the Liquidating Trustee shall hold such payment for a period of 90 days from the date of return.  If not claimed by the payee by the end of that period, the payment shall become property of the Liquidating Trust.  In the event there are unclaimed funds at the end of the distribution process and redistribution to other holders of Allowed claims, the Liquidating Trustee shall pay over such funds to a North Dakota-based charity selected by the Liquidating Trust Advisory Committee.

### 6.8    Time Bar to Check Payments.

Checks issued by the Liquidating Trustee shall be null and void if not negotiated within 90 days from and after the date of issuance.  Requests for re-issuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed claim with respect to which such check originally

was issued.  Any claim in respect of such a voided check must be made on or before 120 days after the date of issuance of such check.  After 120 days after issuance of a non-negotiated check for which the holder of the Allowed claim did not request re-issuance, all claims in respect of voided checks shall be discharged and forever barred and the Liquidating Trust shall retain all monies related thereto for distribution in accordance with Article 6.1 this Plan.  The Liquidating Trust shall not be required to make any further distributions to holders of such Allowed claims.

**6.9    Setoffs.**

The Liquidating Trustee may, pursuant to applicable non-bankruptcy law, set off against any distribution to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature the Debtors or the Liquidating Trustee may hold against the holder of such Allowed claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Debtors or the Liquidating Trustee may hold against such holder.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1.    Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Each contract, lease, or other agreement listed on **Exhibit C** shall be assumed as of the Effective Date, to the extent that each such contract, lease, or other agreement has not already expired, concluded, or terminated under its own terms.  All other executory contracts, unexpired leases, or other agreements that are not listed on Exhibit C and were not previously assumed or rejected by Final Order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute, pursuant to Sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts and unexpired leases.

**7.2.    Cure of Defaults.**

The Debtors have identified the cure amounts that they believe exist for the contracts, leases, or other agreements listed on Exhibit C.  Payments of any cure amounts shall be made by the Liquidating Trust as provided in Article 4.1 of the Plan.  The Liquidating Trustee shall retain all rights to contest any cure amount claims asserted by any entity.

**7.3.    Bar Dates for Rejection of Damage Claims.**

To the extent not subject to a claims bar date set forth in any prior or subsequent order of the Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Article 7.1 of this Plan must be filed with the Court no later than 30 days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed Class 1 claim.  Any claims not filed within such applicable time periods shall be forever barred from receiving a distribution from the Debtors, the estates, or the Liquidating Trust.

## ARTICLE VIII
## CONFIRMATION OF THE PLAN

### 8.1.    Conditions Precedent to the Effective Date.

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Article 8.2 of this Plan:

a.    The Court shall have entered the Confirmation Order, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall be in effect.

b.    The appointment of the Liquidating Trustee shall have been confirmed by order of the Court.

c.    All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors, and have been duly executed and delivered, including without limitation, the Trust Agreement; provided, however, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

d.    This Plan shall not have been materially amended, altered, or modified from this Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Article 11.1 of this Plan.

### 8.2.    Waiver of Conditions to Confirmation or Effective Date.

Notwithstanding the foregoing conditions in this Article VIII, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date, as applicable, shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### 8.3.    Notice of the Effective Date.

Within five business days after the Effective Date, the Liquidating Trustee shall cause notice of the Effective Date to be filed with the Court.

### 8.4.    Cramdown.

The Debtor requests confirmation under Section 1129(b) of the Bankruptcy Code with respect to any impaired class that has not accepted or is deemed not to have accepted this Plan pursuant to Section 1126 of the Bankruptcy Code.

### 8.5.    Effect of Confirmation of the Plan.

#### 8.5.1    Title to and Vesting of Assets.

All property of the Debtors and the estates is dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by Section 1141(b) of the Bankruptcy Code, all property of the Debtors and the estates vests in the Liquidating Trust and such property is free and clear of all liens, encumbrances, claims, and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained. From and after the Effective Date, the Liquidating Trust may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

#### 8.5.2    Preservation of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the bankruptcy estates may hold against any entity shall automatically be transferred to and vest in the Liquidating Trust on the Effective Date, including, without limitation, any and all Causes of Action asserted in any pending adversary proceedings commenced by the Debtors prior to the Effective Date. Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action that were held by the Debtors and the bankruptcy estates, in its sole discretion and without further order of the Court, in any court or other tribunal, including, without limitation, in any adversary proceeding filed in one or more of the Chapter 11 Cases.

Unless a Cause of Action against an entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order of the Court, including, without limitation, the Confirmation Order, the Debtors and their bankruptcy estates expressly reserve such Causes of Action for later adjudication or administration by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order, including, without limitation, the Confirmation Order. In addition, the Debtors and their bankruptcy estates expressly reserve the right of the Liquidating Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any entity to whom the Debtors may have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or whom has received services from the Debtors or a transfer of money or property of the Debtors, or

whom has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (a) such entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (b) the Debtors have objected to any such entity's proof of claim; (c) any such entity's claim was included in the Schedules; (d) the Debtors have objected to any such entity's scheduled claim; or (e) any such entity's scheduled claim has been identified by the Debtors as disputed, contingent, or unliquidated.

### 8.5.3   Corporate Action.

On the Effective Date, all matters provided for in this Plan that would otherwise require approval of the members or directors of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporate law of North Dakota, without any requirement of further action by the members or directors of the Debtors.

### 8.5.4   Injunction.

From and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, as the case may be, any suit, action, or other proceeding, on account of or respecting any claim or equity interest, demand, liability, obligation, debt, right, cause of action, interest, or remedy released or satisfied or to be released or satisfied pursuant to the Plan or Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all entities shall be precluded from asserting against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, any other claims or equity interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to this Plan or the Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all claims and equity interests in the Plan shall be in exchange for and in complete satisfaction of claims and equity interests against the Debtors or any of their assets or properties solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to this Plan or Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.  On the Effective Date, all such claims against, and equity interests in, the Debtors shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all persons and entities are permanently enjoined, on and after the Effective Date, on account of any claim or equity interest satisfied and released pursuant to the Plan or Confirmation Order from: (a) commencing or continuing in any manner any action or other proceeding of any kind against any

Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; and (d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or Cause of Action released or settled under this Plan.

### 8.5.5    No Discharge.

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan does not discharge the Debtors' indebtedness.

### 8.6.    Releases and Exculpation.

### 8.6.1    Releases by the Debtors and Their Estates.

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, their estates, and their current and former representatives shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors, their estates, their current and former representatives, and the Committee and its members but solely in their capacity as members of the Committee and not in their individual capacities), from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date, or airing thereafter, in law, at equity, whether for tort, contract, violations of statutes (including, without limitation, the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to, or on, the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a claim or equity interest or other entity would have been legally entitled to assert for, or on behalf of, any of the Debtors or the estates, including those in any way related to the Chapter 11 Cases or the Plan; _provided_, _however_, that the foregoing release shall not prohibit the Debtors or the Liquidating Trustee from asserting any and all affirmative claims, defenses, and counterclaims in respect to any contested claim asserted by any Released Party.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article 8.6 pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the claims and causes of action released by this Plan; (b) in the best interests of the Debtors and all holders of claims and equity interests; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any claim or cause of action thereby released.**

### 8.6.2    Exculpation.

**Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability relating to these Chapter 11 Cases to any entity for any and all claims and causes of action arising after the Filing Date and through the Effective Date, including, without limitation, any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan or distributing property under the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation the execution of any and all settlement agreements filed with the Court in the Chapter 11 Cases; provided, however, that the foregoing provisions of this Article 8.6.2 shall have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

### ARTICLE IX
### EVENTS OF DEFAULT

Unless otherwise provided elsewhere in the Plan, default with respect to the Debtors' or the Liquidating Trustee's obligations under the Plan to any holder of an Allowed claim or other person shall not occur unless and until such holder of an Allowed claim or other person has delivered written notice of such default to the Liquidating Trustee at the address set out in Article 6.2 of the Plan, and the Debtors or the Liquidating Trustee have failed to cure such default within 30 days after receipt of such written notice.  If the Debtors or the Liquidating Trustee fail to cure a default, the sole remedy is a claim for breach of contract, and the Liquidating Trustee shall have such claims and any other remedies provided for in the Plan or pursuant to any interests the Debtors have granted to the Liquidating Trustee under the Plan.

### ARTICLE X
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible to the full extent permitted by the Bankruptcy Code, including jurisdiction to:

a.    Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate, or establish the priority or secured or unsecured status of any claim, including the resolution of any request for payment of any Administrative Expense Claims, and the resolution of any objections to the amount, allowance, priority, or classification of claims;

b.    Resolve any issues arising under asset purchase agreements entered into during the Chapter 11 Cases or their respective sale orders to the extent required for the implementation or execution of the Plan;

c.      Determine all questions and disputes regarding title to the assets of the estates to the extent required for the implementation or execution of the Plan;

d.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

e.      Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate any claims arising therefrom, including any cure amount claims;

f.      Ensure that distributions to holders of Allowed claims are accomplished pursuant to the provisions of this Plan;

g.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and either grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

h.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

i.      Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is entered into or delivered pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

j.      Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

k.      Issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, and enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

l.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

m.      Determine any other matters that may arise in connection with or in relation to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

n.      Enforce or clarify any orders previously entered by the Court in the Chapter 11 Cases;

o.      Enter a final decree closing the Chapter 11 Cases;

p.      Determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code, including any Contested Claims for taxes;

q.      Recover all assets of the Debtor and its estate, wherever located; and

r.      Hear any other matter not inconsistent with the Bankruptcy Code

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### 11.1    Modification of the Plan.

Subject to the restrictions on alteration, amendment, and modification set forth in Section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan and proposed Confirmation Order before the Effective Date.

### 11.2    Revocation of the Plan.

The Debtors, reserve the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan, or if confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtors; (b) prejudice in any manner the rights of the Debtors or any other party in interest; or (c) constitute an admission of any sort by the Debtors or any other party in interest.

### 11.3    Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.4    Corporate Documents.

The organizational documents of the Debtors and related documents shall be amended to the extent necessary as required by Section 1123(a)(6) of the Bankruptcy Code and as may otherwise be required by this Plan.

### 11.5    Regulated Rates.

This Plan affects no rates subject to approval by any governmental regulatory commission.

### 11.6    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

### 11.7    Governing Law.

The rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of North Dakota, without giving effect to principles of conflict of laws.

### 11.8    Construction.

The Section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

### 11.9    Reservation of Rights.

Except as expressly set forth in this Plan, the Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained  in this Plan, nor the taking of any action by a Debtor or any entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the holders of claims or equity interests or other parties-in-interest; or (b) any holder of a claim or other party-in-interest prior to the Effective Date.

### [SIGNATURE PAGE TO FOLLOW]

## SIGNATURE PAGE FOR PLAN

**EPIC COMPANIES MIDWEST, LLC**

By: _Patrick Finn_

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Companies Midwest, LLC

**EPIC COMPANIES MIDWEST 2023, LLC**

By: _Patrick Finn_

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Companies Midwest 2023, LLC

**EPIC EMPLOYEE, LLC**

By: _Patrick Finn_

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Employee, LLC

**EOLA CAPITAL, LLC**

By: _Patrick Finn_

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EOLA Capital, LLC

**EC WEST FARGO, LLC**

By: _Patrick Finn_

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EC West Fargo, LLC

/e/ *Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR DEBTORS**

**DEBTORS' CHAPTER 11 PLAN OF LIQUIDATION
EXHIBIT A – TRUST AGREEMENT**

**TO BE FILED PRIOR TO THE DEADLINE TO OBJECT TO THE DISCLOSURE
STATEMENT**

## DEBTORS' CHAPTER 11 PLAN OF LIQUIDATION
## EXHIBIT B – CAUSES OF ACTION

**Pending Adversary Proceedings**

1. *EPIC Companies Midwest, LLC and EOLA Capital, LLC v. Pioneer Place, LLC*, Adv. Case No. 24-07021.

2. *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. Preference 42, LLC f/k/a EPIC Preference, LLC f/k/a Shepperd Equity Fund, LLC*, Adv. Case No. 24-07022.

3. *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC v. Boulevard Square II, LLC, Boulevard Square III, LLC, and Boulevard Square IV, LLC*, Adv. Case No. 24-07023.

4. *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. SAD Downtown, LLC d/b/a The Firm*, Adv. Case No. 24-07024.

5. *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC v. Area 57 Association, Inc., Greenfield Commons, LLC, Greenfield Commons II, LLC, and Greenfield Commons III, LLC*, Adv. Case No. 24-07025.

6. *EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC v. Pioneer Place Holdings, LLC*, Adv. Case No. 24-07032.

7. *EPIC Companies Midwest 2023, LLC and EOLA v. LTC – The Don, LLC*, Adv. Case No. 24-07035.

8. *EPIC Companies Midwest, LLC v. 36th and Veterans, LLC*, Adv. Case No. 24-07036.

9. *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. EPIC Management, LLC*, Adv. Case No. 24-07037.

10. *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. EPIC Holdings, LLC*, Adv. Case No. 24-07038.

11. *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EOLA Capital, LLC v. EPIC Holdings II, LLC*, Adv. Case No. 24-07039.

12. *EPIC Companies Midwest, LLC and EOLA Capital, LLC v. HI West Acres, LLC, f/k/a EPIC Hospitality, LLC*, Adv. Case No. 24-07040.

13.    *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EOLA Capital, LLC v. LTC – The Lincoln, LLC*, Adv. Case No. 25-07005.

14.    *EPIC Companies Midwest, LLC v. Fargo South Hospitality, LLC*, Adv. Case No. 25-07006.

15.    *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. Sheyenne 32 North, LLC, Sheyenne 32 South, LLC, and Sheyenne 32 South Residential, LLC*, Adv. Case No. 25-07007.

16.    *EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC v. EPIC Gateway LLC, EPIC Gateway North Real Estate Holdings, LLC, and Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC*, Adv. Case No. 25-07008.

17.    *EOLA Capital, LLC v. The Tracks – Maverick, LLC*, Adv. Case No. 25-07010.

18.    *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC v. EOLA Landholdings, LLC*, Adv. Case No. 25-07012.

19.    *EPIC Companies Midwest 2023, LLC v. Dutch Mill Development, LLC*, Adv. Case No. 25-07013.

20.    *EPIC Companies Midwest, LLC v. CBE, LLC*, Adv. Case No. 25-07014.

21.    *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. Northern Mall Partners, LLC*, Adv. Case No. 25-07015.

22.    *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. Makt, LLC*, Adv. Case No. 25-07016.

23.    *EPIC Companies Midwest, LLC v. EPIC Place, LLC*, Adv. Case No. 25-07017.

24.    *EPIC Companies Midwest 2023, LLC and EPIC Employee, LLC v. BA Downtown, LLC*, Adv. Case No. 25-07018.

25.    *EPIC Companies Midwest 2023, LLC v. West Fargo Dive Bar, LLC*, Adv. Case No. 25-07019.

**Pending State Court Actions**

1.    *EPIC Companies Midwest, LLC and EOLA Capital, LLC v. Pioneer Place, LLC*, No. 09-2025-CV-00412, Cass County.

2. *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC v. Boulevard Square II, LLC*, Case No. 09-2025-CV-00415, Cass County.

3. *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC v. Boulevard Square IV, LLC*, Case No. 51-2025-CV-00299, Ward County.

4. *EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC v. Pioneer Place Holdings, LLC*, Case No. 51-2025-CV-01007, Ward County.

5. *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. EPIC Management, LLC*, Case No. 51-2025-CV-00631, Ward County.

**Other Causes of Action**

1. Any and all causes of action under chapter 5 of the title 11 of the United States Code.

2. Any and all other actions, proceedings, causes of action, liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, rights to object to claims, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether asserted or assertable directly or derivatively, in law, equity, or otherwise, and all rights thereunder or attendant thereto that belong to the Debtors or their bankruptcy estates.

**DEBTORS' CHAPTER 11 PLAN OF LIQUIDATION**
**EXHIBIT C  - ASSUMED AGREEMENTS AND CURE AMOUNTS**

| Agreement Description | Counterparty | Cure Amount |
|---|---|---|
| Microsoft Customer Agreement 520773F12B66 | Microsoft | $0.00 |
| Microsoft Customer Agreement 1A16CE98F346 | Microsoft | $0.00 |
| Sage 100 software license (Serial No. 0098409) | The Sage Group | $0.00 |
| Managed Services Agreement dated 02/28/23 | Giga-Green Technologies Inc. | $0.00 |
| Independent Contractor Agreement effective June 19, 2024 | Vicki Campbell | $0.00 |