# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

In re:

| | |
|---|---|
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

## UNSECURED CREDITOR JAMES OLSON'S
## OBJECTION TO DEBTORS' DISCLOSURE STATEMENT

**I.  INTRODUCTION**

Debtors EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (hereinafter collectively referred to as "Debtors") voluntarily sought protection under Chapter 11 of the United States Bankruptcy Code ("Code") on July 8, 2024.  On May 5, 2025, Debtors filed their Disclosure Statement. Debtors' Disclosure Statement lacks the "adequate information" that the Code requires in order to be approved.  Therefore, pursuant to 11 U.S.C. § 1125 and Bankruptcy Rules 3016 and 3017, unsecured creditor James Olson ("Olson") objects to Debtors' Disclosure Statement, respectfully requests that the Court deny approval of the same, and seeks an order from the Court that Debtors must file an amended disclosure statement within 15 days of the hearing on this matter, currently scheduled for June 10, 2025.

## II. PURPOSE AND LEGAL REQUIREMENTS OF A DISCLOSURE STATEMENT

The purpose of a debtor's disclosure statement is to give creditors adequate information so that they may make an informed judgment on acceptance, or rejection, of the debtor's plan of reorganization. In re Dakota Rail, Inc., 104 B.R.142 (Bankr. D. Minn. 1989). Solicitation of the acceptance or rejection of a plan cannot be made unless, at the time of or before such solicitation, the party proposing the plan has had a written disclosure statement approved by the bankruptcy court. 11 U.S.C. § 1125(b). An approved disclosure statement must contain "adequate information". Id.

"Adequate information" is a defined term in the Code. "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. 1125(a).

Although a defined term, Congress left vague the legal standard for determining if "adequate information" has been provided. In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990). What constitutes "adequate information" is a flexible standard decided on a case-by-case basis. Id. In making its determination, a court should consider the cost of preparing a more detailed disclosure, the nature of the debtor's

2

business and its history, the condition of debtor's records, the need for expediency, and the need to protect the constituents of the reorganization. Id.

Although not provided for in the Code courts around the United States have generally adopted a non-exhaustive 19-point list of the types of information required to be in a disclosure statement. That list is as follows:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor;

4. The source of the information provided in the disclosure statement;

5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectability of any accounts receivable;

14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

3

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

Id; see also In re Dakota Rail, Inc., 104 B.R. at 142; In re Ferretti, 128 B.R. 16 (Bankr. D. N.H.); In re Metrocraft Pub. Services, Inc. 39 B.R. 567 (Bankr. N.D. Georgia 1984). Although not mandatory, the items contained in this list generally provide the type of information that a creditor would deem pertinent in its decision-making process.

Ultimately, when a court makes its ruling on the adequacy of a disclosure statement it must consider whether the disclosure contains enough information that would allow the typical creditor to make an informed decision on how to vote. In re Dakota Rail, Inc., 104 B.R. at 143.

### III. OBJECTIONS OF OLSON TO DEBTORS' DISCLOSURE STATEMENT

Debtors' Disclosure Statement lacks adequate information which would allow its creditors to make an informed judgment on whether the Debtors' plan of reorganization should be accepted or rejected. Olson makes the following specific objections:

a. Debtors have failed to adequately explain the relationship between themselves and their affiliates. In their statement, Debtors assert, "The Debtors are part of a series of affiliated companies known collectively as "EPIC Companies. . . All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning. See Debtors' Disclosure Statement, pg. 3, II. A (emphasis added). This statement begs several questions. What are the affiliated entities? How many are there? How are they affiliated? Besides Todd Berning, who are the other "certain individuals" who ran these companies? Are they still involved? Will

4

they be involved? Will their continued involvement subject Debtors to law enforcement actions?  Debtors blanket statement raises several unanswered, "who, what, when" questions that Debtors should be required to answer.

b. Debtors fail to provide information as to the circumstances that led them into bankruptcy. Debtors assert, pg. 5, C. Events Leading to the Chapter 11 Case, that, "In the spring of 2024, EPIC Companies encountered several financial challenges." This would seem abundantly clear by the fact that they are in Chapter 11.  The question isn't did they have financial challenges, the question is **what** were those financial challenges and how did they arise?  It is very simple to assert certain loans were not being repaid. However, when these loans were being signed by the "certain individuals" as claimed herein, what actions of these "certain individuals" occurred such that the entities that they all structured, organized, and controlled all of a sudden could no longer service their debt. Those questions must be answered and disclosed.

c. Debtors future financial outlook is bleak. Per their own admission, as of March 31, 2025, the Debtors collectively had $282,535.00 in cash.  This is extremely low considering past budgetary representations made to the Court. Furthermore, since that date, Debtors have incurred approximately $318,000 in professional fees. (See Docket Entry Nos. 265, 266, 269, 277, 282, 311, 313, and 314) Recognizing that some settlements have occurred, there is the appearance of very little value going to anyone other than the estate professionals. How will the Debtors provide a return to the unsecured creditors?

d. Litigation is always risky.  While there are many lawsuits outstanding, there is no guarantee of success on them.  And, even in the event of a successful outcome,

5

there is no guarantee that the defendants will have the funds to pay on the judgment. After all, it has been represented to the Court that at least one of the reasons for this bankruptcy filing is that third-parties weren't paying their unsecured debt obligations. Were they able to and just chose not to pay? Did they not have the cash flow to make payment? What changes with a judgment if the parties simply can't pay, and, by their own admissions, judgments would be behind fully secured financial institutions.

     e.    Olson joins in all other objections on record with the Court, if any, as if raised by him herein.

## IV.   CONCLUSION

When determining whether to approve a disclosure statement courts must consider the cost associated with preparing a more detailed disclosure, the history and nature of debtor's business, the condition of debtor's records, the need for expediency, and the need to protect the constituents of the reorganization. Olson submits that based upon the reasons stated herein Debtors' Disclosure Statement fails to meet the requirement of providing "adequate information". Olson therefore respectfully requests that the Debtors' Disclosure Statement not be approved.

Dated this 5th day of June, 2025.

           /s/ Michael L. Gust
Michael L. Gust (ND #06468)
ABST Law, P.C.
4132 30th Avenue South, Suite 100
P.O. Box 10247
Fargo, ND 58106-0247
(701) 235-3300
*mgust@abstlaw.net*
Attorney for James Olson

6

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re:

| | |
|---|---|
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

**CERTIFICATE OF SERVICE**

The undersigned, being first sworn, says upon her oath that a copy of each of the following:

1. Unsecured Creditor James Olson's Objection to Debtors' Disclosure Statement

was caused to be filed electronically with the Clerk and email notification pursuant to the Electronic Case Filing System, constitutes service.

Dated this 5th day of June, 2025.

                                                  /s/ Jennifer A. Ernst
                                                Jennifer A. Ernst