## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| | |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| | |
| Debtors. | Chapter 11 |

## DECLARATION OF STEVEN R. KINSELLA IN SUPPORT OF
## CHAPTER 11 PLAN OF LIQUIDATION

I, Steven R. Kinsella, make the following declaration in support of the Debtors' Amended Chapter 11 Plan of Liquidation (the "Plan") (ECF No. 366) and the Debtors' Amended Disclosure Statement in Support of Debtors' Amended Chapter 11 Plan of Liquidation (the "Disclosure Statement") (ECF No. 367):

1.     I am a shareholder at Fredrikson & Byron, P.A.  I am authorized to practice before the courts of the State of North Dakota and the federal courts for the District of North Dakota, among others. Fredrikson & Byron, P.A. serves as chapter 11 counsel for the above-captioned debtors (the "Debtors").

2.     On June 10, 2025, the Court held a hearing on the Debtors' original disclosure statement (ECF No. 285).  At the hearing, the Debtors agreed to make modifications to the disclosure statement, plan, and supporting exhibits.

3.     On June 11, 2025, the Debtors filed the Plan and Disclosure Statement, which reflect the changes discussed at the hearing.

4.     Attached hereto as **Exhibit 1** is a true and correct copy of a redline reflecting the changes made to the Plan.

5.      Attached as **<u>Exhibit 2</u>** is a true and correct copy of a redline reflecting the changes made to the Disclosure Statement.

6.      Attached as **<u>Exhibit 3</u>** is a true and correct copy of a redline reflecting the changes made to the Trust Agreement (Exhibit A to the Plan).

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  June 11, 2025                          _/s/ Steven R. Kinsella_____
                                                            Steven R. Kinsella

**<u>EXHIBIT 1</u>**

## EPUNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

---

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Case No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Case No. 24-30282 |
| EPIC Employee, LLC, | Case No. 24-30283 |
| EOLA Capital, LLC, and | Case No. 24-30284 |
| EC West Fargo, LLC, | Case No. 24-30285 |
| Debtors.[1] | Chapter 11 Cases |

---

## DEBTORS' AMENDED CHAPTER 11 PLAN OF LIQUIDATION

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is c/o Lighthouse Management Group, Inc., 900 Long Lake Road, Suite 180, New Brighton, MN 55112 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 4

ARTICLE I    DEFINITIONS ........................................................................................ 4
    1.1    Defined Terms. ................................................................................... 4
    1.2    Interpretation. ...................................................................................... 7
    1.3    Time Periods. ....................................................................................... 8
    1.4    Exhibits. ............................................................................................... 8

ARTICLE II          CLASSIFICATION OF CLAIMS AND INTERESTS ................ 8

ARTICLE III          TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS ..... 9
    3.1.    Allowed Administrative Expense Claims. ........................................... 9
    3.2.    Statutory Fees and Court Costs. ......................................................... 10
    3.3.    Unsecured Priority Claims. ................................................................ 10

ARTICLE IV          TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...... 10
    4.1.    Class 1 – General Unsecured Claims. ................................................ 10
    4.2.    Class 2 – Class B Equity Claims. ...................................................... 11
    4.3.    Class 3 – Class A Claims. .................................................................. 11

ARTICLE V          MEANS OF IMPLEMENTATION OF PLAN ............................. 11
    5.1    Substantive Consolidation. ................................................................ 11
    5.2    Liquidating Trust and Liquidating Trustee. ...................................... 12
    5.3    Beneficiaries of Liquidating Trust. ................................................... 16
    5.4    Liquidating Trust Advisory Committee. ........................................... 16
    5.5    Liability and Indemnification of Liquidating Trustee and Liquidating Trust Advisory Committee Members. ........................ 17
    5.6    Term of Liquidating Trust. ................................................................ 18
    5.7    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes. ....................................... 18
    5.8    Cancellation of Instruments. ............................................................. 19
    5.9    Dissolution of the Committee. ........................................................... 19
    5.10    Books and Records. ......................................................................... 19

ARTICLE VI          DISTRIBUTIONS AND CLAIMS ADMINISTRATION ............ 19
    6.1    Distributions. ..................................................................................... 19
    6.2    Method of Payment. .......................................................................... 20
    6.3    Claims Administration Responsibility. .............................................. 20
    6.4    Record Date for Distributions. .......................................................... 20
    6.5    Procedures for Treating and Resolving Contested Claims. ............... 21
    6.6    De Minimis Distributions. ................................................................. 21
    6.7    Unclaimed Payments. ........................................................................ 21
    6.8    Time Bar to Check Payments. ........................................................... 21
    6.9    Setoffs. ............................................................................................... 22

2

ARTICLE VII          EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................ 22
    7.1.   Assumption or Rejection of Executory Contracts and Unexpired Leases. ......... 22
    7.2.   Cure of Defaults. ...................................................................................... 22
    7.3.   Bar Dates for Rejection of Damage Claims. .......................................... 22

ARTICLE VIII         CONFIRMATION OF THE PLAN .................................................. 23
    8.1.   Conditions Precedent to the Effective Date. ........................................... 23
    8.2.   Waiver of Conditions to Confirmation or Effective Date. ........................ 23
    8.3.   Notice of the Effective Date. .................................................................. 23
    8.4.   Cramdown. ............................................................................................. 23
    8.5.   Effect of Confirmation of the Plan. ........................................................ 24
    8.6.   Releases and Exculpation. ...................................................................... 26

ARTICLE IX           EVENTS OF DEFAULT .................................................................. 27

ARTICLE X            RETENTION OF JURISDICTION .................................................. 27

ARTICLE XI           MISCELLANEOUS PROVISIONS .................................................. 29
    11.1   Modification of the Plan. ........................................................................ 29
    11.2   Revocation of the Plan. .......................................................................... 29
    11.3   Severability of Plan Provisions. .............................................................. 29
    11.4   Corporate Documents. ............................................................................ 30
    11.5   Regulated Rates. ..................................................................................... 30
    11.6   Successors and Assigns. .......................................................................... 30
    11.7   Governing Law. ...................................................................................... 30
    11.8   Construction. .......................................................................................... 30
    11.9   Reservation of Rights. ............................................................................ 30

**INTRODUCTION**

The Debtors, each as defined below, propose the following Plan, as defined below, for the purpose of completing the liquidation of the Debtors' assets, resolving the outstanding claims held by the bankruptcy estates, resolving the outstanding claims against the bankruptcy estates, and making distributions to holders of Allowed claims, as defined below.

All creditors are encouraged to consult the Disclosure Statement, as defined below, in support of the Plan, for a discussion of the history, business, operations, and property of the Debtors; a summary and analysis of this Plan; risk factors related to this Plan; and certain other matters related to the above-captioned Chapter 11 bankruptcy cases. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

This Plan contemplates the appointment of a Liquidating Trustee, as defined below, to complete the liquidation of all remaining assets and distribute the proceeds to creditors. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ARTICLE I**
**DEFINITIONS**

**1.1   Defined Terms.**

For the purposes of the Plan, except as expressly provided, all capitalized terms have the meanings ascribed to them below:

(1)   "Administrative Expense Claim" means a claim for an unpaid administrative expense of the kind described in Sections 503(b) and 507(a)(2) of the Bankruptcy Code asserted against the Debtors, including: (a) the actual, necessary costs and expenses of preserving the estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) compensation and reimbursement of expenses of professionals to the extent allowable under Sections 327, 328, 330(a), 331, 503(b), and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court; and (c) all fees and charges assessed against the estates under 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the U.S. Trustee.

(2)   "Allowed" means with respect to any claim: (a) a claim that has been scheduled by the Debtors in their respective Schedules as other than disputed, contingent, or unliquidated and as to which the Debtors or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtors to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a

4

Contested Claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtors or any party-in-interest has not filed an objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtors.

(3)      "<u>Avoidance Claim</u>" means any claim, Cause of Action, or rights to property of the Debtors or the bankruptcy estates under Sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

(4)      "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

(5)      "<u>Bankruptcy Rule</u>" means a Federal Rule of Bankruptcy Procedure.

(6)      "<u>Causes of Action</u>" means the actions identified on **<u>Exhibit B</u>**.

(7)      "<u>Chapter 11 Cases</u>" means the Debtors' pending Chapter 11 cases under the Bankruptcy Code and before the Court, with the following case numbers: 24-30281, 2430282, 24-30283, 24-30284, and 24-30285,  which are jointly administered under case number 24-30281.

(8)      "<u>Class A Equity Interests</u>" means all Class A equity interest in any of the Debtors that existed immediately prior to the Filing Date.

(9)      "<u>Class B Equity Interests</u>" means all Class B equity interests in one or more of the Debtors pursuant to certain subscription agreements and letters of investment intent.

(10)      "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

(11)      "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered.

(12)      "<u>Confirmation Order</u>" means the order entered by the Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

(13)      "<u>Contested Claim</u>" means: (a) a claim listed by the Debtors in their respective Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtors or other party in interest has objected to allowance of the claim under Sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtors have demanded the recovery of property pursuant to Section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtors' insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(14)      "<u>Court</u>" means the United States Bankruptcy Court for the District of North Dakota, or such other court of competent jurisdiction which properly exercises jurisdiction over part or all of the Chapter 11 Cases.

(15)      "<u>CRO</u>" means the Chief Restructuring Officer of the Debtors appointed in the Chapter 11 Cases, which is Lighthouse Management Group, Inc.

(16)      "<u>Debtors</u>" means, collectively, EPIC Midwest, EPIC Midwest 2023, EPIC Employee, EOLA, and EC West Fargo.

(17)      "<u>Disclosure Statement</u>" means the disclosure statement in support of this Plan, as may be further revised, modified, or amended.

(18)      "<u>Effective Date</u>" means the first business day following the day on which the conditions of Article 8.1 of the Plan have been satisfied or waived.

(19)      "<u>EC West Fargo</u>" means EC West Fargo, LLC.

(20)    "<u>EOLA</u>" means EOLA Capital, LLC.

(21)    "<u>EPIC Employee</u>" means EPIC Employee, LLC.

(22)    "<u>EPIC Midwest</u>" means EPIC Companies Midwest, LLC.

(23)    "<u>EPIC Midwest 2023</u>" means EPIC Companies Midwest 2023, LLC.

(24)    "<u>Filing Date</u>" means July 8, 2024.

(25)    "<u>Final Order</u>" means an order of the Court which has not been reversed, stayed, modified, or amended and the time to appeal from or to seek review or rehearing of such order has expired.

(26)    "<u>Liquidating Trust</u>" means the grantor trust to be created upon the Effective Date for the benefit of its beneficiaries, as set forth in Article 5.2.

(27)    "<u>Liquidating Trust Advisory Committee</u>" means the committee formed in accordance with Article 5.4 of the Plan and which shall direct the Liquidating Trustee to carry out its powers in accordance with the Plan and Confirmation Order.

(28)    "<u>Liquidating Trust Agreement</u>" means the agreement, substantially in the form attached as **<u>Exhibit A</u>**, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

(29)    "<u>Liquidating Trust Assets</u>" means the assets held in the Liquidating Trust comprised of: (a) all Causes of Action of the Debtors, but excluding those expressly waived in this Plan; and (b) all other unencumbered assets of the Debtors' bankruptcy estates remaining after all payments have been made pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, as applicable, on the Effective Date.

(30)    "<u>Liquidating Trustee</u>" means the person or entity with the powers and duties described in Article 5.2 of the Plan, which will initially be Lighthouse Management Group, Inc.

(31)    "<u>Local Rules</u>" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of North Dakota.

(32)    "<u>Plan</u>" means this Chapter 11 plan of liquidation, including exhibits and supplements, all as may be amended, revised, or modified.

(33)    "<u>Priority Tax Claim</u>" means a claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

(34)    "<u>Record Date</u>" means the date that the Court approves the Disclosure Statement.

(35)    "<u>Released Parties</u>" means, collectively, the Debtors, the CRO, the members of the Committee (solely in their capacity as members of the Committee), and the Debtors' and the Committee's professionals employed in the Chapter 11 cases pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code.

(36)    "<u>Schedules</u>" means the Debtors' schedules of assets and liabilities and the statement of financial affairs on file with the Clerk of the United States Bankruptcy Court for the District of North Dakota, as amended or modified in accordance with Bankruptcy Rule 1009.

(37)    "<u>U.S. Trustee</u>" means the United States Trustee appointed under Article 591 of Title 28 of the United States Code to serve in the District of North Dakota.

**1.2    Interpretation.**

For purposes of the Plan:

(1)    any term that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

6

(2)    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to," "include(s), but is not limited to," or "includes, without limitation";

(3)    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(4)    the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(5)    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(6)    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(7)    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented;

(8)    unless otherwise specified, all references in the Plan to "Articles" and "Exhibits" are references to Articles and Exhibits of or to the Plan;

(9)    captions and headings to Articles are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(10)    the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3    Time Periods.**

In computing any period of time prescribed or authorized by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or authorized by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4    Exhibits.**

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan as if set forth fully in the Plan.  The exhibits to the Plan include the following:

**Exhibit A**    Liquidating Trust Agreement

**Exhibit B**    Schedule of Causes of Action

**Exhibit C**    Schedule of Assumed Executory Contracts and Unexpired Leases

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

As set forth in Article 5.1 of the Plan, the Plan provides for the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

The following table designates the classes of claims against and equity interests in the Debtors and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.  A claim is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in other classes to the extent that any remainder of the claim qualifies within the description of such other classes.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expenses | N/A | No |
| N/A | Statutory Fees and Court Costs | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1 | General Unsecured Claims | Yes | Yes |
| 2 | Class B Equity Claims | Yes | Yes |
| 3 | Class A Equity Claims | Yes | No |

# ARTICLE III
# TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS

Certain Allowed claims that are not classified shall be treated as follows:

## 3.1.    Allowed Administrative Expense Claims.

Except as otherwise provided in this Article, holders of Allowed claims specified in Section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash from the Liquidating Trust as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Court.

### 3.1.1    Postpetition Operating Expenses.

With respect to the Debtors' Allowed operating expenses incurred during the Chapter 11 Cases, the Debtors generally paid these expenses as they came due or through other arrangements thereafter.  If any Allowed Administrative Expense Claims resulting from postpetition operations come due after the Effective Date, or for any other reason have not been paid as of the Effective Date, these claims shall be paid from the Liquidating Trust as the claims become due or as otherwise agreed between the holders of such claims and the Liquidating Trustee.

### 3.1.2    Professional Fees and Expenses.

Professional fees and expenses incurred through the Effective Date and not previously Allowed shall be subject to Court approval after the Effective Date. All holders of

8

professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Filing Date to the Effective Date, no later than 30 days after the Effective Date. The Liquidating Trustee shall pay any Allowed professional fees and expenses within 10 days of the later of: (a) the Effective Date; or (b) the Court's order allowing such claim.

### 3.1.3    Postpetition Taxes.

In the event that the Debtors have liability to any taxing authority on account of unpaid taxes that accrued and were payable after the Filing Date, the Debtors or the Liquidating Trustee shall pay such taxes from the Liquidating Trust in full in cash as soon as practicable following the later of:                    (a) the Effective Date; or (b) approval by the Court.

## 3.2.    Statutory Fees and Court Costs.

Court costs and fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid in full in cash from the Liquidating Trust on the Effective Date or as soon as practicable thereafter or as required under the U.S. Trustee's quarterly fee payment guidelines. The Debtors estimate these claims shall be nominal, as they have remained current on such payments. After the Effective Date, the Liquidating Trustee shall be responsible for paying quarterly fees to the U.S. Trustee, filing monthly operating reports through the substantial consummation of the Plan on the Effective Date, and, thereafter, filing quarterly reports through the date the Chapter 11 Cases are closed, dismissed, or converted. Such reports shall be in the format prescribed by the U.S. Trustee. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

## 3.3.    Unsecured Priority Claims.

### 3.3.1    Priority Tax Claims.

The Debtors estimate that the Allowed Priority Tax Claims total approximately $0. The Allowed Priority Tax Claims shall be paid in full in cash as soon as practicable following the later of (a) the Effective Date; or (b) the date on which such claims are Allowed.

Notwithstanding anything to the contrary in this Plan, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, the Allowed Priority Tax Claim. Any such claim or demand for any such penalty shall be subject to treatment in Class 1, if not subordinated to Class 1 claims pursuant to an order of the Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust, or the property of either (other than as a holder of a Class 1 claim).

### 3.3.2    Other Priority Claims.

All other Allowed claims not specifically treated in this Article and entitled to priority under Section 507(a) of the Bankruptcy Code shall be paid from the Liquidating Trust in full in cash as soon as practicable following the later of: (a) the Effective Date; (b) the due date; or (c) the date on which such claims are Allowed.

<div align="center">

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

</div>

**4.1.    Class 1 – General Unsecured Claims.**

Class 1 consists of the general unsecured claims asserted against the Debtors.  Except to the extent that a holder of a Class 1 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 1 claim shall receive a pro rata distribution from the Liquidating Trust after the payment of all Allowed Administrative Expense Claims as provided in Article 3.1 of this Plan, statutory fees and costs as provided in Article 3.2 of this Plan, Allowed priority claims as provided in Article 3.3 of this Plan, and all costs and expenses of the Liquidating Trust.  Class 1 claims shall include claims by counterparties to executory contracts and unexpired leases that are rejected pursuant to Article VII of this Plan.

Nothing contained in this Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 1 claim as permitted under the Bankruptcy Code or otherwise applicable law.  The payments to the holder of the Class 1 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1 claims.

**4.2.    Class 2 – Class B Equity Claims.**

Class 2 consists of the Class B Equity Interests.  Except to the extent that a holder of a Class 2 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 2 claim shall receive the same treatment as provided to the holder of an Allowed Class 1 claim under Article 4.1 of this Plan.

Nothing contained in this Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law.  The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

**4.3.    Class 3 – Class A Claims.**

Class 3 consists of the Class A Equity Interests in the Debtors.  Holders of Class 3 claims shall not receive a distribution under this Plan.  All Class A Equity Interests shall be deemed cancelled upon the Effective Date.  Class 3 is deemed to reject the Plan.

# ARTICLE V
## MEANS OF IMPLEMENTATION OF PLAN

**5.1**     **Substantive Consolidation.**

The Plan and Disclosure Statement jointly incorporate the Debtors' *Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations* [Docket No. __]. The Plan contemplates and is predicated upon the Confirmation Order substantively consolidating the Debtors' estates and the Chapter 11 Cases as set forth in this Plan and in the above-described motion. Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

On and after the Effective Date: (a) all assets and liabilities of the Debtors shall be treated as though they were pooled; (b) each claim filed or to be filed against any of the Debtors, as to which two or more of the Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single claim against, and a single obligation of, the Debtors; (c) all claims held by one of the Debtors against one or more of the other Debtors shall be cancelled or extinguished; (d) no distributions shall be made under the Plan on account of any claim held by one of the Debtors against one or more of the other Debtors; (e) all guarantees of any of the Debtors of the obligations of one or more of the other Debtors shall be eliminated so that any claim against any of the Debtors and any claim based upon a guarantee thereof executed by one or more of the other Debtors shall be treated as one claim against the substantively-consolidated Debtors; and (f) any joint and several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any claims based upon such joint or several liability shall be treated as one claim against the substantively-consolidated Debtors.

The substantive consolidation of the Debtors under the Plan shall not, other than for purposes related to funding the distributions under the Plan, affect: (a) the legal and organizational structure of the Debtors; (b) the executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected; (c) any agreements entered into by the Liquidating Trust on or after the Effective Date; (d) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge claims on an entity-by-entity basis; (e) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the estates of the Debtors; and (f) distributions to the Debtors or the Liquidating Trust from any insurance policies or proceeds thereof. Notwithstanding the substantive consolidation called for in this Plan, each of the Debtors shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until each particular case is closed, dismissed, or converted.

**5.2**     **Liquidating Trust and Liquidating Trustee.**

**5.2.1**     **Liquidating Trust.**

On the Effective Date the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement. Additionally, on the Effective Date, the Debtors shall irrevocably transfer to the

Liquidating Trust all right, title, and interest in and to the Liquidating Trust Assets in accordance with the Plan, including, without limitation, Article 8.5 of the Plan. In its capacity as Liquidating Trustee, the Liquidating Trustee shall accept all Liquidating Trust Assets on behalf of the beneficiaries of the Liquidating Trust, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in its possession. The Liquidating Trust shall be deemed created and effective without any further action by the Court or any person as of the Effective Date. The Liquidating Trust shall be established for the purposes of (a) collecting and liquidating the Liquidating Trust Assets; (b) prosecuting and resolving the Causes of Action; (c) maximizing recovery of the Liquidating Trust Assets for the benefit of the beneficiaries of the Liquidating Trust; and (d) distributing the proceeds of the Liquidating Trust Assets to the beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

The transfer of assets and rights to the Liquidating Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the Debtors still held the asset or right.

### 5.2.2   Liquidating Trustee.

The CRO shall be appointed the Liquidating Trustee and such appointment shall be approved by the Court pursuant to the Confirmation Order. Following appointment, the Liquidating Trustee shall act in accordance with the Plan and Liquidating Trust Agreement, and, in such capacity, shall have the same powers as the board of directors and officers of the Debtors, and all bylaws, articles, and related corporate documents shall be deemed amended by the Plan to permit and authorize the same. The Liquidating Trustee's primary tasks are to receive the Liquidating Trust, liquidate assets, pursue Causes of Action, administer claims, and distribute proceeds for the benefit of the holders of Allowed claims.

The Liquidating Trustee shall file a motion, application, or other request to close the Chapter 11 Cases when the cases have been fully administered.

### 5.2.3   Powers and Duties of the Liquidating Trustee.

The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the bankruptcy estates of the Debtors appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code regarding all Liquidating Trust Assets. The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including through the creation of reserves as provided for under the Plan; (b) file tax returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Debtors, the bankruptcy estates, and the Liquidating Trust to the extent payable consistent with the Plan, the Bankruptcy Code, or order of the Court; (c) retain and compensate, without further order of the Court, the services of employees, professionals,

and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust; (d) calculate and implement distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust and, as set forth in Articles 5.2.5 and 8.5 of the Plan, those Causes of Action may be settled or compromised without notice and a hearing and without Court approval, but shall be subject to the consent of the Liquidating Trust Advisory Committee; (f) address and resolve issues involving objections, reconciliation, and allowance of claims and equity interests in accordance with this Plan; (g) undertake all administrative functions of the Plan and the Chapter 11 Cases, including the payment of all secured claims, Administrative Expense Claims, Priority Tax Claims, other priority claims, and fees payable to the U.S. Trustee, and the ultimate closing of the Chapter 11 Cases; (h) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer any asset on behalf of the Debtors and the Liquidating Trust; (i) defend, protect, and enforce any and all rights and interests transferred to the Liquidating Trust or Liquidating Trustee; (j) open, create, or close accounts to deposit, hold, and disburse funds; (k) invest cash in demand or time deposits to obtain market rates of return pending distributions; (l) file any and all reports and motions or requests for relief with the Court and any opposition thereto; (m) dissolve the Debtors or otherwise wind up the Debtors' corporate affairs and existence; (n) subject to approval of the Liquidating Trust Advisory Committee, incur indebtedness to fund administration of the Plan; and (o) perform any other functions that are necessary to effectuate this Plan and perform its duties as Liquidating Trustee. The Liquidating Trust is the successor to the Debtors and their estates.

On the Effective Date, the Liquidating Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or required.

The Liquidating Trustee may, but shall not be required to, invest cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 26 C.F.R. § 1.67-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which distributions from the Liquidating Trust are made) send to each known beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any class that is not expected to receive any distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit shall be allocated to the Liquidating Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust. As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures

13

relating to the Liquidating Trust that are required by any governmental unit for taxing purposes. The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.  The Liquidating Trustee shall be responsible for filing all tax returns for the Debtors and the Liquidating Trust.  The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

### 5.2.4   Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust.

Pursuant to Section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any non-cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or are burdensome to the Liquidating Trust.  Any non-cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.

### 5.2.5   Prosecution and Resolution of Causes of Action.

From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust and Liquidating Trustee pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Liquidating Trust and Liquidating Trustee shall have exclusive rights, powers, and interests of the Debtors' estates to pursue, settle, or abandon such Causes of Action as the sole representative of the Debtors' estates pursuant to Section 1123(b) of the Bankruptcy Code.  Proceeds recovered from all Causes of Action shall be deposited into the Liquidating Trust and shall be distributed by the Liquidating Trustee to the beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement.  As detailed more fully in Article 8.5.2 of the Plan, all Causes of Action that are not expressly released or waived under this Plan are reserved and preserved, transferred to, and vest in, the Liquidating Trust and Liquidating Trustee in accordance with this Plan. No person or entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such person or entity. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any person that are expressly released or waived under this Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of this Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released, and discharged pursuant to the Plan.  Settlement by the Liquidating Trust of

14

any Cause of Action transferred to the Liquidating Trust shall not require notice of approval of the Bankruptcy Court, and shall only require approval of the Liquidating Trustee in its discretion and in consultation with the Liquidating Trust Advisory Committee.

### 5.2.6   Liquidating Trust Expenses.

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.   Such costs, expenses, and obligations shall include secured claims, Administrative Expense Claims, Tax Priority Claims, and other priority claims not otherwise satisfied as of the Effective Date.   Such costs, expenses, and obligations shall be paid in accordance with the Liquidating Trust Agreement.

### 5.2.7   Compensation and Retention of Professionals.

The Liquidating Trustee shall be entitled to be paid reasonable compensation and expenses from the Liquidating Trust, subject to the consent of the Liquidating Trust Advisory Committee.  The Liquidating Trustee shall be entitled to retain professionals without Court approval, but with consent of the Liquidating Trust Advisory Committee to assist in its duties, and shall be entitled to pay such professionals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee.   For the avoidance of doubt, the Liquidating Trustee may retain the former professionals of the Debtor and the Committee.  The Liquidating Trustee may hire former employees and other "insiders"   (as that term is defined in the Bankruptcy Code) of the Debtors for postconfirmation services, and may pay such individuals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee.   For the avoidance of doubt, no "insider" or "affiliate" (as those terms are defined in the Bankruptcy Code) shall serve as the Liquidating Trustee or as a member of the Liquidating Trust Advisory Committee.

### 5.2.8   Removal of the Liquidating Trustee.

As provided in Section 4.2 of the Trust Agreement, at any time upon 30 days' written notice to the Liquidating Trustee and the U.S. Trustee and upon a unanimous vote by the members of the Liquidating Trust Advisory Committee, the Liquidating Trust Advisory Committee may remove the Liquidating Trustee and appointing a successor Liquidating Trustee under Section 4.3 of the Trust Agreement.   For the avoidance of doubt, no "insider" or an "affiliate" (as those terms are defined in the Bankruptcy Code) shall serve as the Liquidating Trustee.

### 5.2.9   Federal Income Tax Treatment of Liquidating Trust for the Liquidating Trust Assets.

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under 26 C.F.R. Section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors' estates of an undivided interest in each of the

15

Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners of the Liquidating Trust.

### 5.3    Beneficiaries of Liquidating Trust.

The holders of Allowed Class 1 and Class 2 claims shall be the beneficiaries of the Liquidating Trust.  Such beneficiaries shall be bound by the Liquidating Trust Agreement.  The interests of the beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

### 5.4    Liquidating Trust Advisory Committee.

The Liquidating Trust Advisory Committee shall be a three-member committee established under the Liquidating Trust Agreement and the members of the Liquidating Trust Advisory Committee shall initially be the members of the Committee – (a) Jim Johnson, (b) Zachary Frappier, (c) William Altringer.  The Liquidating Trust Advisory Committee may act with as few as two members.  In the event that a resignation or termination of members of the Liquidating Trust Advisory Committee reduces the number of members to less than two members, then the remaining member and the Liquidating Trustee shall appoint one successor member, who shall be a holder of one or more Allowed general unsecured claims against one or more of the Debtors, in the Liquidating Trustee's sole discretion.  For the avoidance of doubt, no "insider" or an "affiliate" (as those terms are defined in the Bankruptcy Code) shall serve as a member of the Liquidating Trust Advisory Committee.

As described more fully in the Liquidating Trust Agreement, the Liquidating Trust Advisory Committee shall monitor the Liquidating Trustee and all activities set forth in this Plan.  The Liquidating Trust Advisory Committee shall have the power and authority to ratify or reject decisions of the Liquidating Trustee, and, in its discretion, the Liquidating Trust Advisory Committee may delegate to the Liquidating Trustee such power and authority as it deems proper.  The members of the Liquidating Trust Advisory Committee shall not be paid for serving on the Liquidating Trust Advisory Committee except for reimbursement of actual expenses incurred by such members.  The Liquidating Trust Advisory Committee shall be governed by the Liquidating Trust Agreement substantially in the form of those attached as **Exhibit A**.  In the event that a vote by the Liquidating Trust Advisory Committee results in a tie vote, the Liquidating Trustee (although not a member) shall be entitled to vote on that issue as set forth in Exhibit A.

### 5.5    Liability and Indemnification of Liquidating Trustee and Liquidating Trust Advisory Committee Members.

#### 5.5.1    Limitation of Liability.

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee or the Liquidating Trust Advisory Committee members, or their respective members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note,

nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Truste Assets, and the Liquidating Trustee shall have no personal liability to satisfy any such liability. The Liquidating Trustee and its agents shall not be deemed to be the agent for any holder of a claim in connection with distributions made under this Plan. The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment; provided, however, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns. The Liquidating Trustee shall enjoy all of the rights, powers, immunities, and privileges available to a Chapter 7 trustee.

### 5.5.2   Indemnification of Liquidating Trustee and Liquidating Trust Advisory Committee.

The Liquidating Trust shall indemnify the Liquidating Trustee and its employees, officer, directors, agents, representatives, and professionals for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including, without limitation, the reasonable fees and expenses of their respective professionals) incurred without gross negligence, willful misconduct, or fraud on the part of the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals (which gross negligence, willful misconduct, or fraud, if any, must be determined by Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals in connection with the acceptance, administration, exercise, or performance of their duties under the Plan or the Liquidating Trust Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud. In addition, the Liquidating Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, without limitation, to professional fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan if the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust. To the extent that the Liquidating Trust indemnifies and holds harmless any such person or entity as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust. The costs and expenses incurred in enforcing the right of indemnification in this Article shall be paid by the Liquidating Trust. This provision shall survive the termination of the Liquidating Trust Agreement and the resignation, replacement, or removal of the Liquidating Trustee and the Liquidating Trust Advisory Committee.

**5.6    Term of Liquidating Trust.**

The Liquidating Trustee and Liquidating Trust Advisory Committee shall be discharged, and the Liquidating Trust shall be terminated, at such time as: (a) all Contested Claims have been resolved; (b) all of the Liquidating Trust Assets have been liquidated or abandoned; (c) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled; (d) all distributions required to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made; and (e) the Chapter 11 Cases have been closed; <u>provided</u>, <u>however</u>, that in no event shall the Liquidating Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and/or distributions in accordance with the Plan.

**5.7    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.**

The Debtors and the Liquidating Trustee, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer real property on behalf of the Debtors and the Liquidating Trust.  Pursuant to Section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**5.8    Cancellation of Instruments.**

Except for: (a) purposes of evidencing a right to distributions under the Plan; (b) to the extent any agreement or other document constitutes a settlement agreement authorized and approved by the Court in the Chapter 11 Cases; or (c) as otherwise provided under this Plan, on the Effective Date, all agreements and other documents evidencing claims or rights of any holder of a claim or equity interest against any of the Debtors, including, without limitation, all indentures, notes, bonds, and share certificates evidencing such claims and equity interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Debtors but not as against any other person.

**5.9    Dissolution of the Committee.**

Upon the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to, and arising

from, the Chapter 11 Cases. The retention and employment of the professionals retained by the Committee shall terminate as of the Effective Date, provided, however, that the Committee shall exist, and its professionals shall be retained, after such date with respect to applications filed pursuant to Sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

**5.10    Books and Records.**

As part of the appointment of the Liquidating Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Liquidating Trustee in whatever form, manner, or media the books and records existed immediately prior to the transfer thereof to the Liquidating Trustee. The Liquidating Trustee may abandon some or all of the books and records on or after 90 days after the Effective Date in its sole discretion when the Liquidating Trustee determines in its judgment that they are of inconsequential value to the Liquidating Trust. Any prior abandonment of the books and records by the Debtors prior to confirmation is hereby deemed to have been authorized. Pursuant to Section 554 of the Bankruptcy Code, this Article 5.10 shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records.

## ARTICLE VI
## DISTRIBUTIONS AND CLAIMS ADMINISTRATION

**6.1    Distributions.**

Unless otherwise provided in this Plan, the Liquidating Trustee shall make a final distribution after determining, in consultation with the Liquidating Trust Advisory Committee, that all assets that feasibly could be liquidated have been liquidated. At its discretion, but in consultation with the Liquidating Trust Advisory Committee, the Liquidating Trustee may make, but is not required to make, an initial distribution and additional distributions before the final distribution.

**6.2    Method of Payment.**

Payments under this Plan shall be made by ACH or check, mailed with first class postage pre-paid, to the holder of each Allowed claim at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules. Holders of Allowed claims may contact the Liquidating Trustee to amend their addresses as follows:

Renee Foss
Lighthouse Management Group Inc.
900 Long Lake Road, Suite 180
New Brighton, MN 55112

(651) 439-5119

**6.3    Claims Administration Responsibility.**

Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Trustee shall have and retain any and all objections to any and all claims, motions, or other requests for the payment of claims, whether administrative expense, secured, or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, liens, and security interests, whether under the Bankruptcy Code, other applicable law, or contract.

Unless otherwise ordered by the Court in the Confirmation Order, any objections to claims, except objections to Administrative Expense Claims or objections arising under Section 502(d) of the Bankruptcy Code, shall be filed within 120 days after the Effective Date (unless such date is not a business day, in which case such deadline shall be the next business day thereafter) or at such later date as approved by the Court upon request from the Liquidating Trustee.  Any claim objections arising solely under Section 502(d) of the Bankruptcy Code shall not be subject to the 120-day deadline and may be pursued through an adversary proceeding asserting an Avoidance Claim.

Except as otherwise agreed by the Liquidating Trustee, any claim as to which a proof of claim, motion, or other request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated pursuant to: (a) a Final Order of the Court; or (b) a Final Order under applicable non-bankruptcy law, and shall be deemed Allowed in such liquidated amount and satisfied in accordance with this Plan.  Nothing contained in this Plan, the Disclosure Statement, or the Confirmation Order shall constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the estates, the Liquidating Trustee, or the Liquidating Trust may have against any person in connection with, or arising out of, any claim or claims, including, without limitation, any rights under 28 U.S.C. § 157(b).

**6.4    Record Date for Distributions.**

Except as otherwise provided in a Final Order of the Court, the transferees of claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to Record Date shall be treated as the holders of those claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Liquidating Trustee shall have no obligation to recognize any transfer of any claim occurring after the Record Date.  In making any distribution with respect to any Allowed claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes under this Plan, only the entity that is listed on the proof of claim filed with respect to the Allowed claim or on the Schedules as the holder of the Allowed claim as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Record Date and is available to the Liquidating Trustee.

**6.5    Procedures for Treating and Resolving Contested Claims.**

Notwithstanding any other provision in this Plan, no payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by a Final Order, and the Contested Claim has become an Allowed claim.

The Debtors or the Liquidating Trustee may request estimation or limitation of any Contested Claim that is contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code; provided, however, that the Court shall determine: (a) whether such Contested Claim is subject to estimation pursuant to Section 502(c) of the Bankruptcy Code; and (b) the timing and procedures for such estimation proceedings, if any. Unless provided otherwise in an order of the Court, the estimated amount shall constitute the Allowed amount of such claim or a maximum limitation on such claim, as the Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such claim, the Debtors or the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of such claim. The foregoing shall not limit the rights granted by Section 502(j) of the Bankruptcy Code.

### 6.6    De Minimis Distributions.

The Liquidating Trustee shall not be required to make any payment of less than $25 with respect to any Allowed Class 1 claims.

### 6.7    Unclaimed Payments.

In the event a payment is returned to the Liquidating Trustee unclaimed, with no indication of the payee's forwarding address, the Liquidating Trustee shall hold such payment for a period of 90 days from the date of return. If not claimed by the payee by the end of that period, the payment shall become property of the Liquidating Trust. In the event there are unclaimed funds at the end of the distribution process and redistribution to other holders of Allowed claims, the Liquidating Trustee shall pay over such funds to a North Dakota-based charity selected by the Liquidating Trust Advisory Committee.

### 6.8    Time Bar to Check Payments.

Checks issued by the Liquidating Trustee shall be null and void if not negotiated within 90 days from and after the date of issuance. Requests for re-issuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed claim with respect to which such check originally was issued. Any claim in respect of such a voided check must be made on or before 120 days after the date of issuance of such check. After 120 days after issuance of a non-negotiated check for which the holder of the Allowed claim did not request re-issuance, all claims in respect of voided checks shall be discharged and forever barred and the Liquidating Trust shall retain all monies related thereto for distribution in accordance with Article 6.1 this Plan. The Liquidating Trust shall not be required to make any further distributions to holders of such Allowed claims.

### 6.9    Setoffs.

The Liquidating Trustee may, pursuant to applicable non-bankruptcy law, set off against any distribution to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature

the Debtors or the Liquidating Trustee may hold against the holder of such Allowed claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Debtors or the Liquidating Trustee may hold against such holder.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1.    Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Each contract, lease, or other agreement listed on **Exhibit C** shall be assumed as of the Effective Date, to the extent that each such contract, lease, or other agreement has not already expired, concluded, or terminated under its own terms.  All other executory contracts, unexpired leases, or other agreements that are not listed on Exhibit C and were not previously assumed or rejected by Final Order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute, pursuant to Sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts and unexpired leases.

**7.2.    Cure of Defaults.**

The Debtors have identified the cure amounts that they believe exist for the contracts, leases, or other agreements listed on Exhibit C.  Payments of any cure amounts shall be made by the Liquidating Trust as provided in Article 4.1 of the Plan.  The Liquidating Trustee shall retain all rights to contest any cure amount claims asserted by any entity.

**7.3.    Bar Dates for Rejection of Damage Claims.**

To the extent not subject to a claims bar date set forth in any prior or subsequent order of the Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Article 7.1 of this Plan must be filed with the Court no later than 30 days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed Class 1 claim.  Any claims not filed within such applicable time periods shall be forever barred from receiving a distribution from the Debtors, the estates, or the Liquidating Trust.

## ARTICLE VIII
## CONFIRMATION OF THE PLAN

**8.1.    Conditions Precedent to the Effective Date.**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Article 8.2 of this Plan:

a.      The Court shall have entered the Confirmation Order, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall be in effect.

b.      The appointment of the Liquidating Trustee shall have been confirmed by order of the Court.

c.      All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors, and have been duly executed and delivered, including without limitation, the Trust Agreement; provided, however, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

d.      This Plan shall not have been materially amended, altered, or modified from this Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Article 11.1 of this Plan.

### 8.2.    Waiver of Conditions to Confirmation or Effective Date.

Notwithstanding the foregoing conditions in this Article VIII, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date, as applicable, shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### 8.3.    Notice of the Effective Date.

Within five business days after the Effective Date, the Liquidating Trustee shall cause notice of the Effective Date to be filed with the Court.

### 8.4.    Cramdown.

The Debtor requests confirmation under Section 1129(b) of the Bankruptcy Code with respect to any impaired class that has not accepted or is deemed not to have accepted this Plan pursuant to Section 1126 of the Bankruptcy Code.

### 8.5.    Effect of Confirmation of the Plan.

#### 8.5.1   Title to and Vesting of Assets.

All property of the Debtors and the estates is dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by Section 1141(b) of the Bankruptcy Code, all property of

the Debtors and the estates vests in the Liquidating Trust and such property is free and clear of all liens, encumbrances, claims, and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained. From and after the Effective Date, the Liquidating Trust may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

### 8.5.2   Preservation of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the bankruptcy estates may hold against any entity shall automatically be transferred to and vest in the Liquidating Trust on the Effective Date, including, without limitation, any and all Causes of Action asserted in any pending adversary proceedings commenced by the Debtors prior to the Effective Date.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action that were held by the Debtors and the bankruptcy estates, in its sole discretion and without further order of the Court, in any court or other tribunal, including, without limitation, in any adversary proceeding filed in one or more of the Chapter 11 Cases.

Unless a Cause of Action against an entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order of the Court, including, without limitation, the Confirmation Order, the Debtors and their bankruptcy estates expressly reserve such Causes of Action for later adjudication or administration by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order, including, without limitation, the Confirmation Order.  In addition, the Debtors and their bankruptcy estates expressly reserve the right of the Liquidating Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any entity to whom the Debtors may have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or whom has received services from the Debtors or a transfer of money or property of the Debtors, or whom has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (a) such entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (b) the Debtors have objected to any such entity's proof of claim; (c) any such entity's claim

was included in the Schedules; (d) the Debtors have objected to any such entity's scheduled claim; or (e) any such entity's scheduled claim has been identified by the Debtors as disputed, contingent, or unliquidated.

### 8.5.3   Corporate Action.

On the Effective Date, all matters provided for in this Plan that would otherwise require approval of the members or directors of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporate law of North Dakota, without any requirement of further action by the members or directors of the Debtors.

### 8.5.4   Injunction.

From and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, as the case may be, any suit, action, or other proceeding, on account of or respecting any claim or equity interest, demand, liability, obligation, debt, right, cause of action, interest, or remedy released or satisfied or to be released or satisfied pursuant to the Plan or Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all entities shall be precluded from asserting against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, any other claims or equity interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to this Plan or the Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all claims and equity interests in the Plan shall be in exchange for and in complete satisfaction of claims and equity interests against the Debtors or any of their assets or properties solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to this Plan or Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to this Plan or the Confirmation Order. On the Effective Date, all such claims against, and equity interests in, the Debtors shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all persons and entities are permanently enjoined, on and after the Effective Date, on account of any claim or equity interest satisfied and released pursuant to the Plan or Confirmation Order from: (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (c) creating, perfecting, or enforcing any

encumbrance of any kind against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; and (d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or Cause of Action released or settled under this Plan.

### 8.5.5    No Discharge.

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan does not discharge the Debtors' indebtedness.

### 8.6.    Releases and Exculpation.

### 8.6.1    Releases by the Debtors and Their Estates.

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, their estates, and their current and former representatives shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors, their estates, their current and former representatives, and the Committee and its members but solely in their capacity as members of the Committee and not in their individual capacities), from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date, or airing thereafter, in law, at equity, whether for tort, contract, violations of statutes (including, without limitation, the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to, or on, the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a claim or equity interest or other entity would have been legally entitled to assert for, or on behalf of, any of the Debtors or the estates, including those in any way related to the Chapter 11 Cases or the Plan; provided, however, that the foregoing release shall not prohibit the Debtors or the Liquidating Trustee from asserting any and all affirmative claims, defenses, and counterclaims in respect to any contested claim asserted by any Released Party.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article 8.6 pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the claims and causes of action released by this Plan; (b) in the best interests of the Debtors and all holders of claims and equity interests; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any claim or cause of action thereby released.**

### 8.6.2    Exculpation.

26

**Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability relating to these Chapter 11 Cases to any entity for any and all claims and causes of action arising after the Filing Date and through the Effective Date, including, without limitation, any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan or distributing property under the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation the execution of any and all settlement agreements filed with the Court in the Chapter 11 Cases; provided, however, that the foregoing provisions of this Article 8.6.2 shall have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

## ARTICLE IX
## EVENTS OF DEFAULT

Unless otherwise provided elsewhere in the Plan, default with respect to the Debtors' or the Liquidating Trustee's obligations under the Plan to any holder of an Allowed claim or other person shall not occur unless and until such holder of an Allowed claim or other person has delivered written notice of such default to the Liquidating Trustee at the address set out in Article 6.2 of the Plan, and the Debtors or the Liquidating Trustee have failed to cure such default within 30 days after receipt of such written notice. If the Debtors or the Liquidating Trustee fail to cure a default, the sole remedy is a claim for breach of contract, and the Liquidating Trustee shall have such claims and any other remedies provided for in the Plan or pursuant to any interests the Debtors have granted to the Liquidating Trustee under the Plan.

## ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible to the full extent permitted by the Bankruptcy Code, including jurisdiction to:

a.    Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate, or establish the priority or secured or unsecured status of any claim, including the resolution of any request for payment of any Administrative Expense Claims, and the resolution of any objections to the amount, allowance, priority, or classification of claims;

b.    Resolve any issues arising under asset purchase agreements entered into during the Chapter 11 Cases or their respective sale orders to the extent required for the implementation or execution of the Plan;

c.      Determine all questions and disputes regarding title to the assets of the estates to the extent required for the implementation or execution of the Plan;

d.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

e.      Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate any claims arising therefrom, including any cure amount claims;

f.      Ensure that distributions to holders of Allowed claims are accomplished pursuant to the provisions of this Plan;

g.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and either grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

h.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

i.      Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is entered into or delivered pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

j.      Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

k.      Issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, and enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

l.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

m.      Determine any other matters that may arise in connection with or in relation to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

n.      Enforce or clarify any orders previously entered by the Court in the Chapter 11 Cases;

o.      Enter a final decree closing the Chapter 11 Cases;

p.      Determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code, including any Contested Claims for taxes;

q.      Recover all assets of the Debtor and its estate, wherever located; and

r.      Hear any other matter not inconsistent with the Bankruptcy Code

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1    Modification of the Plan.**

Subject to the restrictions on alteration, amendment, and modification set forth in Section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan and proposed Confirmation Order before the Effective Date.

**11.2    Revocation of the Plan.**

The Debtors, reserve the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan, or if confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtors; (b) prejudice in any manner the rights of the Debtors or any other party in interest; or (c) constitute an admission of any sort by the Debtors or any other party in interest.

**11.3    Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.4    Corporate Documents.**

29

The organizational documents of the Debtors and related documents shall be amended to the extent necessary as required by Section 1123(a)(6) of the Bankruptcy Code and as may otherwise be required by this Plan.

**11.5    Regulated Rates.**

This Plan affects no rates subject to approval by any governmental regulatory commission.

**11.6    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**11.7    Governing Law.**

The rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of North Dakota, without giving effect to principles of conflict of laws.

**11.8    Construction.**

The Section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

**11.9    Reservation of Rights.**

Except as expressly set forth in this Plan, the Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained in this Plan, nor the taking of any action by a Debtor or any entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the holders of claims or equity interests or other parties-in-interest; or (b) any holder of a claim or other party-in-interest prior to the Effective Date.

**[SIGNATURE PAGE TO FOLLOW]**

## SIGNATURE PAGE FOR PLAN

**EPIC COMPANIES MIDWEST, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group, Inc.,
CRO of EPIC Companies Midwest, LLC

**EPIC COMPANIES MIDWEST 2023, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group, Inc.,
CRO of EPIC Companies Midwest 2023, LLC

**EPIC EMPLOYEE, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group, Inc.,
CRO of EPIC Employee, LLC

**EOLA CAPITAL, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group, Inc.,
CRO of EOLA Capital, LLC

**EC WEST FARGO, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group, Inc.,
CRO of EC West Fargo, LLC

/e/ *Steven R. Kinsella*
_____
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR DEBTORS**

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 6/10/2025 8:36:21 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ecdbb-mobility.imanage.work/FB1/84625837/4 | |
| **Modified DMS:** iw://ecdbb-mobility.imanage.work/FB1/84625837/5 | |
| **Changes:** | |
| Add | 5 |
| Delete | 0 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 5 |

**<u>EXHIBIT 2</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | Jointly Administered |
| EPIC Companies Midwest, LLC, | Case No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Case No. 24-30282 |
| EPIC Employee, LLC, | Case No. 24-30283 |
| EOLA Capital, LLC, and | Case No. 24-30284 |
| EC West Fargo, LLC, | Case No. 24-30285 |
| Debtors.[1] | Chapter 11 Cases |

**AMENDED DISCLOSURE STATEMENT IN SUPPORT OF DEBTORS'**
**AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00
P.M. CENTRAL TIME ON ——JULY 29, 2025, UNLESS EXTENDED BY
ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF NORTH DAKOTA.

THIS DISCLOSURE STATEMENT, THE DEBTORS' CHAPTER 11 PLAN OF
LIQUIDATION, THE ACCOMPANYING BALLOTS, AND THE RELATED MATERIALS
ARE BEING FURNISHED BY THE DEBTORS, PURSUANT TO SECTIONS 1125 AND
1126 OF THE BANKRUPTCY CODE, IN CONNECTION WITH THE SOLICITATION BY
THE DEBTORS OF VOTES TO ACCEPT THE PLAN AS DESCRIBED IN THIS
DISCLOSURE STATEMENT.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO
MATERIAL CONDITIONS PRECEDENT, SOME OF WHICH MAY NOT BE SATISFIED.
SEE ARTICLE VIII OF THE PLAN. THERE IS NO ASSURANCE THAT THESE
CONDITIONS WILL BE SATISFIED OR WAIVED.

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as
applicable, the Debtors' address is c/o Lighthouse Management Group, Inc., 900 Long Lake
Road, Suite 180, New Brighton, MN 55112 and their Employer Identification Numbers (EINs)
are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies
Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC)
and 82-5331354 (EC West Fargo, LLC).

HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS AND ALL EQUITY HOLDERS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS DESCRIBED IN THE PLAN.

NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED OF ANY SECURITIES THAT MIGHT BE DEEMED TO HAVE BEEN ISSUED PURSUANT TO THE PLAN OR OF THIS DISCLOSURE STATEMENT, NOR HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.  THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL SECURITIES AND IS NOT A SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE WHERE SUCH OFFER OR SALE IS NOT PERMITTED.

TO THE EXTENT ANY TREATMENT UNDER THE PLAN IS DEEMED TO CONSTITUTE THE ISSUANCE OF A SECURITY, NONE OF SUCH SECURITIES WILL HAVE BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT, OR UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS, AND SUCH SECURITIES WILL BE ISSUED IN RELIANCE UPON EXEMPTIONS FROM THE SECURITIES ACT AND EQUIVALENT STATE LAWS OR SECTION 1145 OF THE BANKRUPTCY CODE.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR IN ANY EXHIBIT EXCEPT AS EXPRESSLY INDICATED IN THIS DISCLOSURE STATEMENT OR IN ANY EXHIBIT. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTORS FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION IS CORRECT AT ANY TIME SUBSEQUENT TO THIS DATE AND THE DEBTORS UNDERTAKE NO DUTY TO UPDATE THE INFORMATION.

THIS DISCLOSURE STATEMENT AND THE RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING THE PLAN.   NO REPRESENTATIONS ARE AUTHORIZED BY THE COURT CONCERNING THE

DEBTORS, THEIR BUSINESS OPERATIONS, THE VALUE OF THEIR ASSETS, OR THE VALUES OF ANY INTERESTS DESCRIBED TO BE ISSUED OR BENEFITS OFFERED PURSUANT TO THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT, OR ANY OTHER DISCLOSURE STATEMENT OR OTHER DOCUMENT APPROVED FOR DISTRIBUTION BY THE COURT.  HOLDERS OF CLAIMS SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN AND CERTAIN OF THE PLAN DOCUMENTS.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN OR THE APPLICABLE PLAN DOCUMENTS AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN OR THE APPLICABLE PLAN DOCUMENTS ARE CONTROLLING.  THE SUMMARIES OF THE PLAN AND THE PLAN DOCUMENTS IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE PLAN AND THE APPLICABLE PLAN DOCUMENTS, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN THE PLAN AND OTHER PLAN DOCUMENTS.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND THE PLAN DOCUMENTS, AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSES OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED IN THIS DISCLOSURE STATEMENT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PERSON, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PERSON, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS STATEMENTS THAT ARE FORWARD-LOOKING.  FORWARD-LOOKING STATEMENTS ARE STATEMENTS OF EXPECTATIONS, BELIEFS, PLANS, OBJECTIVES, ASSUMPTIONS, PROJECTIONS, AND FUTURE EVENTS OF PERFORMANCE.   AMONG OTHER THINGS, THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITH RESPECT TO DETERMINATION OF CLAIMS AND DISTRIBUTIONS ON CLAIMS. THESE STATEMENTS, ESTIMATES, AND PROJECTIONS MAY OR MAY NOT PROVE TO BE CORRECT.  ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE REFLECTED IN THESE FORWARD-LOOKING STATEMENTS.  FORWARD-LOOKING STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS, INCLUDING THOSE DESCRIBED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE ANY FORWARD-LOOKING STATEMENT. NEW FACTORS EMERGE FROM TIME TO TIME AND IT IS NOT POSSIBLE TO

PREDICT ALL SUCH FACTORS, NOR CAN THE IMPACT OF ALL SUCH FACTORS BE ASSESSED.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS WITH RESPECT TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES TO ACCEPT THE PLAN, THE PLAN, AND THE TRANSACTIONS DESCRIBED IN THE PLAN.

# TABLE OF CONTENTS

I.      INTRODUCTION. ...................................................................................................1
        A.      Summary of the Plan. .............................................................................1
        B.      Voting Procedures. .................................................................................2
        C.      Brief Explanation of Chapter 11. .........................................................2

II.     DESCRIPTION OF THE DEBTORS' BUSINESS AND OPERATIONS. .............3
        A.      Nature and History of the Debtors. .......................................................3
        B.      Pre-Petition Debt Structure. ..................................................................4
        C.      Events Leading to the Chapter 11 Case. ...............................................5

III.    EVENTS DURING THE CHAPTER 11 CASE. ....................................................5
        A.      Bankruptcy Filing and First Day Orders. .............................................5
        B.      Schedules and Statements. .....................................................................6
        C.      Retention and Employment of the Debtors' Professionals. ...................6
        D.      Adversary Proceedings. .........................................................................6
        E.      Payments and Settlements. ...................................................................11
        F.      Avoidance Actions and Other Litigation. ............................................13

IV.     SUMMARY OF THE PLAN. ...............................................................................13
        A.      General Overview. ................................................................................13
        B.      Classification of Claims and Interests. ...............................................14
        C.      Description of Classes and Treatment. ................................................14
        D.      Distributions and Claims Administration. ..........................................16
        E.      Executory Contracts and Unexpired Leases. .......................................18
        F.      Conditions Precedent to Effective Date. .............................................18
        G.      Effects of Confirmation. ......................................................................19

V.      MEANS OF EXECUTION. ..................................................................................22
        A.      Substantive Consolidation. ..................................................................22
        B.      Liquidating Trust and Liquidating Trustee. ........................................23
        C.      Liquidating Trust Advisory Committee. ...............................................26
        D.      Indemnification of Liquidating Trustee and Liquidating Trustee Advisory
                Committee. ............................................................................................26
        E.      Term of Liquidating Trust. ...................................................................27
        F.      Dissolution of Committee. ...................................................................27

VI.     PROOFS OF CLAIM AND ADMINISTRATIVE CLAIMS. ..............................28

VII.    FEDERAL TAX CONSEQUENCES OF THE PLAN. .........................................28
        A.      Federal Income Tax Consequences to the Debtors. .............................28
        B.      Federal Income Tax Consequences to Holders of General Unsecured
                Claims. ..................................................................................................29
        C.      Withholding and Reporting. .................................................................29

VIII.   ALTERNATIVES TO THE PLAN. ......................................................................30
        A.      Chapter 7 Liquidation. .........................................................................30

|       | B. | Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code. | 30 |
|       | C. | Dismissal of the Chapter 11 Cases. | 30 |
| IX. |       | ACCEPTANCE AND CONFIRMATION OF THE PLAN. | 31 |
|       | A. | General Confirmation Requirements. | 31 |
|       | B. | Best Interests Test. | 31 |
|       | C. | Financial Feasibility Test. | 32 |
|       | D. | Cramdown Alternative. | 32 |
| X. |       | RISK FACTORS TO BE CONSIDERED. | 33 |
|       | A. | Bankruptcy Considerations. | 33 |
|       | B. | No Duty to Update Disclosures. | 33 |
|       | C. | Representations Outside this Disclosure Statement. | 34 |
|       | D. | No Admission. | 34 |
|       | E. | Tax and Other Related Considerations. | 34 |
| XI. |       | RECOMMENDATION AND CONCLUSION. | 34 |

## I.    INTRODUCTION.

On July 8, 2024 (the "Petition Date"), EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' cases (the "Chapter 11 Cases") are pending before the United States Bankruptcy Court for the District of North Dakota (the "Court"). Effective June 11, 2024, the Debtors appointed Lighthouse Management Group, Inc. as the Chief Restructuring Officer ("CRO") of the Debtors, which the Court subsequently approved on July 31, 2024. The Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") on July 30, 2024. The Debtors' Chapter 11 Plan of Liquidation (the "Plan") sets forth, among other things, the proposed treatment of claims in accordance with the Bankruptcy Code.

This Disclosure Statement is intended to explain the Plan and provide adequate information to allow an informed judgment regarding the Plan. A copy of the Plan is included with this Disclosure Statement. If the Plan and Disclosure Statement are not consistent, the terms of the Plan should control. Capitalized terms used, but not defined, in this Disclosure Statement shall have the same meanings in this Disclosure Statement as ascribed them in the Plan.

### A.    Summary of the Plan.

As of the effective date of the Plan (the "Effective Date"), the Debtors shall be substantively consolidated and all assets of the Debtors' bankruptcy estates shall transfer to a liquidating trust (the "Liquidating Trust") to be administered by the CRO, as the liquidating trustee (the "Liquidating Trustee"). The Liquidating Trustee will liquidate all remaining non-cash assets, undertake resolution of claims, pursue any viable avoidance actions and other causes of action, make distributions to holders of Allowed claims, and take any such other action as necessary to wind down the Debtors' businesses and distribute assets of the Liquidating Trust to holders of Allowed claims.

The Debtors propose the Plan to facilitate the most efficient and timely liquidation of the Debtors' remaining assets as well as the fastest distribution of proceeds to holders of Allowed claims. The Debtors believe that the Liquidating Trustee, and the committee appointed to oversee the Liquidating Trustee (the "Liquidating Trust Advisory Committee"), have the familiarity with the Debtors' assets and the liquidating expertise needed to realize the maximum value for the remaining assets in a reasonable period of time. The Debtors believe that the Plan will provide the greatest recovery for, and the fastest payment to, holders of Allowed claims.

As of March 31, 2025, the Debtors collectively hold approximately $282,535 in cash. The Debtors and/or Liquidating Trustee expect to, among other things: (a) litigate or settle all pending adversary proceedings, as more fully described below[2]; (b) evaluate and pursue any and

---

[2] The Debtors and Committee are unable to provide an estimated recovery on the pending adversary proceedings based on the current status of the adversary proceedings.

all Causes of Action[3]; and (c) liquidate any remaining assets.  The Debtors estimate that holders of Allowed general unsecured claims will receive between approximately 18.9% and 28.8% of the value of their Allowed claims.

### B.    Voting Procedures.

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for purposes of voting on the Plan.  If you hold claims in more than one class and you are entitled to vote claims in more than one class, you will receive separate ballots that must be used to vote in each separate class.  If voting for or against the Plan, please use only the ballot or ballots sent to you with this Disclosure Statement.  Votes cast to accept or reject the Plan will be counted by class. Please read the voting instructions on the ballot for a thorough explanation of the voting procedures.

**IF YOU BELIEVE THAT YOU ARE A HOLDER OF A CLAIM IN A VOTING CLASS FOR WHICH YOU DID NOT RECEIVE A BALLOT, IF YOUR BALLOT IS DAMAGED OR LOST, OR IF YOU HAVE QUESTIONS CONCERNING VOTING PROCEDURES, PLEASE CONTACT THE DEBTORS' COUNSEL AT (612) 492-7730. THE DEBTORS AND COUNSEL FOR THE DEBTORS CANNOT PROVIDE YOU WITH ANY LEGAL ADVICE.**

To be counted, completed ballots must be mailed to Debtors' counsel at the following address:

Attn: Shataia Stallings
Fredrikson & Byron, P.A.
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402

**FACSIMILE, E-MAIL, OR ELECTRONICALLY TRANSMITTED BALLOTS WILL NOT BE ACCEPTED.**

### C.    Brief Explanation of Chapter 11.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Upon the filing of a petition for reorganization under Chapter 11, Section 362 of the Bankruptcy Code generally provides for an automatic stay of all attempts to collect claims or enforce liens that arose prior to the commencement of the bankruptcy case or that otherwise interfere with a debtor's property or business.

The principal objective of a Chapter 11 reorganization is the confirmation of a plan of reorganization or liquidation. The plan sets forth the means for satisfying the

---

[3] The Debtors and Committee are also unable to provide an estimated recovery on the other Causes of Action at this time.

claims of creditors and interests of shareholders or members of the debtor. The plan and a disclosure statement that contains information necessary to allow creditors, shareholders, and members to evaluate the plan are sent to creditors, shareholders, and members whose claims or interests are impaired, who then vote to accept or reject the plan.

A class of claims is entitled to vote to accept or reject a plan if that class is "impaired" by the plan. A class of claims is impaired unless the plan cures any defaults that may exist with respect to the claims and leaves unaltered the legal, equitable, and contractual rights to which the claim entitles the holder of the claim.

A plan may be confirmed under Section 1129(a) of the Bankruptcy Code if each class of claims or interests is not impaired by the plan or if each class has voted to accept the plan. Votes will be counted only with respect to claims: (a) that are listed on a debtor's bankruptcy schedules other than as disputed, contingent, or unliquidated; or (b) for which a proof of claim was filed on or before the claim filing deadline set by the bankruptcy court for the filing of proofs of claim.  However, any vote by a holder of a claim will not be counted if the claim has been disallowed or is the subject of an unresolved objection, absent an order from the bankruptcy court allowing the claim for voting purposes. A class of claims has accepted a plan if creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed voting claims in the class have voted to accept the plan.

If an impaired class votes to reject the plan, the proponent of the plan may seek to "cram down" the plan by confirming it under Section 1129(b) of the Bankruptcy Code. A plan proponent may cram down a plan upon a rejecting class only if another impaired class has voted to accept the plan, the plan does not discriminate unfairly, and the plan is fair and equitable with respect to each impaired class that has not voted to accept the plan.

Section 1129(a) of the Bankruptcy Code establishes the conditions for the confirmation of a plan. These conditions are too numerous to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process. Among the conditions for plan confirmation is that either each holder of a claim or interest must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

If a plan is confirmed by the Court, its terms are binding on the debtor, all creditors, and other parties in interest, regardless of whether they have voted to accept the plan.

## II.    DESCRIPTION OF THE DEBTORS' BUSINESS AND OPERATIONS.

### A.    Nature and History of the Debtors.

The Debtors are part of a series of affiliated companies known collectively as "EPIC Companies." EPIC Companies generally consist of the Debtors, certain real estate holding entities described below, certain service providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

EPIC Companies Midwest, LLC ("EPIC Midwest") was formed on or around November 19, 2018. EPIC Midwest has one Class A member—EPIC Holdings, LLC ("Holdings I"). EC West Fargo, LLC ("EC") was formed on or around May 15, 2018. EC has one Class A member—Holdings I. EOLA Capital, LLC ("EOLA") was formed on or around February 8, 2022. EOLA has two members—(a) Todd Berning; and (b) EPIC Holdings II, LLC ("Holdings II"). EPIC Companies Midwest 2023, LLC (EPIC Midwest 2023") was formed on or around August 15, 2022. EPIC Midwest 2023 has two members—(a) Todd Berning; and (b) Holdings II. EPIC Employee, LLC ("EPIC Employee") was formed on or around August 31, 2022. EPIC Employee has two members—(a) Todd Berning; and (b) Holdings II.

Each of the Debtors was formed for the purpose of providing loans to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies"). On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project. Based on records reviewed to date, each of the Project Companies has a different ownership group. Many of the Project Companies borrowed money from banks for the construction of the real estate projects at issue, and those banks generally hold senior secured positions on the real estate owned by each of the Project Companies. In addition, certain of the Project Companies appear to have subordinated debt from lenders other than the Debtors.

The Debtors raised capital from various individuals and entities (collectively, "Investors"). The majority of the investments were structured and documented as loans from the Investors to the Debtors. Investors generally executed promissory notes, which in most cases provided for, among other normal loan terms, interest, monthly installment payments, and a balloon payment on the applicable maturity date (collectively, "Investor Notes"). On information and belief, the Investor Notes are unsecured. Certain investments originating from self-directed IRAs appear to have been structured as equity contributions to the Debtors. Such Investors executed Subscription Agreements and Letters of Investment Intent to acquire Class B membership units ("Class B Units"), but the applicable agreements also contain similarities to the Investor Notes, including the requirement of monthly payments.

On information and belief, both the Class B Units and the Investor Notes were intended to be issued pursuant to certain exemptions from the state or federal securities registration. Specifically, all the Investors are intended to be "accredited investors" as defined by SEC Regulation D. The Debtors stopped taking any new investments prior to the appointment of the CRO.

With the funds received from the Investors, the Debtors made loans to the Project Companies and certain other subsidiaries of EPIC Companies.  The majority of these loans require the Project Companies to make monthly installment payments to the Debtors and a final balloon payment on the applicable maturity date.  On information and belief, none of these loans is secured.

### B.    Pre-Petition Debt Structure.

As of the Petition Date, EPIC Midwest allegedly owed approximately: (a) $15,893,620 in total Investor Notes; (b) $854,500 in Class B Units; and (c) $2,209,271 in loans to one or more of the other Debtors.  As of the Petition Date, EC allegedly owed approximately: (a) $892,000 in total to Investor Notes; and (b) $40,000 in Class B Units.  As of the Petition Date, EOLA allegedly owed approximately $9,087,833 in total Investor Notes.  As of the Petition Date, EPIC Midwest 2023 allegedly owed approximately $11,764,738 in total Investor Notes.  As of the Petition Date, EPIC Employee owed approximately $485,613 in total Investor Notes.  On information and belief, none of the Debtors owe any obligations to any party holding a security interest in any of the Debtors' assets.

### C.    Events Leading to the Chapter 11 Case.

In the spring of 2024, EPIC Companies encountered several financial challenges.  Those challenges culminated in the public collapse of EPIC Companies' ongoing business, which was extensively reported in local and regional media.  That coverage tended to treat EPIC Companies as if all assets and liabilities were owned within a single structure.  As explained above, however, there is broad and diverse ownership of the various legal entities that collectively comprise the enterprise known as "EPIC Companies," which has prevented any one party seeking a single solution for all parties involved.

Instead, following the initial collapse, certain Project Companies began to take member action to sever ties with EPIC Companies to the extent possible and have elected new management to oversee operations and financial affairs. On information and belief, many Project Companies are now governed by various persons and/or groups and are not under uniform control.  Thereafter, certain of the Project Companies and other companies who owe money to the Debtors ceased making payments to the Debtors. Without the incoming payments, the Debtors lacked sufficient resources to make scheduled payments to Investors and Class B Unit holders, leaving Investors and Class B Unit holders unprotected in this complex situation.

The Debtors therefore decided to appoint the CRO to protect the Investors' and Class B Unit holders' investments and ensure equitable treatment of all parties in interest.  At the time of the appointment of the CRO, the governors of each of the Debtors were the same – Todd Berning, Brian Kounovsky, and Vicki Campbell.  On June 11, 2024, Brian Kounovsky and Vicki Campbell, in their capacity as governors of the Debtors, executed written actions in lieu of a meeting for each of the Debtors, appointing the CRO and authorizing the CRO to file a chapter 11 voluntary bankruptcy case.  Todd Berning abstained from the vote on the appointment of the CRO.  Mr. Kounovsky, Ms. Campbell, and Mr. Berning all qualify as "insiders" as that term is defined in the Bankruptcy Code.  However, prior to the CRO's appointment, the CRO had no

connection to the Debtors or any other "EPIC" entities and the purpose of the CRO's retention was to provide an independent review of the Debtors' financial position and an independent decision regarding a chapter 11 filing.

Both before and after the appointment of the CRO, certain Investors made demands of the Debtors and at least one Investor commenced a lawsuit. In light of these events, the ~~Debtors~~CRO made the difficult decision to file these Chapter 11 Cases to maximize the value of ~~their~~the Debtors' assets for the benefit of the Investors and Class B Unit holders and to ensure the fair and consistent treatment of all Investors and Class B Unit holders in each of the Debtors.

## III.    EVENTS DURING THE CHAPTER 11 CASE.

### A.    Bankruptcy Filing and First Day Orders.

The Debtors commenced their Chapter 11 Cases on the Petition Date by filing voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors continued in possession of their assets and the management of their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

On July 16, 2024, the Court held an initial hearing to consider certain "first day" matters and entered orders that, among other things:

> 1.    Ordered the joint administration of the Debtors and instructed parties to file the majority of pleadings to the docket[4] for EPIC Midwest on an interim [Docket No. 31] and final basis [Docket No. 41];

> 2.    Authorized the Debtors to use cash collateral on an interim [Docket No. 32] and final basis [Docket No. 46].[5]

### B.    Schedules and Statements.

On July 22, 2024, the Debtors filed their Schedules and Statement of Financial Affairs [Docket No. 37; EPIC Midwest 2023 Docket No. 24; EOLA Docket No. 24; EPIC Employee Docket No. 23; EC Docket No. 23]. On August 16, 2024, the Debtors filed certain amendments

---

[4] Unless otherwise specified, all citations to the docket refer to the docket of EPIC Midwest.

[5] On October 8, 2024 [Docket No. 131], and on December 3, 2024 [Docket No. 180], the Court entered orders further authorizing the use of cash collateral [Docket No. 131]. Bank Forward was the only creditor asserting a security interest in the Debtors' cash collateral [Docket No. 39]. On November 7, 2024, counsel for Bank Forward notified the Debtors' counsel that Bank Forward's security interest terminated pursuant to the relevant loan documents. Consequently, the Debtors did not require (and thus did not seek) authority for use of cash collateral after the Court's order granting use of cash collateral on December 3, 2024.

to their Schedules and Statement of Financial Affairs [Docket No. 78; EPIC Midwest 2023 Docket No. 34; EOLA Docket No. 32; EPIC Employee Docket No. 31; EC Docket No. 31].

## C.    Retention and Employment of the Debtors' Professionals.

The Court approved the Debtors' retention of Fredrikson & Byron, P.A., as Chapter 11 counsel for the Debtors [Docket No. 49]. The Court also approved the Debtors' retention of the CRO, as the chief restructuring officer of the Debtors [Docket Nos. 59, 71].

## D.    Appointment of the Committee.

On July 30, 2024, the Office of the United States Trustee appointed the following persons/entities to the Committee: (1) Jim Johnson, (2) Beth Postemski, (3) Zachary Frappier, (4) Randy Henke, and (5) William Altringer [Docket No. 58]. On August 22, 2024, Randy Henke resigned from the Committee and Larry Dietz was appointed to the Committee by the Office of the United States Trustee [Docket No. 96]. On February 27, 2025, Beth Postemski resigned from the Committee and Craig Geron was appointed to the Committee by the Office of the United States Trustee [Docket No. 238]. On March 4, 2025, Craig Geron resigned from the Committee and was not replaced [Docket No. 240]. On May 8, 2025, Larry Dietz sold his claims [Docket Nos. 298-299] and resigned from the Committee. As of the date of this Disclosure Statement, the current members of the Committee are – (1) Jim Johnson, (2) Zachary Frappier, (3) William Altringer.

For purposes of full disclosure, and to the best of the Debtors' knowledge, the Committee members are associated with the Debtors in the following ways:

1.    Jim Johnson is a creditor of EPIC Companies Midwest, LLC [Docket No. 37]. Mr. Johnson is also an unsecured creditor of U of J MU Jamestown, LLC, an affiliate of the Debtors under 11 U.S.C. § 101(2), and an entity with which the Debtors previously settled claims, as more fully described below. Based on the definition of "insider," pursuant to 11 U.S.C. § 101(31), the Debtors do not believe Mr. Johnson qualifies as an "insider" in these cases.

2.    Zachary Frappier is a creditor of EPIC Employee, LLC [EPIC Employee Docket No. 23], and is a former employee of EPIC Management, LLC, an affiliate of the Debtors under 11 U.S.C. § 101(2). Mr. Frappier also holds a minority equity interest in 36th & Veterans LLC (2.8%), an affiliate of the Debtors under 11 U.S.C. § 101(2) and one of the defendants in the adversary proceedings described below. Based on the definition of "insider," pursuant to 11 U.S.C. § 101(31), the Debtors do not believe Mr. Frappier qualifies as an "insider" in these cases.

3.    William Altringer is a creditor of EC West Fargo, LLC [EC Docket No. 23]. Mr. Altringer holds a minority equity interest in Boulevard Square I, LLC (10.26%), which is an affiliate of the Debtors under 11 U.S.C. § 101(2), but not one of the Project Companies to which the Debtors loaned funds. Mr. Altringer is also an unsecured creditor of EPIC Gateway East Real Estate Holdings LLC, an affiliate of the Debtors and

one of the defendants in the adversary proceedings described below. Based on the definition of "insider," pursuant to 11 U.S.C. § 101(31), the Debtors do not believe Mr. Altringer qualifies as an "insider" in these cases.

**E.** ~~D.~~**Adversary Proceedings.**

As described more fully above, the Debtors' most significant assets are notes for funds loaned to the Project Companies.  On or shortly after the Petition Date, the majority of the Project Companies defaulted under their respective notes with the Debtors.  While the Debtors issued demands for payment on or around August 1, 2024, the majority of the Project Companies initially refused to repay the Debtors.   Consequently, the Debtors brought the following adversary proceedings against the Project Companies:

1.     *EPIC Companies Midwest, LLC and EOLA Capital, LLC v. Pioneer Place, LLC*, Adv. Case No. 24-07021.  EPIC Midwest and EOLA filed a complaint against Pioneer Place, LLC on November 1, 2024.  Pioneer Place, LLC failed to answer and, on December 31, 2024, the Court entered default judgments against Pioneer Place, LLC as follows: in favor of EPIC Midwest in the sum of $155,882.50 plus interest; and (b) in favor of EOLA in the sum of $32,201.50 plus interest.  The Debtors continue to work to collect on the judgments, including seeking appointment of a receiver over the assets of Pioneer Place, LLC in Cass County – *EPIC Cos. Midwest, LLC v. Pioneer Place, LLC*, No. 09-2025-CV-00412.

2.     *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. Preference 42, LLC f/k/a EPIC Preference, LLC f/k/a Shepperd Equity Fund, LLC*, Adv. Case No. 24-07022.  EPIC Midwest and EPIC Midwest 2023 filed a complaint against Preference 42, LLC on November 1, 2024.  Preference 42, LLC filed an answer on December 18, 2024.  On January 15, 2025, the Court held a status conference and set August 13, 2025, as the trial ready date.  This adversary proceeding remains pending.

3.     *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EPIC Employee, LLC v. Boulevard Square II, LLC, Boulevard Square III, LLC, and Boulevard Square IV, LLC*, Adv. Case No. 24-07023.  EPIC Midwest and EPIC Employee filed a complaint against Boulevard Square II, LLC, Boulevard Square III, LLC, and Boulevard Square IV, LLC on November 1, 2024.  Boulevard Square II, LLC and Boulevard Square IV, LLC failed to answer and, on January 10, 2025, the Court entered the following default judgments: (a) judgment in favor of EPIC Midwest against Boulevard Square II, LLC in the sum of $41,118.02 plus interest; (b) judgment in favor of EPIC Midwest 2023 against Boulevard Square IV, LLC in the sum of $231,337.50 plus interest; and (c) judgment in favor of EPIC Midwest 2023 against Boulevard Square IV, LLC in the sum of $31,040 plus interest.  The Debtors continue to work to collect on those judgments.  Boulevard Square III, LLC filed an answer on December 18, 2024.  On January 15, 2025, the Court held a status conference and set August 13, 2025, as the trial ready date.   The adversary proceeding against Boulevard Square III, LLC remains pending.

8

4.     *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. SAD Downtown, LLC d/b/a The Firm*, Adv. Case No. 24-07024.  EPIC Midwest and EPIC Midwest 2023 filed a complaint against SAD Downtown, LLC on November 1, 2024.  SAD Downtown, LLC filed an answer on December 18, 2024.  On January 15, 2025, the Court held a status conference and set August 13, 2025, as the trial ready date. This adversary proceeding remains pending.

5.     *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC v. Area 57 Association, Inc., Greenfield Commons, LLC, Greenfield Commons II, LLC, and Greenfield Commons III, LLC*, Adv. Case No. 24-07025.  EPIC Midwest, EPIC Midwest 2023, EPIC Employee, and EOLA filed a complaint against Area 57 Association, Inc. ("Area 57"), as well as Greenfield Commons, LLC, Greenfield Commons II, LLC, and Greenfield Commons III, LLC (collectively, the "Greenfield Defendants"), on November 1, 2024. Area 57 failed to answer and, on April 15, 2025, the Court entered a default judgment against Area 57 and in favor of EPIC Midwest in the sum of $25,140.84 plus interest. The Greenfield Defendants also failed to answer and, on March 13, 2025, the Debtors filed a motion for default judgments. The deadline for a response to the motion was April 3, 2025, but the Court order is pending. The Debtors continue to work to collect on the judgment against Area 57.

6.     *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. U of J MU Jamestown, LLC*, Adv. Case No. 24-07031.  On November 22, 2024, EPIC Midwest and EPIC Midwest 2023 filed a complaint against U of J MU Jamestown, LLC ("Jamestown").  Prior to the answer deadline, the parties negotiated a resolution. On February 13, 2025, the Debtors filed a motion seeking to approve a settlement Jamestown, which required the payment of $65,000 to the Debtors.  On March 11, 2025, the Court approved the settlement and the Debtors received payment of the $65,000.  On March 14, 2025, EPIC Midwest and EPIC Midwest 2023 dismissed the adversary proceeding against Jamestown.

7.     *EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, and EOLA Capital, LLC v. Pioneer Place Holdings, LLC*, Adv. Case No. 24-07032.  On November 22, 2024, EPIC Midwest 2023, EPIC Employee, and EOLA filed a complaint against Pioneer Place Holdings, LLC.  Pioneer Place Holdings, LLC failed to answer and, on April 8, 2025, the Court entered default judgments against Pioneer Place Holdings, LLC as follows: (a) in favor of EPIC Midwest 2023 in the sum of $92,163 plus interest; (b) in favor of EPIC Employee in the sum of $51,287.50 plus interest; and (c) in favor of EOLA in the sum of $10,291.82 plus interest. The Debtors continue to work to collect on the judgments.

8.     *EPIC Companies Midwest 2023, LLC and EOLA v. LTC – The Don, LLC*, Adv. Case No. 24-07035.  On December 13, 2024, EPIC Midwest 2023 and EOLA filed a complaint against LTC – The Don, LLC ("The Don").  On January 6, 2025, The Don filed its answer.  The Court entered a scheduling order on January 16, 2025, setting

August 13, 2025, as the trial ready date.  On March 19, 2025, the parties negotiated an initial settlement agreement during a mediation.  The Debtors expect to file a motion seeking approval of the settlement agreement shortly and will seek to dismiss this adversary proceeding after court approval of the settlement agreement.

9.      *EPIC Companies Midwest, LLC v. 36th and Veterans, LLC*, Adv. Case No. 24-07036.  On December 13, 2024, EPIC Midwest filed its complaint against 36th and Veterans, LLC.  36th and Veterans, LLC initially failed to answer and, on January 22, 2025, EPIC Midwest filed a motion for default judgment.  Prior to the objection deadline, 36th and Veterans, LLC filed its answer, on February 11, 2025.  EPIC Midwest withdrew its motion for default judgment.  The Court scheduled a trial date for August 12, 2025.  This adversary proceeding remains pending.

10.     *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. EPIC Management, LLC*, Adv. Case No. 24-07037.  On December 13, 2024, EPIC Midwest 2023 and EOLA filed their complaint against EPIC Management, LLC.  EPIC Management, LLC failed to file an answer and, on February 28, 2025, the Court entered the following default judgments against EPIC Management, LLC as follows: (a) in favor of EPIC Midwest 2023 in the sum of $544,266.64 plus interest; and (b) in favor of EOLA and in the sum of $491,205 plus interest. The Debtors continue to work to collect on the judgments.

11.     *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. EPIC Holdings, LLC*, Adv. Case No. 24-07038.  On December 13, 2024, EPIC Midwest and EPIC Midwest 2023 filed their complaint against EPIC Holdings, LLC.  On January 22, 2025, EPIC Holdings, LLC filed its answer.  The Court scheduled a trial date for August 27, 2025.  This adversary proceeding remains pending.

12.     *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EOLA Capital, LLC v. EPIC Holdings II, LLC*, Adv. Case No. 24-07039.  On December 13, 2024, EPIC Midwest, EPIC Midwest 2023, and EOLA filed their complaint against EPIC Holdings II, LLC.  On January 22, 2025, EPIC Holdings II, LLC filed its answer.  The Court scheduled a trial date for August 27, 2025.  This adversary proceeding remains pending.

13.     *EPIC Companies Midwest, LLC and EOLA Capital, LLC v. HI West Acres, LLC, f/k/a EPIC Hospitality, LLC*, Adv. Case No. 24-07040.  On December 18, 2024, EPIC Midwest and EOLA filed their complaint against HI West Acres, LLC.  On January 14, 2025, HI West Acres, LLC filed its answer.  The Court entered a scheduling order on January 16, 2025, setting August 13, 2025, as the trial ready date.  This adversary proceeding remains pending.

14.     *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, and EOLA Capital, LLC v. LTC – The Lincoln, LLC*, Adv. Case No. 25-07005.  On February 17, 2025, EPIC Midwest, EPIC Midwest 2023, and EOLA filed their complaint against LTC – The Lincoln, LLC.  On March 20, 2025, LTC – The Lincoln, LLC filed its

answer.  A scheduling conference is set for May 20, 2025. This adversary proceeding remains pending.

15.     *EPIC Companies Midwest, LLC v. Fargo South Hospitality, LLC*, Adv. Case No. 25-07006.  On February 20, 2025, EPIC Midwest filed its complaint against Fargo South Hospitality, LLC.  Fargo South Hospitality, LLC filed its answer on March 24, 2025.   Trial is expected in December 2025. This adversary proceeding remains pending.

16.     *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. Sheyenne 32 North, LLC, Sheyenne 32 South, LLC, and Sheyenne 32 South Residential, LLC*, Adv. Case No. 25-07007.  On February 21, 2025, EPIC Midwest 2023 and EOLA filed their complaint against Sheyenne 32 North, LLC, Sheyenne 32 South, LLC, and Sheyenne 32 South Residential, LLC (collectively, the "Sheyenne Defendants").  The Sheyenne Defendants filed their answer on March 24, 2025.   Trial is expected in December 2025. This adversary proceeding remains pending.

17.     *EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC v. EPIC Gateway LLC, EPIC Gateway North Real Estate Holdings, LLC, and Gateway Arches Real Estate Holdings, LLC f/k/a EPIC Gateway East Real Estate Holdings, LLC*, Adv. Case No. 25-07008.  On February 21, 2025, EPIC Midwest 2023, EOLA, and EC West Fargo filed their complaint against EPIC Gateway LLC, EPIC Gateway North Real Estate Holdings, LLC, and Gateway Arches Real Estate Holdings, LLC (the "Gateway Defendants").  On March 19, 2025, the Gateway Defendants filed their answer.  Trial is expected in December 2025.  This adversary proceeding remains pending.

18.     *EOLA Capital, LLC v. The Tracks – Maverick, LLC*, Adv. Case No. 25-07010.  On March 4, 2025, EOLA filed its complaint against The Tracks – Maverick, LLC.  The Tracks – Mavrick, LLC filed its answer on April 3, 2025. Trial is expected in December 2025. This adversary proceeding remains pending.

19.     *EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EOLA Capital, LLC, and EC West Fargo, LLC v. EOLA Landholdings, LLC*, Adv. Case No. 25-07012.  On March 10, 2025, EPIC Midwest, EPIC Midwest 2023, EOLA, and EC West Fargo filed their complaint against EOLA Landholdings, LLC.  EOLA Landholdings, LLC failed to file an answer. On April 17, 2025, the Debtors filed a motion for default judgment, which remains pending.

20.     *EPIC Companies Midwest 2023, LLC v. Dutch Mill Development, LLC*, Adv. Case No. 25-07013.  On March 10, 2025, EPIC Midwest 2023 filed its complaint against Dutch Mill Development, LLC.  The answer is due on May 16, 2025.  This adversary proceeding remains pending.

21.     *EPIC Companies Midwest, LLC v. CBE, LLC*, Adv. Case No. 25-07014. On March 10, 2025, EPIC Midwest filed its complaint against CBE, LLC.  CBE, LLC

11

failed to file an answer.  On April 17, 2025, the Debtors filed a motion for default judgment, which remains pending.

22.     *EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC v. Northern Mall Partners, LLC*, Adv. Case No. 25-07015.  On March 10, 2025, EPIC Midwest 2023 and EOLA filed their complaint against Northern Mall Partners, LLC ("Northern Mall").  Prior to the answer deadline, the parties negotiated a resolution. On April 9, 2025, the Debtors filed a motion seeking Court approval of the settlement, which required the payment of $170,000 to the Debtors.  The motion to approve the settlement remains pending.

23.     *EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC v. Makt, LLC*, Adv. Case No. 25-07016.  On March 10, 2025, EPIC Midwest and EPIC Midwest 2023 filed their complaint against Makt, LLC.  Makt, LLC failed to file an answer.  On April 17, 2025, the Debtors filed a motion for default judgment, which remains pending.

24.     *EPIC Companies Midwest, LLC v. EPIC Place, LLC*, Adv. Case No. 25-07017.  On March 10, 2025, EPIC Midwest filed its complaint against EPIC Place, LLC.  EPIC Place, LLC failed to file an answer.  On April 17, 2025, the Debtors filed a motion for default judgment, which remains pending.

25.     *EPIC Companies Midwest 2023, LLC and EPIC Employee, LLC v. BA Downtown, LLC*, Adv. Case No. 25-07018.  On March 10, 2025, EPIC Midwest 2023 and EPIC Employee filed their complaint against BA Downtown, LLC.  BA Downtown, LLC failed to file an answer.  On April 17, 2025, the Debtors filed a motion for default judgment, which remains pending.

26.     *EPIC Companies Midwest 2023, LLC v. West Fargo Dive Bar, LLC*, Adv. Case No. 25-07019.  On March 10, 2025, EPIC Midwest 2023 filed its complaint against West Fargo Dive Bar, LLC.  West Fargo Dive Bar, LLC failed to file an answer.  On April 28, 2025, the Debtors filed a motion for default judgment, which remains pending.

**F.**    ~~E.~~ **Payments and Settlements.**

During the pendency of the Chapter 11 Cases, certain of the Project Companies voluntarily repaid the amounts owed to the Debtors.  The Debtors also reached settlement agreements with a number of other Project Companies.  In total, the Debtors have recovered approximately $741,597 as of the date of this Disclosure Statement, and two settlement agreements collectively providing for $610,000 in settlement payments remain pending as of the date of this Disclosure Statement.  The following summarizes the payments and settlements received by the Debtors:

1.     Forward Building Investments LLC ("FBI") – prior to the Petition Date, the Debtors loaned FBI approximately $150,000.  After the filing of the Chapter 11

Cases, FBI repaid the Debtors the full balance of the outstanding loans, totaling $150,000.

2.      HIE Depot, LLC ("HIE") – prior to the Petition Date, the Debtors loaned HIE approximately $200,000.  In November 2024, HIE proposed paying the full $200,000 to the Debtors if the Debtors agreed to waive any unpaid interest, late fees, or collection costs.  The Debtors agreed to this proposal and the parties executed a settlement agreement, which was approved by the Court on December 19, 2024 [Docket No. 191].  The Debtors received the $200,000 from HEI.

3.      MBG Land, LLC ("MBG") – prior to the Petition Date, the Debtors loaned MBG approximately $25,000.  In November 2024, MBG proposed paying the full $25,000 to the Debtors if the Debtors agreed to waive any unpaid interest, late fees, or collection costs.  The Debtors agreed to this proposal and the parties executed a settlement agreement, which was approved by the Court on December 20, 2024 [Docket No. 199].  The Debtors received the $25,000 from MBG.

4.      8th & Main, LLC ("8th & Main") – prior to the Petition Date, the Debtors loaned 8th & Main approximately $10,000.  In November 2024, 8th & Main proposed paying $9,000 to the Debtors if the Debtors agreed to waive the remaining $1,000 and any unpaid interest, late fees, or collection costs.  The Debtors agreed to this proposal and the parties executed a settlement agreement, which was approved by the Court on December 20, 2024 [Docket No. 200].  The Debtors received the $9,000 from 8th & Main.

5.      Friends of the Wave, LLC ("Friends") – prior to the Petition Date, the Debtors loaned Friends approximately $31,050.  In November 2024, the Debtors learned that the only significant asset of Friends was an equity interest in The Wave Resort, LLC, which was in the process of winding up its affairs and making a partial distribution to its equity holders.  Friends proposed instructing the Wave to pay the Friends share of the equity distribution, in the amount of $29,000, directly to the Debtors in full satisfaction of the obligations owed by Friends to the Debtors.  The Debtors agreed to this proposal and the parties executed a settlement agreement, which was approved by the Court on January 8, 2025 [Docket No. 204].  The Debtors received the $29,000 from Friends.

6.      LTC – The Falcon ("Falcon") – prior to the Petition Date, the Debtors loaned approximately $75,000 to Falcon.  In December 2024, Falcon informed the Debtors that its only asset was approximately $13,597 in cash, which Falcon offered to pay to the Debtors in exchange for the Debtors waiving any additional amounts owed by Falcon to the Debtors.  Based on Falcon's financial situation, the Debtors agreed to this proposal and the parties executed a settlement agreement, which was approved by the Court on February 20, 2025 [Docket No. 232].  The Debtors received the $13,597 from Falcon.

7.      Jamestown – prior to the Petition Date, the Debtors loaned approximately $65,000 to Jamestown.  As described above, the Debtors initiated an adversary

proceeding against Jamestown before negotiating a settlement that required Jamestown to pay $65,000 to the Debtors in exchange for the Debtors waiving interest, late fees, and collection costs.  The Court approved this settlement agreement on March 11, 2025. [Docket No. 252].  The Debtors received the $65,000 from Jamestown.

8.      JP Place, LLC ("JP Place") – prior to the Petition Date, the Debtors loaned approximately $1,320,000 to JP Place.  JP Place disputed the loan amount and argued that it had an inability to repay the full loan amount.  The Debtors engaged in negotiations with JP Place and also conducted a financial analysis of JP Place.  After conducting their analysis and through their negotiations with JP Place, the Debtors ultimately agreed to JP Place paying the Debtors $250,000 in exchange for the Debtors waiving the remaining outstanding balance and any interest, late fees, and collection costs.  The Court approved this settlement agreement on April 8, 2025 [Docket No. 268].  The Debtors received the $250,000 on April 10, 2025.

9.      The Don – prior to the Petition Date, the Debtors loaned approximately $1,490,000 to The Don.  The Don disputed the loan amount and argued that it had an inability to repay the full loan amount.  The Debtors engaged in negotiations with The Don through a formal mediation process and the Debtors also conducted a financial analysis of The Don and its assets.  After conducting their analysis and through the mediation process, the Debtors ultimately agreed to The Don paying the Debtors $440,000 in exchange for the Debtors waiving the remaining outstanding balance and any interest, late fees, and collection costs.  The Debtors anticipate filing a motion to approve this settlement agreement in the near future.

10.      Northern Mall – prior to the Petition Date, the Debtors loaned approximately $190,000 to Northern Mall, with Northern Mall making a $20,000 principal payment prior to the Petition Date, leaving an outstanding principal balance of $170,000.  As described above, the Debtors initiated an adversary proceeding against Northern Mall before negotiating a settlement that required Northern Mall to pay $170,000 to the Debtors in exchange for the Debtors waiving interest, late fees, and collection costs.  As of the date of this Disclosure Statement, the Court granted the motion to approve the settlement agreement and the Debtors anticipate Northern Mall making the settlement payment in the near future.

**G.**      ~~F.~~ **Avoidance Actions and Other Litigation.**

Under Section 547 of the Bankruptcy Code, certain transfers made by the Debtors to creditors within 90 days (or, in some cases, one year) of the Petition Date may be recovered as preferential payments.  Section 548 of the Bankruptcy Code gives the Debtors power to avoid fraudulent transfers.  Such claims, and all Avoidance Claims, are transferred to the Liquidating Trust under the Plan. The Causes of Action include, but are not limited to, those items identified on Exhibit B to the Plan. No person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, or Exhibit B to the Plan to any Cause of Action as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action. The Debtors expressly

reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine shall apply to a Cause of Action upon, after, or as a consequence of the Confirmation Order. All recoveries on any Causes of Action, including Avoidance Claims, shall be retained by the Liquidating Trust for use in making payments under the Plan.

## IV.    SUMMARY OF THE PLAN.

The below summary is provided for the convenience of holders of claims.  If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan are controlling.  The summary of the Plan in this Disclosure Statement does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the full text of the Plan, including the definitions of terms contained in the Plan.  All holders of claims are encouraged to review the full text of the Plan and to carefully read this entire Disclosure Statement, including all exhibits.

### A.    General Overview.

The purpose of the Plan is to create a mechanism for the liquidation of remaining property of the estates, the disposition of Causes of Action, the resolution of claim disputes, and the distributions to holders of Allowed claims in accordance with the priority scheme created by the Bankruptcy Code.  The Debtors believe that the Liquidating Trust created under the Plan and the Liquidating Trustee and Liquidating Trust Advisory Committee will do this in a more cost-effective and timely manner than any other alternative, including the conversion of the case and the appointment of a Chapter 7 trustee.  Specifically, the Debtors believe that, based on the Liquidating Trustee's and Liquidating Trust Advisory Committee's collective knowledge about the Debtors, the Liquidating Trustee will be able to liquidate the remaining estate assets and make a distribution quickly, preserving the present value of such distributions, and with lower administrative expenses.  The Debtors therefore believe that holders of Allowed claims will realize a more favorable recovery of value than would occur under an alternative wind-down or liquidation.

### B.    Classification of Claims and Interests.

As set forth in Article 5.1 of the Plan, the Plan provides for the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

The following table designates the classes of claims against and equity interests in the Debtors and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.  A claim is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in other classes to the extent that any remainder of the claim qualifies within the description of such other classes.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expenses | N/A | No |

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Statutory Fees and Court Costs | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1 | General Unsecured Claims | Yes | Yes |
| 2 | Class B Equity Claims | Yes | Yes |
| 3 | Class A Equity Claims | Yes | No |

**C.    Description of Classes and Treatment.**

*1.    Unclassified Claims.*

i.    Allowed Administrative Expense Claims.

Except as otherwise provided in Article III of the Plan, holders of Allowed claims specified in Section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash from the Liquidating Trust as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Court.

With respect to the Debtors' Allowed operating expenses incurred during the Chapter 11 Cases, the Debtors generally paid these expenses as they came due or through other arrangements thereafter.  If any Allowed Administrative Expense Claims resulting from postpetition operations come due after the Effective Date, or for any other reason have not been paid as of the Effective Date, these claims shall be paid from the Liquidating Trust as the claims become due or as otherwise agreed between the holders of such claims and the Liquidating Trustee.

Professional fees and expenses incurred through the Effective Date and not previously Allowed shall be subject to Court approval after the Effective Date. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than 30 days after the Effective Date.  The Liquidating Trustee shall pay any Allowed professional fees and expenses within 10 days of the later of: (a) the Effective Date; or (b) the Court's order allowing such claim.

In the event that the Debtors have liability to any taxing authority on account of unpaid taxes that accrued and were payable after the Petition Date, the Debtors or the Liquidating Trustee shall pay such taxes from the Liquidating Trust in full in cash as soon as practicable following the later of: (a) the Effective Date; or (b) approval by the Court.

ii.    Statutory Fees and Court Costs.

Court costs and fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid in full in cash from the Liquidating Trust on the Effective Date or as soon as practicable thereafter or as required under the U.S. Trustee's quarterly fee payment guidelines.  The Debtors estimate these

claims shall be nominal, as they have remained current on such payments.  After the Effective Date, the Liquidating Trustee shall be responsible for paying quarterly fees to the U.S. Trustee, filing monthly operating reports through the substantial consummation of the Plan on the Effective Date, and, thereafter, filing quarterly reports through the date the Chapter 11 Cases are closed, dismissed, or converted.  Such reports shall be in the format prescribed by the U.S. Trustee. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

iii.    Unsecured Priority Claims.

The Debtors estimate that the Allowed Priority Tax Claims total approximately $0.  The Allowed Priority Tax Claims shall be paid in full in cash as soon as practicable following the later of (a) the Effective Date; or (b) the date on which such claims are Allowed.

Notwithstanding anything to the contrary in the Plan, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, the Allowed Priority Tax Claim.  Any such claim or demand for any such penalty shall be subject to treatment in Class 1, if not subordinated to Class 1 claims pursuant to an order of the Court.  The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust, or the property of either (other than as a holder of a Class 1 claim).

All other Allowed claims not specifically treated in Article III of the Plan and entitled to priority under Section 507(a) of the Bankruptcy Code shall be paid from the Liquidating Trust in full in cash as soon as practicable following the later of: (a) the Effective Date; (b) the due date; or (c) the date on which such claims are Allowed.

2.    *Class 1 – General Unsecured Claims.*

Class 1 consists of the general unsecured claims asserted against the Debtors.  Except to the extent that a holder of a Class 1 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 1 claim shall receive a pro rata distribution from the Liquidating Trust after the payment of all Allowed Administrative Expense Claims as provided in Article 3.1 of the Plan, statutory fees and costs as provided in Article 3.2 of the Plan, Allowed priority claims as provided in Article 3.3 of the Plan, and all costs and expenses of the Liquidating Trust.  Class 1 claims shall include claims by counterparties to executory contracts and unexpired leases that are rejected pursuant to Article VII of the Plan.

Nothing contained in the Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 1 claim as permitted under the Bankruptcy Code or otherwise applicable law.  The payments to the holder of the Class 1 claims pursuant to Article IV of the Plan shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1 claims.

3.    *Class 2 – Class B Equity Claims.*

17

Class 2 consists of the Class B Equity Interests.  Except to the extent that a holder of a Class 2 claim: (a) has been paid by the Debtors prior to the Effective Date; or (b) agrees to a less favorable classification and treatment, each holder of an Allowed Class 2 claim shall receive the same treatment as provided to the holder of an Allowed Class 1 claim under Article 4.1 of the Plan.

Nothing contained in the Plan shall restrict the Debtors or the Liquidating Trustee from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law.  The payments to the holder of the Class 2 claims pursuant to Article IV of the Plan shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

4.     *Class 3 – Class A Equity Claims.*

Class 3 consists of the Class A Equity Interests in the Debtors.  Holders of Class 3 claims shall not receive a distribution under the Plan.  All Class A Equity Interests shall be deemed cancelled upon the Effective Date.  Class 3 is deemed to reject the Plan

**D.     Distributions and Claims Administration.**

Unless otherwise provided in the Plan, the Liquidating Trustee shall make a final distribution after determining, in consultation with the Liquidating Trust Advisory Committee, that all assets that feasibly could be liquidated have been liquidated.  At its discretion, but in consultation with the Liquidating Trust Advisory Committee, the Liquidating Trustee may make, but is not required to make, an initial distribution and additional distributions before the final distribution

Payments under the Plan shall be made by ACH or check, mailed with first class postage pre-paid, to the holder of each Allowed claim at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules.  Holders of Allowed claims may contact the Liquidating Trustee to amend their addresses as follows:

Renee Foss
Lighthouse Management Group Inc.
900 Long Lake Road, Suite 180
New Brighton, MN 55112
(651) 439-5119

Unless a claim is specifically Allowed under the Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Trustee shall have and retain any and all objections to any and all claims, motions, or other requests for the payment of claims, whether administrative expense, secured, or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims,

liens, and security interests, whether under the Bankruptcy Code, other applicable law, or contract.

Unless otherwise ordered by the Court in the Confirmation Order, any objections to claims, except objections to Administrative Expense Claims or objections arising under Section 502(d) of the Bankruptcy Code, shall be filed within 120 days after the Effective Date (unless such date is not a business day, in which case such deadline shall be the next business day thereafter) or at such later date as approved by the Court upon request from the Liquidating Trustee.  Any claim objections arising solely under Section 502(d) of the Bankruptcy Code shall not be subject to the 120-day deadline and may be pursued through an adversary proceeding asserting an Avoidance Claim.

Except as otherwise agreed by the Liquidating Trustee, any claim as to which a proof of claim, motion, or other request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated pursuant to: (a) a Final Order of the Court; or (b) a Final Order under applicable non-bankruptcy law, and shall be deemed Allowed in such liquidated amount and satisfied in accordance with the Plan.  Nothing contained in the Plan, this Disclosure Statement, or the Confirmation Order shall constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the estates, the Liquidating Trustee, or the Liquidating Trust may have against any person in connection with, or arising out of, any claim or claims, including, without limitation, any rights under 28 U.S.C. § 157(b).

Notwithstanding any other provision in the Plan, no payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by a Final Order, and the Contested Claim has become an Allowed claim.

The Debtors or the Liquidating Trustee may request estimation or limitation of any Contested Claim that is contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code; provided, however, that the Court shall determine: (a) whether such Contested Claim is subject to estimation pursuant to Section 502(c) of the Bankruptcy Code; and (b) the timing and procedures for such estimation proceedings, if any.  Unless provided otherwise in an order of the Court, the estimated amount shall constitute the Allowed amount of such claim or a maximum limitation on such claim, as the Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such claim, the Debtors or the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of such claim.  The foregoing shall not limit the rights granted by Section 502(j) of the Bankruptcy Code.

The Liquidating Trustee may, pursuant to applicable non-bankruptcy law, set off against any distribution to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature the Debtors or the Liquidating Trustee may hold against the holder of such Allowed claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Debtors or the Liquidating Trustee may hold against such holder.

### E.    Executory Contracts and Unexpired Leases.

Each contract, lease, or other agreement listed on Exhibit C to the Plan shall be assumed as of the Effective Date, to the extent that each such contract, lease, or other agreement has not already expired, concluded, or terminated under its own terms.  All other executory contracts, unexpired leases, or other agreements that are not listed on Exhibit C and were not previously assumed or rejected by Final Order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute, pursuant to Sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts and unexpired leases.

The Debtors have identified the cure amounts that they believe exist for the contracts, leases, or other agreements listed on Exhibit C.  Payments of any cure amounts shall be made by the Liquidating Trust as provided in Article 4.1 of the Plan.  The Liquidating Trustee shall retain all rights to contest any cure amount claims asserted by any entity.

To the extent not subject to a claims bar date set forth in any prior or subsequent order of the Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Article 7.1 of the Plan must be filed with the Court no later than 30 days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed Class 1 claim.  Any claims not filed within such applicable time periods shall be forever barred from receiving a distribution from the Debtors, the estates, or the Liquidating Trust.

**F.     Conditions Precedent to Effective Date.**

The Effective Date shall not occur, and the Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Article 8.2 of the Plan:

1.     The Court shall have entered the Confirmation Order, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall be in effect.

2.     The appointment of the Liquidating Trustee shall have been confirmed by order of the Court.

3.     All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors, and have been duly executed and delivered, including without limitation, the Trust Agreement; provided, however, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

4.     The Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Article 12.1 of the Plan.

Notwithstanding the foregoing conditions in Article VIII of the Plan, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the

Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date, as applicable, shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### G. Effects of Confirmation.

#### 1. *Title to and Vesting of Assets.*

All property of the Debtors and the estates is dealt with by the Plan; therefore, on the Effective Date, to the full extent allowed by Section 1141(b) of the Bankruptcy Code, all property of the Debtors and the estates vests in the Liquidating Trust and such property is free and clear of all liens, encumbrances, claims, and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.  From and after the Effective Date, the Liquidating Trust may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

#### 2. *Preservation of Causes of Action.*

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the bankruptcy estates may hold against any entity shall automatically be transferred to and vest in the Liquidating Trust on the Effective Date, including, without limitation, any and all Causes of Action asserted in any pending adversary proceedings commenced by the Debtors prior to the Effective Date.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action that were held by the Debtors and the bankruptcy estates, in its sole discretion and without further order of the Court, in any court or other tribunal, including, without limitation, in any adversary proceeding filed in one or more of the Chapter 11 Cases.

Unless a Cause of Action against an entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order of the Court, including, without limitation, the Confirmation Order, the Debtors and their bankruptcy estates expressly reserve such Causes of Action for later adjudication or administration by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final

Order, including, without limitation, the Confirmation Order.  In addition, the Debtors and their bankruptcy estates expressly reserve the right of the Liquidating Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any entity to whom the Debtors may have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or whom has received services from the Debtors or a transfer of money or property of the Debtors, or whom has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (a) such entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (b) the Debtors have objected to any such entity's proof of claim; (c) any such entity's claim was included in the Schedules; (d) the Debtors have objected to any such entity's scheduled claim; or (e) any such entity's scheduled claim has been identified by the Debtors as disputed, contingent, or unliquidated.

3.    *Injunction.*

From and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, as the case may be, any suit, action, or other proceeding, on account of or respecting any claim or equity interest, demand, liability, obligation, debt, right, cause of action, interest, or remedy released or satisfied or to be released or satisfied pursuant to the Plan or Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all entities shall be precluded from asserting against the Debtors, their bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties, any other claims or equity interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to the Plan or the Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all claims and equity interests in the Plan shall be in exchange for and in complete satisfaction of claims and equity interests against the Debtors or any of their assets or properties solely to the extent that: (a) such claims or equity interests have been released or satisfied pursuant to the Plan or Confirmation Order; or (b) such claims, equity interests, actions, or assertions of liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.  On the Effective Date, all such claims against, and equity interests in, the Debtors shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all persons and entities are permanently enjoined, on and after the Effective Date, on

account of any claim or equity interest satisfied and released pursuant to the Plan or Confirmation Order from: (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Debtor, any of the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the Committee, their successors and assigns, and their assets and properties; (d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or Cause of Action released or settled under the Plan.

### 4.        *Releases by the Debtors and Their Estates.*

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, their estates, and their current and former representatives shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors, their estates, their current and former representatives, and the Committee and its members but solely in their capacity as members of the Committee and not in their individual capacities), from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date, or airing thereafter, in law, at equity, whether for tort, contract, violations of statutes (including, without limitation, the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to, or on, the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a claim or equity interest or other entity would have been legally entitled to assert for, or on behalf of, any of the Debtors or the estates, including those in any way related to the Chapter 11 Cases or the Plan; _provided_, _however_, that the foregoing release shall not prohibit the Debtors or the Liquidating Trustee from asserting any and all affirmative claims, defenses, and counterclaims in respect to any contested claim asserted by any Released Party.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article 8.6 pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the claims and causes of action released by the Plan; (b) in the best interests of the Debtors and all holders of claims and equity interests; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any claim or cause of action thereby released**

5.    *Exculpation.*

Notwithstanding anything contained in the Plan to the contrary, the Released Parties shall neither have nor incur any liability relating to these Chapter 11 Cases to any entity for any and all claims and causes of action arising after the Petition Date and through the Effective Date, including, without limitation, any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan or distributing property under the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, including, without limitation the execution of any and all settlement agreements filed with the Court in the Chapter 11 Cases; provided, however, that the foregoing provisions of shall have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

V.    MEANS OF EXECUTION.

A.    Substantive Consolidation.

The Plan and Disclosure Statement jointly incorporate the Debtors' *Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations* [Docket No. __]. The Plan contemplates and is predicated upon the Confirmation Order substantively consolidating the Debtors' estates and the Chapter 11 Cases as set forth in the Plan and in the above-described motion.  Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the estates of the Debtors for the purposes of confirming and consummating the Plan, including, without limitation, voting, confirmation, and distributions.

On and after the Effective Date: (a) all assets and liabilities of the Debtors shall be treated as though they were pooled; (b) each claim filed or to be filed against any of the Debtors, as to which two or more of the Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single claim against, and a single obligation of, the Debtors; (c) all claims held by one of the Debtors against one or more of the other Debtors shall be cancelled or extinguished; (d) no distributions shall be made under the Plan on account of any claim held by one of the Debtors against one or more of the other Debtors; (e) all guarantees of any of the Debtors of the obligations of one or more of the other Debtors shall be eliminated so that any claim against any of the Debtors and any claim based upon a guarantee thereof executed by one or more of the other Debtors shall be treated as one claim against the substantively-consolidated Debtors; and (f) any joint and several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any claims based upon such joint or several liability shall be treated as one claim against the substantively-consolidated Debtors.

The substantive consolidation of the Debtors under the Plan shall not, other than for purposes related to funding the distributions under the Plan, affect: (a) the legal and organizational structure of the Debtors; (b) the executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected; (c) any agreements entered into by the Liquidating Trust on or after the Effective Date; (d) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge claims on an entity-by-entity basis; (e) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the estates of the Debtors; and (f) distributions to the Debtors or the Liquidating Trust from any insurance policies or proceeds thereof. Notwithstanding the substantive consolidation called for in the Plan, each of the Debtors shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until each particular case is closed, dismissed, or converted.

### B.      Liquidating Trust and Liquidating Trustee.

On the Effective Date, the Debtors and the Liquidating Trustee shall enter into the Liquidating Trust Agreement. Additionally, on the Effective Date, the Debtors shall irrevocably transfer to the Liquidating Trust all right, title, and interest in and to the Liquidating Trust Assets in accordance with the Plan, including, without limitation, Article 8.5 of the Plan. In its capacity as Liquidating Trustee, the Liquidating Trustee shall accept all Liquidating Trust Assets on behalf of the beneficiaries of the Liquidating Trust, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in its possession. The Liquidating Trust shall be deemed created and effective without any further action by the Court or any person as of the Effective Date. The Liquidating Trust shall be established for the purposes of (a) collecting and liquidating the Liquidating Trust Assets; (b) prosecuting and resolving the Causes of Action; (c) maximizing recovery of the Liquidating Trust Assets for the benefit of the beneficiaries of the Liquidating Trust; and (d) distributing the proceeds of the Liquidating Trust Assets to the beneficiaries in accordance with the Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

The CRO shall be appointed the Liquidating Trustee and such appointment shall be approved by the Court pursuant to the Confirmation Order. Following appointment, the Liquidating Trustee shall act in accordance with the Plan and Liquidating Trust Agreement, and, in such capacity, shall have the same powers as the board of directors and officers of the Debtors, and all bylaws, articles, and related corporate documents shall be deemed amended by the Plan to permit and authorize the same. The Liquidating Trustee's primary tasks are to receive the Liquidating Trust, liquidate assets, pursue Causes of Action, administer claims, and distribute proceeds for the benefit of the holders of Allowed claims. The Liquidating Trustee shall file a motion, application, or other request to close the Chapter 11 Cases when the cases have been fully administered. For the avoidance of doubt, no "insider" or "affiliate" (as those terms are defined in the Bankruptcy Code) shall serve as the Liquidating Trustee.

The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well

as the representative of the bankruptcy estates of the Debtors appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code regarding all Liquidating Trust Assets. The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including through the creation of reserves as provided for under the Plan; (b) file tax returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Debtors, the bankruptcy estates, and the Liquidating Trust to the extent payable consistent with the Plan, the Bankruptcy Code, or order of the Court; (c) retain and compensate, without further order of the Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust Assets; (d) calculate and implement distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust and, as set forth in Articles 5.2.5 and 8.5 of the Plan, those Causes of Action may be settled or compromised without notice and a hearing and without Court approval, but shall be subject to the consent of the Liquidating Trust Advisory Committee; (f) address and resolve issues involving objections, reconciliation, and allowance of claims and equity interests in accordance with the Plan; (g) undertake all administrative functions of the Plan and the Chapter 11 Cases, including the payment of all secured claims, Administrative Expense Claims, Priority Tax Claims, other priority claims, and fees payable to the U.S. Trustee, and the ultimate closing of the Chapter 11 Cases; (h) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer any asset on behalf of the Debtors and the Liquidating Trust; (i) defend, protect, and enforce any and all rights and interests transferred to the Liquidating Trust or Liquidating Trustee; (j) open, create, or close accounts to deposit, hold, and disburse funds; (k) invest cash in demand or time deposits to obtain market rates of return pending distributions; (l) file any and all reports and motions or requests for relief with the Court and any opposition thereto; (m) dissolve the Debtors or otherwise wind up the Debtors' corporate affairs and existence; (n) subject to approval of the Liquidating Trust Advisory Committee, incur indebtedness to fund administration of the Plan; and (o) perform any other functions that are necessary to effectuate the Plan and perform its duties as Liquidating Trustee. The Liquidating Trust is the successor to the Debtors and their estates.

On the Effective Date, the Liquidating Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or required.

The Liquidating Trustee may, but shall not be required to, invest cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 26 C.F.R. § 1.67-4(a) and in accordance with the Plan.  The Liquidating Trust also shall annually (for tax years in which distributions from the Liquidating Trust are made) send to each known beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any class that is not expected to receive any distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit shall be allocated to the Liquidating Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust. As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit for taxing purposes. The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.  The Liquidating Trustee shall be responsible for filing all tax returns for the Debtors and the Liquidating Trust.  The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtors, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering the Plan, the Liquidating Trust, or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such costs, expenses, and obligations shall include secured claims, Administrative Expense Claims, Tax Priority Claims, and other priority claims not otherwise satisfied as of the Effective Date.  Such costs, expenses, and obligations shall be paid in accordance with the Liquidating Trust Agreement.

The Liquidating Trustee shall be entitled to be paid reasonable compensation and expenses  from the Liquidating Trust, subject to the consent of the Liquidating Trust Advisory Committee.  The Liquidating Trustee shall be entitled to retain professionals without Court approval, but with consent of the Liquidating Trust Advisory Committee, to assist in its duties, and shall be entitled to pay such professionals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee.  For the avoidance of doubt, the Liquidating Trustee may retain the former professionals of the Debtor and the Committee.  The Liquidating Trustee may hire former employees and other "insiders"  (as that term is defined in the Bankruptcy Code) of the Debtors for postconfirmation services, and may pay such individuals reasonable compensation and expenses, subject to the consent of the Liquidating Trust Advisory Committee.

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under 26 C.F.R. Section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtors' estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners of the Liquidating Trust.

The holders of Allowed Class 1 and Class 2 claims shall be the beneficiaries of the Liquidating Trust. Such beneficiaries shall be bound by the Liquidating Trust Agreement. The interests of the beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

### C.     Liquidating Trust Advisory Committee.

The Liquidating Trust Advisory Committee shall be a three-member committee established under the Liquidating Trust Agreement and the members of the Liquidating Trust Advisory Committee shall initially be the members of the Committee. The Liquidating Trust Advisory Committee may act with as few as two members. In the event that a resignation or termination of members of the Liquidating Trust Advisory Committee reduces the number of members to less than two members, then the remaining member and the Liquidating Trustee shall appoint one successor member, who shall be a holder of one or more Allowed general unsecured claims against one or more of the Debtors, in the Liquidating Trustee's sole discretion. For the avoidance of doubt, no "insider" or "affiliate" (as those terms are defined in the Bankruptcy Code) shall serve as a member of the Liquidating Trust Advisory Committee.

As described more fully in the Liquidating Trust Agreement, the Liquidating Trust Advisory Committee shall monitor the Liquidating Trustee and all activities set forth in this Plan. The Liquidating Trust Advisory Committee shall have the power and authority to ratify or reject decisions of the Liquidating Trustee, and, in its discretion, the Liquidating Trust Advisory Committee may delegate to the Liquidating Trustee such power and authority as it deems proper. The members of the Liquidating Trust Advisory Committee shall not be paid for serving on the Liquidating Trust Advisory Committee except for reimbursement of actual expenses incurred by such members. The Liquidating Trust Advisory Committee shall be governed by the Liquidating Trust Agreement substantially in the form of those attached as Exhibit A of the Plan. In the event that a vote by the Liquidating Trust Advisory Committee results in a tie vote, the Liquidating Trustee (although not a member) shall be entitled to vote on that issue as set forth in Exhibit A of the Plan.

### D.     Indemnification of Liquidating Trustee and Liquidating Trustee Advisory Committee.

The Liquidating Trust shall indemnify the Liquidating Trustee and its employees, officer, directors, agents, representatives, and professionals for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense

(including, without limitation, the reasonable fees and expenses of their respective professionals) incurred without gross negligence, willful misconduct, or fraud on the part of the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals (which gross negligence, willful misconduct, or fraud, if any, must be determined by Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals in connection with the acceptance, administration, exercise, or performance of their duties under the Plan or the Liquidating Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud.  In addition, the Liquidating Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, without limitation, to professional fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan if the Liquidating Trustee and its employees, officers, directors, agents, representatives, and professionals acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust.  To the extent that the Liquidating Trust indemnifies and holds harmless any such person or entity as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust.  The costs and expenses incurred in enforcing the right of indemnification in this Article shall be paid by the Liquidating Trust.   This provision shall survive the termination of the Liquidating Trust Agreement and the resignation, replacement, or removal of the Liquidating Trustee and the Liquidating Trust Advisory Committee.

### E.    Term of Liquidating Trust.

The Liquidating Trustee and Liquidating Trust Advisory Committee shall be discharged, and the Liquidating Trust shall be terminated, at such time as: (a) all Contested Claims have been resolved; (b) all of the Liquidating Trust Assets have been liquidated or abandoned; (c) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled; (d) all distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made; and (e) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and/or distributions in accordance with the Plan.

### F.    Dissolution of Committee.

Upon the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to, and

arising from, the Chapter 11 Cases.  The retention and employment of the professionals retained by the Committee shall terminate as of the Effective Date, provided, however, that the Committee shall exist, and its professionals shall be retained, after such date with respect to applications filed pursuant to Sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

## VI.    PROOFS OF CLAIM AND ADMINISTRATIVE CLAIMS.

The deadline to file proofs of claim in this case was September 16, 2024 for non-governmental creditors and January 16, 2025, for governmental creditors.  The procedures for distribution on claims and for objections to claims are set out in Article VI of the Plan, as described above.  The Court's order approving the Plan will set the deadline for filing administrative expense claims.

## VII.   FEDERAL TAX CONSEQUENCES OF THE PLAN.

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors and to holders of general unsecured claims. This summary does not address the federal income tax consequences to holders of Allowed Administrative Expense Claims, priority claims, or secured claims, if any.  This summary does not address foreign, state, or local income tax consequences, or any estate or gift tax consequences of the Plan, or the federal income tax consequences of the Plan to special classes of taxpayers. Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a claim or interest.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH HOLDER.  THIS SUMMARY DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED IN THE DISCLOSURE STATEMENT, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.**

### A.    Federal Income Tax Consequences to the Debtors.

The Debtors anticipate that confirmation of the Plan will have no federal income tax consequences on a cash basis for the Debtors.

Section 61(a)(12) of title 26 of the United States Code (the "IRC") provides generally that income from the discharge of indebtedness is includable as an item of gross income. Section 108(a)(1)(A) of the IRC provides an exception to section 61(a)(12) of the IRC by excluding from gross income any amount which, but for application of section 108(a)(l)(A) of

the IRC, would be includable in gross income by reason of the discharge of indebtedness of a taxpayer if the discharge occurs in a title 11 case.  However, if amounts are excluded from gross income under section 108(a)(l)(A) of the IRC, various tax attributes of the taxpayer must be reduced.

Upon information and belief, the Debtors have been treated for federal tax purposes as either partnerships or disregarded entities. This means that the owner(s) of the Debtors are treated as receiving any income or loss of the Debtors.  This also means that income or loss from the Liquidating Trust will ultimately be allocated to the owner(s) of the Debtors since the Debtors are beneficiaries of the Liquidating Trust which is treated as a grantor trust.  In the case of a partnership, section 108(a)(1)(A) of the IRC is applied at the owner, i.e. partner, level and not the partnership level as provided in section 108(d)(6) of the IRC.  For purposes of applying section 108(a)(1)(A) of the IRC, a disregarded entity is not considered to be the "taxpayer" as that term is used in section 108(a)(1) of the IRC.  Instead, the owner of the disregarded entity is treated as the "taxpayer" pursuant to the provisions of Treas. Reg. section 1.108-9.

Since the Debtors are either partnerships or disregarded entities, the owners of the Debtors, not the Debtors, will be responsible for any income that will be derived from discharge of indebtedness occasioned by the Plan and the application of section 108(a)(1)(A) of the IRC.

### B.    Federal Income Tax Consequences to Holders of General Unsecured Claims.

In accordance with the Plan, holders of Allowed general unsecured claims will receive a distribution on such claims.  Any holder of an Allowed general unsecured claim will realize a loss in an amount equal to such claim, minus any recovery, on an adjusted tax basis.

The tax consequences to holders of Allowed general unsecured claims will differ and will depend on factors specific to such holder, including but not limited to: (a) whether the claim, or a portion thereof, constitutes a claim for interest or principal; (b) the origin of the claim; (c) the type of consideration received in exchange for the claim; (d) whether the holder is a United States person or a foreign person for tax purposes; (e) whether the holder reports income on the accrual or cash basis method; and (f) whether the holder has taken a bad debt deduction or otherwise recognized a loss with respect to the claim.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCE TO EACH HOLDER OF A GENERAL UNSECURED CLAIM. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN.  THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF A GENERAL UNSECURED CLAIM OBTAIN HIS, HER, OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER OF A GENERAL UNSECURED CLAIM AS A RESULT OF THE PLAN**

### C.    Withholding and Reporting.

Payments of interest, dividends, and certain other payments are generally subject to backup withholding at the rate of 24% unless the payee furnishes his, her, or its correct taxpayer

identification number to the payor. The Debtors or Liquidating Trustee may be required to withhold the applicable percentage of any payments made to a holder who does not provide its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the extent it results in an overpayment of tax.

**THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN FEDERAL INCOME TAX CIRCUMSTANCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.**

## VIII.    ALTERNATIVES TO THE PLAN.

### A.    Chapter 7 Liquidation.

If a plan pursuant to Chapter 11 of the Bankruptcy Code is not confirmed by a bankruptcy court, a debtor's Chapter 11 case may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. In a liquidation case under Chapter 7 of the Bankruptcy Code, a trustee would be elected or appointed to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that the conversion of the Chapter 11 Cases to cases under Chapter 7 would result in smaller distributions being made to the Debtors' creditors than those provided for in the Plan because: (a) the likelihood that other assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion; and                  (b) additional administrative expenses attendant to the appointment of a trustee, the trustee's employment of attorneys and other professionals, and the time required for a trustee and the trustee's professionals to become acclimated with the Debtors' financial position and the status of the claims filed in this case. The Debtors believe that confirmation of the Plan will provide each holder of an Allowed claim with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtors under Chapter 7 of the Bankruptcy Code.

### B.    Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code.

If the Plan is not confirmed, the Debtors may propose a different plan, which might involve an alternative means for the reorganization or liquidation of the Debtors' assets. However, the Debtors believe that the terms of the Plan provide for an orderly and efficient liquidation of the Debtors' assets and will result in the realization of the most value for holders of claims against the Debtors' estates.

### C.    Dismissal of the Chapter 11 Cases.

32

Dismissal of the Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the position they were in immediately prior to the Petition Date. Upon the dismissal of the Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the various creditors of the Debtors and possibly resulting in costly and protracted litigation in various jurisdictions. Dismissal would also permit unpaid unsecured creditors to obtain and enforce judgments against the Debtors. Therefore, the Debtors believe that dismissal of the Chapter 11 Cases is not a preferable alternative to the Plan.

## IX.    ACCEPTANCE AND CONFIRMATION OF THE PLAN.

### A.    General Confirmation Requirements.

Section 1129(a) of the Bankruptcy Code contains several requirements for confirmation of a plan. Among these requirements are that a plan be proposed in good faith, that certain information be disclosed regarding payments made or promised to be made to insiders, and that the plan comply with the applicable provisions of Chapter 11 of the Bankruptcy Code. The Debtors believe that they have complied with these requirements, including those requirements discussed below.

### B.    Best Interests Test.

The "best interests of creditors" test requires that the Court find either that all members of each impaired class have accepted the plan or that each holder of an Allowed claim or interest of each impaired class of claims or interest will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate what holders of claims would receive if the Debtors were hypothetically liquidated under Chapter 7 of the Bankruptcy Code, the Court must first determine the dollar amount that would be realized from the liquidation (the "Chapter 7 Liquidation Fund") of the Debtors. The Chapter 7 Liquidation Fund would consist of the net proceeds from the disposition of the Debtors' assets (after satisfaction of all valid liens) augmented by the cash held by the Debtors and recoveries on actions against third parties. The Chapter 7 Liquidation Fund would then be reduced by the costs of the liquidation. The costs of the liquidation under Chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, and unpaid expenses incurred by the Debtors during its Chapter 11 case (such as fees for attorneys, financial advisors, and accountants) which would be allowed in Chapter 7 proceedings, interest expense on secured debt, and claims incurred by the Debtors during the pendency of the case. These claims would be paid in full out of the Chapter 7 Liquidation Fund before the balance of the Chapter 7 Liquidation Fund, if any, that would be made available to holders of unsecured claims. In addition, other claims may arise upon conversion to a

33

Chapter 7 case that would dilute the balance of the Chapter 7 Liquidation Fund available to holders of claims. Moreover, additional claims against the Debtors' estates might arise as a result of the establishment of a new bar date for the filing of claims in the hypothetical Chapter 7 cases. The present value of the distributions out of the Chapter 7 Liquidation Fund (after deduction the amounts described above) are then compared with the present value of the property offered to each of the classes of claims and holders of interests under the Plan to determine if the Plan is in the best interests of each holder of a claim.

The Debtors believe that the Plan as proposed is in the best interests of all creditors. As set forth in the liquidation analysis attached as **<u>Exhibit 1</u>**, if the Debtors were forced to liquidate their assets in Chapter 7, unsecured creditors would receive between 17.9% and 27.4% of their claims. The Debtors believe the distribution to holders of Allowed general unsecured claims under the Plan will exceed the percentage unsecured creditors would receive in the Chapter 7 cases. Additionally, the Debtors believe that the distribution to holders of Allowed general unsecured claims under the Plan will occur sooner than any distribution in a Chapter 7 case.

### C. Financial Feasibility Test.

In addition to the requirements discussed above, Section 1129(a)(11) of the Bankruptcy Code requires that consummation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtors. In this case, the Plan provides for an efficient liquidation of the Debtors' remaining assets and distributes the proceeds so as to provide the greatest possible recovery to the Debtors' creditors. Accordingly, the Court's confirmation of the Plan is not likely to be followed by an additional liquidation or the need for any further reorganization.

### D. Cramdown Alternative.

In the event that a certain class or classes of claims reject the Plan, the Debtors may seek confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code. Specifically, Section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. A bankruptcy court may confirm a plan at the request of the plan proponent if the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan. A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank. The Debtors believe the Plan does not discriminate unfairly with respect to any classes of claims.

In addition, a plan is fair and equitable as to a class of claims which rejects a plan if the plan provides (i) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) that the holder of any claim or interest that is junior to the

claims of such class will not receive or retain on account of such junior claim or interest any property at all.

The Debtors believe that the Plan will meet the "fair and equitable" requirements of Section 1129(b) of the Bankruptcy Code with respect to holders of claims in all classes. The Debtors understand, however, that the Plan may not be confirmable with respect to such classes if any such class does not vote in favor of the Plan

## X.      RISK FACTORS TO BE CONSIDERED.

The holders of claims against the Debtors should read and carefully consider the following risk factors, as well as the other information set forth in this Disclosure Statement, before deciding whether to vote to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks associated with the Plan and its implementation.

### A.      Bankruptcy Considerations.

Although the Debtors believe the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in Article VIII of the Plan. If the conditions have not been satisfied or waived (to the extent possible) by the Debtors or applicable parties (as provided for in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no distributions will be made pursuant to the Plan, and the Debtors and all holders of claims and interests will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of claims and interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each class of claims and interests encompass claims or interests, as applicable, that are substantially similar to the other claims and interests in each such class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Finally, the Plan provides that certain classes are to receive a pro rata share of the Liquidating Trust, which will be generated, in part, by the liquidation of certain assets. The potential recoveries from such assets, however, are unknown.

**B.      No Duty to Update Disclosures.**

The Debtors have no duty to update the information contained in this Disclosure Statement as of the date of this Disclosure Statement, unless otherwise specified in the Plan or Disclosure Statement, or unless the Debtors are required to do so pursuant to an order of the Bankruptcy Court.  Delivery of the Disclosure Statement after the date of this Disclosure Statement does not imply that the information contained in the Disclosure Statement has remained unchanged.

**C.      Representations Outside this Disclosure Statement.**

This Disclosure Statement contains representations concerning or related to the Debtors and the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court.  Please be advised that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by holders of claims or interests that are entitled to vote to accept or reject the Plan.

**D.      No Admission.**

The information and representations contained in the Plan or Disclosure Statement shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Debtors or holders of claims and interests.

**E.  Tax and Other Related Considerations.**

A discussion of potential tax consequences of the Plan is provided in Section VII of the Disclosure Statement; however, the content of this Disclosure Statement is not intended and should not be construed as tax, legal, business, or other professional advice.  Holders of claims and interests should seek advice from their own independent tax, legal, or other professional advisors based on their own individual circumstances.

**XI.      RECOMMENDATION AND CONCLUSION.**

The current liquidating structure has facilitated settlements – or pending settlements – of a number of different claims against the Project Companies.  Additionally, the Debtors commenced a number of adversary proceedings against other Project Companies.  The Liquidating Trust will be in the best position to proceed with those adversary proceedings to maximize the recovery to the Debtors' creditors.  The Debtors believe that continuing with this liquidation structure under the Plan offers the best alternative for the highest and fastest recovery for holders of Allowed claims.  Thus, the Debtors believe the Plan is in the best interests of the Debtors' estates, creditors, and other interested parties and urges the holders of claims entitled to

vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots.

**[SIGNATURE PAGE TO FOLLOW]**

**SIGNATURE PAGE FOR DISCLOSURE STATEMENT**

**EPIC COMPANIES MIDWEST, LLC**

By: _____

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Companies Midwest, LLC

**EPIC COMPANIES MIDWEST 2023, LLC**

By: _____

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Companies Midwest 2023, LLC

**EPIC EMPLOYEE, LLC**

By: _____

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EPIC Employee, LLC

**EOLA CAPITAL, LLC**

By: _____

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EOLA Capital, LLC

**EC WEST FARGO, LLC**

By: _____

Name: Patrick Finn

Title:   Partner at Lighthouse Management Group, Inc., CRO of EC West Fargo, LLC

/e/ *Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR DEBTORS**

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.3.1.3 Document comparison done on 6/11/2025 10:06:06 AM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ecdbb-mobility.imanage.work/FB1/84625824/3 | |
| **Modified DMS:** iw://ecdbb-mobility.imanage.work/FB1/84625824/4 | |
| **Changes:** | |
| Add | 21 |
| Delete | 7 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 28 |

**EXHIBIT 3**

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement") is made and entered into, as of _____, by and among EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors") and Lighthouse Management Group, Inc. (the "Liquidating Trustee" and, together with the Debtors, the "Parties").

## RECITALS

WHEREAS, on July 8, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court"), Case Nos. 24-30281, 24-30282, 24-30283, 24-30284, and 24-30285 (the "Chapter 11 Cases");

WHEREAS, on July 8, 2024, the Debtors filed the Debtors' Chapter 11 Plan of Liquidation (as amended or modified from time to time, the "Plan");

WHEREAS, by order dated _____, the Bankruptcy Court confirmed the Plan (the "Confirmation Order");

WHEREAS, under the terms of the Plan, all right, title, and interest in and to the cash and other property of the Debtors as of the effective date of the Plan (the "Effective Date") will be irrevocably transferred to and held by the liquidating trust (the "Liquidating Trust") created by this Agreement so that, among other things: (i) the Trust Assets (as defined below) can be pursued and disposed of in an orderly and expeditious manner; (ii) objections to claims against the Debtors can be pursued and disputed claims can be resolved; and (iii) distributions can be made to the beneficiaries of the Liquidating Trust in accordance with the Plan;

WHEREAS, the Liquidating Trust is established under and pursuant to the Plan and Confirmation Order, which provide for the appointment of the Liquidating Trustee to administer the Liquidating Trust for the benefit of creditors of the Debtors and to provide administrative services relating to the implementation of the Plan;

WHEREAS, the Liquidating Trustee has agreed to serve as such upon the terms of, and subject to the conditions set forth in, this Agreement;

NOW, THEREFORE, in accordance with the Plan and Confirmation Order and in consideration of the mutual covenants and agreements contained in this Agreement, the Parties agree as follows:

## DECLARATION OF TRUST

The Debtors hereby absolutely assign to the Liquidating Trust, and to its successors in trust and its successors and assigns, all right, title, and interest of the Debtors in and to the Trust Assets (as defined below);

TO HAVE AND TO HOLD unto the Liquidating Trust and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Agreement and for the benefit of the holders of claims that qualify as "Allowed" claims pursuant to Article 1.1(a) of the Plan, as and to the extent provided in the Plan, and for the performance of, and compliance with, the terms of this Agreement and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Liquidating Trust in accordance with Article V of this Agreement, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Trust Assets (as defined below) are to be held and applied by the Liquidating Trustee upon the further covenants and terms and subject to the conditions set forth in this Agreement.

## I.    NAME, PURPOSE, AND TRUST ASSETS.

1.1.    Name of Trust.  The Liquidating Trust created by this Agreement shall be known as the "EPIC Liquidating Trust."

1.2.    Transfer of Trust Assets.  In accordance with the provisions of the Plan, on the Effective Date, the Debtors and their chapter 11 estates shall be deemed to transfer, assign, and convey to the beneficiaries of the Liquidating Trust any and all rights and assets of the Debtors and their chapter 11 estates, including, without limitation, (a) cash and accounts, including, without limitation, any and all moneys held in escrow or separate segregated accounts during the pendency of the Chapter 11 Cases; (b) all causes of action not expressly released or waived under the Plan or previously disposed or transferred in these Chapter 11 Cases; and (c) any and all other assets, interests, rights, claims, defenses and causes of action of the Debtors or the chapter 11 estates (collectively, the "Trust Assets"), followed by a deemed transfer by such beneficiaries to the Liquidating Trust, to be administered by the Liquidating Trustee in trust for the holders, from time to time, of Allowed claims as and to the extent provided in the Plan (such holders collectively, the "Trust Beneficiaries"), on the terms and subject to the conditions set forth in this Agreement and in the Plan.

1.3.    Title to Trust Assets.  All of the Debtors' rights, titles, and interests in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Liquidating Trust on the Effective Date, free and clear of all liens, claims, encumbrances, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Trust Beneficiaries to establish the Liquidating Trust.  The Liquidating Trust or Liquidating Trustee (as applicable) shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue all of the causes of action, and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their chapter 11 estates to any counterclaims that may be asserted by any and all defendants as to any cause of action or any holder of a claim against any of the Debtors.  Without limiting the generality of the foregoing, and without the need for filing any motion for such relief, in connection with the Trust Assets, the Liquidating Trust or the

2

Liquidating Trustee (as applicable) shall be deemed substituted for the Debtors in all pending matters, including, but not limited to, motions, contested matters, and adversary proceedings in the Chapter 11 Cases and before the Bankruptcy Court.  On the Effective Date, the Liquidating Trust or the Liquidating Trustee (as applicable) shall stand in the shoes of the Debtors for all purposes with respect to the Trust Assets and the administration of claims.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the  Liquidating Trust and such law is not superseded by the Bankruptcy Code, the Liquidating Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in this Agreement, and this Agreement shall be deemed a security agreement granting such interest on such Trust Assets without need to file financing statements or mortgages.

1.4.   Purposes.  The purposes of the Liquidating Trust are to hold and effectuate an orderly disposition of the Trust Assets and to distribute or pay over the Trust Assets or proceeds of the Trust Assets in accordance with this Agreement and the Plan, with no objective or authority to engage in any trade or business.

1.5.   Acceptance by the Liquidating Trustee.  The Liquidating Trustee is willing and hereby accepts the appointment to serve as Liquidating Trustee pursuant to this Agreement and the Plan and agrees to observe and perform all duties and obligations imposed upon the Liquidating Trustee by this Agreement and the Plan, including, without limitation, to accept, hold, and administer the Trust Assets and otherwise to carry out the purpose of the Liquidating Trust in accordance with the terms and subject to the conditions set forth in this Agreement.

1.6.   Further Assurances.  The Debtors and any successors in interest will, on request of the Liquidating Trustee, execute and deliver such further documents and perform such further acts as may be necessary or proper to transfer to the Liquidating Trustee any portion of the Trust Assets or to vest in the Trust the powers or property hereby conveyed.  The Debtors, for themselves and their predecessors and successors, disclaim any right to any reversionary interest in any of the Trust Assets, but nothing in this Agreement will limit the right and power of the Liquidating Trustee  to abandon any Trust Assets to the Debtors in the event the Liquidating Trustee determines it is in the best interests of the Liquidating Trust and its beneficiaries to do so.

1.7.   Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything in this Agreement, the Liquidating Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Liquidating Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

1.8.   The Liquidating Trust Advisory Committee.

1.8.1.  As provided in Article 5.4 of the Plan, three selected members of the Official Committee of Unsecured Creditors shall serve as the Liquidating Trust Advisory Committee. The Liquidating Trust Advisory Committee shall at all times consist of at least one member, except as otherwise provided in this Section 1.8.1.  In the event that

3

all members of the Liquidating Trust Advisory Committee resign, the Liquidating Trustee shall appoint a new member.  No "insider" or an "affiliate" of the Debtors (as those terms are defined in the Bankruptcy Code) shall serve as a member of the Liquidating Trust Advisory Committee.  In the event no one is willing to serve on the Liquidating Trust Advisory Committee for a period of 30 consecutive days, then the Liquidating Trustee may, during such vacancy and thereafter until a minimum of one new Trust Advisory Committee member is appointed, ignore any reference to the Liquidating Trust Advisory Committee in this Agreement, the Plan, or the Confirmation Order, and all references to the Liquidating Trust Advisory Committee's rights and responsibilities in the Plan, this Agreement, and the Confirmation Order will be null and void.

1.8.2.   The Liquidating Trust Advisory Committee may, but is not required to, consult with the Liquidating Trustee from time to time on matters including, without limitation, objections to claims, the distributions, and other matters affecting the administration of the Liquidating Trust.

1.8.3.   Any member of the Liquidating Trust Advisory Committee may resign upon reasonable notice to the Liquidating Trustee and other members of the Liquidating Trust Advisory Committee.   Twenty (20) days' prior written notice shall constitute reasonable notice under this Section 1.8.3.   Any member of the Liquidating Trust Advisory Committee may be removed by the Bankruptcy Court for cause.   The Liquidating Trust Advisory Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.  Unless earlier dissolved, the Liquidating Trust Advisory Committee shall be dissolved upon a motion filed by the Liquidating Trustee in the Debtors' Chapter 11 Cases or as otherwise provided in Section V of this Agreement.

1.8.4.   Members of the Liquidating Trust Advisory Committee shall have fiduciary duties to the Trust Beneficiaries in the same manner that members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the constituents represented by such a committee and shall be entitled to indemnification from the Trust Assets in the same manner as the Liquidating Trustee for service as members of the Liquidating Trust Advisory Committee from and after the Effective Date of the Plan under or in connection with this Agreement.  Except in the case of a violation of their fiduciary duties, gross negligence, or willful misconduct, neither the Liquidating Trust Advisory Committee nor its members shall be liable for any loss or damage by reason of any action taken or omitted by them pursuant to the discretion, powers, and authority conferred, or in good faith believed by the Liquidating  Trust Advisory Committee to be conferred, on the Liquidating Trust Advisory Committee by this Agreement or the Plan.

1.8.5.   The Liquidating Trustee shall report to the Liquidating Trust Advisory Committee periodically, including, without limitation, upon the reasonable request of the Liquidating Trust Advisory Committee, as to the status of all material litigation, and claims objections, and all other material matters affecting the Liquidating Trust.  Such

4

periodic reports may be made via written communications (including facsimile or electronic).

1.8.6.  Subject to Section 1.8.7 below, the Liquidating Trustee shall obtain the approval of the Liquidating Trust Advisory Committee by at least a majority vote prior to taking any action regarding any of the following matters:

(a)    The commencement, prosecution, settlement, compromise, withdrawal, or other resolution of any Cause of Action by the Liquidating Trust where the amount sought to be recovered in the complaint or other document initiating such cause of action exceeds $250,000;

(b)    The sale, transfer, assignment, or other disposition of any non-cash Trust Assets having a valuation in excess of $250,000;

(c)    The abandonment of any non-cash Trust Assets having a valuation of at least $250,000;

(d)    The settlement, compromise, or other resolution of any disputed claim, wherein the allowed amount of the asserted claim exceeds $250,000;

(e)    The borrowing of any funds by the Liquidating Trust or pledge of any portion of the Trust Assets;

(f)    Any matter which could reasonably be expected to have a material adverse effect on the amount of distributions to be made by the Liquidating Trust;

(g)    The exercise of any right or action set forth in this Agreement that expressly requires approval of the Liquidating Trust Advisory Committee; and

(h)    All investments authorized to be made by the Liquidating Trustee under this Agreement.

In the event that the Liquidating Trust Advisory Committee has two (2) or fewer members at any time, then approval of the foregoing shall require unanimous approval by all Liquidating Trust Advisory Committee members. In the event that any member of the Liquidating Trust Advisory Committee holds an interest, separate from any claim the member may assert against the Debtors in the bankruptcy cases, in any entity, asset, claim, investment, or action at issue before the Liquidating Trust Advisory Committee, that member shall abstain from any approval vote.

1.8.7.  A majority of the total number of members of the Liquidating Trust Advisory Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Liquidating Trust Advisory Committee. The affirmative vote of a majority of the members of the Liquidating Trust Advisory Committee present at a meeting at which a quorum is present shall be the act of the Liquidating Trust Advisory Committee, except as otherwise required by law

5

or as provided in this Agreement. Any or all of the members of the Liquidating Trust Advisory Committee may participate in a regular or special meeting by, or conduct the meeting, with the Liquidating Trust Advisory Committee or otherwise, through the use of, telephone, video conference or similar communications by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Liquidating Trust Advisory Committee (and the Liquidating Trustee) participating in a meeting by this means is deemed to be present in person at the meeting. The Liquidating Trust Advisory Committee may also act or vote by email communication.

   1.8.8. The Liquidating Trustee's failure to receive objections from members of the Liquidating Trust Advisory Committee within two (2) business days after written (including facsimile or electronic) notice is provided to the Liquidating Trust Advisory Committee of a proposed action shall be deemed approval of the Liquidating Trust Advisory Committee for purposes of this Section.   In the event that the Liquidating Trustee and the Liquidating Trust Advisory Committee agree that urgent circumstances require a more expedited decision, such decision may be made upon less than two business days' notice, and with the mutual agreement of the Liquidating Trustee and the Liquidating Trust Advisory Committee, without notice, provided that the Liquidating Trustee and the counsel to the Liquidating Trust are in agreement on the course of action to be pursued.  The Liquidating Trust Advisory Committee may agree to revise, modify, or reduce the actions identified in Section 1.8.6 of this Agreement.  The Liquidating Trust Advisory Committee may also agree to delegate authority to approve such action to one or more members of the Liquidating Trust Advisory Committee.

## II. RIGHTS, POWERS, AND DUTIES OF LIQUIDATING TRUSTEE.

   2.1. <u>General</u>.  As of the Effective Date, the Liquidating Trustee shall take possession and charge of the Trust Assets and, subject to the provisions of this Agreement and in the Plan, shall have full right, power, and discretion to manage the affairs of the Liquidating Trust, subject to Section 1.8.6 above, and shall be the representative of the Debtors' chapter 11 estates pursuant to section 1123(b)(3) of the Bankruptcy Code regarding the Trust Assets.  Except as otherwise provided in this Agreement and in the Plan, the Liquidating Trustee shall have the right and power to enter into any covenants or agreements binding the Liquidating Trust and in furtherance of the purpose of this Agreement and of the Plan and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Liquidating Trustee to be consistent with and advisable in connection with the performance of his, her, or its duties under this Agreement.  On and after the Effective Date, the Liquidating Trustee, in his, her, or its reasonable discretion subject only to the provisions of Section 1.8.6 of this Agreement, and without the need for Bankruptcy Court approval except as required by the Plan or this Agreement, shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan, including:

2.1.1  To exercise all power and authority that may be, or could have been, exercised, commence all proceedings that may be, or could have been, commenced, and take all actions that may be, or could have been, taken by any partner, member, officer, director, or members of the Debtors with like effect as if authorized, exercised, and taken by unanimous action of such partners, members, officers, directors, and shareholders; including, without limitation, amendment of the articles and bylaws of the Debtors, merger of any Debtor into another Debtor, the dissolution of any Debtor, and the assertion or waiver of the Debtors' attorney/client privilege;

2.1.2  To open and maintain bank and other deposit accounts, escrows, and other accounts, calculate and implement distributions to holders of Allowed general unsecured claims as provided for, or contemplated by, the Plan and take other actions consistent with the Plan and the implementation of the Plan, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves in the name of the Debtors or the Liquidating Trustee, even in the event of the dissolution of the Debtors;

2.1.3  Subject to the applicable provisions of the Plan, to collect and liquidate all assets of the Debtors' estates pursuant to the Plan and to administer the winding-up of the affairs of the Debtors;

2.1.4  To object to any claims (disputed or otherwise), and to defend, compromise, or settle any claims prior to or following objection without the necessity of approval of the Bankruptcy Court, and/or to seek Bankruptcy Court approval for any claims settlement, to the extent thought appropriate by the Liquidating Trustee or to the extent such approval is required by prior order of the Bankruptcy Court;

2.1.5  To make decisions regarding the retention or engagement of professionals, employees, and consultants by the Liquidating Trust or Liquidating Trustee as he, she, or it deems necessary and appropriate, including, without limitation, persons who have previously been approved by the Bankruptcy Court to be retained by the Debtors and the Official Committee of Unsecured Creditors, and to pay, from Trust Assets, the charges incurred by the Liquidating Trust on or after the Effective Date for services of professionals, disbursements, expenses, or related support services relating to the winding down of the Debtors and implementation and consummation of the Plan, without application to the Bankruptcy Court;

2.1.6  To cause, on behalf of the Liquidating Trust, the Debtors, and their estates, all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal, or other tax law to be prepared or filed timely and pay taxes or other obligations incurred by the Debtors, the chapter 11 estates, and Liquidating Trust to the extent payable consistent with the Plan, the Bankruptcy Code, or order of the Bankruptcy Court;

2.1.7  To invest cash in accordance with the investment and deposit guidelines set forth in section 2.5 of this Agreement;

2.1.8   To collect any accounts receivable or other claims and assets of the Debtors or their chapter 11 estates not otherwise disposed of pursuant to the Plan including, without limitation, filing proofs of claim in other bankruptcy cases or insolvency proceedings as may be necessary;

2.1.9   To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtors or the Liquidating Trustee under any such agreement or document;

2.1.10   To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization approved by the Liquidating Trust Advisory Committee, any assets that the Liquidating Trustee concludes are of no benefit to creditors of the Debtors or too impractical to distribute;

2.1.11   To investigate (including pursuant to Fed. R. Bankr. P. 2004), prosecute, settle, or abandon any causes of action not expressly released or waived under the Plan, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction, participate as a party, or otherwise in any administrative, arbitrative, or other non-judicial proceeding, litigate or settle such causes of action on behalf of the Liquidating Trust and pursue to settlement or judgment such actions;

2.1.12   To use Trust Assets to purchase or create and carry all appropriate insurance policies, bonds, or other means of assurance and protection of the Trust Assets and pay all insurance premiums and other costs he, she, or it deems necessary or advisable to insure the acts and omissions of the Liquidating Trustee, and, if appropriate, the Liquidating Trust Advisory Committee;

2.1.13   To implement and/or enforce all provisions of the Plan;

2.1.14   To maintain appropriate books and records (including financial books and records) to govern the liquidation and distribution of the Trust Assets which may include, but is not limited to, the books and records of the Debtors transferred to the Liquidating Trust;

2.1.15   To collect and liquidate all assets of the estates pursuant to the Plan and administer the winding-up of the affairs of the Debtors including, but not limited to, closing the Chapter 11 Cases;

2.1.16   To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Bankruptcy Court and serve on the U.S. Trustee quarterly post-confirmation financial reports for each of the Debtors until such time as such reports are no longer required, or the Bankruptcy Court orders otherwise, a final decree is entered closing these Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed;

2.1.17   To enter any agreement or execute any document required by, or consistent with, the Plan and perform all of the Debtors' obligations under the Plan; and

2.1.18   To do all other acts or things consistent with the provisions of the Plan that the Liquidating Trustee deems reasonably necessary or desirable with respect to implementing the Plan.

Other than the obligations of the Liquidating Trustee enumerated or referred to under this Agreement or the Plan, the Liquidating Trustee shall have no duties or obligations of any kind or nature respecting the implementation and administration of the Plan or this Agreement.  The Liquidating Trustee may not seek to have the Bankruptcy Court expand its role beyond that set forth in the Plan, the Confirmation Order, and this Agreement, unless it has the unanimous consent of the Liquidating Trust Advisory Committee and the expansion is necessary to satisfy a need of the Liquidation Trust.

2.2.   Transfer of Privileges.  Pursuant to the Plan, on the Effective Date, the Debtors shall be deemed to transfer to the Liquidating Trustee all of the Debtors' evidentiary privileges, including, but not limited to, the attorney/client privilege and work product privilege.  From and after such transfer, the Debtors and the chapter 11 estates shall have no further rights or obligations with respect to the privileges described above.  Privileged communications may be shared among the Liquidating Trustee, the Liquidating Trust Advisory Committee, and those attorneys, financial advisors, accountants, or professionals and employees that the Liquidating Trustee retains without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine.

2.3.   Costs.  On and after the Effective Date, the Liquidating Trustee, with the consent of the Liquidating Trust Advisory Committee, shall reserve cash reserves from the Trust Assets to be held in a Liquidating Trust wind-down fund (the "Trust Expenses Reserve").  The Trust Expenses Reserve shall be used to pay amounts due to the Liquidating Trustee pursuant to Section 2.9 of this Agreement and the fees and expenses of any counsel, accountant, consultant, or other advisor or agent retained by the Liquidating Trustee pursuant to this Agreement as well as other expenses of the liquidation of the Debtors and the administration of the Liquidating Trust and the Trust Assets.  In the event that amounts held in the Trust Expenses Reserve, together with any remaining Trust Assets, are insufficient to make payments as provided in this Section 2.3, the Liquidating Trustee shall, unless reserves sufficient for such purpose have otherwise been made available from any other sources, have no obligation to make such payments.

2.4.   Distributions.  Pursuant to the Plan, the Liquidating Trustee shall record and account for all proceeds received upon any disposition of Trust Assets (after deduction therefrom of appropriate reserves as provided in this Agreement and in the Plan) for distribution in accordance with the provisions of the Plan.

2.5.   Safekeeping and Investment of Trust Assets.   All moneys and other assets received by the Liquidating Trustee shall, until distributed or paid over as provided in this Agreement and in the Plan, be held in trust for the benefit of the Trust Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by

9

law or the Plan.  The Liquidating Trustee shall not be under any obligation to invest the Trust Assets.  Neither the Liquidating Trust nor the Liquidating Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Trust Beneficiaries, except as such interest shall actually be received by the Liquidating Trust or Liquidating Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Liquidating Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the avoidance of doubt, the provisions of section 11-2.3 of the "Estates, Power, and Trusts Law" of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Liquidating Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Liquidating Trustee's administration of the Liquidating Trust.

2.6.    Limits on Retained Cash.  The Liquidating Trust may not receive or retain cash or cash equivalents in excess of an amount reasonably necessary to meet expenses, pay contingent liabilities (including disputed claims) and maintain the value of the Trust Assets. Without limiting the foregoing, and subject to the terms of the Plan, the Liquidating Trustee shall distribute to the Trust Beneficiaries on account of their interests in the Liquidating Trust, at least annually, its net income plus all net proceeds from the sale of assets, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidating Trust or to meet claims and contingent liabilities, which amount shall be used to fund the Trust Expenses Reserve and any disputed claim reserve. Notwithstanding the foregoing, the Liquidating Trust Advisory Committee, by a unanimous vote and with agreement of the Liquidating Trustee, may withhold or delay any distribution required by this Section 2.6 of the Agreement.

2.7.    Liability of Liquidating Trustee.

2.7.1    Limitation of Liability.    No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, or his, her, or its members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan.  All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Trust Assets, and the Liquidating Trustee shall have no personal liability to satisfy any such liability.  The Liquidating Trustee and its agents shall not be deemed to be the agent for any holder of a claim in connection with distributions made under this Plan.  The Liquidating Trust and

the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do, under this Agreement in good faith and in the exercise of their sound judgment; provided, however, that this section will not apply to any gross negligence or willful misconduct or in the case of an attorney professional and as required under Rule 1.8(h) of the North Dakota Rules of Professional Conduct, malpractice by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors, or assigns.   The Liquidating Trustee shall enjoy all of the rights, powers, immunities, and privileges available to a chapter 7 trustee.

2.7.2   No Liability for Acts of Predecessors.  No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office prior to the date on which such successor becomes the Liquidating Trustee, unless a successor Liquidating Trustee expressly assumes such responsibility.

2.7.3   No Implied Obligations.  The Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Liquidating Trustee.

2.7.4   Reliance by Liquidating Trustee on Documents or Advice of Counsel or Other Persons. Except as otherwise provided in this Agreement, the Liquidating Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Liquidating Trustee may, in his, her, or its sole and absolute discretion, consult with attorneys, accountants, advisors, or agents, and shall not be liable for any act taken or omitted to be taken, or suggested to be done, in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions were in writing.  Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and his, her, or its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or its members unless such determination is based on willful misconduct, gross negligence, or fraud.   The Liquidating Trustee or the Liquidating Trust Advisory Committee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets.

2.7.5   Indemnification.    The Liquidating Trust shall indemnify and hold harmless his, her, or its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, members, principals, professionals, Liquidating Trust Advisory Committee members, and other representatives, each in their capacity as such (collectively, the "Liquidating Trust Indemnified Parties"), against any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including, but not limited to, the reasonable fees and expenses of their

11

respective professionals) incurred without gross negligence, willful misconduct, or fraud, or, in the case of an attorney professional and as required under Rule 1.8(h) of the North Dakota Rules of Professional Conduct, malpractice, on the part of the Liquidating Trust Indemnified Parties (which gross negligence, willful misconduct, or fraud, if any, must be determined by final order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidating Trust Indemnified Parties in connection with the acceptance, administration, exercise, or performance of their duties under the Plan or this Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will conclusively be deemed not to constitute gross negligence, willful misconduct, or fraud.  In addition, the Liquidating Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Liquidating Trust Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan if the Liquidating Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust.  To the extent that the Liquidating Trust indemnifies and holds harmless the Liquidating Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust.  The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Liquidating Trust.  This provision shall survive the termination of this Agreement and the resignation, replacement, or removal of the Liquidating Trustee.

    2.8.   <u>Selection of Agents</u>.  The Liquidating Trustee may engage any employee of the Debtors or other persons, and also may engage or retain brokers, banks, custodians, investment, and financial advisors, attorneys (including existing counsel to the Official Committee of Unsecured Creditors or the Debtors), accountants (including existing accountants for the Liquidating Trust Advisory Committee or the Debtors), and other advisors and agents, in each case without Bankruptcy Court approval.  The Liquidating Trustee may pay the salaries, fees, and expenses of such persons from amounts in the Trust Expenses Reserve, or, if such amounts are insufficient, out of the Trust Assets or proceeds of the Trust Assets.  In addition, the Parties acknowledge that Trust Assets may be advanced to satisfy such salaries, fees, and expenses.  The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any person interested in the Trust Assets by reason of any mistake or default of any such person referred to in this Section 2.8 of the Agreement selected by the Liquidating Trustee in good faith and without either gross negligence or intentional malfeasance.

    2.9.   <u>Liquidating Trustee's Compensation and Reimbursement</u>.  As compensation for services in the administration of this Liquidating Trust, the Liquidating Trustee shall be compensated as specified on **Schedule A** attached to this Agreement.  The Liquidating Trustee shall also be reimbursed for all documented actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of its duties under this Agreement.

2.10.   <u>Tax Provisions</u>.

2.10.1  It is intended that the Liquidating Trust qualify as a grantor trust for federal income tax purposes, and that the Trust Beneficiaries are treated as grantors. As described more fully in the Plan and the Disclosure Statement, the transfer of the Trust Assets will be treated for federal income tax purposes as a transfer to the Trust Beneficiaries, followed by a deemed transfer from such Trust Beneficiaries to the Liquidating Trust, *provided, however*, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Liquidating Trust relating to the pursuit of Trust Assets. Accordingly, the Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Subject to Section 2.10.3(d) of this Agreement, all items of income, gain, loss, deduction, and credit will be included in the income of the Trust Beneficiaries as if such items had been recognized directly by the Trust Beneficiaries in the proportions in which they own beneficial interests in the Liquidating Trust.

2.10.2  The Liquidating Trustee shall comply with all tax reporting requirements and, in connection therewith, the Liquidating Trustee may require Trust Beneficiaries to provide certain tax information as a condition to receipt of distributions as provided in the Plan and its Agreement, including, without limitation, filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a)

2.10.3  <u>Reporting</u>.

(a)     Under the guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation § 1.671-4(a), the Liquidating Trustee will file returns for the Liquidating Trust as a grantor trust.

(b)     Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as reasonably practicable after the Trust Assets are transferred to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Trust Assets. Such valuation shall be made available from time to time to all Parties to the Liquidating Trust Agreement and to all Trust Beneficiaries, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(c)     In accordance with the provisions of section 6012(b)(3) of the Internal Revenue Code of 1986, as amended, the Liquidating Trustee shall cause to be prepared, at the cost and expense of the Liquidating Trust, the income tax returns (Federal, state, and local) that the Debtors are required to file

(to the extent such returns have not already been filed by the Effective Date). The Liquidating Trustee shall timely file each such tax return with the appropriate taxing authority and shall pay out of the Trust Assets all taxes due with respect to the period covered by each such tax return to the extent consistent with the Plan, the Bankruptcy Code, and any order of the Bankruptcy Code.  The Debtors hereby agree to furnish to the Liquidating Trustee all information required by the Liquidating Trustee, and generally to cooperate with the Liquidating Trustee, so as to enable the Liquidating Trustee to accurately and timely prepare such tax returns.

(d)     The Liquidating Trustee may, in the Liquidating Trustee's sole discretion, determine the best way to report for tax purposes with respect to the disputed claims reserve, including (a) file a tax election to treat any and all reserves for disputed claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Reg. § 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust, or (b) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Liquidating Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

2.10.4  Allocation.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), allocations of Liquidating Trust taxable income or loss shall be allocated by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Trust Assets.  The tax book value of the Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Trust Assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

2.10.5  Withholding.  The Liquidating Trustee may withhold from the amount distributable from the Liquidating Trust at any time to any Trust Beneficiary such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges which have been or may be imposed on such Trust Beneficiary or upon the Liquidating Trust with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for by any law, regulation, rule, ruling, directive, or other governmental requirement.  Any tax withheld shall be treated as distributed to the Trust Beneficiary for purposes of this Agreement.

2.10.6 <u>Tax Identification Numbers</u>. The Liquidating Trustee may require any Trust Beneficiary to furnish to the Liquidating Trustee or other disbursing agent its Employer or Taxpayer Identification Number as assigned by the IRS or certify to the Liquidating Trustee's satisfaction that distributions to the Trust Beneficiary are exempt from backup withholding. The Liquidating Trustee may condition any distribution to any Trust Beneficiary upon receipt of such identification number. If such Trust Beneficiary fails to furnish such information within 90 calendar days after a request by the Liquidating Trustee or such disbursing agent for the completion and return of the appropriate forms, then (a) such holder shall be deemed to have forfeited its right to such distributions; (b) the claim of such holder shall be waived, discharged and forever barred without further order of the Bankruptcy Court; and (c) such distribution will revert back to the Liquidating Trust notwithstanding any federal, state, or other escheat law to the contrary.

2.10.7 <u>Annual Statements</u>. The Liquidating Trustee shall annually (for tax years in which distributions from the Liquidating Trust are made) send to each Trust Beneficiary a separate statement setting forth the Trust Beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns.

2.10.8 <u>Notices</u>. The Liquidating Trustee shall distribute such notices to the Trust Beneficiaries as the Liquidating Trustee determines are necessary or desirable.

2.10.9 <u>Expedited Determination</u>. The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

2.11. <u>Conflicting Claims</u>. If the Liquidating Trustee becomes aware of any disagreement or conflicting claims with respect to the Trust Assets, or in good faith is in doubt as to any action that should be taken under this Agreement, the Liquidating Trustee may take any or all of the following actions as reasonably appropriate: (a) to the extent of such disagreement or conflict, or to the extent deemed by the Liquidating Trustee necessary or appropriate in light of such disagreement or conflict, withhold or stop all further performance under this Agreement with respect to the matter of such dispute (except, in all cases, the safekeeping of the Trust Assets) until the Liquidating Trustee is reasonably satisfied that such disagreement or conflicting claims have been fully resolved; (b) file a suit in interpleader or in the nature of interpleader in the Bankruptcy Court (or any other court of competent jurisdiction) and obtain an order requiring all persons involved to litigate in the Bankruptcy Court their respective claims arising out of or in connection with this Agreement; or (c) file any other appropriate motion for relief in the Bankruptcy Court (or any other court of competent jurisdiction).

2.12. <u>Records of Liquidating Trustee</u>. The Liquidating Trustee shall maintain accurate records of receipts and disbursements and other activity of the Liquidating Trust, and duly authorized representatives of the Liquidating Trust Advisory Committee shall have reasonable access to the records of the Liquidating Trust. The books and records maintained by the

Liquidating Trustee, as well as any and all other books and records of the Debtors, may be disposed of or abandoned by the Liquidating Trustee, in his, her, or its sole discretion, without notice or a filing with the Bankruptcy Court, at such time as the Liquidating Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidating Trust or its beneficiaries, or upon the termination of the Liquidating Trust, provided, however, that the Liquidating Trustee shall not dispose or abandon any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party or that pertain to general unsecured claims without further order of the Bankruptcy Court.

## III.   RIGHTS, POWERS, AND DUTIES OF BENEFICIARIES.

3.1.   <u>Interests of Beneficiaries</u>.  The Trust Beneficiaries shall have beneficial interests in the Trust Assets as provided in the Plan.  The Trust Beneficiaries' proportionate interests in the Trust Assets as thus determined shall be not be transferable, except upon the death of the Trust Beneficiary or the operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof of the assignment is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to cause the Liquidating Trust to pay all amounts to, or for the benefit of, the assigning Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.

3.2.   <u>Interests Beneficial Only</u>.  The ownership of a beneficial interest under this Agreement shall not entitle any Trust Beneficiary to any title in or to the Trust Assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of Trust Assets or to require an accounting.

3.3.   <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

3.4.   <u>No Right to Accounting</u>.  Neither the Trust Beneficiaries nor their successors, assigns, creditors, or any other person shall have any right to an accounting by the Liquidating Trustee, and the Liquidating Trustee shall not be obligated to provide any accounting to any person.  Nothing in this Agreement is intended to require the Liquidating Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

3.5.   <u>No Standing</u>.   Except as expressly provided in this Agreement, a Trust Beneficiary shall not have standing to direct or to seek to direct the Liquidating Trust or Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any person upon or with respect to the Trust Assets.

3.6.   <u>Requirement of Undertaking</u>. The Liquidating Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this

16

Agreement, or in any suit against the Liquidating Trustee for any action taken or omitted by him, her, or it as Liquidating Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this Section 3.6 shall not apply to any suit by the Liquidating Trustee.

3.7.    Exemption from Registration. The rights of the Trust Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (a) the Parties intend that such rights shall not be securities, and (b) if the rights arising under this Agreement in favor of the Trust Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

## IV.    AMENDMENT OF TRUST OR CHANGE IN TRUSTEE.

4.1    Resignation of the Liquidating Trustee.  The Liquidating Trustee may resign by an instrument in writing signed by the Liquidating Trustee and filed with the Bankruptcy Court with notice to the Liquidating Trust Advisory Committee, provided that the Liquidating Trustee shall continue to serve as such after his, her, or its resignation for 30 days or, if longer, until the time when appointment of his, her, or its successor shall become effective in accordance with Section 4.3 of this Agreement, or as otherwise agreed with the Liquidating Trust Advisory Committee.

4.2    Removal of the Liquidating Trustee.  The Liquidating Trust Advisory Committee, based upon a unanimous vote, may remove the Liquidating Trustee with or without cause at any time.  Such removal shall be effective the 10 days after the Liquidating Trust Advisory Committee provides written notice to the Liquidating Trustee and the U.S. Trustee.  Upon removal of the Liquidating Trustee by the Liquidating Trust Advisory Committee in accordance with this Section 4.2 other than for cause, the Liquidating Trustee shall be entitled to all compensation that has accrued through the effective date of termination but remains unpaid as of such date, which payment shall be made promptly from the Trust Expenses Reserve.  For the purposes of this Agreement, "cause" shall mean (a) the willful and continued refusal by the Liquidating Trustee to perform his, her, or its duties as set forth herein or (b) gross negligence, gross misconduct, fraud, embezzlement, or theft.  Notwithstanding anything in this Agreement to the contrary, the provisions of Section 2.7 of this Agreement shall survive the termination of this Agreement and the resignation replacement or removal of the Liquidating Trustee.

4.3    Appointment of Successor Liquidating Trustee.  In the event of the death, resignation, termination, incompetence, or removal of the Liquidating Trustee, the Liquidating Trust Advisory Committee may appoint a successor Liquidating Trustee without the approval of the Bankruptcy Court, which the Parties acknowledge shall nevertheless retain jurisdiction to resolve any disputes in connection with the service of the Liquidating Trustee or his, her, or its successor.  If the Liquidating Trust Advisory Committee fails to appoint a successor Liquidating Trustee within 30 days of the occurrence of a vacancy, any Trust Beneficiary, any Debtor still existing, or the outgoing Liquidating Trustee may petition the Bankruptcy Court for such appointment.  Every successor Liquidating Trustee appointed under this Agreement

shall execute, acknowledge, and deliver to the Bankruptcy Court and to the predecessor Liquidating Trustee (if practicable) an instrument accepting such appointment and the terms and provisions of this Agreement, and thereupon such successor Liquidating Trustee, without any further act, deed, or conveyance, shall become vested with all the rights, powers, and duties of the retiring Liquidating Trustee.  No "insider" or an "affiliate" of the Debtors (as those terms are defined in the Bankruptcy Code) shall serve as the Liquidating Trustee.

    4.4   <u>Continuity</u>.  Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence, or removal of the Liquidating Trustee shall not operate to terminate or to remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Liquidating Trustee.  In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trustee shall promptly execute and deliver such documents, instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court, the Liquidating Trust Advisory Committee, or the successor Liquidating Trustee.

    4.5   <u>Amendment of Agreement</u>.  This Agreement may be amended, modified, terminated, revoked, or altered only upon (a) order of the Bankruptcy Court; or (b) agreement of the Liquidating Trustee and the Liquidating Trust Advisory Committee.

## V.    TERMINATION OF TRUST.

    The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (a) all disputed claims have been resolved; (b) all of the Trust Assets have been liquidated or otherwise abandoned (including, but not limited to, the resolution of all causes of action); (c) all duties and obligations of the Liquidating Trustee under this Agreement have been fulfilled; (d) all distributions required under the Plan and this Agreement have been made; and (e) the Debtors' Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that an extension is necessary to facilitate or complete the recovery and liquidation of the Trust Assets and distributions in accordance with the Plan.  The Liquidating Trustee or the Liquidating Trust Advisory Committee may seek dissolution of the Liquidating Trust by filing a motion in the Debtors' Chapter 11 Cases.  However, the Liquidating Trust Advisory Committee may alternatively dissolve the Liquidating Trust through a unanimous vote of the Liquidating Trust Advisory Committee and in consultation with the Liquidating Trustee as long as the requirements for such termination and dissolution as set forth in this Section V of this Agreement are satisfied.

## VI.    RETENTION OF JURISDICTION.

    Subject to the following sentence, the Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust, the Liquidating Trustee, and the Trust Assets as provided in the Plan, including the determination of all controversies and disputes arising under or in connection with the Liquidating Trust or this Agreement.  However, if the Bankruptcy Court abstains or declines to exercise such jurisdiction or is without jurisdiction under applicable law,

any other court of competent jurisdiction may adjudicate any such matter. All Trust Beneficiaries consent to the jurisdiction of the Bankruptcy Court, the U.S. District Court for the District of North Dakota, and the state courts sitting in Fargo, North Dakota over all disputes related to this Agreement.

## VII.   MISCELLANEOUS.

7.1.   <u>Applicable Law</u>.  The Liquidating Trust created by this Agreement shall be construed in accordance with and governed by the laws of the State of North Dakota without giving effect to principles of conflict of laws, but subject to any applicable federal law.

7.2.   <u>Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver of such right or remedy.

7.3.   <u>Relationship Created</u>.  Nothing contained in this Agreement shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

7.4.   <u>Interpretation</u>.  Section and paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of any provision of this Agreement.

7.5.   <u>Savings Clause</u>.  If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court, such invalidity or unenforceability shall not affect any other clause or provision of this Agreement, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Agreement, as if such invalid or unenforceable provision had never been contained in the Agreement.

7.6.   <u>Entire Agreement</u>.  This Agreement and the Plan constitute the entire agreement by and among the Parties and there are no representations, warranties, covenants, or obligations with respect to the subject matter of this Agreement except as set forth in this Agreement or the Plan.  This Agreement together with the Plan supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the Parties to this Agreement, relating to such subject matter.  Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the Parties to this Agreement, the Liquidating Trust Advisory Committee, and the Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

7.7.   <u>Counterparts</u>.  This Agreement may be executed by facsimile or electronic transmission and in counterparts, each of which when so executed and delivered shall be an original document, but all of which counterparts shall together constitute one and the same instrument.

7.8.   <u>Notices</u>.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be deemed given five

19

Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission.

if to the Liquidating Trustee:

c/o Lighthouse Management Group, Inc.
900 Long Lake Road, Suite 180
New Brighton, MN 55112
Tel: 651-439-5119
Fax: 651-967-1964
Attn.: Patrick Finn

with copies to:

Fredrikson & Byron, P.A.
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1425
Attn: Steven Kinsella
Tel.: 612-492-7000

-and-

Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Attn: Benjamin Court or Christopher Harayda
Tel.: 612-335-1500

if to the Debtors:

EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC
c/o Lighthouse Management Group, Inc.
900 Long Lake Road, Suite 180
New Brighton, MN 55112
Tel: 651-439-5119
Fax: 651-967-1964
Attn.: Patrick Finn

with copies to:

Fredrikson & Byron, P.A.
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1425
Attn: Steven Kinsella

20

Tel.: 612-492-7000

if to any Trust Beneficiary, to such address as such Trust Beneficiary shall have furnished to the Debtors in writing prior to the Effective Date.

Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice to the Liquidating Trustee in the same manner as above.

7.9.   <u>Effective Date</u>.  This Agreement shall become effective as of the Effective Date.

7.10.   <u>Successors and Assigns</u>. This Agreement shall be binding upon each of the Parties and their respective successors and assigns and shall inure to the benefit of the Parties, the Trust Beneficiaries, and, subject to the provisions of this Agreement, their respective successors and assigns.

7.11.   <u>Conflict with the Plan</u>. In the event of any conflict between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

**[SIGNATURE PAGE TO FOLLOW]**

21

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed as of the day and year first above written.

**EPIC COMPANIES MIDWEST, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group,
       Inc., CRO of EPIC Companies Midwest, LLC

**EPIC COMPANIES MIDWEST 2023, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group,
       Inc., CRO of EPIC Companies Midwest 2023,
       LLC

**EPIC EMPLOYEE, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group,
       Inc., CRO of EPIC Employee, LLC

**EOLA CAPITAL, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group,
       Inc., CRO of EOLA Capital, LLC

**EC WEST FARGO, LLC**

By: _____
Name: Patrick Finn
Title:  Partner at Lighthouse Management Group,
       Inc., CRO of EC West Fargo, LLC

22

**LIGHTHOUSE MANAGEMENT GROUP, INC.,
LIQUIDATING TRUSTEE OF EPIC
COMPANIES MIDWEST, LLC, EPIC
COMPANIES MIDWEST 2023, LLC, EPIC
EMPLOYEE, LLC, EOLA CAPITAL, LLC, AND
EC WEST FARGO, LLC**

By: _____
Name: Patrick Finn
Title: Partner at Lighthouse Management Group, Inc.

## SCHEDULE A

**TERMS OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF THE LIQUIDATING TRUSTEE**

**[TO COME]**

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 6/10/2025 8:24:25 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ecdbb-mobility.imanage.work/FB1/86024030/2 | |
| **Modified DMS:** iw://ecdbb-mobility.imanage.work/FB1/86024030/3 | |
| **Changes:** | |
| Add | 3 |
| Delete | 0 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 3 |