UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In re: | Jointly Administered |
|---|---|
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors.[1] | Chapter 11 |

**MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE DEBTORS' ASSETS, LIABILITIES, AND OPERATIONS**

1.  EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors") file this Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations (the "Motion"). This Motion should be granted because given the facts and circumstances of these cases as described below, the Debtors believe that: (a) their intertwined relationship would be nearly impossible or impracticable to unravel; (b) the benefits of consolidation outweigh any harm to creditors; and (c) creditors may be prejudiced if the Debtors are not consolidated.

2.  In support of this Motion, the Debtors respectfully state as follows:

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is 400 10th Street SE, Minot, ND 58701 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

1

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these Chapter 11 cases were filed on July 8, 2024 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. § 105(a). This Motion is filed under Fed. R. Bankr. P. 9013 and Local Rule 9013-1. Notice of this Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

## BACKGROUND

**I. THE DEBTORS AND THESE BANKRUPTCY CASES.**

5. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code. The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner.

6. The United States Trustee appointed the Committee on July 30, 2024. (ECF No. 58; *see also* ECF No. 93.) The Committee currently consists of Jim Johnson, Zachary Frappier, and William Altringer. (ECF No. 93.)[2] Each of the members' contact information is publicly available on the docket. (*Id.*)

---

[2] Beth Postemski and Larry Dietz are no longer on the Committee.

2

7. On August 14, 2024, the Committee filed an application to employ Stinson LLP ("Stinson") as the Committee's counsel. (ECF No. 69.) The Court granted that application on August 30, 2024. (ECF No. 101.)

8. Since the appointment of the Committee and the employment of Stinson, the Debtors and the Committee have been in regular communication regarding these cases. In addition, the Committee and Stinson have been in regular communication with creditors.

## II. HISTORY AND STRUCTURE OF THE DEBTORS.

9. The Debtors are part of a series of affiliated companies known collectively as "EPIC Companies." EPIC Companies generally consists of the Debtors, certain real estate holding entities described below, certain service providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

10. EPIC Companies Midwest, LLC ("EPIC Midwest") was formed on or around January 22, 2019. EPIC Midwest has one Class A member—EPIC Holdings, LLC ("Holdings I"). It also has several Class B members, described below.

11. EC West Fargo, LLC ("EC") was formed on or around January 23, 2019. EC has one Class A member—Holdings I. It also has one Class B member, described below.

12. EOLA Capital, LLC ("EOLA") was formed on or around February 8, 2022. EOLA has two members—(a) Todd Berning; and (b) EPIC Holdings II, LLC ("Holdings II").

13. EPIC Companies Midwest 2023, LLC (EPIC Midwest 2023") was formed on or around August 15, 2022. EPIC Midwest 2023 has two members—(a) Todd Berning; and (b) Holdings II.

3

14. EPIC Employee, LLC ("EPIC Employee") was formed on or around August 31, 2022. EPIC Employee has two members—(a) Todd Berning; and (b) Holdings II.

15. Each of the Debtors was formed for the purpose of providing loans to various real estate development projects (the "Project Companies") located throughout North Dakota and Minnesota, identified collectively as affiliates of EPIC Companies.

16. On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project. Based on records reviewed to date, each of the Project Companies has a different ownership group. Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies. In addition, certain Project Companies appear to have subordinated debt from lenders other than the Debtors.

17. On information and belief, the Debtors were formed for the purpose of providing loans as "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to the bank debt but superior to the equity holders in each of the Project Companies and enable EPIC Companies to quickly deploy capital among the Project Companies as it was needed.

18. To execute this plan, the Debtors raised capital from various individuals and entities (collectively, "Investors"). The majority of the investments were structured and documented as loans from the Investors to the Debtors. Investors generally executed promissory notes, which in most cases provided for, among other normal loan terms, interest, monthly installment payments, and a balloon payment on the applicable maturity date (collectively, "Investor Notes"). On information and belief, the Investor Notes are unsecured.

19. Certain investments originating from self-directed IRAs appear to have been structured as equity contributions to the Debtors. Such Investors executed Subscription Agreements and Letters of Investment Intent to acquire Class B membership units ("Class B Units"), but many, if not all, of the applicable agreements also contain similarities to the Investor Notes, including the requirement of monthly payments.

20. On information and belief, both the Class B Units and the Investor Notes were intended to be issued pursuant to certain exemptions from the state or federal securities registration. Specifically, all the Investors are intended to be "accredited investors" as defined by SEC Regulation D.

21. With the funds received from the Investors, the Debtors made transfers to the Project Companies and certain other subsidiaries of EPIC Companies. Most are documented by promissory notes but, on information and belief, some are reflected solely in accounting records. The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Debtors and a final balloon payment on the applicable maturity date. On information and belief, none of the Sub Debt is secured.

### III. CENTRALIZED ACCOUNTING AND MANAGEMENT SERVICES.

22. The Debtors centralized certain operations, including accounting and management services through a series of other affiliated companies formed under the EPIC Companies' banner.

23. For example, the Debtors utilized M&S Concessions, LLC ("M&S") for accounting services and for staff. M&S was originally formed to operate concessions at the North Dakota State Fair and other events. The Debtors utilized the Sage 100 accounting software that was licensed to M&S. The Debtors also used the hosting and support services of a third-party IT provider that M&S had contracted with.

5

24. Similarly, the Debtors utilized a licensing agreement between EPIC Management, LLC ("EPIC Management") and Microsoft for email, Office 365, and SharePoint. EPIC Management was formed, in part, to provide staff, real estate development, and property management services to the Debtors and other EPIC Companies.

25. Thus, while the Debtors may have maintained separate bank accounts, the accounting and management services were centralized.

### IV. COMMON OWNERSHIP, INVESTORS, AND CONTROL PERSONS.

26. The Debtors also share common ownership, investors, and control persons.

27. As noted above, each of the Debtors is owned by Holdings I or Holdings II, amongst others.

28. Although the Debtors were formed for the purpose of providing funding to the Project Companies, there were frequent transfers between the Debtors, Holdings I, Holdings II, and other EPIC Companies. Specific examples as of the Petition Date include:

   a. A transfer from EPIC Midwest to CBE, LLC ("CBE") in the amount of $50,000 undocumented by a promissory note that appears to have been provided to fund CBE's operating expenses. CBE is a company affiliated with EPIC Companies that provided construction services to Project Companies.

   b. Two loans from the Debtors to EPIC Management totaling $950,000 that appear to have been provided to fund EPIC Management's operating expenses.

   c. Three loans from the Debtors to West Fargo Dive Bar, LLC ("Dive Bar") totaling $27,000 that appear to have been provided to fund the Dive Bar's operating expenses, including a $7,000 transfer undocumented by a promissory note.

   d. Six loans from the Debtors to Holdings I totaling $550,000, including two loans totaling $75,000 undocumented by a promissory note that appear to have been provided to fund operating expense and real estate investments held by Holdings I.

6

    e. Seventeen loans from the Debtors to Holdings II totaling $2,432,750 including one $400,000 loan undocumented by a promissory note that appear to have been provided to fund operating expenses and real estate investments held by Holdings II.

29. Loans to Holding I and Holdings II were frequently used to fund real estate investments held by Holdings I and Holdings II. Specific examples include:

    a. On May 18, 2021, Holdings II invested $455,777 in Northern Mall Partners, LLC for a 100% membership interest. Holdings II's membership interest was funded by EPIC Midwest through a $525,000 transfer from EPIC Midwest to Holdings II's checking account documented as a loan.

    b. On or about May 26, 2023, Holdings II invested $232,750 in Dutch Mill Development, LLC for a 98% membership interest. Holdings II's membership interest was funded solely by EPIC Midwest through a $232,750 transfer from EPIC Midwest to Holdings II's checking account documented as a loan. The remaining 2% membership interest is held by Todd Berning. It does not appear that Todd Berning provided any capital in exchange for this membership interest.

    c. On or about August 12, 2021, Holdings II invested $500,000 in Henry Landholding, LLC for a 50% membership interest. Holdings II's membership interest was funded solely by EPIC Midwest through a $500,000 transfer from EPIC Midwest to Holdings II's checking account documented as a loan.

30. Moreover, many of the Investors provided funds to more than one Debtor. At least twenty-five Investors provided funds totaling $12,842,174 to two or more of the Debtors.

31. Several of the Investors that provided funds to the Debtors are affiliated with EPIC Companies rather than accredited investors. Specific examples as of the Petition Date include:

    a. Investments totaling $300,000 from EPIC Skyline, LLC, an entity in which Holdings II is believed to hold a 50% membership interest.

    b. Investments totaling $300,000 from Essential Living, Inc. an entity in which Todd Berning, Steve Gehrtz, and Bruce Walker are each believed to hold a 33% membership interest.

    c. Investments totaling $200,000 from Jak23, LLC, an entity in which Holdings II is believed to hold a 21% membership interest.

7

32. Several of the Investors are also insiders that held management or other decision-making authority within the Debtors, Project Companies, or other EPIC Companies. Specific examples as of the Petition Date include:

   a. Investments totaling $215,000 from Todd Berning or parties related to Todd Berning.

   b. Investments totaling $426,151 from Brian Kounovsky or parties related to Brian Kounovsky.

   c. Investments totaling $424,100 from Vicki Campbell or parties related to Vicki Campbell.

33. Thus, there is significant overlap in the Debtors' ownership, investors, and control persons.

## V. INTER-DEBTOR TRANSFERS AND DEBTS.

34. There were also frequent transfers between the Debtors, including transfers characterized as loans. These loans were usually, but not always, documented as promissory notes. Specific examples as of the Petition Date include:

   a. Two loans from EOLA to EPIC Midwest totaling $995,000; and

   b. Six loans from EPIC Midwest 2023 to EPIC Midwest totaling $1,214,271 including one $30,000 loan that does not appear to have been documented by a promissory note.

35. Loans from the Debtors to Project Companies were frequently used to pay off or refinance other loans between the Debtors and the Project Companies. Specific examples include:

   a. On July 12, 2021, EC provided a $695,000 loan undocumented by a promissory note to Beacon Landholdings, LLC ("BLH"). On or about October 12, 2023, BLH obtained a $70,000 loan from EPIC Midwest and a $100,000 loan from EPIC Midwest 2023. The $170,000 provided by EPIC Midwest and EPIC Midwest 2023 was transferred directly to EC in partial satisfaction of the loan EC provided to BLH in 2021.

   b. On March 18, 2022, EOLA provided a $750,000 loan to JP Place, LLC ("JPP") and on June 8, 2022, EOLA provided a $500,000 loan to JPP. On

September 9, 2022, EPIC Midwest provided a $291,000 undocumented loan to JPP which was used by JPP to pay down its loan obligations due to EOLA. On September 15, 2022, EPIC Midwest 2023 provided a $894,000 loan to JPP, but the funds were transferred to EPIC Midwest rather than directly to JPP. On September 16, 2024, EPIC Midwest transferred $894,000 to JPP which JPP transferred on that same day back to EPIC Midwest. EPIC Midwest then transferred the funds to EOLA further reducing JPP's loan obligations to EOLA.

36. Further, investments from certain investors were transferred between Debtors. Specific examples included:

    a. On January 1, 2024, investments from Brian Goeser to EPIC Midwest between May 1, 2019 and December 31, 2023 totaling $162,412.50, were transferred to EPIC Midwest 2023.

    b. On January 1, 2024, investments from Leon Vandeberg to EPIC Midwest on February 15, 2022, May 11, 2022, and August 3, 2022 totaling $400,000, were transferred to EPIC Midwest 2023.

    c. On August 25, 2023, investments from Lonnie & Mary Hass to EPIC Midwest invested between April 26, 2019 and June 29, 2022 totaling $24,000, were transferred to EPIC Midwest 2023.

37. Thus, there were significant transfers between the Debtors.

## RELIEF REQUESTED

38. Given the facts and circumstances described above, the Debtors believe that: (a) their intertwined relationship would be nearly impossible or impracticable to unravel; (b) the benefits of consolidation outweigh any harm to creditors; and (c) creditors may be prejudiced if the Debtors are not consolidated.

39. Accordingly, the Debtors seek an order substantively consolidating the Debtor's assets, liabilities, and operations.

**BASIS FOR RELIEF REQUESTED**

40. The doctrine of substantive consolidation treats separate legal entities as if they were a single entity, consolidating their assets and satisfying each entity's liabilities from this consolidated pool of assets. *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005).

41. The purpose and goal of substantive consolidation is the "equitable treatment of all creditors." *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988). The doctrine of substantive consolidation traces its roots to the Bankruptcy Act of 1898. *See In re Reider*, 31 F.3d 1102, 1105 (11th Cir. 1994).

42. The authority to order substantive consolidation is implied in a bankruptcy court's general equitable powers and is exercisable under 11 U.S.C. § 105. *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987); *In re Archdiocese of St. Paul & Minneapolis*, 553 B.R. 693, 701 (Bankr. D. Minn. July 28, 2016).

43. In 1987, the District of Columbia Circuit established a two-prong test, requiring the proponent of consolidation to make a prima facie case demonstrating: (a) that there is "substantial identity between the entities to be consolidated"; and (b) "that consolidation is necessary to avoid some harm or to realize some benefit." *In re Auto-Train*, 810 F.2d at 276. Once the proponent for consolidation has made this showing, the burden shifts to an objecting creditor to show that: (a) it has relied on the separate credit of one of the entities to be consolidated; and (b) it will be prejudiced by substantive consolidation. *Id.*

44. The Eighth Circuit developed a substantially similar three-factor test, which analyzes whether substantive consolidation is appropriate based on: (a) "the necessity of consolidation due to the interrelationship among the debtors"; (b) "whether the benefits of consolidation outweigh the harm to creditors"; and (c) the "prejudice resulting from not

consolidating the debtors." *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992); *Boellner v. Dowden*, 612 F. App'x 399, 401 (8th Cir. 2015).

45. Courts have explicitly recognized the similarities between the *Giller* test and the *Auto-Train* test, noting that "despite the brevity of the Eighth Circuit's discussion, it clearly reflects the touchstones of *Auto-Train*" and that "*Giller's* non-exhaustive list of factors may be informed and supplemented by the *Auto-Train* progeny." *In re Petters Co., Inc.*, 506 B.R. 784, 798–99 (Bankr. D. Minn. 2013); *see also In re Affiliated Foods, Inc.*, 249 B.R. 770, 777 (Bankr. W.D. Mo. 2000) (noting the similarities).

46. Each of the three *Giller* factors weighs in favor of substantive consolidation of the Debtors' bankruptcy cases.

## I. CONSOLIDATION IS NECESSARY DUE TO THE INTERRELATIONSHIPS BETWEEN THE DEBTORS.

47. As demonstrated above, the Debtors are significantly interrelated. Not only did the Debtors centralize certain operations, including accounting and management services, but they share common ownership through Holdings I and Holdings II. They also have many of the same Investors, including certain insiders, such as Todd Berning.

48. Further demonstrating the Debtors' interrelatedness, there were frequent transfers amongst the Debtors. For example, there were six loans between EPIC Midwest 2023 and EPIC Midwest totaling over $1.2 million. The Debtors would also transfer funds to the Project Companies to satisfy debts owed to other Debtors, as demonstrated by the transfers involving JPP.

49. To untangle those transfers—which constitute just a few examples of many other, similar transfers—would be extremely expensive and time consuming and it is unclear if there would ultimately be any benefit to the Debtors' creditors.

50. Faced with similar facts, the court in *In re Affiliated Foods, Inc.* determined that "[r]evenues, expenses, employees, and operations were intermingled to such an extent that separating them now, if it could be accomplished at all, would be inordinately expensive and time-consuming, and would serve no useful purpose." *In re Affiliated Foods, Inc.*, 249 B.R. at 770.

51. The interrelationships between the Debtors in these cases clearly makes substantive consolidation necessary.

## II. THE BENEFITS OF CONSOLIDATION OUTWEIGH THE HARM.

52. All five estates will benefit from substantive consolidation of the Debtors' bankruptcy cases.

53. First, the Debtors and all creditors will benefit by avoiding the significant costs associated with attempting to allocate the assets and liabilities between the Debtors. As demonstrated above, the Debtors' affairs are so interrelated that deciphering individual claims would be difficult, time consuming, and is unlikely to result in any benefit to all creditors due to the increased costs. The estates would be forced to expend substantial resources unscrambling common (and potentially conflicting) claims.

54. Second, consolidation will result in payment of a larger portion of creditors' claims than would be paid if consolidation is not ordered because there will be a larger pool of assets, substantive consolidation will eliminate claims that the Debtors may assert against each other, and the Debtors will avoid the expenses detailed above. *Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d at 251 (finding a direct benefit of substantive consolidation to creditors is that a larger pool of assets is created and inter-debtor claims are eliminated).

55. Finally, many of the creditors likely thought of the Debtors as a single operating entity such as EPIC Companies. Substantive consolidation ensures that these creditors are not

harmed by their reliance on the presumed structure of the Debtors. *In re Petters Co., Inc.*, 506 B.R. at 824 ("The point here is that it may be 'necessary' to consolidate the entities to reflect reality and maintain equity, if the objecting parties never expected to exclusively treat them as separate, and took actions that in fact did not treat them consistently and exclusively as separate.").

56. On the other hand, the harm to creditors from substantive consolidation of the Debtors' cases would be minimal. Even assuming that creditors of a certain Debtor would recover more if that Debtor's estate was treated separately, those creditors would be forced to wait for any recovery pending the untangling of the interrelatedness described herein. Thus, any perceived benefit of maintaining separateness would ultimately be outweighed by other factors.

57. Moreover, to the extent a creditor argues that it relied on the separateness between the Debtors, the creditor must demonstrate that reliance and, even if successful, reliance alone is not sufficient under the *Giller* standard. *Id.* (finding that certain creditors' reliance on separateness between the debtors had "no firm basis in current Eighth Circuit precedent" and, even if reliance was demonstrated, the creditor may be estopped from asserting reliance if a reasonable creditor would not have similarly relied on the alleged separateness of the debtors).

58. For these reasons, the benefits of consolidation substantially outweigh any harm that might be suffered by a creditor.

### III. THERE WILL BE PREJUDICE ABSENT CONSOLIDATION.

59. Refusal to consolidate the Debtors' bankruptcy cases would substantially prejudice creditors. As noted in *In re Affiliated Foods, Inc.*, the facts supporting consolidation under the first two *Giller* factors are also applicable to whether failing to consolidate cases would prejudice the debtors. *In re Affiliated Foods, Inc.*, 249 B.R. at 783. The same is true here.

60. First, creditors that interacted with the Debtors, namely the Investors, likely thought of the Debtors as a single operating entity such as EPIC Companies and will be prejudiced if the bankruptcy estates are not consolidated. They liked relied on the overall perceived success of EPIC Companies.

61. Second, creditors may be prejudiced without consolidation because, based on the interrelatedness of the Debtors' financials and ordinary course operations, there may be inter-debtor debts that will decrease recovery to creditors if paid.

62. Third, the cost of separating the five bankruptcy cases will be substantial, which prejudices the Debtors and the Debtors' creditors.

63. Lastly, the Debtors have proposed a Plan of Liquidation to implement any distribution to creditors, with equal distributions made to creditors of all five Debtors. If the Debtors are forced to somehow allocate estate assets differently, the process will be delayed.

64. Consequently, the Debtors and their creditors will be prejudiced if the Debtors' cases are not substantively consolidated.

## **CONCLUSION**

65. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

66. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Patrick Finn attached hereto.

67. The Debtors have not submitted a proposed order, as this Motion is being heard in conjunction with the confirmation hearing on the Debtors' Plan of Liquidation. As such, the Debtors propose that substantive consolidation be addressed in the Court's confirmation order, if any.

68. Pursuant to Local Rule 9014-1(B), the Debtors hereby give notice that they may, if necessary, call Patrick Finn, a Partner at Lighthouse Management Group, Inc., and the Chief Restructuring Officer of the Debtors, whose business address is 900 Long Lake Road, Suite 180, New Brighton, Minnesota 55112, to testify regarding the facts set forth in the Motion.

69. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

A. Granting the Motion and substantively consolidating the Debtors' assets, liabilities, and operations; and

B. Granting such other relief as the Court deems just and equitable.

Dated: June 17, 2025              /e/ *Steven R. Kinsella*
                                  Michael S. Raum (#05676)
                                  **FREDRIKSON & BYRON, P.A.**
                                  51 Broadway, Suite 400
                                  Fargo, ND  58102-4991
                                  701.237.8200
                                  mraum@fredlaw.com

                                  Steven R. Kinsella (#09514)
                                  Katherine A. Nixon (*pro hac vice* MN #0402772)
                                  **FREDRIKSON & BYRON, P.A.**
                                  60 South 6th Street, Suite 1500
                                  Minneapolis, MN  55402-4400
                                  612.492.7000
                                  skinsella@fredlaw.com
                                  knixon@fredlaw.com

                                  **ATTORNEYS FOR DEBTORS**

## AFFIDAVIT

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC and I declare under penalty of perjury that the facts set forth in the preceding Motion for Substantive Consolidation of the Debtors' Assets, Liabilities, and Operations are true and correct, according to the best of my knowledge, information, and belief.

Dated: June 17, 2025

*PATRICK FINN* (DocuSigned)

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer of the Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

**NOTICE OF MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE DEBTORS' ASSETS, LIABILITIES, AND OPERATIONS**

TO:  The parties-in-interest as specified in the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

1.  **NOTICE IS HEREBY GIVEN** that EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors"), by and through their counsel, filed a motion seeking an order substantively consolidating the Debtors' assets, liabilities, and operations (the "Motion"), a copy of which is attached hereto and served upon you.

2.  **NOTICE IS FURTHER GIVEN** that any objection to the Motion must be filed with the Clerk of the United States Bankruptcy Court, whose address is Quentin N. Burdick United States Courthouse and Federal Building, 655 First Avenue North, Suite 210, Fargo, North Dakota 58102, and served upon the attorney whose name and address is listed below, by **Tuesday, July 29, 2025.** Any objections not filed and served may be deemed waived.

3.  **NOTICE IS FURTHER GIVEN** that a hearing on the Motion will be held on **Tuesday, August 12, 2025, at 10:00 a.m. in Courtroom #3, Second Floor, Quentin N. Burdick**

**United States Courthouse and Federal Building, 655 First Avenue North, Fargo, North Dakota 58102** at which time the Court will also consider and act upon timely objections to the Motion. *If no objections are received by Tuesday, July 29, 2025, the Court may grant the Motion and cancel the hearing without further notice.*

Dated:  June 17, 2025                              /e/ *Steven R. Kinsella*
                                                   Michael S. Raum (#05676)
                                                   **FREDRIKSON & BYRON, P.A.**
                                                   51 Broadway, Suite 400
                                                   Fargo, ND  58102-4991
                                                   701.237.8200
                                                   mraum@fredlaw.com

                                                   Steven R. Kinsella (#09514)
                                                   Katherine A. Nixon (*pro hac vice* MN #0402772)
                                                   **FREDRIKSON & BYRON, P.A.**
                                                   60 South 6th Street, Suite 1500
                                                   Minneapolis, MN  55402-4400
                                                   612.492.7000
                                                   skinsella@fredlaw.com
                                                   knixon@fredlaw.com

                                                   **ATTORNEYS FOR DEBTORS**