## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

EPIC Companies Midwest 2023, LLC,
EOLA Capital, LLC,
EPIC Employee, LLC

        Plaintiffs,

Adversary No. _____

v.

Unite Real Estate Holdings, LLC
f/k/a EPIC Unite Real Estate Holding, LLC,

        Defendants.

## COMPLAINT

Plaintiffs, EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, Unite Real Estate Holdings, LLC (the "Defendant"), state and allege as follows:

## PARTIES

1.    EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on

or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.      EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.  See footnote 1 for updated address.

3.      EPIC Employee, LLC ("EPIC Employee" or "EMP") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 31, 2022.  Its principal place of business was 400 10th Street SE, Minot, North Dakota, 58701.  See footnote 1 for updated address.

4.      Unite Real Estate Holdings, LLC, f/k/a EPIC Unite Real Estate Holdings ("EPIC Unite" or "EPIC Unite/Unite Real Estate Holdings") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around December 17, 2019. Its principal place of business is located at 210 Broadway N, Ste 300, Fargo, North Dakota 58102.

5.      The Defendant owes funds to the Plaintiff pursuant to certain loan transactions.

## JURISDICTION AND VENUE

6.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

7.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

8.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9.      The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

10.     This Complaint is filed under Fed. R. Bankr. P. 7001.

11.     The Plaintiffs and the Defendants are properly joined in this adversary proceeding under Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.    PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

12.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

13.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendants, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

14.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by affiliates of EPIC Companies (the "Project Companies").

15.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

16.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

17.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

18.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be subordinate to any bank debt but superior to the equity holders in each of the Project Companies.

19.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

20.     The loans by the Plaintiffs to the Defendant are documented by promissory notes. The loans by the Plaintiffs are unsecured, as that term is generally understood under applicable law.

21.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

22.     On information and belief, the Defendant is certain of the Project Companies. It has an interest in real estate developments located at 234 Main Avenue, Fargo, North Dakota.

## II.    TRANSFERS TO DEFENDANT FROM EPIC MIDWEST 2023.

23.     Between March 10, 2023 and December 20, 2023, Debtor EPIC Midwest 2023 and EPIC Unite Real Estate Holdings, LLC entered into some promissory notes with the following balances as of July 31, 2025:

| Date | Principal | Interest Paid | Past Due Interest | Late Fees | Total Due |
|------|-----------|---------------|-------------------|-----------|-----------|
| 03/01/23 | 500,000.00 | 78,125.00 | 12,500.00 | 20,500.00 | 533,000.00 |
| 03/01/23 | 60,000.00 | 9,375.00 | 1,500.00 | 2,460.00 | 63,960.00 |
| 10/01/23 | 60,000.00 | 7,200.00 | 1,600.00 | 2,464.00 | 64,064.00 |
| 12/01/23 | 300,000.00 | 32,000.00 | 8,000.00 | 12,320.00 | 320,320.00 |
| 01/01/24 | 220,000.00 | 22,000.05 | 5,866.68 | 9,034.67 | 234,901.35 |
| **Total** | **$1,140,000.00** | **$148,700.05** | **$29,466.68** | **$46,778.67** | **$1,216,245.35** |

(the "EPIC Midwest 2023 Notes").

24.     The EPIC Midwest 2023 notes mature on March 1, 2026, October 1, 2026, December 1, 2026, and January 1, 2027, respectively. Interest accrues at rates between 7.5% and 8.0% and the standard late fee is $0.04 per $1.00.

25.     Pursuant to the EPIC Unite Real Estate Holdings Notes, EPIC Midwest 2023 offered to loan $1,140,000.00 to EPIC Unite under certain terms and conditions and EPIC Unite accepted that offer. The EPIC Midwest 2023 Notes are unsecured.

26.     Between February 21, 2023, and December 20, 2023, and pursuant to the EPIC Unite Real Estate Holdings Notes, EPIC Midwest 2023 transferred a total of $1,140,000.00 to EPIC Unite Real Estate Holdings (the "EPIC Unite Real Estate Holdings Transfers").

27.     Under the terms of the Epic Midwest 2023 Notes, EPIC Unite was required to make monthly payments to EPIC Midwest 2023 in the form of interest with balloon payments upon maturity dates.

28.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the Epic Midwest 2023 Notes.

29.     Between December 31, 2023, and March 31, 2025, EPIC Unite paid EPIC Midwest 2023 a total of $147,700.05 in interest on the EPIC Midwest 2023 Notes.

30.    After March 31, 2025, Unite Real Estate Holdings, LLC ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Notes.

31.    Therefore, all amounts owed to EPIC Midwest 2023 by Unite Real Estate Holdings, LLC became immediately due and payable.

32.    As of July 31, 2025, Unite Real Estate Holdings owes EPIC Midwest 2023 a total of at least $1,216,245.35, which consists of $1,140,000.00 of principal, $29,466.68 of interest, and $46,778.35 of late fees, with interest and fees continuing to accrue.

33.    Before, during, and after the period of March 1, 2023, to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

34.    On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

35.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from August 2022 through June 2024. These financial records indicate that between March 1, 2023 to June, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

36.    Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and June, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes to EPIC Unite, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

### III.   TRANSFERS TO EPIC UNITE REAL ESTATE HOLDINGS FROM EOLA.

37.   On March 1, 2023, and December 1, 2023, Debtor EOLA and EPIC Unite entered into two promissory notes with the following balances as of July 31, 2025:

| Date | Principal | Interest Paid | Past Due Interest | Late Fees | Total Due |
|------|-----------|---------------|-------------------|-----------|-----------|
| 03/01/23 | 60,000.00 | 10,625.00 | 1,700.00 | 2,468.00 | 64,168.00 |
| 12/01/23 | 300,000.00 | 38,250.00 | 8,500.00 | 12,340.00 | 320,840.00 |
| | **$360,000.00** | **$48,875.00** | **$10,200.00** | **$14,808.00** | **$385,008.00** |

(the "EOLA Notes," and together with the EPIC Midwest 2023 Notes, the "Notes").

38.   The EOLA Notes mature on March 1, 2026 and December 1, 2026, respectively. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

39.   Pursuant to the EOLA Notes, EOLA offered to loan $360,000 to EPIC Unite under certain terms and conditions and EPIC Unite accepted those offers. The EOLA Notes are unsecured.

40.   Under the terms of the EOLA Notes, EPIC Unite was required to make monthly payments to EOLA in the form of interest with a balloon payment upon maturity.

41.   The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Notes.

42.   Between March 1, 2023, and March 31, 2025, EPIC Unite only paid EOLA a total of $48,875.00 in interest, which continues to accrue thereon.

43.   After March 31, 2025, EPIC Unite ceased making payments to EOLA and defaulted under the EOLA Notes.

44.   Therefore, all amounts owed to EOLA by EPIC Unite or Unite Real Estate Holdings became immediately due and payable.

45.     As of July 31, 2025, EPIC Unite/Unite Real Estate Holdings owes EOLA a total of at least $385,008.00, which consists of $360,000,000 of principal, $10,200.00 of interest, and $14,808.00 of late fees, with interest and fees continuing to accrue.

46.     Before, during, and after the period of March 1, 2023, to December 1, 2023, EOLA had creditors, including various individual investors.

47.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

48.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from February 2022 through June 2024. These financial records indicate that between March 1, 2023 and June, 2024, and at all relevant times between entry into the EOLA Notes to EPIC Unite, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

49.     Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and June, 2024, and at all relevant times between entry into the EOLA Notes to EPIC Unite, EOLA was insolvent or became insolvent thereafter.

## IV.     TRANSFERS TO EPIC UNITE REAL ESTATE HOLDINGS FROM EMP.

50.     On March 1, 2023, Debtor EPIC Employee LLC and EPIC Unite entered into a promissory note with the following balance as of July 31, 2025:

| Date | Principal | Interest Paid | Past Due Interest | Late Fees | Total Due |
|------|-----------|---------------|-------------------|-----------|-----------|
| 03/01/23 | 20,000.00 | 3,125.00 | 500.00 | 820.00 | 21,320.00 |
| **Total** | **$20,000.00** | **$3,125.00** | **$500.00** | **$820.00** | **$21,320.00** |

(the "EPIC Employee Note," and together with the EPIC Midwest 2023 Notes and the EOLA Notes, the "Notes").

51.     The EPIC Employee Note matures on March 1, 2026. Interest accrues at a rate of 7.5% and the standard late fee is $0.04 per $1.00.

52.     Pursuant to the EPIC Employee Note, EPIC Employee offered to loan $20,000 to EPIC Unite under certain terms and conditions and EPIC Unite accepted that offer. The EPIC Employee Note is unsecured.

53.     Under the terms of the EPIC Employee Note, EPIC Unite was required to make monthly payments to EPIC Employee in the form of interest with a balloon payment upon maturity.

54.     The failure to make payments to EPIC Employee as and when such payments were due constitutes a default under the terms of the EPIC Employee Note.

55.     Between March 1, 2023, and March 31, 2025, EPIC Unite only paid EPIC Employee a total of $3,125.00 in interest, which continues to accrue thereon.

56.     After March 31, 2025, EPIC Unite/Unite Real Estate Holdings ceased making payments to EPIC Employee and defaulted under the EPIC Employee Note.

57.     Therefore, all amounts owed to EPIC Employee by EPIC Unite/Unite Real Estate Holdings became immediately due and payable.

58.     As of July 31, 2025, EPIC Unite/Unite Real Estate Holdings owes EPIC Employee a total of at least $21,320.00, which consists of $20,000 of principal, $500.00 of interest, and $820.00 of late fees, with interest and fees continuing to accrue.

59.     Before, during, and after the period of March 1, 2023, to March 31, 2024, EPIC Employee had creditors, including various individual investors.

60.     On June 11, 2024, EPIC Employee board of directors appointed Lighthouse as its Chief Restructuring Officer.

61.     Lighthouse has reviewed EPIC Employee general ledger, bank statements, and financial reports from October 2022 through June 2024. These financial records indicate that between March 1, 2023 and June 2024, and at all relevant times between entry into the EPIC Employee Note to EPIC Unite, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

62.     Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and June 2024, and at all relevant times between entry into the EPIC Employee Note to EPIC Unite, EPIC Employee was insolvent or became insolvent thereafter.

**V.     PRIOR DEMAND FOR AMOUNTS OWED.**

63.     On June 23, 2025, the Plaintiffs caused a demand letter to be sent on their behalf to Unite Real Estate Holdings, LLC demanding the amounts owed to the Plaintiffs under the Notes. The Plaintiffs also had additional communications with representatives of the Defendant in which they demanded the amounts owed under the Notes.

64.     As of the date of this Complaint, the Defendant have failed to pay the Plaintiffs.

65.     The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

66.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendant further transferred funds to other Project

Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Unite Real Estate Holdings, LLC)**

67.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

68.     Between March 1, 2023, and January 1, 2024, EPIC Midwest 2023 and EPIC Unite entered into the EPIC Midwest 2023 Notes.

69.     Under the terms of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 agreed to provide EPIC Unite a total of $1,140,000.00, in exchange, EPIC Unite agreed to make regular monthly payments to EPIC Midwest 2023.

70.     Between February 21, 2023, and December 20, 2023, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $1,140,000.00 to EPIC Unite.

71.     On or around March 31, 2025, EPIC Unite/Unite Real Estate Holdings ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Notes.

72.     EPIC Unite/Unite Real Estate Holdings' failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Notes.

73.     Due to EPIC Unite/Unite Real Estate Holdings' breach of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $1,216.245.35, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Notes.

## COUNT II
## BREACH OF CONTRACT
### (EOLA v. Unite Real Estate Holdings)

74.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

75.     On March 1, 2023, and December 1, 2023, EOLA and EPIC Unite entered into the EOLA Notes.

76.     Under the terms of the EOLA Notes, EOLA agreed to provide EPIC Unite a total of $360,000, in exchange, EPIC Unite agreed to make regular monthly payments to EOLA.

77.     On March 10, 2023, December 5, 2023, and pursuant to the EOLA Notes, EOLA transferred a total of $360,000 to EPIC Unite.

78.     On or around March 31, 2024, EPIC Unite/Unite Real Estate Holdings ceased making payments to EOLA as required by the EOLA Notes.

79.     Unite Real Estate Holdings' failure to make monthly payments to EOLA constitutes a breach of the EOLA Notes.

80.     Due to EPIC Unite/Unite Real Estate Holdings' breach of the EOLA, EOLA has been damaged in the amount of at least $385,008.00, plus interest and other fees and costs allowed by law and the EOLA Notes.

## COUNT III
## BREACH OF CONTRACT
### (EPIC Employee LLC v. Unite Real Estate Holdings)

81.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

82.     On March 1, 2023, EPIC Employee, LLC and EPIC Unite entered into the EPIC Employee Note.

83.     Under the terms of the EPIC Employee Note, EPIC Employee agreed to provide EPIC Unite a total of $20,000, in exchange, EPIC Unite agreed to make regular monthly payments to EPIC Employee.

84.     On March 10, 2023, and pursuant to the EPIC Employee Note, EPIC Employee transferred a total of $20,000 to EPIC Unite.

85.     On or around March 31, 2025, EPIC Unite/Unite Real Estate Holdings ceased making payments to EPIC Employee as required by the EPIC Employee Note.

86.     EPIC Unite/Unite Real Estate Holdings' failure to make monthly payments to EPIC Employee constitutes a breach of the EPIC Employee Note.

87.     Due to EPIC Unite/Unite Real Estate Holdings' breach of the EPIC Employee Note, EPIC Employee has been damaged in the amount of at least $21,320, plus interest and other fees and costs allowed by law and the EPIC Employee Note.

**COUNT IV**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Unite Real Estate Holdings)**

88.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

89.     EPIC Midwest 2023 conferred a benefit to EPIC Unite/Unite Real Estate Holdings by providing $1,140,000.00 for use in EPIC Unite's real estate development project.

90.     EPIC Unite knowingly accepted the $1,140,000 from EPIC Midwest 2023.

91.     As EPIC Unite/Unite Real Estate Holdings did not make the agreed upon monthly payments to EPIC Midwest 2023, EPIC Unite/Unite Real Estate Holdings is not entitled to the benefit of the full value of the $1,140,000 from EPIC Midwest 2023.

92.     Under the circumstances, it would be unjust and inequitable to permit EPIC Unite/Unite Real Estate Holdings to retain the benefit from its actions.

93.     The amount of benefit wrongfully retained by EPIC Unite/Unite Real Estate Holdings is in the amount of at least $1,140,000, plus interest and other fees and costs allowed by law.

**COUNT V**
**UNJUST ENRICHMENT**
**(EOLA v. Unite Real Estate Holdings)**

94.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

95.     EOLA conferred a benefit to EPIC Unite/Unite Real Estate Holdings by providing $360,000 for use in EPIC Unite's real estate development project.

96.     EPIC Unite knowingly accepted the $360,000 from EOLA.

97.     As EPIC Unite/Unite Real Estate Holdings LLC did not make the agreed upon monthly payments to EOLA, EPIC Unite/Unite Real Estate Holdings is not entitled to the benefit of the full value of the $360,000 from EOLA.

98.     Under the circumstances, it would be unjust and inequitable to permit EPIC Unite/Unite Real Estate Holdings to retain the benefit from its actions.

99.     The amount of benefit wrongfully retained by EPIC Unite/Unite Real Estate Holdings is in the amount of at least $360,000, plus interest and other fees and costs allowed by law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(EPIC Employee v. Unite Real Estate Holdings)**

100.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

101.    EPIC Employee conferred a benefit to EPIC Unite by providing $20,000 for use in EPIC Unite's real estate development project.

102.    EPIC Unite knowingly accepted the $20,000 from EPIC Employee.

103.    As EPIC Unite/Unite Real Estate Holdings did not make the agreed upon monthly payments to EPIC Employee, EPIC Unite/Unite Real Estate Holdings is not entitled to the benefit of the full value of the $20,000 from EPIC Employee.

104.    Under the circumstances, it would be unjust and inequitable to permit EPIC Unite/Unite Real Estate Holdings to retain the benefit from its actions.

105.    The amount of benefit wrongfully retained by EPIC Unite/Unite Real Estate Holdings is in the amount of at least $20,000, plus interest and other fees and costs allowed by law.

**COUNT VII**
**ACCOUNT STATED**
**(EPIC Midwest 2023 v. Unite Real Estate Holdings)**

106.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

107.    EPIC Midwest 2023 demanded payment of Unite Real Estate Holdings account with EPIC Midwest 2023.

108.    EPIC Unite/Unite Real Estate Holdings did not substantively respond to the demand or dispute any amounts.

109.    EPIC Unite/Unite Real Estate Holdings did not pay the amounts due and owing to EPIC Midwest 2023.

110.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $1,216,245.35, plus interest and other fees and costs allowed by law.

## COUNT VIII
## ACCOUNT STATED
**(EOLA v. Unite Real Estate Holdings)**

111.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

112.    EOLA demanded payment of EPIC Unite/Unite Real Estate Holdings' account with EOLA.

113.    EPIC Unite/Unite Real Estate Holdings did not substantively respond to the demand or dispute any amounts.

114.    EPIC Unite/Unite Real Estate Holdings did not pay the amounts due and owing to EOLA.

115.    As a result, EOLA has been damaged in the amount of at least $385,008.00, plus interest and other fees and costs allowed by law.

## COUNT IX
## ACCOUNT STATED
**(EPIC Employee v. Unite Real Estate Holdings)**

116.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

117.    EPIC Employee demanded payment of EPIC Unite/Unite Real Estate Holdings account with EPIC Employee.

118.    EPIC Unite/Unite Real Estate Holdings, LLC did not substantively respond to the demand or dispute any amounts.

119.    EPIC Unite/Unite Real Estate Holdings did not pay the amounts due and owing to EPIC Employee.

120.    As a result, EPIC Employee has been damaged in the amount of at least $21,320.00, plus interest and other fees and costs allowed by law.

### COUNT X
### PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Unite Real Estate Holdings)

121.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

122.    EPIC Unite/Unite Real Estate Holdings promised it would make regular monthly payments to EPIC Midwest 2023.

123.    In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $1,140,000 to EPIC Unite/Unite Real Estate Holdings.

124.    EPIC Midwest 2023 was harmed by its reasonable reliance on EPIC Unite/Unite Real Estate Holdings' promises, as EPIC Midwest 2023 loaned $1,140,000 to EPIC Unite/Unite Real Estate Holdings and was not fully repaid.

125.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $1,216,245.35, plus interest and other fees and costs allowed by law.

### COUNT XI
### PROMISSORY ESTOPPEL
### (EOLA v. Unite Real Estate Holdings)

126.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

127.    EPIC Unite/Unite Real Estate Holdings promised it would make regular monthly payments to EOLA.

128.    In reasonable reliance on those promises, EOLA loaned a total of $360,000 to EPIC Unite/Unite Real Estate Holdings.

129.    EPIC Midwest 2023 was harmed by its reasonable reliance on EPIC Unite/Unite Real Estate Holdings' promises, as EOLA loaned $360,000 to EPIC Unite/Unite Real Estate Holdings and was not fully repaid.

130.    As a result, EOLA has been damaged in the amount of at least $385,008.00, plus interest and other fees and costs allowed by law.

### COUNT XII
### PROMISSORY ESTOPPEL
**(EPIC Employee v. Unite Real Estate Holdings)**

131.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

132.    EPIC Unite/Unite Real Estate Holdings promised it would make regular monthly payments to EPIC Employee.

133.    In reasonable reliance on those promises, EPIC Employee loaned a total of $20,000 to EPIC Unite/Unite Real Estate Holdings.

134.    EPIC Midwest 2023 was harmed by its reasonable reliance on EPIC Unite/Unite Real Estate Holdings' promises, as EPIC Employee loaned $20,000 to EPIC Unite/Unite Real Estate Holdings and was not fully repaid.

135.    As a result, EPIC Employee has been damaged in the amount of at least $21,320.00, plus interest and other fees and costs allowed by law.

## COUNT XIII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Unite Real Estate Holdings)

136.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

137.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with EPIC Unite/Unite Real Estate Holdings and made the EPIC Midwest 2023 transfers to EPIC Unite and received less than reasonably equivalent value in exchange. EPIC Unite/Unite Real Estate Holdings did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $148,700.05 to EPIC Midwest 2023 despite receiving $1,140,000 from EPIC Midwest 2023.

138.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between November 29, 2023, and February 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

139.    On information and belief, between March 1, 2023, and January 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes with EPIC Unite/Unite Real Estate Holdings, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

140.    Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and January 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes with EPIC Unite, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Notes.

141.    EPIC Unite was the initial transferee of the EPIC Midwest 2023 Notes.

142.    Based on the foregoing, the EPIC Midwest 2023, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

143.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XIV**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest 2023 v. Unite Real Estate Holdings)**

144.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

145.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with EPIC Unite and received less than reasonably equivalent value in exchange. EPIC Unite/Unite Real Estate Holdings did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $148,700.05 to EPIC Midwest 2023 despite receiving $1,140,000 from EPIC Midwest 2023.

146.    Before, during, and after the period of March 1, 2023, to January 1, 2024, EPIC Midwest 2023 had creditors, including various individual investors.

147.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2023 and January 1, 2024, and at all relevant times between entry into the EPIC Midwest 2023 Notes, EPIC Midwest 2023 was engaged or was about to engage in a business or a

transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

148.    EPIC Unite/Unite Real Estate Holdings was the first transferee of the EPIC Midwest 2023 Notes.

149.    Based on the foregoing, the EPIC Midwest 2023 Notes is avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

150.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XV
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EOLA v. Unite Real Estate Holdings)

151.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

152.    EOLA entered into the EOLA Notes with EPIC Unite and received less than reasonably equivalent value in exchange. EPIC Unite did not provide EOLA with a security interest in any collateral and only paid $48,875.00 to EPIC Midwest 2023 despite receiving $360,000 from EOLA.

153.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between March 1, 2023, and December 1, 2023, and at all relevant times between entry into the EOLA Notes, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

154.    On information and belief, between March 1, 2023, and December 1, 2023, and at all relevant times between entry into the EOLA Notes, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

155.    Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and December 1, 2023, and at all relevant times between entry into the EOLA Notes, EOLA was insolvent or became insolvent as a result of the EOLA Notes.

156.    EPIC Unite was the initial transferee of the EOLA Notes.

157.    Based on the foregoing, the EOLA, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

158.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XVI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EOLA V. Unite Real Estate Holdings)**

159.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

160.    EOLA entered into the EOLA Notes with EPIC Unite and received less than reasonably equivalent value in exchange. EPIC Unite did not provide EOLA with a security

interest in any collateral and eventually only paid $48,875 to EOLA despite receiving $360,000 from EOLA.

161.    Before, during, and after the period of March 1, 2023, to December 1, 2023, EOLA had creditors, including various individual investors.

162.    Lighthouse has reviewed EOLA'S general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between March 1, 2023 and December 1, 2023, and at all relevant times between entry into the EOLA Notes, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

163.    EPIC Unite was the first transferee of the EOLA Notes.

164.    Based on the foregoing, the EOLA Notes are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

165.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XVII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Employee v. Unite Real Estate Holdings)

166.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

167.    EPIC Employee entered into the Epic Employee Note with EPIC Unite and received less than reasonably equivalent value in exchange. EPIC Unite did not provide EPIC Employee with a security interest in any collateral and only paid $3,125.00 to EPIC Employee despite receiving $20,000 from EPIC Employee.

168.    Lighthouse has reviewed EPIC Employee's general ledger, bank statements, and financial reports from October 2022 through June 2024. These financial records indicate that between March 1, 2023, and at all relevant times between entry into the EPIC Employee Note, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small.

169.    On information and belief, between March 1, 2023, and October 1, 2023, and at all relevant times between entry into the EPIC Employee, EPIC Employee intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

170.    Based on the financial records identified above and reviewed by Lighthouse, between March 1, 2023, and October 1, 2023, and at all relevant times between entry into the EPIC Employee Note, EPIC Employee was insolvent or became insolvent as a result of the EPIC Employee Note.

171.    EPIC Unite was the initial transferee of the EPIC Employee Note.

172.    Based on the foregoing, the EPIC Employee Note, which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

173.    Pursuant to 11 U.S.C. § 550(a), EPIC Employee may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XVIII
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Employee v. Unite Real Estate Holdings)

174.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

175.    EPIC Employee entered into the EPIC Employee Note with EPIC Unite and received less than reasonably equivalent value in exchange.  EPIC Unite did not provide EPIC Employee with a security interest in any collateral and eventually only paid $3,125 to EPIC Employee despite receiving $20,000 from EPIC Employee.

176.    Before, during, and after the period of March 1, 2023, to October 1, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

177.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from August 2022 through June 2024. These financial records indicate that between March 1, 2023 and June 2024, and at all relevant times between entry into the EPIC Employee Note, EPIC Employee was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Employee were unreasonably small in relation to the business or transaction or EPIC Employee intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

178.    EPIC Unite was the first transferee of the EPIC Employee Note.

179.    Based on the foregoing, the EPIC Employee Note is avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

180.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Employee may recover such fraudulent transfers or obligations from EPIC Unite/Unite Real Estate Holdings in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.    Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.    Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C.    Grant such other relief that the Court deems just and equitable under the circumstances of this case.

Dated:  August 19, 2025

*/s/ Mark Western*
Joel M. Fremstad (ND ID #05541)
Mark Western (ND ID# 06181)
FREMSTAD LAW FIRM
P.O. Box 3143
Fargo, North Dakota 58108-3143
Phone: (701) 478-7620
joel@fremstadlaw.com
mark@fremstadlaw.com

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  August 18, 2025

*/s/ Patrick Finn*
Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs