Case 24-30281

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:                                    **Jointly Administered**

EPIC Companies Midwest, LLC,              Bankruptcy No. 24-30281
EPIC Companies Midwest 2023, LLC,         Bankruptcy No. 24-30282
EPIC Employee, LLC, and                   Bankruptcy No. 24-30283
EOLA Capital, LLC, and                    Bankruptcy No. 24-30284
EC West Fargo, LLC,                       Bankruptcy No. 24-30285

            Debtors                       Chapter 11

## TYLER JOHN BAY, PRO-SE, RESPONSE TO OBJECTION TO CLAIM AS FILED BY THE LIGHTHOUSE MANAGEMENT GROUP, INC., AS LIQUIDATING TRUSTEE OF THE EPIC LIQUIDATING TRUST

1.      Lighthouse Management Group, Inc. (the "Liquidating Trustee"), as trustee

of the EPIC Liquidating Trust (the "Liquidating Trust"), and on behalf of EPIC

Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC,

EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors"), seeks an

order disallowing the claim, as filed by Tyler John Bay (the "Creditor") on the basis that

the Debtors, and now the Liquidating Trust, do not have any liability, as the claims

appear to be against other entities other than the Debtors. I disagree.

2.      The Debtors, are part of a series of "affiliated companies known

collectively as "EPIC Companies." Per EPIC Companies Midwest LLC – 3:24-bk-30281,

Doc. No. 286.0 at 10, EPIC Companies consisted of the Debtors, real estate entities

and service providing companies, **including property management**. All these organizations are affiliated with specific individuals, including Todd Berning.

3.      EPIC Companies Midwest, LLC ("EPIC Midwest") has one Class A member-EPIC Holdings, LLC ("Holdings I"). EC West Fargo, LLC ("EC") has one Class A Member – Holdings I. EOLA Capital, LLC ("EOLA") has two members – Todd Berning; and EPIC Holdings II, LLC ("Holdings II"). EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023") has two members- Todd Berning; and Holdings II. EPIC Employee, LLC ("EPIC Employee") has two members- Todd Berning; and Holdings II. *Id.*

4.      The Debtors were formed for "the purpose of providing loans to various real estate development projects which were in turn developed and managed by subsidiaries of EPIC Companies ("Project Companies"). *Id.* The Debtors argue that each Project Company is a "single purpose entity" and that there is no cross-over or connection between the Debtors and the subsidiaries. *Id.*

5.      Subsidiaries of an LLC are owned and controlled by the "parent LLC" with a majority membership interest between 50-100%. Allowing the Debtors to loan money to themselves through the subsidiaries and potentially controlling the actions of both the LLC and the subsidiary.

6.      The Debtors state that "certain Project Companies" severed ties with EPIC Companies but have failed to define which Project Companies may no longer be subsidiaries of EPIC Companies. *Id.* at 11.

2

7.      EPIC Management, LLC, located at 745 31st Avenue East, Suite #105,
West Fargo, ND 58078, operated a residential apartment building, located at 208 E.
Greenfield Lane, Bismarck, North Dakota. Exhibit 1.

8.      As part of the EPIC Management, LLC, lease agreement, an "additional
interest/Interested party was listed as; Area 57 located at 745 31st Ave E. Suite 105,
West Fargo ND 58078. This interested party shares the same West Fargo address as
EPIC Management and EPIC Companies, but it did not identify as to what the purpose
and scope of interest this interested party would have in the lease agreement. Id.

9.      EPIC Management address for service of notice was 400 10th Street SE,
Minot ND 58701. Exhibit 2.

10.     The Insurance Commissioner (the "Commissioner") of the State of North
Dakota, in their investigation of EPIC Management, LLC, (commonly referred to by the
tradename "EPIC Companies") was registered with the State of North Dakota Secretary
of State with an address of 400 10th Street SE, Minot ND 58701. Exhibit 3.

11.     The Commissioner determined that EPIC Companies was operated and
controlled by Todd Berning. EPIC Companies place of business was located at 745 31st
Ave E, West Fargo ND 58078. Id.

12.     The Debtor known as EPIC Midwest was registered with the State of
North Dakota Secretary of State with an address of 400 10th Street SE, Minot ND
58701. Exhibit 4.

13.     The Debtor known as EC was registered with the State of North Dakota
Secretary of State with an address of 400 10th Street SE, Minot ND 58701. Exhibit 5.

3

14.    The Debtor known as EOLA was registered with the State of North Dakota Secretary of State with an address of 400 10th Street SE, Minot ND 58701. Exhibit 6.

15.    The Debtor known as EPIC Midwest 2023 was registered with the State of North Dakota Secretary of State with an address of 400 10th Street SE, Minot ND 58701. Exhibit 7.

16.    The Debtor known as EPIC Employee was registered with the State of North Dakota Secretary of State with an address of 400 10th Street SE, Minot ND 58701. Exhibit 8.

17.    A letter, dated January 1, 2023, written by Todd Berning, defines EPIC Companies as an investment, development, and management firm operating out of West Fargo, Bismarck and Minot, North Dakota. Mr. Berning does not distinguish or identify that there are different EPIC LLC's and Project Companies that may manage diverse types of activities within EPIC Companies. Instead, he presents EPIC Companies as single firm, located at 745 31st Ave E. Suite 105, West Fargo ND 58078, that provides multiple types of opportunities. Exhibit 9.

18.    The Debtors were allegedly formed for "the purpose of providing loans to various real estate development projects which were in turn developed and managed by a "single purpose" subsidiary" Project Company, and that there was no crossover between EPIC Companies and the Project Companies. Midwest LLC – 3:24-bk-30281, Doc. No. 286.0 at 10.

19.    However, all the Debtors and EPIC Management, LLC, were operated from 745 31st Ave E. Suite 105, West Fargo ND 58078, and registered with the North Dakota Secretary of State with an address of 400 10th Street SE, Minot ND 58701.

4

20.    The Project Companies were subsidiaries of the Debtors and directly benefited from and were controlled by the parent LLCs.

21.    Additionally, the EPIC LLCs were also connected based on the limited class members, and the fact that Todd Berning and Holdings II were the class members most often connected to the EPIC LLCs that formed EPIC Companies. And all the EPIC LLCs and the Project Companies were tucked into the overarching EPIC Companies umbrella, co-mingling funds, and activities.

22.    This argument is supported by fact that Todd Berning, as a Class A member of multiple of the EPIC Companies LLCs filed suit against other EPIC Company LLCs to recover funds fraudulently transferred. EPIC Companies Midwest, LLC et al v. EPIC Holdings II, LLC, 3:24-bk-30281 (2025).

23.    As a Class A member of an LLC, Todd Berning, as a member holding primary ownership within the LLC, would have management and operational voting authority, and it is more likely than not based on the intermingling of operations, he would also have management control over the activities and actions of the LLCs.

24.    I would argue that the intent behind the organization of so many EPIC LLCs was not to create unique businesses designed to serve a specific type of business function, but instead, the multiple EPIC LLCs were created to avoid accountability and evade legal obligations upon discovery of 'bad behavior' by EPIC Companies.

25.    EPIC Management is part of EPIC Companies, as are EPIC Midwest, EC, EOLA, EPIC Midwest 2023, and Epic Employee. There have been no documents filed to indicate that the Debtors do not also include other unnamed LLCs within the EPIC

5

Companies framework when you cannot separate the controlling ownership and

management of the organizations.

    26.    EPIC Management was being operated as part of EPIC Companies and

the bankruptcy action should allow for claims to be made against these assets to avoid

an injustice against valid claims against the organization.

    27.    **WHEREFORE**, the Creditor respectfully requests that the court deny the

Liquidating Trustee's omnibus motion to disallow the claim.

Dated: January 22, 2026

Tyler John Bay
301 11th Ave NW Apt #3
Mandan, ND 58554
701-202-4427
Tyler.bay1229@gmail.com

6

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2



**EPIC Management, LLC**
**745 31st Avenue East, Suite #105**
**West Fargo, ND 58078**
**Info@EPICCompaniesND.com**

Building C
## RESIDENTIAL APARTMENT LEASE

BUILDING: Building C                                    TODAYS DATE: 12/29/2022

NAME OF RESIDENT(S): Svetlana Love Peterson, Tyler John Bay

NUMBER OF ADULTS: 2  CHILDREN: 0  PETS: 1  OCCUPYING THE PREMISES

BUILDING ADDRESS (street, city, state): 208 E Greenfield Ln  Bismarck  ND  58503-6579

RENT PAYABLE TO: EPIC MANAGEMENT

RENT PAYABLE AT: EPIC OFFICE, MAIL,ONLINE

APARTMENT #: 312  BED: 2  BATH: 1.5  MAILBOX #:

UNDERGROUND/GARAGE #: 4 and 29 OTHER:

INITIAL TERM OF LEASE: 13 month with one month free

START DATE OF LEASE: 03/01/2023 END DATE OF INITIAL TERM: 04/01/2024

PRORATED START DATE: 02/01/2023  PRORATED RENT AMOUNT: $267.86

MONTHLY RENT, APARTMENT $: $1,400.00  MONTHLY PET(S) RENT $: $50.00

MONTHLY PARKING/GARAGE RENT $: $100.00

SECURITY DEPOSIT $: $1,400.00  PET(S) FEE (Non-Refundable) $: $400.00

UTILITIES INCLUDED IN RENT:
Heat, Water, Sewage, Garbage and Internet (tenant must provide the router, modem is already installed in the unit)

UTILITIES PAID SEPARATELY BY RESIDENT:
Electricity, Air Conditioning

**Resident shall initial each line acknowledging having read and understood each provision of this lease.**

1. OCCUPANCY AND USE: Only the person(s) listed above as Resident(s) may occupy the premises without prior written approval of Management. Written approval of Management is also required on all changes or additions of Residents. Anyone residing in the residence longer than two-weeks will need to apply and be approved by management. Resident(s) are required to conduct themselves in a manner (and their guests as well) that does not unreasonably disturb the peaceful enjoyment of other Resident(s). No over-night guests with felony criminal history will be allowed. The premises and utilities may be used only for ordinary residential purposes. Any types of 3rd party rental sites (i.e., Airbnb and Vrbo) are strictly prohibited and may result in eviction. Any violation of this provision is grounds for termination of lease. Resident shall not operate any business in and out of the premises. [initials TJB] [initials SLP]

2. RENT AND APPLICATION OF PAYMENTS: Rent is owed to the amount indicated above. Management reserves the right to apply monies received in the following order: (1) Security Deposit; (2) NSF fees; (3) Asset Protect; (4) Other expenses, (5) Repair and maintenance fees; (6) Utilities; (7) Legal and accounting fees; (7) Late fees and (8) Rent. Resident shall only be allowed to pay with a check, cashier?s check, through the resident portal, or money order. No cash will be accepted. [initials TJB] [initials SLP]

3. LATE FEE AND RETURNED CHECK FEE: The monthly rent shall be due on or before THE FIRST DAY OF EACH MONTH in advance. Residents shall pay a

Exhibit 1

Exhibit #1.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

$25.00 late fee for any rent received after 8:00 a.m. on the 3ʳᵈ of the month and an additional $50.00 late fee after 8:00 a.m. on the 5ᵗʰ of the month. All payments made after 8:00 a.m. on the 3ʳᵈ will need to be brought to the leasing office during business hours of 8:00 a.m. and 5:00 p.m. Rent will not be collected from the rent box again until the following month. Management reserves the right to proceed with an eviction any time after the 3ʳᵈ day of the month. Residents will be responsible for the cost of the process server and a $50 administration fee. Resident shall pay a $80.00 NSF fee for any rent check that does not clear the bank, in addition to all other appropriate fees including, but not limited to, late fees. If management receives an NSF notification, Resident shall only be allowed to pay with a cashier?s check, credit card, or money order. No personal checks or cash will be allowed.

**4. SECURITY DEPOSIT:** The security deposit paid above shall be paid at the time of execution of this agreement to be held, applied, and processed by Management in accordance with state law. If, at the end of the tenancy, Management receives more than one forwarding address for return of the security deposit, Management may return all or any part of the security deposit to any address left with Management after Resident has surrendered the rental property to the landlord (that is, returned the keys and vacated the property). The entire deposit will remain with the apartment throughout the tenancy and will not be transferred in the event that the resident relocates to a different unit or for any change in roommates.

**5. UTILITIES:** Resident must pay all other utilities not included in rent, related deposits and any charges, fees, or services on such utilities. Management does not guarantee or warrant that there will be no interruption of utility service. Resident must contact the utility service provider in the event of an interruption of service. No rent concessions will be given due to interruption of services, nor is management responsible for losses due to an interruption of service, such as loss of groceries. The resident is responsible for having all utilities placed in their name before receiving keys to the unit. There will be a $50 administration fee on all utility bills not placed in the resident?s name. In case of default under this lease, the resident is responsible for utilities until the unit has been leased or the lease expires, whichever comes first. Resident is responsible for keeping all utilities on during tenancy.

**6. ALL RESIDENTS RESPONSIBLE FOR ALL DEBTS:** Resident is responsible for paying the rent and any other money owed to Management under the lease or as a result of any breach of this lease and Residents are jointly and severely responsible for paying the full amount of such debts, not just a proportionate share.

**7. NO UNAUTHORIZED PETS:** No unauthorized pets shall occupy the apartment, nor shall unauthorized animals be brought onto the premises. If an animal is found, you will be charged a fine of $200 as well as fees for any damages that have occurred from that animal. Pets are based on approval and restrictions apply. All fines and fees are PER PET. Residents are responsible for any guest?s pets. Any unauthorized pets brought on the premises is considered a breach of this lease and management reserves the right to proceed with an eviction.

**8. PET SITTING AND VISITING PETS:** Residents are responsible for notifying EPIC Management if a pet will be in the unit for any period of time. If an animal is found, you will be charged a fine of $200 as well as fees for any damages that have occurred from that animal. All fines and fees are PER PET. Visiting pets will be based on approval from management. Fees are applied at $10 a day not to exceed 10 consecutive days.

**9. PARKING:** All underground parking spaces run with the premises (units, apartment) and the full term and duration of the lease. A parking space will be assigned at the discretion of Management.

    a.  A parking pass MAY be required to be placed in your car for parking privileges. Untagged vehicles are subject to immediate impoundment at the owner?s expense. It is Resident?s responsibility to have their visitor?s park on the street or avenue. Loss of a parking permit will result in a $25 fine to replace.

    b.  Any garages and underground spaces should be primarily used for parking. It is permissible to store items in the extra space around your vehicle. Items stored in underground parking must be in an approved, enclosed structure. Management reserves the right to restrict storage if it interferes with parking. No grills or combustible items are allowed to be stored underground. Vehicles and stored items may be required to be moved for maintenance purposes with 24-hour notice. EPIC Management is not liable for any damage or stolen items stored in your personal underground parking space, garage, or vehicle.

    c.  Management will not allow inoperative cars, abandoned cars, cars with flat tires, or cars with expired license plates to remain on the property. They will be towed away at the owner?s expense. Additionally, non-vehicles such as trailers, boats, campers, etc. are not allowed to be parked on the property without written permission. Vehicles should be moved at a minimum of once weekly or within 48 hours of a major snow event for the purpose of snow removal.

    d.  Absolutely no vehicles are allowed on the lawn areas at any time. This includes during the time of move-in and move-out. Any damage caused to the lawn will be the responsibility of Resident. No parking in striped off areas or tow away zones. Any damage caused by a resident or visitor?s car shall be charged to Resident. Should Resident?s vehicle or a guest?s vehicle be parked in an area contrary to your property?s specific parking rules and regulations, it will be towed at the expense of the vehicle owner

**10. RIGHT OF ENTRY -** Management and its authorized agents may enter the dwelling unit:

    a.  At any time in case of emergency or if the landlord reasonably believes Resident has abandoned the premises, or the landlord reasonably believes Resident is in substantial violation of the provisions of the lease or rental agreement.

    b.  With a 24-hour notice to be sent by email, only during reasonable hours, and in a reasonable manner, for the purpose of inspecting the premises; for making necessary or agreed upon repairs, decoration alterations, or improvements; for supplying necessary or agreed upon services; or for showing the residential dwelling unit to actual or potential purchasers, insurers, mortgagees, real estate agents, residents, workers, or contractors. Unless it is impractical to do so the landlord shall first notify and receive the consent of Resident which shall not be unreasonably withheld, which consent shall identify a time certain: Consent shall be presumed from failure to object to access after notice of intent to enter at a time certain has been given.

**11. DAMAGE OR INJURY TO RESIDENT OR RESIDENT PROPERTY:** Management is not responsible for any damage or injury that is done to Resident or Resident?s property or to Resident?s guests or their property that was not caused by a willful or negligent act of Management or failure of Management to act.

**12. RENTAL INSURANCE:**

    a.  Management requires that Resident obtain $100,000 rental insurance policy and that EPIC Management be listed as an interested party. Tenant is not an additional insured under any insurance policy obtained on the property by either Management or Owner. Tenant is responsible for obtaining its own rental insurance to cover any loss on the premises

    b.  Resident can obtain the required renter's insurance through Asset Protect which is billed with rent at an additional $16.00 per month. All residents with pets will be required to enroll in Asset Protect. Failure to supply a copy of renter?s insurance by the time of move-in will automatically enroll Resident into Asset Protect.

**13. ACTS OF THIRD PARTIES:** Management is not responsible for the actions, or for any damage, injury or harm caused by such actions, of third parties (such as other Residents, guests, intruders, or trespassers) who are not in Management's control. Resident shall be held responsible for the acts of its guests and invites and any act or conduct of such a guest or invite that violates any term or condition of this lease may be grounds for termination of the lease.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

**14. NOTICE OF REPAIR:** Resident agrees to promptly supply written notice to Management of any conditions on the premises that are dangerous to the health or safety of Resident or other Residents, or which may require repair. This includes mold.

**15. TRANSFER FEE:** A $100 administration fee will be applied for an approved transfer of units within EPIC Properties.

**16. SUBLETTING AND ASSIGNMENT:** Resident may not assign this lease or sublet or grant a license to use the premises to any other persons without the prior written consent of Management. Failure to notify Management is a violation of the terms of the lease. Any type of third-party rental sites (i.e., Airbnb and Vrbo) are strictly prohibited and may result in eviction.

**17. ABANDONMENT OR SURRENDER OF THE PREMISES BEFORE THE TERMINATION OF THIS LEASE:** Resident understands that they are responsible for paying the full rent each month during the duration of this lease agreement and any extensions or renewals. Resident is responsible for all losses of rent or any other losses or costs caused by Resident?s premature abandonment or surrender of the premises. No surrender of the premises by Resident will be considered accepted by Management without the written consent by Management and will not be construed as will not be construed as a waiver of Management?s right to seek remedies under this agreement.

**18. TERMINATION OF LEASE:**

a. Either party may terminate this agreement at the end of the lease period as defined above. In order for the notice of termination to be proper, it must be: (A) Written and (B) Given on or before the first of the month, at least two calendar months before the end of the lease. If the lease is not renewed after the initial term, the lease shall be renewed on a month-to-month basis with an additional $50 month-to-month fee. All provisions of this lease agreement shall apply, with the exception of any agreed changes. Resident shall provide Management with a forwarding address. (C) Once notice has been given, Resident must not prevent showings. Showings will be conducted between 8 a.m. and 6 p.m. Resident will be given a 24-hour notice by email. If access is unreasonably withheld for the purpose of showing the unit to prospective residents, Resident may be liable for loss of rent following this lease.

b. Failure to complete this lease and give proper notice of termination will result in a $300.00 early termination fee to the Resident and complete forfeit of the security deposit. This does not release Resident from any rent obligated under such lease, in addition to any consequential damages incurred by Management. Resident is fully responsible for entire remainder of lease rent until the end of the lease or unless apartment is re-rented by a replacement resident.

c. Resident may propose a replacement resident. If approved by Management, such approval does not waive Resident from the obligation of a $300 re-rental/early termination fee. The security deposit would remain with the unit and all keys and turnover are the responsibility of Resident. Resident may not assign this lease or sublet or grant a license to use the premises to any other person without the prior written consent of Management. Failure to notify Management is a violation of the terms of the lease. Resident is fully responsible for entire remainder of lease rent until the end of the lease or unless apartment is re-rented by a replacement resident.

**19. VACATING:** Resident agrees to vacate the premises on or before 12:00 noon of the termination date of this lease or any renewal as provided in this lease. If Resident does not vacate on or before the required date, Resident shall be liable to Management for all losses incurred by Management, such as loss of rent, court costs and attorney's fees and a late vacating fee starting at $500. Residents shall also be liable to incoming residents for all incurred costs, such as sleeping accommodation, meals, storage of belongings, and any additional moving expenses. Upon vacating, Resident agrees to leave the premises in the same condition as the premises was in as per lease at the commencement of the tenancy except for ordinary wear and tear. If the premises are left in a condition that make the premises un-rentable or unfit for occupancy due to Resident damage or failure to adequately clean the premises, Resident shall be liable for all rent until such time as the premises are fit for occupancy. The rental property is not considered surrendered to Management until Resident has returned the keys and vacated the property. Resident agrees to return the keys on move-out date. Keys after the check-out will not be accepted under any circumstances.

**20. DESTROYED OR UNINHABITABLE PREMISES:** If the premises are destroyed or so damaged as to be unfit for occupancy due to fire, the elements or any other unforeseen cause, Management may elect to terminate this lease immediately and may elect not to rebuild or restore the destroyed or damaged premises by giving Resident written notice. If the destruction or damage was not caused by Resident's fault or negligence, upon termination of this lease following this section, rent shall be pro-rated and the balance, if any, refunded to Resident. Any damages caused by Resident negligence or misuse will be Resident?s responsibility and may be withheld from the security deposit. **ALL DAMAGES COSTS ARE THE RESPONSIBILITY OF RESIDENT, EVEN AMOUNTS OVER AND ABOVE DEPOSIT.**

**21. CONDITION OF PREMISES:** Resident has examined the premises and warrants they are in good order and in fine rentable condition. Resident accepts the condition of the premises as is unless conditions materially affect the health and safety of the ordinary person. Resident will maintain the premises in good condition at its sole expense for the duration of the lease term and shall make no alterations to the buildings or improvements on the premises without the prior written consent of Management. Upon expiration of the term, the Resident shall surrender the premises in as good a state and condition as they were at the beginning of the Lease Agreement except for ordinary wear and tear. **ALL DAMAGES COSTS ARE THE RESPONSIBILITY OF RESIDENT, EVEN AMOUNTS OVER AND ABOVE DEPOSIT.**

**22. REIMBURSEMENT BY RESIDENT:** Resident agrees to reimburse Management promptly for any loss, property damage, or cost of repairs or service caused by negligence or improper use by Resident, or Resident?s guests. Management's failure or delay in demanding any of these reimbursements, past due payment fees, returned check fees or other sums due by Resident shall not be deemed a waiver, and Management may demand them at any time, whether before or after Resident vacates the premises.

**23. ATTORNEY'S FEES:** Resident agrees to pay all court costs and attorney?s fees incurred by Management in enforcing any of its rights under this lease.

**24. FALSE OR MISLEADING RENTAL APPLICATION:** This lease is entered into by Management based upon oral and/or written statements made by Resident in the rental application or otherwise. In the event it is determined that Resident's statements or any part of them are not true or complete in any material respect, then this lease shall be considered breached, and Management shall have the right, in its discretion to terminate this lease before the end of the term or to evict Resident.

**25. CARPETS:** All carpets must be steam cleaned by an approved professional steam cleaning carpet service when vacating the premises. Resident must present a receipt for this service. Failure to present a receipt will result in additional steam cleaning at the Resident?s expense, with the addition of an administration fee. Any stains or orders that cannot be removed will result in carpet replacement.

**26. LOCK CHANGES:** Resident shall not change the locks on or in the unit and shall immediately provide written notice to Management of any security concerns or problems as a result of any lock problems. Resident?s request for lock changes due to mismanaged keys will result in a charge of $100 per door. Resident is not permitted to add additional locks.

**27. SMOKE ALARMS AND CARBON MONOXIDE DETECTORS:** Resident agrees to be responsible for the upkeep, operation and maintenance of all smoke

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

alarms, smoke detector systems and carbon monoxide detectors within the unit. The battery for the smoke alarm must be checked. If the battery is dead, you must replace it, or you will be charged for it. Disconnecting any smoke alarm or carbon monoxide alarm will result in a $50 fine per detector to the Resident.

28. ABANDONED PERSONAL PROPERTY: If the Resident abandons personal property on the premises, Management shall store such abandoned personal property for a period not to exceed 30 days from the date that the lease terminated. After that date, Management may sell or otherwise dispose of the abandoned property. Resident is Responsible for all storage and moving expenses. Resident releases Management from any claims that may arise out of storage or disposition of said property.

29. NOISE: Certain properties are residential and commercial combined. Residents understand that a certain amount of expected noise is generated from such commercial. Noise may also be expected during construction periods related to the commercial fit-up process and/or new construction of neighboring buildings.

30. RULES AND REGULATIONS: Attached hereto and incorporated by reference are Rules and Regulations for the premises, as well as a Drug-Free and Crime-Free Addendum. Residents agree to be bound by those Rules and Regulations and the Drug-Free and Crime-Free Addendum. Any violation of those Rules and Regulations or the Drug-Free and Crime-Free Addendum is also a violation of this lease agreement. It is Residents responsibility to read and understand all the policies, rules, and regulations for living on our property. By initialing on this line, you acknowledge that you have received and understand that by not following the policies, rules, and regulations for living on our property you are in violation of this lease agreement.

31. ENTIRE AGREEMENT: This lease along with the attached lease addendum of rules and regulations and any other document contains the entire agreement between the parties. No changes shall be made to this lease and documents unless in writing and signed by all parties.

32. GOVERNING LAW: This lease shall be governed, construed, and interpreted by state law. If any provision of this Lease agreement is deemed invalid or unenforceable, the remaining provisions of this lease agreement shall be enforced to the maximum extent permitted by law.

33. FAIR HOUSING: All Residents shall be treated fairly and equally without regard to race, color, religion, national origin, marital status, age, sex, family status, handicap, or status with respect to public assistance.

34. EVICTION: A violation of any term of this lease may result in eviction. If Management excuses a specific violation of a particular section of this lease, such waiver is not deemed to be a waiver regarding any subsequent similar violation, or violation of any other section of the lease. If Resident is evicted by Management, whether Management obtains a court judgment to enforce the eviction notice, Resident agrees to continue paying the full amount of the rent for the full remaining term of this lease, or until the premises is re-rented, whichever comes sooner.

This lease will take effect and be binding upon Management only after all approvals have been made by Management and all background information investigated. In addition, Management will not be bound by this lease until it has been signed by a representative of Management.

Resident acknowledges receiving a copy of this lease agreement and all rules and regulations for the property.

**PRINT NAME AND SIGN**

Resident: Tyler John Bay

Date: _____ Dec 9 2022 | 1:00:13 PM PST

Resident: Svetlana Love Peterson

Date: _____ Dec 9 2022 | 3:00:13 PM CST

Resident:
Date:

Resident:
Date:

MANAGEMENT: Kelsey Kosiak

Date: _____ 2022 | 1:40:08 PM CST

## LEASE ADDENDUM FOR DRUG-FREE AND CRIME-FREE HOUSING

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC58B68F2

In consideration of the execution or renewal of a lease of the dwelling unit identified in the lease, Owner and Resident agree as follows:

1. Resident, any member of the resident's household or a guest or other person under the resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near the said premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use of a controlled substance (a defined in Section 102 or the Controlled Substance Act [21 U.S.C. 802]).

2. Resident, any member of the resident's household or a guest or other person under the resident's control shall not engaged in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the said premises.

3. Resident or members of the household will not permit the dwelling unit to be used for or to facilitate criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4. Resident, any members of the household will not engage in the manufacture, sale, or distribution of illegal drugs any locations, whether on or near the dwelling unit premises or otherwise.

5. Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in acts of violence or threats of violence, including but not limited to the unlawful discharge of firearms, on or near the dwelling unit premises.

6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE LEASE AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this added addendum shall be deemed a serious violation and material non-compliance with the lease. It is understood and agreed that a single violation shall be good cause for termination of the lease. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be preponderance of the evidence.

7. In case of conflict between the provisions of this addendum and any other provisions of the lease, the provisions of the addendum shall govern.

8. This LEASE ADDENDUM is incorporated into the lease executed or renewed this day between Owner and Resident.

Resident: *Tyler John Bay*   Date: Dec-29-2022 | 1:00:13 PM PST

Resident: *Svetlana Love Peterson*   Date: Dec-29-2022 | 3:00:13 PM CST

Resident: ___   Date: ___

Resident: ___   Date: ___

MANAGEMENT: *kelsey kosiak*   Date: Dec-29-2022 | 1:40:08 PM CST

## SMOKE-FREE COMMUNITY AGREEMENT

1. Purpose of Smoke Free Policy: The parties desire to mitigate the irritation and know health effects of secondhand smoke; the increased maintenance, painting, carpet replacement and cleaning; the increased risk of fire from smoking and the higher cost of fire insurance for non-smoke free buildings.

2. Definition of smoking: The term "smoking" means inhaling, exhaling, breathing or carrying any lighted cigar, cigarette or other tobacco or plant products in any manner or form. This also includes the use of electronic cigarettes and similar products.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC58B68F2

3.Smoke Free Community: Resident understands that the premises, all common areas in the building and any area within 20 feet of the building exterior have been designated smoke free. Resident understand that this rule applies to both the residents occupying the unit and any guests.

4.Disclaimer by Management: Resident acknowledges that Management's adoption of a smoke free living environment and the effort to designate the rental complex as smoke free does not guarantee that the facility will be smoke-free at all times. All appropriate actions will be taken to prevent smoking with-in the facility and will address any residents found in violation of this policy directly.

5. Resident understands that any violation of the Smoke-Free Community Agreement may result in eviction. Resident also understands that any damages caused by smoking in a unit will be their sole responsibility.

Resident: *Tyler John Bay*                     Date: **Dec-29-2022  |  1:00:13 PM PST**

Resident: *Svetlana Love Peterson*            Date: **Dec-29-2022  |  3:00:13 PM CST**

Resident:    Date:

Resident:    Date:

MANAGEMENT: *kelsey kosiak*                   Date: **Dec-29-2022  |  1:40:08 PM CST**


## RULES AND REGULATIONS

*The failure of Resident to observe and fulfill any of the following obligations shall constitute a violation of the lease agreement.*

AS A RESULT OF OUR EXPERIENCE IN PROPERTY MANAGEMENT, WE HAVE FOUND THAT OUR RESIDENTS DESIRE THE FOLLOWING RULES AND REGULATIONS.  THEY ARE DESIGNED TO ENSURE THE MAXIMUM ENJOYMENT AND PRIVACY OF ALL RESIDENTS, TO PRESERVE THE CHARACTER AND MAINTENANCE OF BUILDINGS AND GROUNDS, AND TO DEVELOP A GOOD ENDURING RELATIONSHIP BETWEEN THE RESIDENTS AND THE MANAGEMENT.

1. All complaints and repair requests must be submitted in writing by email or using the tenant portal.

2. All residents and their guests are expected to conduct themselves in a manner befitting respectable living.  Over-indulgence in alcoholic beverages and loud boisterous parties or disorderly conduct will be grounds for immediate eviction. Alcohol related conduct which infringes upon the rights of others to a quiet, safe, peaceful and orderly living environment is not acceptable under any circumstances.  Residents are responsible for their guests? actions.

3. Please show consideration for your neighbors with regards to loud talking, loud televisions, radios or stereos. The volume should be turned down at all times. Use of sound bars or surround speakers is not permitted. Quiet hours are 10 p.m. to 6 a.m.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

4. Common areas indoor and outdoor, including indoor and outdoor windows and doors, lockers, community room, etc. must be kept neat, clean and debris free. All areas must be cleaned up after use. Windows and the doors are to be kept shut, and the exterior doors are not to be propped open under any circumstances.

5. Any mess left in residential hallway and/or elevator will be subject to a cleaning fee of a minimum of $50. Examples include: spilled coffee, leaky garbage bags, dog messes, muddy shoes, etc. Any mess left on the carpeted areas may result in 3rd party cleaning charges.

6. Littering. Residents must dispose of garbage and trash, or other waste matter, in plastic bags and place inside the garbage receptacles. Garbage is not to be left in hallways, on balconies or common areas. Residents and guests shall not litter the common areas or grounds of the complex. Personal Property (bicycles, strollers, etc.) may not be left in the hallways or chained to trees, sidewalks, entrances, entryways, or against the apartment complex. Bicycles must be parked in the bike rack.

7. No larger items may be placed outside of the dumpster (furniture, TV?s, big boxes, etc.). A minimum charge of $100 will be added to your ledger if you are caught doing so. All garbage must fit below the dumpster rim.

8. Damage to the Apartment/Common Areas. Residents will be strictly held responsible for damages in their apartments and to the common areas, including the community room. You are also responsible for damage done by your children, grandchildren and guests. A written bill will be sent shortly after the damage is noticed and payment is expected promptly upon receipt. Further, maintenance that is required beyond usual wear and tear will be charged to the tenants (this includes toilet back-ups because of improper use, holes in the walls, etc.).

9. Resident will be charged for any pest extermination treatment to their apartment, regardless of the source of the pests.

10. It is not permitted for resident to hang pictures, mirrors, etc. on the walls of the apartment. No tape, contact paper or glue is allowed on doors, walls, mirrors, or appliances. Any damage caused by negligence, nail holes, screws, anchors, command strips, etc. will result in painting fees.

11. Window blinds will be provided by Management. Any additional window coverings are the responsibility of the resident. Any damage caused by negligence, nail holes, screws, anchors, command strips, etc. will result in painting fees. Sheets and/or blankets are not acceptable window coverings.

12. When entering or leaving the premises, please operate your car or motorcycle at a speed not to exceed five miles an hour. Engine revving is not permitted.

13. Controlled Access Security:  Each resident is provided with a key or FOB to unlock the main front door and only the resident is permitted to unlock the main front door. Any guests entering the building should be escorted by resident. Lost keys will result in the re-keying of the door at the resident's expense. Lost FOBS are $75.

14. Residents must furnish their own light bulbs and batteries for smoke alarms where applicable. Work-orders for these replacements will be billed back to resident accordingly.

15. Only traditional toilet paper should be flushed. Any clogged toilet due to improper use may result in additional fees.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

16. Fire department and / or insurance carrier regulations require all sidewalks, corridors, walls, passages, stairways and common storage areas to be kept free of all personal belongings. No rugs are to be left outside of the apartment door within the common corridor, except where doors are recessed. No explosives, obnoxious or illegal substances are permitted to be kept by a resident in the apartment or on the premises. No real Christmas trees are allowed on premises. Only artificial trees will be permitted.

17. Signs and placards are not allowed to be exhibited in public view. This includes, but is not limited to, political signs and advertisement.

18. Smoking ANY SUBSTANCE is not permitted in your apartment, common areas, balconies or shared patios. Resident must be a minimum of 20 feet from any public entrance or windows. This includes, but is not limited to, tobacco cigarettes, e-cigarettes, vaping, marijuana, or any other illegal substances.

19. Balconies must be kept looking presentable. All furniture and anything stored on the balcony must be for balcony use only and should not be broken or in disrepair. Grilling is strictly prohibited. Tenants are responsible for snow removal from their balcony space.

20. Resident shall not use or have any liquid-filled furniture, including, but not limited to, waterbeds and aquariums on the premises without management's prior written consent.

21. Resident is not allowed to install individually owned satellite TV dishes and/or the installation of anything else on the premises.

22. It is resident's responsibility to occupy the premises in such a manner that mold is not created. In the event that mold is observed Resident shall immediately notify Management in writing. Owner and Management are not responsible for any injury or illness caused by mold or mold agents, and Resident agrees to indemnify and hold Owner and Management harmless from any claims cause of action, expenses, or damages of any nature out of the existence of mold. Blinds should remain open as much as possible in winter months so that frost does not build up and create mold when it melts. Mold remediation that is needed due to resident's negligence may result in additional fees.

23. Tenant is responsible for shoveling at least 2 feet in front of their garage in winter where applicable. Failure to do so will result in a fine. Any garage door damage related to snow not being removed from will be charged to the tenant. Resident may be responsible for excessive snow build up around their vehicle resulting from failure to follow the parking policy.

24. Check-out cleaning is a direct bill from a 3rd party cleaning company and will be judged by management discretion. Tenant is responsible for any cleaning needed at the time of check-out.

25. Please keep washing machine doors and tray open while not in use, this will prevent the growth of mold within the boot of the washing machine. If the boot is dirty/moldy upon move out, tenant is responsible for the cost of replacing it.

26. Epic Management is not liable for any injuries caused in the work-out room. Use equipment at your own risk. Any theft of equipment will result in criminal charges and immediate eviction.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

27. No hard-back magnets are to be used on fridges. No abrasive cleaners or cleaning pads should be used on any stainless-steel appliance. Scratched appliances will result in a replacement.

28. Keep heat registers and provided modems dusted at all times to prevent soot marks on walls. Furniture should not be placed directly against the register.

29. The patio and community room have its own rules/regulations and rental agreement. See Management for details.

30. EPIC Management reserves the right to charge a $50 service fee in the event that a tenant becomes locked out of their unit. This includes, but is not limited to, incidents of resident forgetting their keys with-in the unit, losing their keys, (additional replacement fees do apply) and residents who are locked out of their garage.

31. EPIC Management will not tolerate the harassment of employees, vendors or other residents. Harassment can include, but is not limited to, an excessive amount of phone calls, text messages, emails, aggressive pressure or intimidation.

32. CHANGES TO RULES AND REGULATIONS - The Landlord reserves the right to change and/or amend these rules and regulations.

Resident: _Tyler John Bay_    Date:  Dec-29-2022  |  1:00:13 PM PST

Resident: _Svetlana Love Peterson_    Date:  Dec-29-2022  |  3:00:13 PM CST

Resident:  Date:

Resident:  Date:

MANAGEMENT: _Kelsey Kosiak_    Date: Dec-29-2022  |  1:40:08 PM CST


## FITNESS AND RECREATIONAL ROOMS

We have provided the fitness rooms, community rooms and rooftop patios for the enjoyment of our residents. Resident also acknowledges that they are using the equipment at their own risk. The following is understood and agreed upon:

1. Management may close or restrict access to the fitness rooms, community rooms or rooftop patios occasionally for routine maintenance, to make repairs or updates, or any other circumstance that may arise. Residents are not entitled to any reimbursements in rent as a result of the closing of any of the rooms listed above.

2. Resident understands that use of the amenity spaces is a privilege and misuse may result in revocation of those privileges and/or evictions.

3. Resident represents that they are in good health and have no health conditions that should prevent them from using fitness room equipment. Resident also acknowledges that there are certain risks involved with using any fitness equipment.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B88F2

4. Resident agrees to hold Management harmless from all liability or damages for Resident or Resident's guests should they incur any injuries while using the facilities.

5. Resident's guests or children must be 14 years of age or older to use any fitness room equipment.

6. Children under 14 years of age must be accompanied by an adult when accessing any amenity spaces.

Resident: _Tyler John Bay_      Date: Dec-29-2022 | 1:00:13 PM PST

Resident: _Svetlana Love Peterson_      Date: Dec-29-2022 | 3:00:13 PM CST

Resident: ____ Date: ____

Resident: ____ Date: ____

MANAGEMENT: _kelsey kosiak_      Date: Dec-29-2022 | 1:40:08 PM CST

## LIABILITY INSURANCE ADDENDUM

This Property Damage Liability Lease Addendum (this Addendum) is an addendum to your Lease Agreement. It is intended to be a part of the Lease Agreement between the Resident and Landlord.

As provided in the Lease Agreement, Resident is required to maintain property damage liability insurance during the term of the lease Agreement and any subsequent renewal periods. It is required that the insurance be no less than One Hundred Thousand Dollars ($100,000) for damages to the property of Resident and Landlord with provisions covering, at a minimum, perils of fire, explosion, sewer backup, smoke, and accidental water discharge.

### Option 1: Do Nothing and Enroll in AssetProtect

Our community offers a cost-effective insurance program with coverage for your personal property. For just $15.00 per month, this program meets the $100,000 liability insurance requirement in your lease and provides $10,000 in coverage for your personal property. Resident will pay the monthly cost, which shall be due and payable each month without demand at the time rent is due. Landlord provides no representations or warranties with respect to the insurance or services provided by the program or the sufficiency of such insurance or any other insurance described herein. You are under no obligation to elect this option or enroll through this program. You will be enrolled in this program unless you proceed with option 2. The program is not owned or operated by Landlord. However, Landlord may receive compensation in the event you are enrolled

### Option 2: Third Party Policy

In the event Resident elects to obtain other insurance, Resident shall request that the community be named as an "Additional Interest" or "Interested Party" to be informed if the policy is cancelled or terminated (see below requirements). Such policy shall be written as a policy not contributing with and not in excess of coverage which Landlord may carry and shall remain in full force and effect during the Term of the Lease Agreement and any subsequent renewal periods. Resident must provide the policy to the community team.

*You must provide EPIC Management a copy of 3rd party coverage prior to move in.

*Additional Interest/Interested Party: _Area 57 _. 745 31st Ave E, Suite 105 West Fargo ND 58078

Resident agrees that a failure by Resident to comply with any of the terms and conditions of this Addendum shall constitute a default under the Lease Agreement to the extent permitted by Applicable Law. In the event of such default to the extent permitted by Applicable Law, Landlord shall have all rights and remedies available to it under the Lease Agreement.

DocuSign Envelope ID: C71046D9-7E5C-4943-8207-F5ACC56B68F2

\*\*EPIC Management is not a licensed insurance agent and is neither making an offer of insurance nor selling insurance.\*\*

Resident:  *Tyler John Bay*      Date:  Dec-29-2022 | 1:00:13 PM PST

Resident:  *Svetlana Love Peterson*      Date:  Dec-29-2022 | 3:00:13 PM CST

Resident:   Date:

Resident:   Date:

MANAGEMENT:  *Kelsey Kosiak*      Date: Dec-29-2022 | 1:40:08 PM CST

08-2024-SC-00159

**Form 6**

## AFFIDAVIT OF MAILING/PERSONAL SERVICE - PLAINTIFF'S CLAIM
### (See Instructions on Reverse Side)

AFFIDAVIT OF MAILING OF Plaintiff's Claim and Defendant's Forms:

| Name of Person who Mailed Papers | Time Mailed | | Date Mailed |
|---|---|---|---|
| Tyler Bay | 2:04 | ☐ A.M.  ☒ P.M. | 7/13/24 |

| Defendant(s) To Whom Papers Were Mailed | Where addressed (list each Defendant's name and address separately) |
|---|---|
| EPIC Management Company | Ruby Rau (registered agent)<br>400 10th St SE<br>PO Box 879<br>Minot ND 58702-0879 |
| | Certified mail receipt no.: 70160910000118982760 |

| Mailed at United States Post Office in City of | In the State of |
|---|---|
| Bismarck | North Dakota |

I declare under penalty of perjury that I am at least 18 years of age, and that at the time and on the date shown above, I deposited a true copy of the PLAINTIFF'S CLAIM and DEFENDANT'S FORMS in this case, securely enclosed in an envelope with certified mail - restricted delivery, postage duly prepaid, for each Defendant listed, at the above named United States Post Office.

Dated this 13th day of

July 30 2024.

_Signature of person who mailed papers_

_Burleigh_ County, North Dakota

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

AFFIDAVIT OF PERSONAL SERVICE OF Plaintiff's Claim and Defendant's Forms:

| Name of Person who Served Papers | Time Served | | Date Served |
|---|---|---|---|
| | | ☐ A.M.  ☐ P.M. | |

| Defendant(s) on Whom Papers Were Served | Address where served |
|---|---|
| | |

I declare under penalty of perjury that I am at least 18 years of age, not a party to or interested in the above action, and that on the time and date shown above, I personally served a true copy of the Plaintiff's Claim and the Defendant's Forms in this case, on the Defendant and at the address shown above.

Dated this _____ day of

_____ 20_____.

_Signature of person who served papers_

_____ County, North Dakota

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SMALL CLAIMS COURT **Burleigh** COUNTY, North Dakota. CASE NO. 082024SC00159

PLAINTIFF **Tyler John Bay/Svetlana Love Peterson** vs. DEFENDANT **Epic Management Company**

Exhibit 2

Revised 05/2022

Form 6

## INSTRUCTIONS

## FOR SERVING PAPERS ON A DEFENDANT

Copies of the "Claim Affidavit" and the Defendant's Forms must be served on <u>each</u> defendant if there is more than one defendant.

**SERVICE MAY BE DONE IN TWO WAYS:**

## BY MAIL

A.    If you elect to serve papers by mail you must:

    1.    Send to the Defendant by Certified Mail - Restricted Delivery with Return Receipt Requested the following:
        a.    FORM 1 - Small Claims Court Information (*keep 1 copy for yourself*).
        b.    FORM 2 - Claim Affidavit (*serve 1 copy of completed & signed Form 2*).
        c.    FORM 3 - Request for Hearing/Removal to District Court (*blank - don't fill out Form 3*).
        d.    FORM 4 – Defendant's Answer and Counterclaim (*blank - don't fill out Form 4*).
        e.    FORM 5 - Affidavit of Mailing for Counterclaim (*blank - don't fill out Form 5*).
        f.    FORM 7 - North Dakota Small Claims Court Act (*keep 1 copy for yourself*).

    2.    Complete the "Affidavit of Mailing" section on the reverse side of this form and have the person who mailed the forms sign in the appropriate section.

        You MUST FILE the completed "Affidavit of Service" and the signed return receipt with the clerk AS SOON as you receive the card from the post office.

Assistance in serving papers by mail will be given to you at the post office.

## OR

## PERSONAL SERVICE

B.    You may serve the Defendant personally by:

    1.    Giving the forms to the sheriff to be served.  (The sheriff will charge you a fee, which might be assessed against the Defendant if you win.)

    2.    You may have another person who is of legal age and who is not a party to or interested in the case give the papers to the Defendant. If this is done, the person giving the papers to the Defendant must fill out the reverse side of this form and sign it.

        The Defendant must be served with:
        a.    FORM 1 - Small Claims Court Information (*keep 1 copy for yourself*).
        b.    FORM 2 - Claim Affidavit (*1 copy of completed & signed Form 2*).
        c.    FORM 3 - Request for Hearing/Removal to District Court (*blank - don't fill out Form 3*).
        d.    FORM 4 – Defendant's Answer and Counterclaim (*blank - don't fill out Form 4*).
        e.    FORM 5 - Affidavit of Mailing for Counterclaim (*blank - don't fill out Form 5*).
        f.    FORM 7 - North Dakota Small Claims Court Act (*keep 1 copy for yourself*).

After service is completed, you MUST FILE the completed "Affidavit of Service" with the clerk AS SOON as you receive the affidavit.

Revised 05/2022

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Epic Management Companies
            Ruby Rau
400 10th St SE
    Po Box 874
Minot, ND 58702-0874

9590 9402 8081 2349 9604 95

2. Article Number *(Transfer from service label)*

7016 0910 0001 1898 2760

---

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X Ruby Rau

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

Ruby Rau

C. Date of Delivery

7-22-24

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

## USPS TRACKING #



i90 9402 8081 2349 9604 95

First-Class Mail
Postage & Fees
USPS
Permit No. G-1(

ed States
tal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Tyler Boy

1717 N 15th St

Bismarck, ND 58501

## STATE OF NORTH DAKOTA

## NORTH DAKOTA INSURANCE AND SECURITIES DEPARTMENT

IN THE MATTER OF:                                         )
                                                          )        **STOP ORDER SUMMARILY**
                                                          )        **SUSPENDING THE OFFER**
                                                          )        **AND SALE OF FEDERAL**
Epic Management, LLC                                      )        **COVERED SECURITIES AND**
and Todd Berning,                                         )        **NOTICE OF RIGHT TO**
                                                          )        **REQUEST A HEARING**
                                                          )
                                                          )        Case No. SO-25-907
                   Respondents.                           )                24-1854

**THE INSURANCE COMMISSIONER OF THE STATE OF NORTH DAKOTA TO THE ABOVE-NAMED RESPONDENTS:**

The North Dakota Insurance Commissioner[1] has a reasonable basis to believe that the Respondents have engaged in, are engaging in, or are about to engage in, acts, practices or transactions, as more fully described below, which are prohibited under Chapter 10-04 of the North Dakota Century Code. It is necessary and appropriate in the public interest and for the protection of investors to restrain these acts, practices, or transactions of the Respondents.

1.    Epic Management, LLC, (commonly referred to by the tradename "EPIC Companies") is a North Dakota limited liability company, registered with the North Dakota Secretary of State, ID# 0005214934, with its last known address of 400 10th Street SE, Minot, ND 58701. At all times relevant hereto, Respondent EPIC

---

[1] Pursuant to Senate Bill No. 2214 (2025) and the resulting revisions to ch. 10-04 of the North Dakota Century Code, the office of the Securities Commissioner was eliminated and the authority of the Securities Commissioner was transferred to the Insurance Commissioner. *See, e.g.*, N.D. Cent. Code § 10-04-02 (4), revised as of July 1, 2025, defining commissioner as "insurance commissioner."

Exhibit 3

Companies was operated and controlled, or held out as being as being operated and controlled, by Respondent Todd Berning, as its Executive Officer/President.

2.  Respondents control or controlled a number of large-scale, mixed-use real properties, with some projects in different stages of development, if started at all.

3.  On or about November 16, 2016, Epic Management, LLC, filed with the North Dakota Securities Department a Form D notice of its intent to offer for sale and sell equity interest in Epic Management, LLC to investors in the state of North Dakota under an exemption from registration known as Regulation D, Rule 506. These membership interests are securities as defined in N.D.C.C. §10-04-02(19).

4.  On or about May 10, 2024, the North Dakota Securities Department learned that speculative information became public that Epic Management, LLC was experiencing financial issues and investors were attempting to ascertain information as to the financial status of the company, its assets, and its executive officer, Mr. Berning. Further, silence on the part of Respondents generated uncertainty among investors.

5.  On or about May 10, 2024, North Dakota Securities Department investigators attempted to initiate contact with Respondents by visiting its place of business at 745 31st Ave E, West Fargo, ND 58078. At which time, investigators learned Mr. Berning was unavailable and his actual control of the company was possibly in question. Further, corporate officers of Epic Companies were uncertain about the potential significance of speculative information, who was situated in the position of actual executive management, and how the company was to continue to operate.

6.  Pursuant to N.D.C.C. § 10-04-16, when it shall appear to the Commissioner that any person has engaged in, or is engaging in, or is about to engage in any act or practice

which is declared in violation of Chapter 10-04 of the North Dakota Century Code, the Commissioner has the authority to issue any order, including cease and desist, rescission, stop, and suspension orders, which the Commissioner deems necessary or appropriate in the public interest or for the protection of investors. Pursuant to N.D.C.C. § 10-04-08.4(6), the Commissioner has the authority to summarily suspend the offer and sale of a federal covered security in this state if it is found to be in the public interest. The activities described above are sufficient grounds for the Commissioner to issue a stop order suspending the offer and sale of membership interests in Epic Management, LLC by Respondents.

7.    The following Order is necessary and appropriate in the public interest and for the protection of investors.

**NOW, THEREFORE, IT IS ORDERED**, pursuant to N.D.C.C. § 10-04-16(1) and N.D.C.C. § 10-04-08.4(6), that the Respondents, Epic Management, LLC and Todd Berning, by and through his executive management position of Epic Companies, and its related entities, shall immediately stop offering for sale, selling, or effecting membership interests in Epic Management, LLC. This Order excludes investors that have previously invested with Todd Berning or Epic Management, LLC, currently operating or managing real-estate investment holdings.

## NOTICE OF RIGHT TO REQUEST A HEARING

**YOU ARE NOTIFIED** that pursuant to N.D.C.C. § 10-04-16 you may request a hearing before the Insurance Commissioner if such a written request is made WITHIN FIFTEEN (15) DAYS AFTER THE RECEIPT OF THIS ORDER. The Respondents have the right to be represented by legal counsel at the hearing.

**IN TESTIMONY WHEREOF**, witness my hand and seal this 12th day of September,

2025.



Jon Godfread, Commissioner
North Dakota Insurance and
Securities Department
600 East Boulevard Ave.
State Capitol – Fifth Floor
Bismarck, ND  58505-0510
(701) 328-2910

## STATE OF NORTH DAKOTA

## NORTH DAKOTA INSURANCE AND SECURITIES DEPARTMENT

IN THE MATTER OF:                          )
                                           )        **NOTICE OF ENTRY OF**
                                           )        **ORDER AND RIGHT**
Epic Management, LLC                       )        **TO HEARING**
and Todd Berning,                          )
                                           )        Case No. SO-25-907
                    Respondents.           )              24-1854

**TO:    TODD BERNING, Individually and as President and CEO of EPIC
MANAGEMENT, LLC, and EPIC MANAGEMENT, LLC.**

YOU ARE HEARBY NOTIFIED that on the 12th day of September, 2025, the

North Dakota Insurance Commissioner entered a Stop Order against you individually

and as President and CEO of EPIC Management, LLC, and EPIC Management , LLC. A

copy of the Stop Order is attached hereto. You have been ordered to immediately stop

offering for sale and selling, or effectuating, membership interests in Epic Management,

LLC.

YOU ARE NOTIFIED that pursuant to N.D.C.C. § 10-04-16 you may request a

hearing before the Insurance Commissioner if such a written request is made WITHIN

FIFTEEN (15) DAYS AFTER THE RECEIPT OF THIS ORDER. The Respondents have

the right to be represented by legal counsel at the hearing.

Dated this 12th day of September, 2025.

By, _____

Johannes (Johnny) Palsgraaf
Special Assistant Attorney General
State Bar ID No. 06631

N.D. Insurance & Securities
Department
600 East Boulevard Ave., Dept 401
Bismarck, ND 58505
Telephone (701) 328-2577
Email jpalsgraaf@nd.gov

## STATE OF NORTH DAKOTA

## NORTH DAKOTA INSURANCE AND SECURITIES DEPARTMENT

IN THE MATTER OF:                        )
                                         )     **AFFIDAVIT OF MAILING**
                                         )     **STOP ORDER**
Epic Management, LLC                     )
and Todd Berning,                        )
                                         )     Case No. SO-25-907
                    Respondents.         )          24-1854


STATE OF NORTH DAKOTA        )
                             )     ss.
COUNTY OF BURLEIGH           )

     Kimberly Gullicks, being first duly sworn on oath, deposes and says that I am of legal

age, a citizen of the United States, and not a party to, nor have an interest in, the above-

entitled action; that on the 12th day of September, 2025, I deposited in the United States

mail in the City of Bismarck, County of Burleigh, State of North Dakota, a true and correct

copy of the following documents:

    1. Notice of Order and Opportunity for Hearing

    2. Order

     Copies of the above documents were securely enclosed in an envelope with postage

prepaid, sent via certified mail, return receipt requested, addressed to the following:

    Epic Management, LLC
    C/o Todd Berning, President and CEO
    400 10th Street SE
    Minot, ND 58701

    Todd Berning
    1318 31st Avenue SE
    Minot, ND 58701

To the best of my knowledge, information and belief, the addresses given above are the last known addresses of the parties intended to be served.

Kimberly Gullicks, Paralegal

Subscribed and sworn to before me this 12th day of September, 2025.

**RACHEL KRIEGE**
Notary Public
State of North Dakota
My Commission Expires Nov 8, 2026

Rachel Kriege, Notary Public
Burleigh County, North Dakota
My commission expires  11/8/26



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*Domestic Mail Only*

USPS ARTICLE NUMBER

9314 8699 0430 0140 0449 06

| | | |
|---|---|---|
| Certified Mail Fee | $ | |
| Return Receipt (Hardcopy) | $ 5.30 | |
| Return Receipt (Electronic) | $ 0.00 | |
| Certified Mail Restricted Delivery | $ 2.82 | Postmark Here |
| Postage | $ 0.00 | |
| Total Postage and Fees | $ 2.17 | |
| | 10.29 | |

Sent to:

Epic Management, LLC
C/O Todd Berning, President and CEO
400 10th Street SE
Minot, ND 58701

Reference Information

PS Form 3800, Facsimile, July 2015

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*Domestic Mail Only*

USPS ARTICLE NUMBER

9314 8699 0430 0140 0559 88

| | | |
|---|---|---|
| Certified Mail Fee | $ | |
| Return Receipt (Hardcopy) | $ 5.30 | |
| Return Receipt (Electronic) | $ 0.00 | |
| Certified Mail Restricted Delivery | $ 2.82 | Postmark Here |
| Postage | $ 0.00 | |
| Total Postage and Fees | $ 1.90 | |
| | 10.02 | |

Sent to:

Todd Berning
1318 31st Ave SE
Minot, ND 58701

Reference Information

PS Form 3800, Facsimile, July 2015



| **EPIC COMPANIES MIDWEST, LLC** | | | | |
|---|---|---|---|---|
| *Limited Liability Company - Business - Domestic* | 0000173604 | Active | Not Good Standing | 11/19/2018 |

**Not Good Standing Letter - AR**

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Not Good Standing Letter - AR** | Standing - AR | Good | Not Good |
| Amendment # | | | |
| **0007316056** | | | |
| Date | | | |
| **12/1/2025** | | | |

**Registered Agent/Office Statement of Change (by entity)**

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Registered Agent/Office Statement of Change (by entity)** | RA Changed | RUBY RAU 400 10TH ST SE MINOT, ND 58701 | COGENCY GLOBAL INC. 120 W SWEET AVE STE 9 BISMARCK ND 58504 |
| Amendment # | | | |
| **0006843985** | | | |
| Date | | | |
| **10/15/2024** | | | |

**Address Change of Principal Executive Office**

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Address Change of Principal Executive Office** | Principal Address 1 | 400 10TH ST SE | 900 LONG LAKE ROAD |
| Amendment # | Principal Address 2 | | STE. 180 |
| **0006844057** | Principal Address 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| Date | Principal City | MINOT | NEW BRIGHTON |
| **10/10/2024** | Principal State | ND | MN |
| | Principal Postal Code | 58701-4908 | 55112 |
| | Mailing Address Line 1 | PO BOX 879 | 900 LONG LAKE RD |
| | Mailing Address Line 2 | | STE 180 |
| | Mailing Address Line 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| | Mailing City | MINOT | NEW BRIGHTON |
| | Mailing State | ND | MN |

Exhibit 4



**Annual Report** – 10/4/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Amendment Type** **Annual Report** **Amendment #** **0006838000** **Date** **10/4/2024** | Mailing Address Line 1 | 400 10TH ST SE | PO BOX 879 |

**Registered Agent/Office Statement of Change (by entity)** – 6/13/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Amendment Type** **Registered Agent/Office Statement of Change (by entity)** **Amendment #** **0006711592** **Date** **6/13/2024** | RA Changed | Montgomery & Pender, P.C. 5630 34TH AVE S FARGO, ND 58104 | RUBY RAU 400 10TH ST SE MINOT, ND 58701 |

**Registered Agent Resignation (by entity)** – 6/11/2024

**Amendment Type**
**Registered Agent Resignation (by entity)**
**Amendment #**
**0006709929**
**Date**
**6/11/2024**

**Annual Report** – 10/28/2023

**Amendment Type**
**Annual Report**
**Amendment #**
**0006459518**
**Date**
**10/28/2023**



Annual Report — 10/22/2022

Amendment Type
**Annual Report**

Amendment #
**0006062345**

Date
**10/22/2022**

Annual Report — 10/4/2021

Amendment Type
**Annual Report**

Amendment #
**0005660376**

Date
**10/4/2021**

Annual Report — 10/12/2020

Amendment Type
**Annual Report**

Amendment #
**0005308764**

Date
**10/12/2020**

Registered Agent/Office Statement of Change (by agent) — 11/4/2019

Amendment Type
**Registered Agent/Office Statement of Change (by agent)**

Amendment #
**0002968953**

Date
**11/4/2019**



**Annual Report** 10/31/2019

Amendment Type
**Annual Report**

Amendment #
**0002965897**

Date
**10/31/2019**

**Registered Agent/Office Statement of Change (by agent)** 8/13/2019

Amendment Type
**Registered Agent/Office Statement of Change (by agent)**

Amendment #
**0002872306**

Date
**8/13/2019**

| Field Name | Changed From | Changed To |
|---|---|---|
| Registered Agent Physical Address 1 | 4650 38TH AVE S | 5630 34TH AVE S |
| Registered Agent Physical Address 2 | 4650 38TH AVE S | STE 120 |
| Registered Agent Physical Postal Code | 58106-9199 | 58104 |

**Initial Filing** 11/20/2018

Amendment Type
**Initial Filing**

SOS Control ID#
**0000173604**

Date
**11/20/2018**

**EC WEST FARGO, LLC**
*Limited Liability Company - Business - Domestic*
> 0000169187 | Inactive - Involuntary | Not Good Standing | 05/15/2018



**Annual Report Dissolution Letter** - 5/29/2025

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Annual Report Dissolution Letter** | Filing Status | Active | Inactive - Involuntary |
| *Amendment #* **0007085036** | Inactive Date | None | 5/29/2025 1:23 AM |
| *Date* **5/29/2025** | RA Changed | COGENCY GLOBAL INC. 120 W SWEET AVE STE 9 BISMARCK, ND 58504 | ND Secretary of State (N.D.C.C. ? 10-01.1-13) 600 E BOULEVARD AVE BISMARCK, ND 58501-4928 |

**Not Good Standing Letter - AR** - 11/29/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Not Good Standing Letter - AR** | Standing - AR | Good | Not Good |
| *Amendment #* **0006892272** | | | |
| *Date* **11/29/2024** | | | |

**Registered Agent/Office Statement of Change (by entity)** - 10/16/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Registered Agent/Office Statement of Change (by entity)** | RA Changed | RUBY RAU 400 10TH ST SE MINOT, ND 58701 | COGENCY GLOBAL INC. 120 W SWEET AVE STE 9 BISMARCK, ND 58504 |
| *Amendment #* **0006843939** | | | |
| *Date* **10/16/2024** | | | |

Exhibit 5



**Address Change of Principal Executive Office** – 10/10/2024

*Amendment Type*
**Address Change of Principal Executive Office**

*Amendment #*
**0006844029**

*Date*
**10/10/2024**

| Field Name | Changed From | Changed To |
|---|---|---|
| Principal Address 1 | 400 10TH ST SE | 900 LONG LAKE ROAD |
| Principal Address 2 | | STE. 180 |
| Principal Address 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| Principal City | MINOT | NEW BRIGHTON |
| Principal State | ND | MN |
| Principal Postal Code | 58701-4908 | 55112 |
| Mailing Address Line 1 | 400 10TH ST SE | 900 LONG LAKE RD |
| Mailing Address Line 2 | | STE 180 |
| Mailing Address Line 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| Mailing City | MINOT | NEW BRIGHTON |
| Mailing State | ND | MN |

**Registered Agent/Office Statement of Change (by entity)** – 6/25/2024

*Amendment Type*
**Registered Agent/Office Statement of Change (by entity)**

*Amendment #*
**0006716482**

*Date*
**6/25/2024**

| Field Name | Changed From | Changed To |
|---|---|---|
| RA Changed | Montgomery & Pender, P.C. 5630 34TH AVE S FARGO, ND 58104 | RUBY RAU 400 10TH ST SE MINOT, ND 58701 |

**Annual Report** – 10/28/2023

*Amendment Type*
**Annual Report**

*Amendment #*
**0006459516**

*Date*
**10/28/2023**



Annual Report ·

*Amendment Type*
**Annual Report**

*Amendment #*
**0006062147**

*Date*
**10/21/2022**

Annual Report ·

*Amendment Type*
**Annual Report**

*Amendment #*
**0005660361**

*Date*
**10/4/2021**

Annual Report ·

*Amendment Type*
**Annual Report**

*Amendment #*
**0005308746**

*Date*
**10/12/2020**

Annual Report ·

*Amendment Type*
**Annual Report**

*Amendment #*
**0005308746**

*Date*
**10/12/2020**

Registered Agent/Office Statement of Change (by agent) ·

*Amendment Type*
**Registered Agent/Office Statement of Change (by agent)**

*Amendment #*
**0002968926**

*Date*
**11/4/2019**

Annual Report ·

*Amendment Type*
**Annual Report**

*Amendment #*
**0002965766**

*Date*
**10/31/2019**



**Annual Report** · 10/31/2019

*Amendment Type*
**Annual Report**

*Amendment #*
**0002965766**

*Date*
**10/31/2019**

**Registered Agent/Office Statement of Change (by agent)** · 8/13/2019

*Amendment Type*
**Registered Agent/Office Statement of Change (by agent)**

*Amendment #*
**0002872277**

*Date*
**8/13/2019**

| Field Name | Changed From | Changed To |
|---|---|---|
| Registered Agent Physical Address 1 | 4650 38TH AVE S | 5630 34TH AVE S |
| Registered Agent Physical Address 2 | 4650 38TH AVE S | STE 120 |
| Registered Agent Physical Postal Code | 58106-9199 | 58104 |

**Initial Filing** · 5/15/2018

*Amendment Type*
**Initial Filing**

*SOS Control ID#*
**0000169187**

*Date*
**5/15/2018**



**EOLA Capital. LLC**
*Limited Liability Company - Business - Domestic* | 0005793151 | Inactive - Involuntary | Not Good Standing | 02/08/2022

**Annual Report Dissolution Letter** - 5/29/2025

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Annual Report Dissolution Letter** | Filing Status | Active | Inactive - Involuntary |
| *Amendment #*<br>**0007085038** | Inactive Date | None | 5/29/2025 1:23 AM |
| *Date*<br>**5/29/2025** | RA Changed | COGENCY GLOBAL INC.<br>120 W SWEET AVE STE 9<br>BISMARCK, ND 58504 | ND Secretary of State (N.D.C.C. ? 10-01.1-13)<br>600 E BOULEVARD AVE<br>BISMARCK, ND 58501-4928 |

**Not Good Standing Letter - AR** - 11/29/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Not Good Standing Letter - AR** | Standing - AR | Good | Not Good |
| *Amendment #*<br>**0006892275** | | | |
| *Date*<br>**11/29/2024** | | | |

**Registered Agent/Office Statement of Change (by entity)** - 10/16/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Registered Agent/Office Statement of Change (by entity)** | RA Changed | RUBY RAU<br>400 10TH ST SE<br>MINOT, ND 58701 | COGENCY GLOBAL INC.<br>120 W SWEET AVE STE 9<br>BISMARCK, ND 58504 |
| *Amendment #*<br>**0006843924** | | | |
| *Date*<br>**10/16/2024** | | | |

Exhibit 6



### Address Change of Principal Executive Office — 10/10/2024

Amendment Type
**Address Change of Principal Executive Office**

Amendment #
**0006844025**

Date
**10/10/2024**

| Field Name | Changed From | Changed To |
|---|---|---|
| Principal Address 1 | 400 10TH STREET SE | 900 LONG LAKE ROAD |
| Principal Address 2 | | STE. 180 |
| Principal Address 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| Principal City | MINOT | NEW BRIGHTON |
| Principal State | ND | MN |
| Principal Postal Code | 58701 | 55112 |
| Mailing Address Line 1 | 400 10TH ST SE | 900 LONG LAKE RD |
| Mailing Address Line 2 | | STE 180 |
| Mailing Address Line 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| Mailing City | MINOT | NEW BRIGHTON |
| Mailing State | ND | MN |

### Registered Agent/Office Statement of Change (by entity) — 6/17/2024

Amendment Type
**Registered Agent/Office Statement of Change (by entity)**

Amendment #
**0006712047**

Date
**6/17/2024**

| Field Name | Changed From | Changed To |
|---|---|---|
| RA Changed | Montgomery & Pender, P.C.<br>5630 34TH AVE S<br>FARGO, ND 58104 | RUBY RAU<br>400 10TH ST SE<br>MINOT, ND 58701 |

### Registered Agent Resignation (by entity) — 6/11/2024

Amendment Type
**Registered Agent Resignation (by entity)**

Amendment #
**0006709925**

Date
**6/11/2024**

### Annual Report — 10/23/2023

Amendment Type
**Annual Report**

Amendment #
**0006454682**

Date
**10/23/2023**

### Initial Filing — 2/8/2022

Amendment Type
**Initial Filing**

SOS Control ID#
**0005793151**

Date
**2/8/2022**



**EPIC Companies Midwest 2023, LLC**
*Limited Liability Company - Business - Domestic*   ❯   0005965937   **Active**   **Not Good Standing**   08/15/2022

Not Good Standing Letter - AR

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Not Good Standing Letter - AR** | Standing - AR | Good | Not Good |
| Amendment # | | | |
| **0007316055** | | | |
| Date | | | |
| **12/1/2025** | | | |

Exhibit 7



**Registered Agent/Office Statement of Change (by entity)** 10/15/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Registered Agent/Office Statement of Change (by entity)** | RA Changed | RUBY RAU 400 10TH ST SE MINOT, ND 58701 | COGENCY GLOBAL INC. 120 W SWEET AVE STE 9 BISMARCK, ND 58504 |
| *Amendment #* **0006843983** | | | |
| *Date* **10/15/2024** | | | |

**Address Change of Principal Executive Office** 10/10/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Address Change of Principal Executive Office** | Principal Address 1 | 400 10TH STREET SE | 900 LONG LAKE ROAD |
| | Principal Address 2 | | STE. 180 |
| *Amendment #* **0006844033** | Principal Address 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| *Date* **10/10/2024** | Principal City | MINOT | NEW BRIGHTON |
| | Principal State | ND | MN |
| | Principal Postal Code | 58701 | 55112 |
| | Mailing Address Line 1 | PO BOX 879 | 900 LONG LAKE RD |
| | Mailing Address Line 2 | | STE 180 |
| | Mailing Address Line 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| | Mailing City | MINOT | NEW BRIGHTON |
| | Mailing State | ND | MN |

**Annual Report** 10/4/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* **Annual Report** | Mailing Address Line 1 | 400 10TH ST SE | PO BOX 879 |
| *Amendment #* **0006838010** | | | |
| *Date* **10/4/2024** | | | |



**Registered Agent/Office Statement of Change (by entity)** - 6/17/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Amendment Type**<br>Registered Agent/Office Statement of Change (by entity) | RA Changed | Montgomery & Pender, P.C.<br>5630 34TH AVE S<br>FARGO, ND 58104 | RUBY RAU<br>400 10TH ST SE<br>MINOT, ND 58701 |
| **Amendment #**<br>0006712026 | | | |
| **Date**<br>6/17/2024 | | | |

**Registered Agent Resignation (by entity)** - 6/11/2024

**Amendment Type**
Registered Agent Resignation (by entity)

**Amendment #**
0006709936

**Date**
6/11/2024

**Annual Report** - 10/24/2023

**Amendment Type**
Annual Report

**Amendment #**
0006455243

**Date**
10/24/2023

**Initial Filing** - 8/15/2022

**Amendment Type**
Initial Filing

**SOS Control ID#**
0005965937

**Date**
8/15/2022



| EPIC Employee, LLC<br>*Limited Liability Company - Business - Domestic* | > | 0005973864 | Active | Not Good Standing | 08/31/2022 |

**Not Good Standing Letter - AR** · 12/1/2025

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Not Good Standing Letter - AR**<br>*Amendment #*<br>**0007316057**<br>*Date*<br>**12/1/2025** | Standing - AR | Good | Not Good |

**Registered Agent/Office Statement of Change (by entity)** · 10/16/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Registered Agent/Office Statement of Change (by entity)**<br>*Amendment #*<br>**0006843948**<br>*Date*<br>**10/16/2024** | RA Changed | RUBY RAU<br>400 10TH ST SE<br>MINOT, ND 58701 | COGENCY GLOBAL INC.<br>120 W SWEET AVE STE 9<br>BISMARCK, ND 58504 |

**Address Change of Principal Executive Office** · 10/10/2024

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Address Change of Principal Executive Office**<br>*Amendment #*<br>**0006844032**<br>*Date*<br>**10/10/2024** | Principal Address 1 | 400 10TH STREET SE | 900 LONG LAKE ROAD |
| | Principal Address 2 | | STE. 180 |
| | Principal Address 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| | Principal City | MINOT | NEW BRIGHTON |
| | Principal State | ND | MN |
| | Principal Postal Code | 58701 | 55112 |
| | Mailing Address Line 1 | PO BOX 879 | 900 LONG LAKE RD |
| | Mailing Address Line 2 | | STE 180 |
| | Mailing Address Line 3 | | C/O LIGHTHOUSE MANAGEMENT GROUP, INC. |
| | Mailing City | MINOT | NEW BRIGHTON |
| | Mailing State | ND | MN |

Exhibit 8



**Annual Report** – 10/7/2024 ^

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Annual Report** | Mailing Address Line 1 | 400 10TH ST SE | PO BOX 879 |
| *Amendment #*<br>**0006839965** | | | |
| *Date*<br>**10/7/2024** | | | |

**Registered Agent/Office Statement of Change (by entity)** – 6/25/2024 ^

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type*<br>**Registered Agent/Office Statement of Change (by entity)** | RA Changed | Montgomery & Pender, P.C.<br>5630 34TH AVE S<br>FARGO, ND 58104 | RUBY RAU<br>400 10TH ST SE<br>MINOT, ND 58701 |
| *Amendment #*<br>**0006716640** | | | |
| *Date*<br>**6/25/2024** | | | |

**Annual Report** – 10/24/2023 ^

*Amendment Type*<br>**Annual Report**

*Amendment #*<br>**0006455263**

*Date*<br>**10/24/2023**

**Initial Filing** – 8/31/2022 ^

*Amendment Type*<br>**Initial Filing**

*SOS Control ID#*<br>**0005973864**

*Date*<br>**8/31/2022**



# EPIC Companies

**EPICCompaniesND.com**
745 31st Ave E Ste 105
West Fargo, ND 58078
701.866.1006

*1.29.23*
*Chairman Headland and members of the Finance and Taxation Committee:*

For the record, my name is Todd Berning, and I am the President of EPIC Companies. EPIC Companies is an investment, development, and management firm based out of West Fargo, Bismarck and Minot, ND. We take underutilized spaces and construct mixed-use buildings that enhance communities through innovative development. Over the years our team has developed in many communities throughout North Dakota while working with multiple municipalities. We have over 30+ mixed-use buildings that contain commercial space, apartments, and condos along with plaza spaces that we have developed. Today, on behalf of our 85 employees, I offer opposition to House Bill 1495.

Under this House Bill 1495, it provides counties the option to opt out of TIF projects....This in turn creates a large burden for cities and school districts to carry the weight of a project they feel is beneficial for their community. TIF's allows local governments to invest in public infrastructure and other improvements up-front. Local governments can then pay later for those investments. They can do so by capturing the future anticipated increase in tax revenues generated by the project. Despite the counties being able to opt out of the TIF they would still be able to receive some of the benefits from the TIF entities.

We have used TIF's to create new public spaces such as The Lights in West Fargo and The Beacon in Grand Forks, revitalize old buildings such as the M Building in downtown Minot, and redo public streets next to our affordable housing development Blu on Broadway in Minot. A TIF was also used for our project in conjunction with the University of Jamestown to help create additional student housing and commercial space. Without TIF's, these developments would not be possible or restricted to the way they are built. In order to create these public amenity spaces, TIF's alleviate the stress on a private developer, along with ensure that these developments are built with the community in mind.

This bill as written could have negative impacts on economic development and make it more difficult to provide public amenities, destination locations, support local art, etc. We support strategic efforts to energize our communities like TIF's. On behalf of our members, I would like to encourage the committee not to pass House Bill 1495.

Sincerely,

*Todd Berning*

Todd Berning,
President of EPIC Companies

| **Exhibit 9** |
| :---: |



Case 24-30281   Doc 505   Filed 12/19/25   Entered 12/19/25 11:10:56   Desc Main
Document   Page 1 of 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In Re:

Jointly Administered

EPIC Companies Midwest, LLC,
EPIC Companies Midwest 2023, LLC,
EPIC Employee, LLC,
EOLA Capital, LLC, and
EC West Fargo, LLC,

Bankruptcy No. 24-30281
Bankruptcy No. 24-30282
Bankruptcy No. 24-30283
Bankruptcy No. 24-30284
Bankruptcy No. 24-30285

Debtors.

Chapter 11

_____/

## NOTICE OF OBJECTION TO CLAIM

Debtors, EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC filed an omnibus objection to your claim (**Doc. 501**) in this bankruptcy case.

**Your claim may be reduced, modified, or eliminated. You should read these papers carefully and discuss them with your attorney if you have one.**

If you do not want the court to eliminate or change your claim, then on or before **Monday, January 26, 2026**, you or your attorney must file a written response to the objection explaining your position. Your attorney may file your response electronically in CM/ECF.

Alternatively, you may mail your response to the Court for filing.   Send it to:
U.S. Bankruptcy Court,
655 First Avenue North, Suite 210,
Fargo, North Dakota 58102.

If you mail your response to the Court for filing, you must mail it early enough so that the court will **receive** it on or before the date noted above.

**You must also send a copy to**:
Attorney Steven R. Kinsella
Fredrikson & Byron
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402

If you file an objection or response, you must also attend the hearing on the objection, scheduled to be held on **Tuesday, February 3, 2026, at 10:30 A.M.** in Courtroom #3, Second Floor, Quentin N. Burdick United States Courthouse, 655 First Avenue North, Fargo, North Dakota.   If you or your attorney do not take these steps, the Court will assume you do not oppose the objection to your claim and cancel the hearing.

Dated: December 19, 2025.

Sara E. Diaz, Clerk
United States Bankruptcy Court
Quentin N. Burdick United States Courthouse
655 1st Avenue North, Suite 210
Fargo, ND 58102-4932

By:/s/ Sharon Horsager
Sharon Horsager, Deputy Clerk

Copy served electronically December 19, 2025, to Attorney Steven Kinsella for service.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:                                      **Jointly Administered**

EPIC Companies Midwest, LLC,                Bankruptcy No. 24-30281
EPIC Companies Midwest 2023, LLC,           Bankruptcy No. 24-30282
EPIC Employee, LLC,                         Bankruptcy No. 24-30283
EOLA Capital, LLC, and                      Bankruptcy No. 24-30284
EC West Fargo, LLC,                         Bankruptcy No. 24-30285

          Debtors.[1]                 Chapter 11

## LIGHTHOUSE MANAGEMENT GROUP, INC.'S SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS), AS LIQUIDATING TRUSTEE OF THE EPIC LIQUIDATING TRUST

> **This is an objection to your claim. This objection asks the Court to disallow the claim you filed in this bankruptcy case. If you do not file a response, your claim may be disallowed without a hearing.**
>
> **Claimants receiving this objection should locate their names and claims as listed in Exhibit A.**

1.      Lighthouse Management Group, Inc. (the "Liquidating Trustee"), as trustee of the

EPIC Liquidating Trust (the "Liquidating Trust"), and on behalf of EPIC Companies Midwest,

LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC

West Fargo, LLC (collectively, the "Debtors"), files this second omnibus objection (the

"Objection") seeking entry of an order disallowing certain claims identified on **Exhibit A** (the

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' address is c/o Lighthouse Management Group, Inc., 900 Long Lake Road, Suite 180, New Brighton, MN 55112 and their Employer Identification Numbers (EINs) are as follows: 83-2840705 (EPIC Companies Midwest, LLC), 88-3709518 (EPIC Companies Midwest 2023, LLC), 88-4112082 (EPIC Employee, LLC), 88-0554720 (EOLA Capital, LLC) and 82-5331354 (EC West Fargo, LLC).

"Contested Claims"), for which the Debtors, and now the Liquidating Trust, do not have any liability. Such claims appear to be against entities other than the Debtors.

    2.    The Liquidating Trustee further seeks the Court's permission to proceed with the Objection as an omnibus objection under Fed. R. Bankr. P. 3007(c) and (d).

    3.    In support of the Objection, the Liquidating Trustee respectfully states as follows:

## JURISDICTION

    4.    The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    5.    On June 11, 2025, the Debtors filed a joint Amended Chapter 11 Plan of Liquidation. (ECF No. 366, the "Plan"). On August 6, 2025, the Court entered an order confirming the Plan and substantively consolidating the Debtors' assets, liabilities, and operations. (ECF No. 431.) Further, pursuant to the Plan, all assets of the Debtors were transferred to the Liquidating Trust as of August 21, 2025 (the "Effective Date"). (ECF No. 454.)

    6.    Pursuant to Section 2.1.4 of the Plan, the Liquidating Trustee has the power to object to any claims (disputed or otherwise).

    7.    Pursuant to Article X of the Plan, the Court retained jurisdiction to, among other things: (a) "[a]llow, disallow, determine, liquidate, reduce, classify, re-classify, estimate, or establish the priority or secured or unsecured status of any claim . . . and the resolution of any objections to the amount, allowance, priority, or classification of claims"; and (b) "[d]ecide or resolve any motions . . . contested or litigated matters, and any other matters . . . that may be pending on the Effective Date or brought thereafter."

2

8.      This Objection arises under 11 U.S.C. §§ 105(a) and 502(b). This Objection is filed under Fed. R. Bankr. P. 9014 and 3007 and Local Rule 9014-1. Notice of this Objection is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

## BACKGROUND

9.      On July 8, 2024, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (ECF No. 1.)

10.     The Office of the United States Trustee conducted the meeting of creditors under 11 U.S.C. § 341 on August 15, 2024. (ECF No. 19.)

11.     Accordingly, pursuant to Local Rule 3003-1, the original deadline to file general proofs of claim was September 16, 2024. (*See also* ECF No. 19.)

12.     On August 26, 2024, the Official Committee of Unsecured Creditors filed a motion to extend the deadline for filing general proofs of claim to October 31, 2024 (the "Bar Date"). (ECF No. 97.) The Court granted that motion on September 12, 2024. (ECF No. 106.)

13.     To date, 246 proofs of claim have been filed against the Debtors.

14.     Upon the passage of the Bar Date, confirmation of the Plan, and substantive consolidation of the Debtors' assets and liabilities, the Liquidating Trustee has worked diligently to review the proofs of claim, including any supporting documentation provided by the claimants.

15.     The Liquidating Trustee has determined that the Contested Claims should be disallowed as the Debtors, and now the Liquidating Trust, do not have any liability for such claims. The claims appear to be against entities other than the Debtors.

16.     The Liquidating Trustee also determined that it is most efficient to file this Objection as an omnibus objection to ensure the preservation of trust resources. Otherwise, the

3

Liquidating Trustee would be forced to file separate, individual objections on the same exact basis, resulting in additional administrative expenses.

## RELIEF REQUESTED

17.     The Liquidating Trustee seeks entry of an order: (a) disallowing the Contested Claims identified on **Exhibit A** as the Debtors and the Liquidating Trust are not liable on such claims; and (b) permitting the use of an omnibus objection under Fed. R. Bankr. P. 3007(c) and (d).

## BASIS FOR RELIEF REQUESTED

18.     Section 502(a) of the Bankruptcy Code provides, in relevant part, that "[a] claim . . ., proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

19.     Similarly, under Fed. R. Bankr. P. 3001(f), "[a] proof of claim signed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] is prima facie evidence of the claim's validity and amount." *See also In re Sears*, 863 F.3d 973, 977 (8th Cir. 2017).

20.     To overcome a claim's presumptive validity, the objecting party must produce evidence establishing that the claim fits within one of the exceptions in 11 U.S.C. § 502(b) such that the claim should be disallowed. *In re AFY, Inc.*, 463 B.R. 483, 488 (B.A.P. 8th Cir. 2012); *In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004).

21.     Once evidence is produced by the objecting party, the claimant generally has the burden to prove its claim by a preponderance of the evidence. 9 Collier on Bankr. ¶ 3001.09[2] (16th ed. 2023).

22.     Section 502(b) of the Bankruptcy Code provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall

4

determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . .

11 U.S.C. § 502(b).

23.     Federal Rule of Bankruptcy Procedure 3007(d) further provides certain grounds upon which "objections to more than one claim may be joined in an omnibus objection." Fed. R. Bankr. P. 3007(d). While Fed. R. Bankr. P. 3007(d) does not refer to claims in which a debtor does not have liability, Fed. R. Bankr. P. 3007(c) allows the Court to permit other grounds for omnibus objections.

24.     As mentioned above, the Liquidating Trustee has worked diligently to review the proofs of claim, including any supporting documentation provided by the claimants. The Liquidating Trustee has determined that the Contested Claims identified on **Exhibit A** should be disallowed in their entirety on the basis that the Debtors, and now the Liquidating Trust, do not have any liability for such claims. Such claims appear to be against entities other than the Debtors.

25.     Failure to disallow the Contested Claims could result in incorrect or unfair recoveries to the detriment of other creditors. Moreover, disallowance of the Contested Claims will result in a more accurate claims register.

## CONCLUSION

26.     For the foregoing reasons, the Liquidating Trustee respectfully requests that the Court enter an order disallowing the Contested Claims identified on **Exhibit A**.

27.     Pursuant to Fed. R. Bankr. P. 9006(d), this Objection is supported by the verification of facts in the Affidavit of Patrick Finn attached hereto.

5

28.    A proposed order is included with this Objection.

29.    Pursuant to Local Rule 9014-1(B), the Liquidating Trustee hereby gives notice that it may, if necessary, call Patrick Finn, a Partner at Lighthouse Management Group, Inc., whose business address is 900 Long Lake Road, Suite 180, New Brighton, Minnesota 55112, to testify regarding the facts set forth in the Objection.

30.    No previous request for the relief sought herein has been made by the Liquidating Trustee to this or any other court.

**WHEREFORE**, the Liquidating Trustee respectfully requests that this Court enter an order:

A.    Disallowing the Contested Claims identified on **Exhibit A**; and

B.    Granting such other relief as the Court deems just and equitable.

Dated:  December 18, 2025

/e/ *Steven R. Kinsella*
Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR LIQUIDATING TRUSTEE**

6

## AFFIDAVIT

I, Patrick Finn, am a Partner at Lighthouse Management Group, Inc., the Liquidating Trustee of the EPIC Liquidating Trust, and I declare under penalty of perjury that the facts set forth in the preceding objection are true and correct, according to the best of my knowledge, information, and belief.

Dated: December 18, 2025

/s/ Patrick Finn
Patrick Finn
Partner, Lighthouse Management Group, Inc.
Liquidating Trustee of the EPIC Liquidating Trust

## EXHIBIT A

| Claimant (Alphabetical Order) | Claim Objected To | Reason for Objection | Cross-Reference to Relevant Pages |
|---|---|---|---|
| AMEX TRS Co., Inc. (Amex) | Claim 103 – EPIC Companies Midwest, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Herzog Roofing, Inc. | Claim 1 – EC West Fargo, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Mark and Teresa McGuigan | Claim 69 – EPIC Companies Midwest, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Midwest Glass and Door, Inc. | Claim 36 – EPIC Companies Midwest 2023, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Rent Group, Inc | Claim 132 – EPIC Companies Midwest, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Tyler Bay/Svetlana Peterson | Claim 35 – EPIC Companies Midwest 2023, LLC | No liability – claim not against Debtors | 1-6 of Objection |
| Uline | Claim 5 – EPIC Companies Midwest, LLC | No liability – claim not against Debtors | 1-6 of Objection |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

EPIC Companies Midwest, LLC,
EPIC Companies Midwest 2023, LLC,
EPIC Employee, LLC,
EOLA Capital, LLC, and
EC West Fargo, LLC,

Debtors.

**Jointly Administered**

Bankruptcy No. 24-30281
Bankruptcy No. 24-30282
Bankruptcy No. 24-30283
Bankruptcy No. 24-30284
Bankruptcy No. 24-30285

Chapter 11

## ORDER SUSTAINING LIGHTHOUSE MANAGEMENT GROUP, INC.'S SECOND OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS), AS LIQUIDATING TRUSTEE OF THE EPIC LIQUIDATING TRUST

On December 18, 2025, Lighthouse Management Group, Inc., as the Liquidating Trustee for the EPIC Liquidating Trust (the "Liquidating Trustee"), filed its second omnibus objection to certain claims on the basis that the Debtors, and now the EPIC Liquidating Trust, are not liable for such claims as such claims appear to be against other entities. (Doc. ___.) The Liquidating Trustee properly served the objection and notice of the hearing on the objection. (Doc. ___.) The Court did not receive any responses to the objection. Based on the record before the Court, the Court finds that sustaining the objection is in the best interest of the EPIC Liquidating Trust and its creditors.

Therefore, **IT IS ORDERED:**

1.      The objection (Doc. ___) is **SUSTAINED**.

2.      Pursuant to Fed. R. Bankr. P. 3007(c) and (d), the objection is proper as an omnibus objection.

3.      Each claim identified below is **DISALLOWED** in its entirety for all purposes:

| Claimant | Disallowed, No Liability Claim |
| --- | --- |
| AMEX TRS Co., Inc. (Amex) | Claim 103 – EPIC Companies Midwest, LLC |

| Claimant | Disallowed, No Liability Claim |
|---|---|
| Herzog Roofing, Inc. | Claim 1 – EC West Fargo, LLC |
| Mark and Teresa McGuigan | Claim 69 – EPIC Companies Midwest, LLC |
| Midwest Glass and Door, Inc. | Claim 36 – EPIC Companies Midwest 2023, LLC |
| Rent Group, Inc | Claim 132 – EPIC Companies Midwest, LLC |
| Tyler Bay/Svetlana Peterson | Claim 35 – EPIC Companies Midwest 2023, LLC |
| Uline | Claim 5 – EPIC Companies Midwest, LLC |

4.     This order is immediately effective and enforceable upon its entry.

5.     The Liquidating Trustee is authorized to take all actions necessary to effectuate the relief granted in this order.

6.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

Dated this ___ day of January, 2026.

Shon Hastings, Judge
United States Bankruptcy Court

2

Case 24-30281

## **AFFIDAVIT**

I, Tyler John Bay, as a Pro-Se Creditor, declare under penalty of perjury that the

information set forth in the preceding reply are true and correct, according to the best of

my knowledge, information, and belief.

Dated: January 22, 2026

Tyler John Bay
Pro-Se Creditor

State of North Dakota
County of Burleigh

Subscribed and sworn to before me this 22nd day of January 20 2 6
by Jessica T Gietzen Nygaard

Notary Public

My commission expires: Dec 15, 2027

**Jessica T Gietzen Nygaard**
Notary Public
State of North Dakota
My Commission Expires: December 15, 2027