**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| Lighthouse Management Group, Inc., as Liquidating Trustee for the EPIC Liquidating Trust, | |
| Plaintiff, | |
| v. | Adversary No. _____ |
| Thomas Hauge and Becky Hauge, | |
| Defendant. | |

**COMPLAINT**

Plaintiff, Lighthouse Management Group, Inc., as Trustee for the EPIC Liquidating Trust (the "Plaintiff"), on behalf of Debtors EPIC Companies Midwest, LLC, EPIC Companies Midwest 2023, LLC, EPIC Employee, LLC, EOLA Capital, LLC, and EC West Fargo, LLC (collectively, the "Debtors"), for its Complaint against Defendants Thomas Hauge and Becky Hauge (the "Defendants"), states and alleges as follows:

## NATURE OF ADVERSARY PROCEEDING

1.      The Plaintiff seeks to avoid and recover from the Defendants all preferential transfers of the Debtors' property during the ninety (90) day period prior to the filing of the Debtors' bankruptcy cases pursuant to 11 U.S.C. §§ 547, 550, *et seq*.

## THE PARTIES

2.      The Plaintiff is serving as Liquidating Trustee of the EPIC Liquidating Trust, as further described below.

3.      The Defendants are former investors in the Debtors and reside in the State of North Dakota.

## JURISDICTION AND VENUE

4.      The Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

5.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

6.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

7.      On June 11, 2025, the Debtors filed a joint Amended Chapter 11 Plan of Liquidation. (Bankruptcy No. 24-30281, ECF No. 366, the "Plan").

8.      On August 6, 2025, the Court entered an order confirming the Plan and substantively consolidating the Debtors' assets, liabilities, and operations. (*Id.*, ECF No. 431.)

9.      Further, pursuant to the Plan, all assets of the Debtors were transferred to the Liquidating Trust as of August 21, 2025. (*Id.*, ECF No. 454.)

2

10. Pursuant to Section 5.2.1 of the Plan, the Debtors irrevocably transferred to the EPIC Liquidating Trust "all right, title, and interest in and to the Liquidating Trust Assets," including "Causes of Action." (Plan § 5.2.1.)

11. On behalf of the EPIC Liquidating Trust, the Liquidating Trustee was granted the right to "prosecut[e] and resolv[e] the Causes of Action," including "[a]ny and all causes of action under chapter 5 of the [Bankruptcy Code]." (*Id.*)

12. Consistent with the Plan, and under 11 U.S.C. §§ 547, 548, 550, 704(a), and 1106, the Liquidating Trustee can avoid and recover certain payments made by the Debtors to their creditors prior to the Petition Date.

13. Pursuant to Article X of the Plan, the Bankruptcy Court retained jurisdiction to "[d]ecide or resolve any . . . adversary proceedings . . . involving the Debtors that may be pending on the Effective Date or brought thereafter." (Plan, art. X.)

14. The Plaintiff consents to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

15. This Complaint is filed under Fed. R. Bankr. P. 7001.

## FACTUAL BACKGROUND

16. The Debtors were part of a series of affiliated companies known collectively as "EPIC Companies."

17. EPIC Companies generally consisted of the Debtors, certain real estate holding entities, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

18.     Each of the Debtors was formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by one of the EPIC Companies (the "Project Companies").

19.     With funds received by the Debtors from certain individual investors, the Debtors made loans to the Project Companies. The loans were generally documented by promissory notes.

20.     The Defendants were two of those individual investors.

21.     Debtor EPIC Companies Midwest 2023, LLC and the Defendants executed that certain promissory note dated May 1, 2024. A true and correct copy of the promissory note is attached to this Complaint as **Exhibit A** (hereinafter, the "Note").

22.     Pursuant to the Note, the Defendants loaned $700,000 to Debtor EPIC Companies Midwest 2023, LLC.

23.     Debtor EPIC Companies Midwest 2023, LLC received $700,000 from the Defendants on or around May 3, 2024.

24.     Pursuant to the terms of the Note, interest would accrue at a rate of 8.25% per annum and the maturity date was May 1, 2027.

25.     Despite the stated maturity date of May 1, 2027, the Defendants were paid $700,000 from Debtor EPIC Companies Midwest 2023, LLC on May 22, 2024 (the "Transfer").

26.     The Transfer was made within the ninety (90) day period prior to the Petition Date.

27.     The Transfer was made to the Defendants pursuant to the Note, which constituted an antecedent debt owed by Debtor EPIC Companies Midwest 2023, LLC to the Defendants.

28.     Debtor EPIC Companies Midwest 2023, LLC was insolvent at the time of the Transfer, as presumed by 11 U.S.C § 547(f).

29. The Transfer enabled the Defendants to receive more than they would have received if: (a) the Debtors' bankruptcy cases had been cases under Chapter 7; (b) the Transfer had not been made; and (c) the Defendants received payment of such debt to the extent provided by the Bankruptcy Code.

30. Before filing this Complaint, the Plaintiff undertook reasonable due diligence under the circumstances of these bankruptcy cases, including, but not limited to, a review of the Debtors' books and records and payment history. The Plaintiff considered whether known or reasonably knowable affirmative defenses under 11 U.S.C. § 547(c) might apply, including, but not limited to, defenses relating to ordinary course of business and subsequent new value. Based on that due diligence, the Plaintiff asserts that the Transfer is not protected by such defenses.

31. On May 11, 2026, the Plaintiff caused a demand letter to be sent on its behalf to the Defendants demanding the amounts now owed to the Liquidating Trust.

32. As of the date of this Complaint, the Defendants have failed to pay the amounts owed to the Liquidating Trust.

33. The Plaintiff continues to trace transfers made by the Debtors. The Plaintiff expressly reserves the right to pursue additional claims against the Defendants and any subsequent transferees, including, but not limited to, additional claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**AVOIDANCE OF PREFERENTIAL TRANSFER UNDER 11 U.S.C. § 547**

34. The Plaintiff restates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

35. Debtor EPIC Companies Midwest 2023, LLC made the Transfer to the Defendants in the amount of $700,000 during the ninety (90) day period prior to the Petition Date.

36.     The Defendants were creditors of Debtor EPIC Companies Midwest 2023, LLC at the time of the Transfer.

37.     The Transfer satisfied the Note, which constituted an antecedent debt owed by Debtor EPIC Companies Midwest 2023, LLC to the Defendants.

38.     The Transfer was made while Debtor EPIC Companies Midwest 2023, LLC was insolvent.

39.     As a result of the Transfer, the Defendants received more than they would have received if: (a) the Debtors' bankruptcy cases had been cases under Chapter 7; (b) the Transfer had not been made; and (c) the Defendants received payment of such debt to the extent provided by the Bankruptcy Code.

40.     Therefore, the Transfer is avoidable under 11 U.S.C. § 547(b).

**COUNT II**
**RECOVERY OF AVOIDED TRANSFER UNDER 11 U.S.C. § 550**

41.     The Plaintiff restates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

42.     The Defendants were the initial transferees of the Transfer.

43.     Pursuant to 11 U.S.C. § 550(a), the Plaintiff is entitled to recover the amount of the avoided Transfer, plus interest and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that the Court grant the following relief:

A.     Enter judgment in favor of the Plaintiff on its claims against the Defendants;

B.     Avoid the Transfer pursuant to 11 U.S.C. § 547;

C.     Award recovery of the avoided Transfer pursuant to 11 U.S.C. § 550, in the amount of $700,000, plus interest and costs;

D.      Grant such other relief that the Court deems just and equitable.

Dated:  July 6, 2026                              */s/ Steven R. Kinsella*
                                                  Steven R. Kinsella (#09514)
                                                  Katherine A. Nixon (#10402)
                                                  **FREDRIKSON & BYRON, P.A.**
                                                  60 South 6th Street, Suite 1500
                                                  Minneapolis, MN  55402-4400
                                                  612.492.7000
                                                  skinsella@fredlaw.com
                                                  knixon@fredlaw.com

                                                  **ATTORNEYS FOR PLAINTIFF**

7

Docusign Envelope ID: E83BE4BD-7558-80D8-81E6-3B3B53CE5F00

## AFFIDAVIT

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Liquidating Trustee for the EPIC Liquidating Trust and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  July 6, 2026

DocuSigned by:

**PATRICK FINN**

0939B83D88F04EF...

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Liquidating Trustee for the EPIC Liquidating Trust

## EXHIBIT A

## PROMISSORY NOTE
### Note No. ECM23-_011_-202_4_

$_700,000.00_____                                    Dated: _May 1_____, 202_4_

FOR VALUE RECEIVED, the undersigned, **EPIC Companies Midwest 2023, LLC** ("Borrower"), a limited liability company organized under the laws of the State of North Dakota, whose address is **400 10th Street SE, Minot, ND 58701**, agrees and promises to pay to the order of _Thomas & Becky Hauge_____, a resident of the State of _North Dakota_____ ("Lender"), their endorsees, successors and assigns (the "Holder"), in lawful money of the United States, at their mailing address located at _8765 60th Avenue SW, Carson, ND 58529___, or such other place as the Holder may from time to time designate, the principal sum of _Seven Hundred Thousand_____ **and 00/100ths ($_700,000.00_____)** **Dollars**, together with interest on the unpaid principal balance at an annual rate of interest as hereinafter set forth.

1. **DEFINITIONS.** For purposes of this Note the following terms shall have the following meanings:

   a.  *"Maturity Date"* shall mean _May 1_____, 202_7_.

   b.  *"Note"* shall mean this Promissory Note.

   c.  *"Principal"* shall mean the principal sum of $_700,000.00_____ or so much as may be from time to time disbursed under this Note or any agreement related thereto.

   d.  *"Principal Balance"* shall mean the Principal from time to time outstanding and unpaid on this Note.

2. **INTEREST RATE.** The Principal Balance of this Note outstanding at the close of each day shall bear interest at a definite and certain per annum rate of interest equal to _8.25_% ("Loan Rate").

3. **BASIS OF COMPUTATION.** Interest shall be computed and charged on the basis of a year consisting of twelve (12) thirty (30) day months. Interest shall commence as to the Principal Balance as such Principal Balance is advanced.

4. **LATE CHARGE.** In the event that any payment required hereunder is not paid when due, the Borrower agrees to pay a late charge of $.04 per $1.00 of unpaid payment to defray the costs of the Holder incident to collecting such late payment. This late charge shall apply individually to all payments past due and there will be no daily pro rata adjustment. This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights the Holder may have including the right to declare the entire Principal Balance and interest immediately due and payable.

5. **TERMS OF PAYMENT.** This Note shall be payable as follows:

   a.  Beginning on _May 31_____, 202_4_, and on the last day of each month thereafter (each an "Installment Payment Date") up to and including _May 1_____, 202_7__, monthly installments of interest in an amount equal to $_4,812.50____ (each an "Installment") shall be due and payable. On the Maturity Date, the sum of $_704,812.50_____ ("Balloon Installment"), together with any additional unpaid Principal and accrued interest shall be due and payable in full. Each monthly Installment together with the Balloon Installment shall be in respective amounts necessary to fully amortize the then outstanding Principal Balance and accrued interest under this Note by the Maturity Date.

   b.  The Principal Balance shall be payable on the earlier to occur of the following:

      (i)   The Maturity Date; or

1

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

(ii)      The occurrence of an Event of Default (defined below) hereunder;

at which time the entire Principal Balance and all accrued and unpaid interest thereon, and all other charges payable pursuant to the terms hereof shall in any event be fully due and payable.

6.      **APPLICATION OF PAYMENTS.**  So long as a Default does not exist, all payments shall be applied first to any costs of collection, then to late charges, then to interest and then to Principal Balance, except that if any advance made by the Holder under the terms of any instruments securing this Note is not repaid, any monies received, at the option of the Holder, may first be applied to repay such advances, plus interest hereon, and the balance, if any, shall be applied as above.  If a Default exists, the Holder may apply any payments received to Principal, interest, late charges or other amounts due from the Borrower in such order as Holder, in its sole discretion shall determine.

7.      **PREPAYMENT.**  The Principal Balance of this Note may be prepaid in whole or in part at any time.  Any prepayment shall be made on fifteen (15) days advance written notice to the Holder and shall be made only on an Installment Payment Date.  After a prepayment, the then outstanding principal balance and accrued interest will be reamortized over the period remaining between the date of the prepayment and the Maturity Date.  No prepayment premiums shall be assessed for any prepayments.

8.      **DEFAULT.**  At the option of the Holder, the unpaid principal balance and all accrued but unpaid interest thereon shall become immediately due and payable, without notice or demand, upon the occurrence at any time of any of the following events (each individually an "Event of Default"):

**a.**  The failure to make any payment of principal or interest when and as the same becomes due and payable hereunder;

**b.**  The Borrower shall file a petition in bankruptcy or for reorganization or for an arrangement pursuant to any present or future state or federal bankruptcy act or under any similar federal or state law, or shall be adjudicated a bankrupt or insolvent, or shall make a general assignment for the benefit of its creditors, or shall fail to pay its debts generally as they become due, or if an order for relief under any present or future federal bankruptcy act or similar state or federal law shall be entered against the Borrower, or if a petition or answer requesting or proposing the entry of such order for relief or the adjudication of the Borrower as debtor or bankrupt or its reorganization under any present or future state of federal bankruptcy act or any similar federal or state law shall be filed in any court and such petition or answer shall not be discharged or denied within one hundred twenty (120) days after the filing thereof, or if a receiver, trustee or liquidator of the Borrower or of all or substantially all of the assets of the Borrower, shall be appointed in any proceeding brought against the Borrower and shall not be discharged within sixty (60) days of such appointment, or if the Borrower shall consent or acquiesce in such appointment, or if any property of the Borrower shall be levied upon or attached in any proceeding;

**c.**  Final judgment(s) for the payment of money shall be rendered against the Borrower and shall remain undischarged for a period of thirty (30) days during which execution shall not be effectively stayed; or

**d.**  Any material written representation or warranty made with regard to the financial condition of the Borrower shall prove to be untrue or misleading in any material respect.

9.      **COSTS OF COLLECTION.**  In the event of an Event of Default hereunder the Borrower agrees to pay all reasonable costs of collection, including but not limited to reasonable attorneys' fees and reasonable expenses incurred in connection with the protection or realization of the collateral securing this Note or incurred by the Holder hereof on account of such collection, whether or not suit is filed hereon.

10.      **WAIVERS.**  Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind.  No extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of

2

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

this Note made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note. If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and its partners shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. If Borrower is a limited liability company, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the limited liability company, and the term "Borrower," as used herein, shall include any alternate or successor limited liability company, but any predecessor limited liability company and its members shall not thereby be released from any liability.

**11.**     **AUTHORITY.**   Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligation of Borrower.

**12.**     **SAVINGS CLAUSE.**  Notwithstanding anything to the contrary set forth in this instrument, if at any time until payment in full of all of the indebtedness due hereunder, the interest rate on such indebtedness exceeds the highest rate of interest permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto (the "Maximum Lawful Rate"), then in such event and so long as the Maximum Lawful Rate would be so exceeded, the interest rate shall be equal to the Maximum Lawful Rate.

**13.**     **USE OF PROCEEDS.**  The Borrower warrants and represents that all funds advanced under this Note shall be applied and are intended solely for business purposes and not for any personal, family or household purposes. The Lender agrees and acknowledges that the Borrower will use the Principal as subordinate debt on various real estate development projects throughout the EPIC Companies real estate portfolio.

**14.**     **ASSIGNMENT OF NOTE.**  Borrower acknowledges and agrees that Holder may assign, mortgage, endorse or otherwise transfer its interest in the Note to others ("Assignees") without any consent of Borrower, provided however that Borrower shall be notified of any assignment.

**15.**     **GOVERNING LAW; JURISDICTION.**   The obligation evidenced by this Note was negotiated, delivered and accepted in the State of North Dakota, the laws of which state shall in all respects be controlling in the interpretation and validity of this Note and all obligations evidenced hereby. The Borrower hereby submits itself to the jurisdiction of the State of North Dakota in respect of all actions arising out of or in connection with the interpretation or enforcement of this Note and the documents related hereto.

**16.**     **NO ORAL CHANGE.**  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**17.**     **JOINT AND SEVERAL LIABILITY.**  Borrower hereby agrees that if Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several and that the Holder can enforce such obligations against either Borrower, in the Holder's sole and unlimited discretion.

**18.**     **WAIVER OF JURY TRIAL.**  The Borrower hereby irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or relating to this Note, any of the documents executed in

3

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

connection therewith or   the transactions contemplated hereby or thereby.

**19.** **TIME OF ESSENCE.** Time is of the essence.  No delay or omission on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right of any other remedy under this Note.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right or remedy on a future occasion.

**20.** **NOTICES.** Any notice required or permitted to be given hereunder shall be in writing and shall either be delivered personally to the party to whom such notice is given, or sent to it by United States registered or certified mail, postage prepaid and return receipt requested, addressed or delivered to such party at the address or addresses contained herein, or such other address or addresses as may hereafter be designated by a party.

**IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the day and year first above written.

**EPIC  Companies  Midwest  2023,  LLC, Borrower**

By:_____*Todd Berning*_____
Todd Berning, President

_____*Thomas Hauge*_____
Print Name: Thomas Hauge_____, **Lender**

_____*Becky Hauge*_____
Print Name: Becky Hauge_____, **Lender**

4

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

**Answer all questions.  Write "N/A" if not applicable.**

**A.    LENDER INFORMATION**

**1.    General Information for Individual Lenders**

*Note: this question is only to be completed by individual lenders only.*

Full Legal Name of Lender:        Thomas & Becky Hauge

Date of Birth *(mm/dd/yyyy)*:        ████████████████████

Country of Birth:        United States

Citizenship:        U.S.

Social Security or Taypayer
Identification Number:        ███████████████████

Resident Address (Number and Street):   8765 60th Avenue SW

(City, State, Zip Code): Carson, ND 58529

Business Address (Number and Street):

(City, State, Zip Code):

Telephone Number – Residence:

Telephone Number – Business:

Telephone Number – Cell Phone:    Thomas: 701-426-0591   Becky: 701-426-4071

Fax – Residence (if any):

Fax – Business (if any):

E-mail Address – Personal:    Thomas: t.hauge@yahoo.com   Becky: beckyhauge@yahoo.com

E-mail Address – Business:

**I prefer to have correspondence sent to (check one):**    ■ Residence    ☐ Business

5

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

2.      <u>**General Information for Entity Lenders**</u>

*Note: this question is only to be completed by entity lenders only*

Full Legal Name of Lender: _____

State or Other Jurisdiction in Which Incorporated or
Formed: _____

Date of Incorporation or Formation: _____

Principal Place of Business  (Number and Street): _____

(City, State, Zip Code, County): _____

IRS Taxpayer Identification Number (if any): _____

Net assets as of the end of the most recent fiscal year are
in excess of: $ _____

Principal Business: _____

Telephone Number – General: _____

Telephone Number – Cell Phone: _____

Fax (if any): _____

E-mail address: _____

Relationship to Lender (*e.g.,* attorney, accountant): _____

**Please indicate type of ownership:**

☐ Corporation
☐ LLC
☐ Limited Liability Company
☐ Grantor of a revocable trust (an Lender Questionnaire must also be completed on behalf of the Trust) Trust
☐ or Foundation (If a revocable trust, a Lender Questionnaire must also be completed on behalf of
   the grantor)
☐ Individual Retirement Account (IRA) - please provide the following:
☐ Employee Benefit Plan (as defined in ERISA)

**Please state the name of individual(s) making the lending decision on behalf of the entity:**

_____

**Authorized Representative/Agent:**

Name of Authorized Representative/Agent: _____

Address (if different)   (Number and Street): _____

(City, State, Zip Code, County): _____

Telephone Number - General: _____

Telephone Number – Cell Phone: _____

Fax (if any): _____

E-mail Address: _____

6

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

B.    **ACCREDITED LENDER**

**Part I: Accredited Lender Status.**

*All Lenders must complete.*

As one of the qualifications of being an accredited lender, the undersigned has the financial ability to bear the economic risk of the undersigned's loan and has adequate means for providing for the undersigned's current needs and possible personal and other contingencies and has the knowledge and experience in financial and business matters to evaluate the merits and risks of a loan to EPIC Companies Midwest 2023, LLC.

**Please indicate by ticking one or more of the following categories which are applicable to you:**

*Individual Lenders may only check Numbers 1, 2, 3, 4 and 19.*
*If no category is applicable, please check Number 19, "None."*

***Individual Lenders***

☑    1.    Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent for assets either held jointly or separately at the time of such Lender's purchase, exceeds $1,000,000 (excluding the value of your primary residence);

☐    2.    Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse or spousal equivalent in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

☐    3.    Any natural person who holds, in good standing, one of the following professional licenses: the General Securities Representative license (Series 7), the Private Securities Offerings Representative license (Series 82), or the Investment Adviser Representative license (Series 65) or such other qualifying professional certificate, designation or credential as set forth on SEC's website from time to time.

☐    4.    Any natural person who is a "knowledgeable employee" of the LLC, as defined in Rule 3c-5(a)(4) under the Investment Company Act of 1940 (the "***Investment Company Act***"), as amended.

***Trusts, LLCs, Companies and Other Entities:***

☐    5.    Any organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "***Code***"), corporation, Massachusetts or similar business trust, LLC, or limited liability company not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, with total assets in excess of $5,000,000;

☐    6.    Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Securities Act;

☐    7.    A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act (the "***Advisers Act***"), as amended;

☐    8.    A family office, as defined in Rule 202(a)(11)(G)-1 under the Advisers Act, that (i) has assets under management in excess of $5,000,000; (ii) is not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC and (iii) has a person directing the prospective loan who has such knowledge and experience in financial and business matters so that the family office is capable of evaluating the merits and risks of the prospective loan;

☐    9.    A family client, as defined in Rule 202(a)(11)(G)-1 under the Advisers Act, of a family office meeting the requirements defined in Number 8 above and whose prospective loan to the LLC is directed by that family office pursuant to Number 8(iii) above;

***Financial Institutions:***

☐    10.    Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (the "***Exchange Act***"), as amended;

7

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

☐ 11.   Any insurance company as defined in Section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or Business Development Company as defined in Section 2(a)(48) of that Act;

☐ 12.   An investment adviser registered pursuant to Section 203 of the Advisers Act or registered pursuant to the laws of a state;

☐ 13.   An investment adviser relying on the exemption from registering with the SEC under Section 203(l) or (m) of the Advisers Act;

☐ 14.   A Rural Business Investment Company as defined in Section 384A of the Consolidated Farm and Rural Development Act;

☐ 15.   Any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

**Benefit Plans:**

☐ 16.   Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; or any employee benefit plan within the meaning of ERISA, if the lending decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by natural persons that would themselves qualify as eligible lenders.

**Other:**

☐ 17.   Any entity in which all of the equity owners are accredited lenders (or, in the case of a trust, all the income beneficiaries) are accredited lenders. If only this Number 17 has been checked, please have each equity owner (or, in the case of a trust, each income beneficiary) fill out the Lender Questionnaire. Please feel free to make copies of these pages for each equity owner (or income beneficiary);

☐ 18.   An entity of a type not listed in Number 1 through 17 above, that is not formed for the specific purpose of lending money to EPIC Companies Midwest 2023, LLC, which owns assets in excess of $5,000,000.

**Or:**

☐ 19.   None.

**Part II: Accredited Lender Verification:**

To enable the EPIC Companies Midwest 2023, LLC to verify your accredited lender status, please check **one** of the following means of verification and check which of the requested documentation you will be submitting to EPIC Companies Midwest 2023, LLC:

A.      ☐ *Verification based on annual income:* Verification of accredited lender status based on annual income can be satisfied through submission of **one of** the following forms *from the past two years.*

*Please indicate by ticking which one of the following forms you intend to submit in order to verify your accredited lender status.*

☐ *Form W-2 (Wage and Tax Statement)*
☐ *Form 1099 (Report of various types of income)*
☐ *Schedule K-1 of Form 1065 (Partner's Share of Income, Deductions, Credits, etc) Form*
☐ *1040 (U.S. Individual Income Tax Return)*

8

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

**OR**

B.          ■ *Verification based on net worth:* Verification of accredited lender status based on net worth can be satisfied through submission of the following two forms of documents: (1) statements that disclose assets *dated within the past three months*, such as bank statements, brokerage statements, other statements of securities holdings, **and** (2) a credit report from at least one of the nationwide consumer reporting agencies.

*Please indicate by ticking which of the following statements you intend to submit, in conjunction with the required written representation, in order to verify your accredited lender status.*

**Assets**

■ *Bank statement(s), or*
■ *Brokerage statement(s), or*
☐ *Certificates of deposit, or*
☐ *Tax assessments and appraisal reports issued by independent third parties, or*
☐ *Other statement(s) of securities holdings (please indicate):*

**Liabilities**

■ *Consumer report (aka credit report)*

**OR**

C.          ☐ *Verification based on written confirmation from certain third parties:* Verification of accredited lender status may be satisfied with written confirmation by a registered broker-dealer, a SEC-registered investment adviser, a licensed attorney, **or** a certified public accountant that such person or entity has taken reasonable steps *within the past three months* to verify that the purchaser is an accredited lender and has determined that such purchaser is, in fact, an accredited lender.

*Please indicate by ticking which of the following third parties will submit a written confirmation to verify your accredited lender status.*

☐ *Registered broker-dealer*
☐ *SEC-registered investment advisor*
☐ *Licensed attorney*
☐ *Certified public accountant*

**OR**

D.          ☐ **Qualifying Professional Designation:** Please provide proof of holding (in good standing) one of the following professional licenses: the General Securities Representative license (Series 7), the Private Securities Offerings Representative license (Series 82), or the Investment Adviser Representative license (Series 65) or such other qualifying professional certificate, designation or credential as set forth on SEC's website from time to time. Acceptable documentation to prove good standing include, but are not limited to (i) a passing test result issued by the North American Securities Administrators Association dated within the past two (2) years, or (ii) proof of good standing via the SEC Investment Adviser Public Disclosure website (https://adviserinfo.sec.gov/). Any documentation provided may be accepted or rejected in the sole discretion of officers of EPIC Companies Midwest 2023, LLC.

C.       **TAXPAYER ID NUMBER; NO BACKUP WITHHOLDING; NON-U.S. FOREIGN PERSON OR ENTITY**

If Lender is a "non-U.S. person or entity", interest income from EPIC Companies Midwest 2023, LLC may be subject to withholding and taxation under the Internal Revenue Code, as amended (the "*Code*"). Lender acknowledges that it may be required to file U.S. income tax returns.

If the Lender is a foreign corporation, foreign LLC, foreign trust or foreign estate (as those terms are defined in the Code and the regulations thereunder), please contact the officers of EPIC Companies Midwest 2023, LLC.

The Lender understands that the information contained in this item may be disclosed to the Internal Revenue Service by the LLC and that any false statement contained in this item could be punished by fine, imprisonment or both.

G:\KGP Files\KGP-1449 EPIC Companies Midwest 2023, LLC\Promissory Note No. ECM2023-001-2022 - Blank - EPIC Companies Midwest 2023, LLC v2.doc

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

1.    Lender certifies that the taxpayer identification number being supplied herewith by Lender is Lender's correct taxpayer identification number and that Lender is not subject to backup withholding under Section 3406 of the Code and the regulations thereunder?

■ Yes
☐ No

2.    Lender certifies that Lender is a "U.S. person" or, if an entity, that Subscribing entity is not a foreign corporation, foreign LLC, foreign trust or foreign estate, as those terms are defined the Code and the regulations thereunder?

■ Yes
☐ No

3.    If Lender's non-foreign status changes or if any other information in this item changes, Lender agrees to notify the officers of EPIC Companies Midwest 2023, LLC within 30 days thereafter.

■ Yes
☐ No

**D.    ELECTRONIC DELIVERY AUTHORIZATION**

EPIC Companies Midwest 2023, LLC acting on its behalf may make reports, statements, and other communications relating to the Borrower and/or the Lender's loan to the Borrower, including EPIC Companies Midwest 2023, LLC information, borrowing activity, annual and other updates of the Borrower's privacy policies and procedures ("**LLC Information**") available in electronic form, such as E-mail or by posting on a web site (with notification of the posting by E-mail). E-mail messages are not secure and may contain computer viruses or other defects, may not be accurately replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient. EPIC Companies Midwest 2023, LLC and EPIC Management, LLC make no warranties in relation to these matters. EPIC Companies Midwest 2023, LLC and EPIC Management, LLC reserves the right to intercept, monitor and retain e-mail messages to and from its systems as permitted by applicable law. If a Lender has any doubts about the authenticity of an email purportedly sent by EPIC Companies Midwest 2023, LLC or the EPIC Management, LLC, the Lender is required to contact the purported sender immediately.

Do you consent to receive deliveries of information from EPIC Companies Midwest 2023, LLC and EPIC Management, LLC exclusively in electronic form without separate mailing of paper copies? Your consent to electronic delivery of such information may be revoked at any time upon written notice to EPIC Companies Midwest 2023, LLC and EPIC Management, LLC.

■ Yes
☐ No

In addition to the email address provided above, copies should be distributed to the following:

_____

**IMPORTANT DISCLOSURE INFORMATION:**

1.    If for any reason you would like a paper copy of any of your documents after you have consented to electronic delivery, you may submit a request via e-mail or in writing to:

EPIC Management, LLC
Attn: Bill Leier
745 31st Avenue East, Suite 105
West Fargo, ND 58078
Phone: 701-866-1006
Email: bill.leier@epiccompaniesnd.com

2.    If you need to update your contact information that we have on file, please e-mail the update to us.

3.    We will notify you if there are any changes to the contact information of the LLC.

**[END OF QUESTIONNAIRE]**

10

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW



745 31th Ave. E
Suite #105
West Fargo, ND 58078

## Authorized Initial Investment Form

Customer's Name   Thomas & Becky Hauge

| Name of Financial Institution | 9 Digit Routing # | Account # | Account Type |
|---|---|---|---|
| Grant County State Bank | ███████ | █████ | ☐ Checking<br>☑ Savings |

This authorizes <u>EPIC Companies Midwest 2023, LLC</u> to debit, electronically or by any other commercially accepted method, to my (our) account(s) indicated above. I agree that the ACH transaction authorized herein shall comply with all applicable U.S. Law. This authorization is for a one-time, initial investment as laid out in the corresponding promissory note or subscription agreement.

Please contact Britta Renner at brittarenner@epiccompaniesnd.com or 701-532-2485 with any questions.

Date funds can be pulled:   ☐ ASAP   ☑ Other Date (please specify): <u>04/22/2024</u>

Customer's Signature   *Thomas Hauge*   Date   2024-04-17   | Approved |

*Becky Hauge*   2024-04-23

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW



745 31ˢᵗ Ave. E
Suite #105
West Fargo, ND 58078

## Authorized Payment Form

### Payments

*You must attach a voided check or a direct deposit authorization
form from your financial institution.*

Customer's Name    Thomas & Becky Hauge

| Name of Financial Institution | 9 Digit Routing # | Account # | Account Type |
|---|---|---|---|
| Grant County State Bank | ██████ | █████ | ☑ Checking<br>☐ Savings |

This authorizes ___EPIC Companies Midwest 2023, LLC_____to send credit entries (and appropriate debit and adjustment entries), electronically or by any other commercially accepted method, to my (our) account(s) indicated above and to other accounts I (we) identify in the future (the "Account"). This authorizes the financial institution holding the Account to post all such entries. I agree that the ACH transactions authorized herein shall comply with all applicable U.S. Law. This authorization will be in effect until the Company receives a written termination notice from myself and has a reasonable opportunity to act on it.

Please contact Britta Renner at brittarenner@epiccompaniesnd.com or 701-532-2485 with any questions.

Customer's Signature    *Thomas Hauge*                    Date  2024-04-17    | Approved |

*Becky Hauge*                         2024-04-23

Document Ref: 5HHTM-DXDFK-J2TPQ-X4QBW

# Signature Certificate

Reference number: PYAV7-UT9DS-ZJAGW-5VWVV

| Signer | Timestamp | Signature |
|---|---|---|
| **Thomas Hauge**<br>Email: t.hauge@yahoo.com | | |

| | | |
|---|---|---|
| Sent: | 16 Apr 2024 18:53:51 UTC | |
| Viewed: | 16 Apr 2024 22:26:52 UTC | |
| Signed: | 17 Apr 2024 13:20:50 UTC | |

**Recipient Verification:**

✔ Email verified       16 Apr 2024 22:26:52 UTC

IP address: 174.72.32.48
Location: San Tan Valley, United States

| | | |
|---|---|---|
| **Becky Hauge**<br>Email: beckyhauge@yahoo.com | | |
| Sent: | 16 Apr 2024 18:53:51 UTC | |
| Viewed: | 23 Apr 2024 22:17:30 UTC | |
| Signed: | 23 Apr 2024 22:18:40 UTC | |

**Recipient Verification:**

✔ Email verified       23 Apr 2024 22:17:30 UTC

IP address: 174.72.32.48
Location: San Tan Valley, United States

Document completed by all parties on:

23 Apr 2024 22:18:40 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 50,000+ companies worldwide.



# Signature Certificate

Reference number: 5HHTM-DXDFK-J2TPQ-X4QBW

| Signer | Timestamp | Signature |
|---|---|---|

**Thomas Hauge**
Email: t.hauge@yahoo.com

| | |
|---|---|
| Sent: | 29 Apr 2024 21:11:23 UTC |
| Viewed: | 30 Apr 2024 03:09:10 UTC |
| Signed: | 30 Apr 2024 03:10:28 UTC |

*Thomas Hauge*

**Recipient Verification:**

✔ Email verified          30 Apr 2024 03:09:10 UTC

IP address: 104.28.50.122
Location: Albuquerque, United States

---

**Becky Hauge**
Email: beckyhauge@yahoo.com

| | |
|---|---|
| Sent: | 29 Apr 2024 21:11:23 UTC |
| Viewed: | 30 Apr 2024 03:15:15 UTC |
| Signed: | 30 Apr 2024 03:15:31 UTC |

*Becky Hauge*

**Recipient Verification:**

✔ Email verified          30 Apr 2024 03:15:15 UTC

IP address: 35.131.38.218
Location: Grand Junction, United States

---

**Todd Berning**
Email: todd.berning@epiccompaniesnd.com

| | |
|---|---|
| Sent: | 29 Apr 2024 21:11:23 UTC |
| Viewed: | 30 Apr 2024 03:38:58 UTC |
| Signed: | 30 Apr 2024 03:39:12 UTC |

*Todd Berning*

**Recipient Verification:**

✔ Email verified          30 Apr 2024 03:38:58 UTC

IP address: 172.103.31.122
Location: Moorhead, United States

---

Document completed by all parties on:

30 Apr 2024 03:39:12 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 50,000+ companies worldwide.

